William A. Levin (SBN 98592)
Laurel L. Simes (SBN 134637)
David M. Grimes (SBN 324292)
Samira J. Bokaie (SBN 332782)
**LEVIN SIMES LLP**
1700 Montgomery Street, Suite 250
San Francisco, California 94111
Telephone: (415) 426-3000
Facsimile:  (415) 426-3001
Email: wlevin@levinsimes.com
Email: llsimes@levinsimes.com
Email: dgrimes@levinsimes.com
Email: sbokaie@levinsimes.com
*Attorneys for Plaintiff* Jane Doe LS 134

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| JANE DOE LS 134, an individual;<br><br>Plaintiff,<br>vs.<br><br>UBER TECHNOLOGIES, INC., a Delaware Corporation; RASIER, LLC, a Delaware Limited Liability Company; RASIER-CA, LLC, a Delaware Limited Liability Company; and DOES 1 through 50, Inclusive,<br><br>Defendants. | Case No. 4:23-cv-03811-JSW<br><br>*Honorable Judge Jeffrey S. White*<br><br>**PLAINTIFF JANE DOE LS 134'S RESPONSE IN OPPOSITION TO DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RAISER-CA, LLC'S MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF ILLINOIS**<br><br>Date: December 1, 2023<br>Time: 9:00 AM<br>Courtroom: 5<br><br>Action Filed: July 31, 2023<br>Trial Date: None Set |

LEVIN SIMES LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

I. INTRODUCTION ........ 1

II. ARGUMENT ........ 2

A. Legal Standard ........ 2

B. The Balance of the Convenience Factors Weighs in Favor of Remaining in the Northern District of California. ........ 3

1. Plaintiff's Choice of Forum is Entitled to Some Deference ........ 3

2. The Northern District of California is More Convenient for the Parties ........ 4

a. Uber's Headquarters is in San Francisco. ........ 5

b. The Unidentified Uber Driver is Not a Party to This Lawsuit. ........ 5

3. The Northern District of California is More Convenient for Potential Witnesses ........ 6

4. The Northern District of California Has A Strong Interest In This Controversy As well As Rideshare Litigation As A Whole ........ 10

5. This Case Will Likely Be Coordinated with Other Similarly Situated Cases in a Multi-District Litigation ........ 11

IV. CONCLUSION ........ 12

# **TABLE OF AUTHORITIES**

Cases                                                                                                       Page(s)

*Barnes & Noble, Inc. v. Lsi Corp.*,
    823 F. Supp. 2d 980 (N.D. Cal. 2011) .................................................................................. 3

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011) ............................................................................................................. 3

*Lapachet v. Cal. Forensic Med. Group Inc.*,
    2017 Wl 3917209 (N.D. Cal. Sept. 7, 2017) ......................................................................... 4

*Lax v. Toyota Motor Corp.*,
    65 F. Supp. 3d 772 (N.D. Cal. 2014) .................................................................................... 3

*Lewis v. Clarke*,
    581 U.S. 155 (2017) ............................................................................................................. 6

*Saleh v. Titan Corp.*,
    361 F. Supp. 2d 1152 (S.D. Cal. 2005) ........................................................................ 6, 7, 8

*Standard Chlorine Of Delaware, Inc. v. Sinibaldi*,
    821 F. Supp. 232 (D. Del. 1992) .......................................................................................... 6

*Stewart Org., Inc. v. Ricoh Corp.*,
    487 U.S. 22 (1988) ............................................................................................................... 2

*Williams v. Bowman*,
    157 F. Supp. 2d 1103 (N.D. Cal. 2001) ............................................................................ 3, 9

Statutes

28 U.S.C. § 1404(A) .................................................................................................................... 2

28 U.S.C § 1407. ....................................................................................................................... 11

Rules

Federal Rule of Civil Procedure 19 ............................................................................................. 6

## I. INTRODUCTION

Defendants' motion should be denied because the Northern District of California is the most appropriate venue to litigate Jane Doe LS 134's case. It is where Uber is headquartered, where the majority of the acts giving rise to Plaintiff's suit occurred, where the majority of party and non-party witnesses are located, where the majority of the documents are located, and where the two California coordinated actions, *In re Lyft Rideshare Cases*, JCCP No. 5061 and *In re Uber Rideshare Cases*, JCCP No. 5188, are proceeding against Uber and Lyft by individuals who, like Jane Doe LS 134, were sexually assaulted by an Uber or Lyft driver.

