# EXHIBIT B

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles
JAN 17 2020
Sherri R. Carter, Executive Officer/Clerk
By: Berta Jauregui, Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

Coordination Proceeding
Special Title (Rule 3.550)

IN RE: LYFT ASSAULT CASES

JCCP No. 5061

COURT'S RULING AND ORDER RE: PETITION FOR COORDINATION

Hearing Date: January 8, 2020

I.

BACKGROUND

Plaintiffs have brought these cases (collectively, the "Included Cases")[1] against

[1] The Included Cases in the petition are the following:

1. *JILL BERQUIST, an individual, v. LYFT, INC., a Delaware Corporation; and DOES 1 through 50, Inclusive,* filed August 23, 2019 (San Francisco Sup. Ct. Case No. CGC-19-578643);

2. *MARGARITA BICANA, an individual, v. LYFT, INC., a Delaware Corporation; and DOES 1 through 50, Inclusive,* filed August 23, 2019 (San Francisco Sup. Ct. Case No. CGC-19-578645);

3. *GILLIAN C. v. LYFT, INC.; MATIN MAHDAVI; and DOES 1 through 50, Inclusive,* filed April 22, 2019 (LASC Case No. 19STCV13758);

4. *MARIANNE DITRANI, an individual, v. LYFT, INC., a Delaware Corporation; and DOES 1 through 50, Inclusive,* filed September 3, 2019 (San Francisco Sup. Ct. Case No. CGC-19-578933);

Defendant Lyft, Inc., a rideshare service. The cases allege that Plaintiffs were Lyft passengers who were sexually assaulted by sexual predators driving for Lyft after Lyft had been on actual notice of ongoing, sexual assaults by its drivers. According to the complaints, Lyft failed to respond to the sexual assaults by adopting and implementing the requisite hiring, monitoring and surveillance systems and procedures.

Plaintiffs have filed a petition to coordinate the Included Cases, and to have the coordinated proceeding heard in San Francisco Superior Court. For the reasons discussed *infra*, the petition for coordination is granted.

---

5. *JANE DOE 1, JANE DOE 2, JANE DOE 3, individually and on behalf of all others similarly situated v. LYFT, INC.; Jason Lamont Fenwick; and DOES 1 through 50, Inclusive*, filed July 24, 2019 (San Luis Obispo Sup. Ct. Case No. 19CV-0434);

6. *JANE DOE 1, an individual, v. LYFT, INC., a Delaware Corporation; and DOES 1 through 50, Inclusive*, filed August 1, 2019 (San Francisco Sup. Ct. Case No. CGC-19-578124);

7. *JANE DOE 2, an individual, v. LYFT, INC., a Delaware Corporation; and DOES 1 through 50, Inclusive*, filed August 1, 2019 (San Francisco Sup. Ct. Case No. CGC-19-578122);

8. *JANE DOE 3, an individual, v. LYFT, INC., a Delaware Corporation; and DOES 1 through 50, Inclusive*, filed August 8, 2019 (San Francisco Sup. Ct. Case No. CGC-19-578278);

9. *JANE DOE 4, an individual, v. LYFT, INC., a Delaware Corporation; and DOES 1 through 50, Inclusive*, filed August 8, 2019 (San Francisco Sup. Ct. Case No. CGC-19-578286);

10. *JANE DOE 5, an individual, v. LYFT, INC., a Delaware Corporation; and DOES 1 through 50, Inclusive*, filed August 30, 2019 (San Francisco Sup. Ct. Case No. CGC-19-578878);

11. *MARY ESPINOSA, an individual, v. LYFT, INC., a Delaware Corporation; and DOES 1 through 50, Inclusive*, filed August 8, 2019 (San Francisco Sup. Ct. Case No. CGC-19-578282);

12. *JENNIFER HARDIN, an individual, v. LYFT, INC., a Delaware Corporation; and DOES 1 through 50, Inclusive*, filed August 8, 2019 (San Francisco Sup. Ct. Case No. CGC-19-578280);

13. *JUSTIN KRAN, an individual, v. LYFT, INC., a Delaware Corporation; and DOES 1 through 50, Inclusive*, filed August 23, 2019 (San Francisco Sup. Ct. Case No. CGC-19-578647);

14. *INDIA MATHESON, an individual, v. LYFT, INC., a Delaware Corporation; and DOES 1 through 50, Inclusive*, filed August 1, 2019 (San Francisco Sup. Ct. Case No. CGC-19-578123); and

15. *STEPHANIE NAN, an individual, v. LYFT, INC., a Delaware Corporation; and DOES 1 through 50, Inclusive*, filed August 23, 2019 (San Francisco Sup. Ct. Case No. CGC-19-578640).