Jane Doe LS 134 is a resident of the State of Arizona. Plf.'s Comp. ¶ 6. She was sexually assaulted by an Uber driver in or around February of 2019 in the State of Illinois. Plf.'s Comp. ¶ 6 ¶¶ 6, 171. This lawsuit is premised on the fact that Uber failed to adequately vet its drivers and failed to take the appropriate safety precautions to protect its passengers once it was on notice of the fact that a subset of Uber drivers were sexual predators and were sexually assaulting Uber passengers, like Jane Doe LS 134, on a widespread basis. The case alleges that Uber was aware of the problem but nevertheless failed to conduct appropriate background checks, failed to adequately train and supervise drivers, failed to adequately respond to complaints about predator drivers, failed to adopt safety design changes in the Uber App and failed to adopt standard safety measures such as video and audio surveillance.

With respect to convenience and fairness, this district is the most appropriate choice of venue, notwithstanding if the potential witnesses Uber references throughout its motion are identified, because the sexual assault on Jane Doe 134 this is the direct result of a complicated network of acts and omissions attributable to Uber management, employees, and non-party witnesses located in San Francisco. In the Order coordinating the cases in JCCP No. 5188, the Court held that "liability questions center on [Uber], not its drivers."[1] Similarly, in the Order

---

[1] *See Order Granting Plaintiff's Motion for Coordination and Motion to Stay*, Superior Court of California, County of San Francisco, at 3 (December 9, 2021), attached to the Declaration of William A. Levin ("Levin Dec.") as **Exhibit A;** *see also* Plaintiff's Request for Judicial Notice ("RFJN") filed concurrently herewith.

coordinating the cases in JCCP No. 5061, the Court stated that "the issues in the coordinated case will not center on the liability of the criminal defendants in the individual cases. To the contrary, the predominating legal and factual issues will examine Lyft's liability for allegedly failing to institute a system to have prevent the assaults in these cases and potential future assaults."[2]

Here, the Uber-centered fact discovery necessary to adjudicate Plaintiff's case implicates a myriad of events occurring over a period of years in San Francisco involving a substantial number of people, including Uber employees, former employees, and outside consultants. In other words, the sexual assaults were the avoidable outcome of Uber's pervasive and ongoing failure to conduct its business in a manner consistent with public safety. Therefore, the locus of the actions giving rise to this lawsuit is San Francisco, California, where "Uber's global headquarters has been since day one."[3]

## II. ARGUMENT

### A. Legal Standard

"For the convenience of the parties, witnesses, and the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The district court has the discretion to adjudicate motions to transfer on an "individualized, case by case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 23 (1988). Courts in this district commonly weigh the following factors in determining whether transfer is appropriate:

> (1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation of other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum.

---

[2] *Order Granting Plaintiff's Petition for Coordination, In re Lyft Rideshare Cases, JCCP 5061* (January 17, 2020) San Francisco Superior Court, attached to Levin Dec. as **Exhibit B**; see also Plaintiff's RFJN.
[3] Uber Careers, WORKING IN SAN FRANCISCO BAY AREA https://www.uber.com/us/en/careers/locations/san-francisco-bay-area/ (last accessed September 22, 2023)

LEVIN SIMES LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

*Barnes & Noble, Inc. v. LSI Corp.*, 823 F. Supp. 2d 980, 993 (N.D. Cal. 2011).

The burden is on the party seeking transfer to show that when these factors are applied, the balance of convenience clearly favors transfer. *Lax v. Toyota Motor Corp.*, 65 F. Supp. 3d 772, 776 (N.D. Cal. 2014).

### B. The Balance of the Convenience Factors Weighs in Favor of Remaining in the Northern District of California.

The safety issues that are the crux of this controversy are the result of decision-making and actions that occurred at Uber's San Francico headquarters. These issues permeate the entire corporate structure from the top down, and implicate corporate executives, engineers who develop new safety features, data scientists to experts who build programs geared toward women's safety, to support agents who are specially trained to respond to safety reports, operations specialists who are charged with ensuring safety protocols are met, and incident response teams designed to ensure the safety of Uber passengers on the platform. An analysis of these factors demonstrates that the most convenient forum for Plaintiff's claim against Uber is the Northern District of California.