II.

PETITION FOR COORDINATION

1. Complex Determination

Only cases that are "complex" as defined by Judicial Council standards may be coordinated. California Practice Guide, Civil Procedure Before Trial, ¶12:374.5 (The Rutter Group 2019); CCP §404 (stating in pertinent part that "[a] petition for coordination, or a motion for permission to submit a petition, shall be supported by a declaration stating facts showing that the actions are complex, as defined by the Judicial Council and that the actions meet the standards specified in Section 404.1").

"A 'complex case' is an action that requires exceptional judicial management to avoid placing unnecessary burdens on the court or the litigants and to expedite the case, keep costs reasonable, and promote effective decision making by the court, the parties, and counsel." CRC 3.400(a). "In deciding whether an action is a complex case under (a), the court must consider, among other things, whether the action is likely to involve: (1) Numerous pretrial motions raising difficult or novel legal issues that will be time-consuming to resolve; (2) Management of a large number of witnesses or a substantial amount of documentary evidence; (3) Management of a large number of separately represented parties; (4) Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court; or (5) Substantial postjudgment judicial supervision." CRC 3.400(b).

CRC 3.400(c) states that an action is provisionally a complex case if it involves one or more of the following types of claims:

(1) Antitrust or trade regulation claims;

(2) Construction defect claims involving many parties or structures;

(3) Securities claims or investment losses involving many parties;

(4) Environmental or toxic tort claims involving many parties;

(5) Claims involving mass torts;

(6) Claims involving class actions; or

(7) Insurance coverage claims arising out of any of the claims listed in (c)(1) through (c)(6).

Here, the Included Actions are likely to involve numerous pretrial motions raising difficult or novel legal issues that will be time-consuming to resolve. An overriding issue in these cases will be whether the Lyft drivers are independent contractors or employees. This issue will likely require significant time to resolve at trial. Other issues will involve the technological feasibility of implementing additional safety features, causation, and challenges to the basis for vicarious liability for the intentional torts of Lyft drivers. Counsel Cutter Law, representing some of the Plaintiffs in these cases, state that they are aware of twenty-one total cases against Lyft (some of which will be subject to subsequent add-on petitions).

Further, these cases will likely involve a large number of witnesses, including potentially the individual drivers who committed the alleged assaults, the individual Plaintiffs, and officials with Lyft. Counsel Cutter Law also states that there are likely to be thousands of documents, studies, e-mails, and memoranda that are relevant to the claims and defenses in this case (and discovery will inevitably require a complex ESI order that will likely be the subject of significant contention). A complex court is especially equipped with several tools at its disposal to handle such issues, including staying discovery, staying portions of the case, obtaining stipulations that apply to the entire coordinated case, and selecting bellwether plaintiffs.

These factors under CRC 3.400(b) weigh in favor of a finding that the cases are complex.

**2. CRC 3.521 requirements**

CRC 3.521 requires the petition to be supported by a memorandum and declarations showing, *inter alia*, the following:

1) the name of each petitioner or, when the petition is submitted by a presiding or sole judge, the name of each real party in interest, and the name and address of each party's attorney of record, if any (CRC 3.521(a)(1));

2) the names of the parties to all included actions, and the name and address of each party's attorney of record, if any (CRC 3.521(a)(2));

3) whether the party's attorney has served the summons and complaint on all parties in all included actions in which the attorney has appeared (CRC 3.521(a)(3));

4) the complete title and case number, the date the complaint was filed, and the title of the court in which the action is pending (CRC 3.521(a)(4));

5) the complete title and case number of any other action known to the petitioner to be pending in a court of this state that shares a common question of fact or law with the included actions, and a statement of the reasons for not including the other action in the petition for coordination or a statement that the petitioner knows of no other actions sharing a common question of fact or law (CRC 3.521(a)(5));

6) the status of each included action, including the status of any pretrial or discovery motions or orders in that action, if known to petitioner (CRC 3.521(a)(6));

7) the facts relied on to show that each included action meets the coordination standards specified in Code of Civil Procedure section 404.1 (CRC 3.521(a)(7)); and

8) the facts relied on in support of a request that a particular site or sites be selected for a hearing on the petition for coordination. (CRC 3.521(a)(8)).

The petition and the Declaration of Rachel Abrams (counsel at Levin Simes Abrams, LLP, which represents many of the Plaintiffs in this matter) address these factors.