#### 1. Plaintiff's Choice of Forum is Entitled to Some Deference.

Plaintiff's choice of forum should be given some deference because it is not the product of forum shopping. *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1107 (N.D. Cal. 2001) (finding that "since it appears unlikely that the plaintiff's choice of this district was a product of forum shopping, the choice should be given some deference.") Plaintiff brought her case, in good faith, in the district where the United States Supreme Court has stated that one should sue a corporation. *Goodyear Dunlop Tires Operations, S.A. v. Brown* 564 U.S. 915 (2011). While Plaintiff does not reside in this district, this district does have a significant connection to the activities alleged in Plaintiff's complaint because Uber's principal place of business is in this district.[4] The unidentified Uber driver's sexual assault on Plaintiff was predicated on the decision-making that

---

[4] State of California, STATEMENT OF INFORMATION, UBER TECHNOLOGIES, INC. (August 24, 2023), attached to Levin Dec. as **Exhibit C**.

3

CASE NO. 4:23-CV-03811-JSW     PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF ILLINOIS

occurred in this district from a company whose very business model was founded and executed in this district. The substantial harm Plaintiff suffered was the result of acts and omissions by Uber that occurred here.

By contrast, the "policies and procedures" that were "set in motion," in the *Lapachet* case were those of the medical facility where Plaintiff received care *after* suffering serious injuries while in custody at Stanislaus County Jail. See *Lapachet v. Cal. Forensic Med. Group Inc.*, 2017 WL 3917209 at *1 (N.D. Cal. Sept. 7, 2017). The sequencing of the acts and omission giving rise to each lawsuit is the distinguishing factor. The unidentified Uber driver's access to and subsequent attack on Plaintiff was the result of Uber's negligence that occurred in this district. Conversely, the access of the medical staff to the Plaintiff in *Lapachet* was the result of the negligence of the jail, which was in the transferee district. *Id*. at *3. Simply put, in *Lapachet*, the Plaintiff would not have needed to be treated at the medical facility, or be subject to the policies and procedures of the medical facility, if he had not suffered injuries at the jail in the transferee district, whereas, here, Plaintiff would not have been sexually assaulted by her Uber driver if Uber adequately created policies and procedures to prevent sexual predators from driving on its platform in this district.

As such, any argument that Plaintiff's choice of forum is the result of forum shopping is baseless. While Plaintiff's choice of forum may not be entitled to the same amount of deference as a resident of this district, Plaintiff's choice of forum is still entitled to some deference because Plaintiff sued Uber in the district that it chose[5], and has repeated affirmed, is its home district. *Williams*, F. Supp. 2d at 1107. Therefore, this factor weighs in favor of remaining in this district.

### 2. The Northern District of California is More Convenient for the Parties.

The Northern District of California is more convenient for the parties because Uber's headquarters is in San Francisco, California, Plaintiff resides in Arizona, which is geographically closer to California than it is to Illinois, and Plaintiff's counsel is located here.

//

---

[5] Levin Dec., **Exhibit C**.

4

Case No. 4:23-cv-03811-JSW   PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF ILLINOIS

a.       Uber's Headquarters is in San Francisco.

Uber's publicly filed documents[6] and website affirm that "The San Francisco Bay Area has been Uber's Global HQ since day one."[7] Uber's principal place of business is located at 1515 3rd Street, San Francisco, CA 94158,[8] and as such is at home in this district. It is common for global companies to have multiple offices. This structure is not unique to Uber, nor is it relevant to this analysis.[9] The majority of actions by Uber that are relevant to Plaintiff's lawsuit, as alleged in the complaint, occurred in this district.

b.       The Unidentified Uber Driver is Not a Party to This Lawsuit.

Uber's argument that transfer to the Northern District of Illinois is warranted because the unidentified driver may not be subject to personal jurisdiction in this district is misplaced. Without any information about the driver, his residence, or his whereabouts, Uber's argument necessarily fails because it cannot implead or seek indemnity from an individual that it cannot identify.