As to Factor 5, counsel Cutter Law anticipates further add-on petitions for similar cases, and is aware of five more related cases that have been filed in the time since that petition was filed.[2]

With respect to Factor 6, counsel represents that no depositions have been taken, nor has any other discovery been conducted.[3] These cases are all newly filed, and there has not been any significant activity as of yet.

Factors 7 (the §404.1 factors) and 8 (venue) are further discussed below.

---

[2] At the January 8, 2020 hearing on the petition, counsel for petitioners represented that there are now over 100 potential add-on cases. See Reporter's Transcript of Proceedings, January 8, 2020 at 2:25-26.

[3] Levine Sims Abrams, LLP Petition at 18:26.

**a. CRC 3.521(a)(7) – satisfaction of CCP §404.1**

CRC 3.521(a)(7) – the factor addressing the facts relied on to show that each included action meets the coordination standards specified in Code of Civil Procedure section 404.1 – is set forth at ¶¶18-26 of the Abrams Declaration in Support of the Petition and at pages 17-19 of the petition.

Substantively, petitions for coordination are generally governed by CCP §404.1, which provides:

> Coordination of civil actions sharing a common question of fact or law is appropriate if one judge hearing all of the actions for all purposes in a selected site or sites will promote the ends of justice taking into account whether the common question of fact or law is predominating and significant to the litigation; the convenience of parties, witnesses, and counsel; the relative development of the actions and the work product of counsel; the efficient utilization of judicial facilities and manpower; the calendar of the courts; the disadvantages of duplicative and inconsistent rulings, orders, or judgments; and, the likelihood of settlement of the actions without further litigation should coordination be denied.

*See also McGhan Med. Corp. v. Sup.Ct. (Hogan)* (1992) 11 Cal.App.4th 804, 812.

**(1) Is there a common question of fact or law predominating and significant to the litigation?**

The first consideration under the §404.1 analysis is whether there is a common question of fact or law predominating and significant to the litigation. Here, as counsel argues, all of these cases will turn on the same factual evidence as to whether Lyft adequately addressed the ongoing sexual assault problem posed by sexual predators while driving for Lyft.[4] According to counsel, the witnesses and documents pertinent to Lyft's hiring practices, Lyft's handling of drivers who act inappropriately, and its driver monitoring and surveillance will be common to every case.[5] Further, counsel states that the legal issues regarding the scope and extent of Lyft's duty to its passengers and the causes of action in each complaint are the same.[6] Based on this, it

---

[4] Petition at 17:25-26.

[5] Petition at 17:26-8:1.

[6] Petition at 18:2-3.

is evident that there are many common questions of fact and law that are predominating and significant to these cases.

Defendant Lyft argues in opposition that each case arises from a different incident of alleged sexual misconduct by a driver, involving a different passenger, and that case-specific facts will predominate.[7] However, in the Court's view, the issues in the coordinated case will not center on the liability of the criminal defendants in the individual cases. To the contrary, the predominating legal and factual issues will examine Lyft's liability for allegedly failing to institute a system to have prevented the assaults in these cases and potential future assaults. The Court agrees with Plaintiffs that this is not a case against the drivers; it is fundamentally a case against Lyft.[8] The best way to address the common allegations and conduct of Defendant Lyft is through coordination.

Defendant Lyft references the ruling denying coordination in the *Massage Envy Franchising Cases,* JCCP No. 4997 (Sup. Ct. Sacramento County, June 24, 2019) in arguing that common questions of fact or law do not predominate. The *Massage Envy* ruling was issued by a state trial court. It therefore has no precedential value. *See Harrott v. County of Kings* (2001) 25 Cal.4th 1138, 1148. Further, citation to trial court rulings from another case could be construed as a violation of CRC 8.1115(a) (stating that, except when relevant to the law of the case doctrine, res judicata, or collateral estoppel, or to certain criminal or disciplinary actions, an unpublished opinion of a California Court of Appeal or superior court appellate division under CRC 8.1115(b) may not be cited or relied on).[9] The Court has therefore not considered the

---

[7] Defendant Lyft's Opposition to Petition at 6:6-11.

[8] Plaintiffs' Reply in Support of Petition at 1:23-24; see also Reporter's Transcript of Proceedings, January 8, 2020 at 4:4-6.

[9] The Court does not find that Defendant has, in fact, violated CRC 8.1115.

*Massage Envy* cases in ruling on the instant petition. For the same reason, the Court denies Defendant Lyft's request for judicial notice of the ruling in the *Massage Envy Franchising Cases*, and sustains the Plaintiffs' objection to the request. *See, e.g., People v. Webster* (1991) 54 Cal.3d 411, 428, fn.4 (Rule of Court prohibiting citation to unpublished opinions cannot be circumvented by request for judicial notice).