Uber's motion repeatedly states that the Uber driver that raped Plaintiff is likely an Illinois resident. The only basis for Uber's assumption that is presented in its moving papers is that the driver is likely an Illinois resident because the incident occurred in Illinois. However, that is not a credible basis for such an assumption, particularly where the assault occurred at least four years ago. Uber does not state that it has identified the driver. Uber does not state that it knows where the driver currently resides. Uber does not state that it knows that driver was an Illinois resident at the time of his assault on Plaintiff. At the time of filing this opposition, Uber had fifty-two (52)

---

[6] Levin Dec., **Exhibit C**; Uber Safety Report (2017-2018), UBER TECHNOLOGIES, INC., at 29 (December 5, 2019) https://www.uber-assets.com/image/upload/v1575580686/Documents/Safety/UberUSSafetyReport_201718_FullReport.pdf?uclick_id=aa19c3bc-7655-4982-a22a-1fe84045f782 (last accessed November 14, 2022.); Uber Safety Report (2019-2020), UBER TECHNOLOGIES, INC., at 11 (June 30, 2022) https://uber.app.box.com/s/vkx4zgwy6sxx2t2618520xt35rix022h?uclick_id=aa19c3bc-7655-4982-a22a-1fe84045f782 (last accessed November 14, 2022).
[7] Uber Careers, WORKING IN SAN FRANCISCO BAY AREA https://www.uber.com/us/en/careers/locations/san-francisco-bay-area/ (last accessed September 22, 2023)
[8] Levin Dec., **Exhibit C.**
[9] The declaration of Alejandra O'Conner merely states that "Uber has dozens of offices across the country." O'Conner Dec. at ¶ 4. This fact does not implicate any decision making or actions that would impact Plaintiff's claim.

5

days to file a cross-complaint against the driver for indemnity and contribution but has not done so.

Moreover, the mere existence of potential indemnity or contribution claims may not establish that party is an indispensable party under the Federal Rules of Procedure, Rule 19. (See *Lewis v. Clarke,* 581 U.S. 155, 167 (2017) (noting that "a party does not become a required party for joinder purposes under Federal Rule of Civil Procedure 19 simply by virtue of indemnifying one of the named parties."); *Standard Chlorine of Delaware, Inc. v. Sinibaldi*, 821 F. Supp. 232, 260 (D. Del. 1992) ("a defendant's right to contribution or indemnity from an absent party who may be jointly liable to the plaintiff does not render the absentee an indispensable party under Rule 19.") Here, Plaintiff can obtain complete resolution for her claim from the parties that she named in her complaint. Any claim Uber has for indemnity or contribution against the driver would occur subsequent to Plaintiff's relief. Therefore, this factor weighs against transfer because the only parties in this case are not residents of the proposed transferee forum.

### 3.  The Northern District of California is More Convenient for Potential Witnesses.

The Northern District of California is the most convenient venue for this case because of the vast number of Uber's current employees, former employees, and third-party consultants who reside in this district. "Whether this factor weighs in favor of transfer, the court must consider not simply how many witnesses each side has and the location of each, but, rather, the court must consider the importance of the witnesses." *Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1161 (S.D. Cal. 2005). In *Saleh*, the Court found that the testimony of four individuals who were former employees of the named defendants who had "first-hand, material knowledge of the events upon which the suit is predicated," to weigh in favor of transfer to this district where all the individuals were residing. *Id*. at 1161-62. Similarly, here, the testimony of former employees, including high level executives, who were directly involved in the decision-making that led to Plaintiff's sexual assault will be significant to the controversy.

The pertinent subject areas to Plaintiff's case with respect to Uber's liability include: evaluation of passenger safety issues at the inception of the company, driver background checks,

6

CASE NO. 4:23-CV-03811-JSW    PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF ILLINOIS

fingerprinting, onboarding processes and standards, handling complaints of driver misconduct, driver discipline, driver rating system, and the mechanisms and procedures for addressing driver misconduct, app design and app changes over time, safety features, warnings to passengers and drivers, compilation of data and preparation of Uber's Community Safety Reports, marketing the safety of the platform, and lobbying efforts to resist safety regulations. It will be necessary to speak to witnesses who were involved in each of these subject areas since Uber's inception.