**(2) The convenience of parties, witnesses, and counsel**

The Court finds that coordination will promote the efficient use of judicial resources and convenience of all counsel by preventing adjudication of the same or substantially similar motions. It will also avoid duplicative testimony at trial and during depositions.[10] Given that discovery and many witnesses will be the same in these cases, coordination will result in convenience to counsel and the parties. This factor weighs in favor of coordination.

**(3) The relative development of the actions and the work product of counsel; (4) The efficient utilization of judicial facilities and manpower; and (5) The calendar of the courts**

These cases are all relatively new, having been filed within the past few months. It would be efficient to utilize a single courtroom for purposes of coordination, and it would effectively free up several courtrooms from having to decide these issues.

These factors weigh in favor of coordination.

**(6) The disadvantages of duplicative and inconsistent rulings, orders, or judgments**

Given the similarity of the claims alleged against the Lyft drivers (specifically, the issues involving Lyft's liability for failure to investigate those persons hired as Lyft drivers and to prevent future incidents), there is a great risk of duplicative and inconsistent rulings if the cases are not coordinated. Absent coordination, while the individual alleged assaults and circumstances leading to the assaults will be different, various courts would be tasked with deciding the same factual issues on the same types of motions. It would create confusion in the

---

[10] Petition at 18:11-14.

cases and not be in the interest of efficient resolution. It would also hinder the Court of Appeal's ability to hear challenges to inconsistent rulings, orders, and judgments (inevitably causing significant delays).

This factor weighs in favor of coordination.

**(7) The likelihood of settlement of the actions without further litigation should coordination be denied**

Plaintiffs argue that settlement is unlikely absent coordination. As Plaintiffs opine, settlement of one case may not end the litigation of others, leaving Defendants with a continued risk of adverse judgment and substantial litigation costs. It may be more difficult to settle these cases absent coordination for the reasons stated. This factor weighs in favor of coordination.

**Conclusion on §404.1 factors**

For the foregoing reasons, the §404.1 factors warrant an order coordinating these cases.

**b. CRC 3.521(a)(8) – Venue**

Finally, with respect to Factor 8 (venue), CRC 3.530(b) provides that the coordination motion judge may consider any relevant factors in making a recommendation for the site of the coordination proceedings, including the following:

(1) The number of included actions in particular locations;

(2) Whether the litigation is at an advanced stage in a particular court;

(3) The efficient use of court facilities and judicial resources;

(4) The locations of witnesses and evidence;

(5) The convenience of the parties and witnesses;

(6) The parties' principal places of business;

(7) The office locations of counsel for the parties; and

(8) The ease of travel to and availability of accommodations in particular locations.

Most of the Included Cases have been filed in San Francisco Superior Court. Lyft's

corporate headquarters is in San Francisco, as are the majority of corporate witnesses and documents. Levine Simes Abrams, counsel for Plaintiffs, is a San Francisco law firm. San Francisco Superior Court would be easy for the parties to access, and the accommodations in the Bay Area are more than adequate. Further, San Francisco Superior Court uses e-filing, which could potentially save the parties significant sums.

For all of these reasons, consistent with CCP §404.3, the Court recommends and determines San Francisco County to be the appropriate venue for the coordinated matter to be heard. CRC 5.30(a); CCP §404.3.[11]

The Court selects the First Appellate District as the reviewing court with appellate jurisdiction which will promote the ends of justice (the district having jurisdiction over San Francisco County), as determined under CCP §404.1. See CCP §404.2; CRC 3.505(a).

## III.

## RULING AND ORDER

For the foregoing reasons, the petition for coordination is granted. The Court recommends San Francisco County as the appropriate venue for the coordinated matter to be heard. CCP §404.3. The Court selects the First Appellate District as the reviewing court with appellate jurisdiction which will promote the ends of justice (the district having jurisdiction over San Francisco County), as determined under CCP §404.1. See CCP §404.2; CRC 3.505(a).

////

////

---

[11] With that said, the Court acknowledges that there may be challenges to the San Francisco Superior Court handling the volume of cases which may be filed as add-on petitions in the coordinated *Lyft* proceeding. The Los Angeles Superior Court is a suitable alternative forum to litigate the coordinated action, should the Judicial Council make that determination.

The Court's order granting coordination is limited to those Included Cases identified in the petition, as set forth *supra*. The coordination trial judge will consider any add-on petitions.

Dated: January17, 2020

**KENNETH R. FREEMAN**

Kenneth Freeman
Judge of the Superior Court