Furthermore, the number of nonparty former Uber employees who occupied key positions will be higher than it would otherwise be, as a result of Uber's 2017 corporate restructuring due to sexual harassment episodes within the company. In the year 2017 alone there was an "exodus" of top Uber executives and managers who left Uber after former employee Susan Fowler blew the whistle on the fact of widespread sexual harassment within Uber.[10] These executives include, but are not limited to, the former CEO, the former head of compliance, the former head of finance, the former senior vice president of business, the former senior vice president of global policy and communications, the former president of ridesharing, and the former vice president of product and growth.[11]

Also, it was reported that in June of 2021, Uber's overall attrition rate was about 20%.[12] Uber does not and cannot deny that California is the residence for most of Uber's corporate witnesses and numerous former employees. Uber's website states that San Francisco Bay Area region is "home to around a third of Uber's 20,000+ global employees. Almost every team has a presence here."[13] These teams include business development, communications, community

---

[10] Julie Bort and Biz Carson, *Uber's Exodus Continues: Here are all the High Ranking Execs Who Left the Troubled Company This Year*, BUSINESS INSIDER (September 20, 2017) https://www.businessinsider.com/executives-people-who-left-uber-2017-4 (last accessed September 21, 2023)
[11] *Id*.
[12] Tom Dotan and Mark Matousek, *Uber Is Losing So Many Employees That Executives Had to Address Questions About the Problem at Recent All Hands Meetings*, BUSINESS INSIDER https://www.businessinsider.com/uber-losing-employees-high-turnover-attrition-rate-hr-chief-problem-2021-7 (last accessed September 22, 2023)
[13] Uber Careers, WORKING IN SAN FRANCISCO BAY AREA https://www.uber.com/us/en/careers/locations/san-francisco-bay-area/ (last accessed September 22, 2023)

operations, data science, design, engineering, legal, finance, marketing, operations, product, public policy, people and places, safety and insurance, and security.[14]  Accordingly, the practical reality is that Plaintiff will not be in a position to compel live trial testimony in Illinois from nonparty witnesses who were in positions within Uber in the pertinent subject areas in the years leading up to Jane Doe LSA 134's assault.

Undoubtedly, discovery will also reveal that Uber also engaged California non-party vendors, consultants, and contractors in areas such as sales, marketing, and modifications to the Uber app.

Importantly, in Uber's only public disclosures concerning the sexual assault problem on its platform, Uber's Safety Report 2017-2018 and Uber's Safety Report 2019-2020 cite San Francisco, California as its location, but more importantly, the reports make it clear that Uber is centrally coordinating its response to the sexual assault problem at its headquarters and coordinating its liaison with law enforcement officials throughout the United States. In 2017 Uber created the "Uber law enforcement portal," a website where "public safety officials can quickly and securely submit legal process documents…that may be critical in investigating potential criminal cases."[15] Uber also created "global public safety liaison team" that is made up of "former law enforcement professionals who work to proactively partner with law enforcement about how *Uber can assist during an emergency*."[16] In response to the sexual assault issue specifically, "Uber created a specialized team with IRT [incident response team] in 2017 to provide specialized customer support to riders…such as reports of sexual assault."[17]

Uber also discloses in its 2019-2020 safety report that is has working with "hundreds of advocacy organizations worked, including women's safety groups, road safety organizations, and crime prevention organizations.[18] Testimony from these non-party advocacy groups will also be compelling in showing Uber's response to the sexual assault problem.  Additionally, there will be

---

[14] *Id.*
[15] Uber Safety Report (2017-2018*), supra* note 5, at 29.
[16] Uber Safety Report (2019-2020), *supra* note 5, at 11.
[17] Uber Safety Report (2017-2018)*, supra* note 5, at 28.
[18] Uber Safety Report (2019-2020), *supra* note 5, at 12.

sexual assault victims who reside in this district who have not brought suit but who have important testimony establishing notice to Uber and Uber's subsequent corporate deliberate indifference to their plight. There are also non-party Uber drivers who reside in this district who have relevant experience with these passenger safety issues that could not be compelled to travel to Illinois.

With respect to the Illinois based witnesses, Uber's argument is not persuasive. As discussed above, Uber has not identified the driver. Therefore, its argument that the driver is "likely an Illinois resident" should be given limited weight. *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1108 (N.D. Cal. 2001) ("the moving party must identify relevant witnesses, state their location, and describe their testimony and its relevance.") Similarly, Uber improperly relies on the fact that the assault happened in Illinois as a basis to assume that friends and family who Plaintiff told about the sexual assault reside in Illinois.[19] This assumption is misplaced. For example, Plaintiff's grandmother who ordered the ride and who Plaintiff has confided in about the assault resides in State of Colorado. Additionally, Plaintiff's mother resides in this district.

Consequently, there will be non-party witnesses who reside in California as well as those that reside in Illinois. To accept Uber's position, one must accept the fallacy that the center of gravity for Plaintiff's claim is the state where the incident occurred. The Court specifically addressed this in the order coordinating JCCP 5188, In re Uber Rideshare litigation[20] in which it concluded that the litigation will not center on the conduct of individual drivers or upon the individual incidents of assault.[21] The primary focus of the entire litigation will be upon Uber's alleged failure to institute a system which would have prevented these assaults and potential future assaults. Not only is the pool of California witnesses larger than that of Illinois, but the importance of the testimony to the controversy at hand, namely that Uber failed to take adequate measures from preventing sexual assault of Uber passengers by Uber drivers, holds great weight. While the

---

[19] The Luskey Declaration incorrectly identifies that Plaintiff may have spoken assault with "Plaintiff's friend and her boyfriend who Plaintiff as on the way to visit during the ride." Plaintiff was not, and did not allege, that she was going to see her friend or any boyfriend the night she was assaulted. *See* Luskey Dec. at ¶ 2(b).
[20] Levin Dec., **Exhibit A**, at 3.
[21] *Id*.

CASE NO. 4:23-CV-03811-JSW    PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF ILLINOIS

underlying assault is an element of the case, it is not where much of the overall discovery will be focused. Therefore, this factor weighs in favor of or remaining in this district.

### 4. The Northern District of California Has A Strong Interest In This Controversy As well As Rideshare Litigation As A Whole.

This controversy alleged in Plaintiff's complaint is between Jane Doe LS 134 and Uber, rather than solely between Plaintiff and the unidentified Uber driver as Uber suggests. With this framework in mind, there is no district with a stronger interest in this controversy, and rideshare litigation as a whole, than this district.

Uber is a high-profile California corporation, headquartered in San Francisco. As Uber's Safety Report clearly indicates, it is, and has been, centrally addressing the problem of sexual assault on the platform centrally located, rather than on an ad hoc county by county basis.[22] The rideshare business arose here and is an important mode of transportation throughout California. Issues pertinent to the rideshare industry have made their way to ballot box on more than one occasion. In the year 2020, there were approximately 209,000 Uber drivers in California.[23] No state comes close to California in terms of the number of in-state residents who are impacted by Uber's conduct and the safety issues presented by this litigation.

Bay Area jurors have a particularly strong interest in the litigation. Uber is headquartered here and is a major employer in the bay area, employing thousands of individuals in its bay area offices.[24] In 2022, leaders and local officials in Silicon Valley including the mayor of San Jose repeatedly met with Uber regarding its policy of not reporting incidents of sexual assault to the police and are continuing to put pressure on the company to do so even if it is only on a trial basis.[25]

---

[22] *See* Uber Safety Report (2019-2020), *supra* note 5.
[23] Alison Stein, *Analysis on Impacts of Driver Reclassification*, UBER UNDER THE HOOD, https://medium.com/uber-under-the-hood/analysis-on-impacts-of-driver-reclassification-2f2639a7f902 (last accessed November 12, 2022.)
[24] *Working in San Francisco Bay Area*, UBER CAREERS https://www.uber.com/us/en/careers/locations/san-francisco-bay-area/ (last accessed November 12, 2022.)
[25] Cade Metz, *Silicon Valley County Battles With Uber Over Reporting Of Sexual Assault*, NEW YORK TIMES (October 3, 2022) ("Uber has essentially carved out its own justice system.") https://www.nytimes.com/2022/10/03/technology/uber-sexual-assault-reporting-santa-clara-

10
CASE NO. 4:23-CV-03811-JSW         PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION
                                    TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF ILLINOIS

When discussing Uber's policy of not reporting incidents of sexual assault to the police, San Jose Mayor Liccardo stated that "it is a grave concern to me as a mayor. It's a grave concern to me as a former prosecutor of sexual assaults. And it's a grave concern to me as a husband and as a member of this community."[26]

The primary focus of this litigation revolves around Uber's alleged liability producing conduct in California in a context where California is the locus of the evidence which is central to each one of these cases. "Liability questions center on [Uber], not its drivers."[27] Cases like Jane Doe LS 134's case "share similar facts and issues concerning the same central claims: whether Uber failed to adequately vet and train drivers regarding sexual assault, implement adequate safety measures to protect its passengers from being sexually assaulted, and adequately respond to driver complaints."[28] It would be difficult to find a better example of litigation citizens and courts within this district. Therefore, this factor weighs in favor of remaining in this district.

### 5.      This Case Will Likely Be Coordinated with Other Similarly Situated Cases in a Multi-District Litigation.

This case will likely be coordinated into MDL No. 3084, In re: Uber Technologies, Inc. Passenger Sexual Assault Litigation. On July 14, 2023, a Motion for Transfer of Actions Under 28 U.S.C § 1407 was filed before the Judicial Panel on Multidistrict Litigation seeking coordination or consolidation of pretrial proceedings in the Northern District of California of cases in which Uber passengers, like Jane Doe LS 134, were sexually assaulted by an Uber driver.[29] On August 18, 2023, counsel for Plaintiff filed a notice of related actions MDL No. 3084 which included

---

county.html (last accessed November 10, 2022)
[26] Amanda del Castillo, *'Everybody stay in their lane': The South Bay debate over how Uber should report sexual assaults*, ABC7 NEWS (October 3, 2022) https://abc7news.com/uber-sexual-assault-santa-clara-county-police-reports-san-jose/12292979/ (last accessed Nov. 10 2022.)
[27] Levin Dec., **Exhibit A** at 3.
[28] Levin Dec., **Exhibit A** at 3.
[29] *Memorandum in Support of Plaintiffs' Motion for Transfer of Actions until 28 U.S.C. ¶ 1407 For Coordinated or Consolidated Pretrial Proceedings*, In re: Uber Passenger Sexual Assault Litigation, MDL No. 3085, United States Judicial Panel On Multidistrict Litigation (July 14, 2023), attached to Levin Dec. as **Exhibit D**.

Plaintiff's case.[30] A hearing regarding the petition for coordination will be heard by the Judicial Panel on Multidistrict Litigation on September 28, 2023.[31]

As such, remaining in this district will also preserve judicial resources and prevent duplicative litigation because once coordinated one judge will preside over the discovery of these cases. If this case were to be transferred to the Northern District of Illinois before the MDL is established, the case will transfer again to the district court in which the MDL will be located. Given that the petition in MDL No. 3084 specifically requests that the MDL proceed in the Northern District of California[32], this factor weighs in favor of remaining in this district.

### III. CONCLUSION

Therefore, Plaintiff respectfully requests that this Court deny Uber's motion to transfer this case to the Northern District of Illinois because Uber failed to meet its burden to demonstrate that the balance of the requisite factors favor transfer. As such, Jane Doe LS 134's case should remain in this district.

DATED:  September 22, 2023                     Respectfully Submitted,

**LEVIN SIMES LLP**

*/s/ William A. Levin*
William A. Levin
Laurel L. Simes
David Grimes
Samira J. Bokaie
*Attorneys for Plaintiff*

---

[30] Schedule of Actions/List of Represented Plaintiffs, In re: Uber Passenger Sexual Assault Litigation, MDL No. 3085 (August 18, 2023), attached to Levin Dec. as **Exhibit E.**
[31] Levin Dec., at ¶ 8.
[32] Levin Dec., **Exhibit E** at 12.

12

CASE NO. 4:23-CV-03811-JSW          PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION
                                    TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF ILLINOIS

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on September 22, 2023, I electronically filed the foregoing document with the Clerk of the Court, using the CM/ECF system, which will send notification of such filing to all counsel of record in this matter who are registered on the CM/ECF system.

Dated: September 22, 2023                                           */s/ William A. Levin*