# EXHIBIT D

BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| *In re: Uber Passenger Sexual*<br>*Assault Litigation* | )<br>)   MDL Docket No. _____<br>)<br>) |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
TRANSFER OF ACTIONS UNDER 28 U.S.C. § 1407 FOR
COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

Under 28 U.S.C. § 1407 and Rule 6.2(e) of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, Plaintiffs A.G., Kathrine Hylin, Taylor Gavin, Cynthia Crawford, E.R., A.M., A.H.M., H.B., C.S., Jillian Sullivan, Elunda Murphy, N.R., S.W., Aundreya Rollo (collectively "Movants")[1] respectfully submit this memorandum of law in support of their petition for transfer and coordination for pretrial purposes of all actions identified in the Schedule of Actions (the "Actions")[2], as well as any cases subsequently filed involving similar facts or claims, to the United States District Court for the Northern District of California.

There are currently at least 22 Uber actions pending in 11 different judicial districts in the United States alleging similar wrongful conduct by Defendants Uber Technologies, Inc., and its wholly owned subsidiary, Rasier, LLC, that resulted in similar injuries. Given the nationwide scope of Defendants' transportation services (and the recent *Forum Non Conveniens* Order in the California Judicial Council Coordination Proceeding No. 5188 ("Uber JCCP")), it is likely that hundreds or

---

[1] Several Plaintiffs filed under pseudonyms to protect their anonymity.
[2] See Exhibit A, Schedule of Actions. The Complaints (without exhibits) in the Actions and their related docket sheets are attached as Exhibits A-1 through A-22.

Page **1** of **18**

thousands of additional actions will soon be filed in jurisdictions throughout the United States. Transfer for consolidation and coordination is proper because each of these actions and tag-along cases arise out of the same or similar nucleus of operative facts and alleged wrongful conduct and will involve substantially similar discovery as the parties work to resolve the same or similar questions of fact and law.

## BACKGROUND

Plaintiffs are rape and sexual assault survivors who were sexually assaulted by Uber drivers who were supposed to safely transport Plaintiffs to their destinations as passengers. Plaintiffs are aware of many such cases yet to be filed.

The cases against Uber are premised on the fact that Uber failed to adequately vet its drivers and failed to take appropriate safety precautions once it had notice that a subset of Uber drivers were sexual predators and were sexually assaulting Uber passengers on a widespread basis. The cases allege that Uber was aware of the problem but nevertheless failed to conduct appropriate background checks, failed to adequately train and supervise its drivers, failed to adequately respond to complaints about predator drivers, failed to adopt safety design changes in the Uber App, and failed to adopt standard safety measures such as video and audio surveillance.

Uber Technologies, Inc. is a worldwide app-based transportation company headquartered in San Francisco, California. Its transportation services are available throughout the entire United States. Rasier, LLC, is a wholly owned subsidiary of Uber. Uber and Raiser are the only defendants. Together, Uber and Rasier operate the Uber App, founded in 2009, that connects customers to an Uber

driver. Uber markets itself as a safe company that provides safe rides. But by 2014, Uber knew that its drivers were physically or sexually assaulting and raping female passengers. In 2014, Uber implemented a "Safe Rides Fee," representing that it would support background checks for drivers, among other safety enhancements to the App.[3] Uber collected those fees. Unlike other ride fees, Uber did not share the safety fee with its drivers.[4]

Worse, Uber did not use the safety fees to enhance safety for its passengers.[5] Instead, with profit its priority, Uber continued to hire drivers based on cursory background checks that put passengers in greater danger.[6] Uber also declined to implement any meaningful safety policies, such as installing video cameras in cars, allowing passengers to request a female driver, or training drivers on issues of sexual assault and harassment, to address the dangers female Uber riders face. As a result, Plaintiffs—and thousands of others—have suffered sexual harassment, assault, and rape at the hands of Uber drivers.

In 2019, Uber publicly acknowledged the sexual-assault crisis occurring in its company.[7] The 2019 report revealed that 5,981 sexual assaults occurred during Uber

---

[3] Uber, *What is the Safe Rides Fee*, (available at https://web.archive.org/web/20148420053019/http://support.uber.com/hc/en-us/articles/201950566) (last accessed July 13, 2023).

[4] Mike Isaac, SUPER PUMPED: THE BATTLE FOR UBER 136 (2019) ("The drivers, of course, got no share of the extra buck.").

[5] *Id.*

[6] *Id.* at 218.

[7] Uber, 2017–2018 US Safety Report (Dec. 5, 2019) (available at https://www.uber-assets.com/image/upload/v1575580686/Documents/Safety/UberUSSafetyReport_201718_FullReport.pdf?uclick_id=86493dbc-ce4e-4ecb-a3f1-e7515e4390d7) (last accessed July 13, 2023).

trips in 2017 and 2018.[8] Uber released another safety report in 2022 that revealed 3,824 sexual assaults during Uber trips in 2019 and 2020.[9] Female passengers continue to suffer harm at the hands of Uber and its drivers.

These cases against Uber have overlapping legal issues such as common carrier liability, vicarious liability, the scope of Uber's duty to its passengers, the scope of Uber's duty to supervise drivers (whom it characterizes as "contractors"), and the impact of its representations that it provides a "safe ride" home, as well as other legal issues common to the Uber sexual assault cases. In this context, judicial coordination will enable one judge to manage all of these federal cases more effectively and efficiently by, among other things, supervising case-specific and corporate discovery, establishing a bellwether trial process, and issuing consistent rulings across the board on the numerous common legal issues that must be addressed. On the other hand, the alternative — requiring piecemeal litigation of hundreds of trial cases in multiple courtrooms — will inevitably place an undue burden on the courts, the public, the litigants, and could result in a patchwork of inconsistent results.

### BACKGROUND OF THE UBER JCCP

On December 9, 2021, the Uber JCCP was established, and the Honorable Judge Ethan P. Schulman of the San Francisco Superior Court was assigned to be the presiding judge. Because Uber's principal place of business is in San Francisco,

---

[8] *Id.*

[9] Uber, US Safety Report 2019–2020 (June 30, 2022) (available at https://uber.app.box.com/s/vkx4zgwy6sxx2t2618520xt35rix022h?uclick_id=86493dbc-ce4e-4ecb-a3f1-e7515e4390d7) (last accessed July 13, 2023).

Page **4** of **18**

the JCCP included all California-filed cases, regardless of whether the Plaintiff resided or was injured by an Uber driver in California. On October 7, 2022, Uber moved to exclude all non-California residents from litigating in the JCCP on *Forum Non Conveniens* grounds. On January 23, 2023, Judge Schulman ruled in Uber's favor, excluding all non-California residents and California residents who were injured outside of the state, from seeking justice against Uber in California state court.[10] All non-California residents were given 180 days to refile their cases in other jurisdictions without time-barring consequences (which allows until August 27, 2023, to refile).[11] Subsequently, numerous Plaintiffs, like Movants, have sought recourse by filing their cases in federal district courts across the country.

**ARGUMENT**

**A. Transfer and coordination of the Actions is appropriate and necessary.**

Multidistrict litigation is designed "to 'promote the just and efficient conduct' of 'civil actions involving one or more common questions of fact' that are pending in different districts." *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1229 (9th Cir. 2006) (quoting 28 U.S.C. § 1407(a)). Transfer is appropriate where it will serve "the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407.

---

[10] *See In re Uber Rideshare Litigation*, JCCP No. 5188, January 23, 2023, Order on Uber's FNC Motion.
[11] *See In re Uber Rideshare Litigation*, JCCP No. 5188, February 28, 2023, Order Re: Application of January 23, 2023, FNC Order.

Upon receiving a motion to transfer, the Panel "analyzes each group of cases in light of the statutory criteria and the primary purposes of the MDL process to determine whether transfer is appropriate." *In re PPA Prods. Liab. Litig.*, 460 F.3d at 1230. Four factors help determine whether transfer will facilitate the convenience of the parties and promote the just and efficient conduct of the transferred case: (1) elimination of duplicative discovery; (2) avoidance of conflicting rulings and schedules; (3) reduction of litigation costs; (4) conservation of the time and effort of the parties, attorneys, witnesses, and courts. Manual for Complex Litigation (Fourth), § 20.131, at 219. To that end, centralization is appropriate to eliminate duplicative discovery, prevent inconsistent rulings, and conserve the resources of the parties, their counsel, and the judiciary. *See, e.g., In re Proven Networks, LLC, Pat. Litig.*, 492 F. Supp. 3d 1338, 1340 (J.P.M.L. 2020) (noting those factors in ordering consolidation).

Transfer is appropriate here because the Actions share common issues of fact and law and are in the early stages of litigation. To Plaintiffs' knowledge, Initial Case Management Conferences have yet to occur in any of the cases listed in the Schedule of Actions filed herewith. Further, there are motions filed in numerous cases, and stipulations to extend deadlines, including briefing schedules for proposed motions, that have been entered.[12] Uber has itself filed Declarations in Support of its motions to extend time for filings that acknowledge:

> 1. **Counsel for Plaintiff and Defendants are engaged in active litigation with regard to several matters**

---

[12] *See* Exhibit B, Case Briefing and Extensions Chart.

Page **6** of **18**

> **recently filed in the Northern District of California and other United States District Courts throughout the country.**
>
> 2. Defendants intend to bring a Motion to Transfer Venue and a Motion to Dismiss in the instant matter. **To avoid burdening the Court with unnecessary motions, to promote judicial efficiency, and to provide for the orderly resolution of the case**, the parties agree that the Court's resolution of Defendants' Motion to Transfer Venue is a threshold issue that should be decided prior to Defendants' Motion to Dismiss. As a result, the parties agree that Defendants shall file a Motion to Transfer Venue on or before July 21, 2023. Additionally, the parties have sought to litigate the instant matter in good faith, including by way of agreeing to reasonable extensions of time where possible, **to ensure that no undue burden falls on the parties, their attorneys, or the Court.** (Emphasis added).[13]

Accordingly, consolidated proceedings will streamline discovery, avoid inconsistent pretrial rulings, and preserve judicial and party resources.

### 1. The Actions share common questions of fact and law that merit transfer and consolidation.

The threshold requirement of Section 1407 is that there be questions of fact and law common to the cases for which MDL treatment is sought. Commonalities in factual and legal questions need not be complete, nor even the majority, to merit transfer. *In re Katz Interactive Call Processing Pat. Litig.*, 481 F. Supp. 2d 1353, 1355 (J.P.M.L. 2007). "[I]ndividualized factual issues" do not "negate the efficiencies to be

---

[13] *See* Declaration of Paul A. Alarcon in Support of *Amended* Stipulation Re: Motion to Transfer Briefing Schedule, Extension of Time for Defendants to Bring a Motion to Dismiss, and Continuance of Case Management Conference and Related Deadlines, filed in *Taylor Gavin. v. Uber Technologies, Inc., et al.*, Case No. 3:23-cv-02111-AMO.

gained by centralization." *In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1379 (J.P.M.L. 2017).

The Actions here share sufficient common factual and legal questions. The claims in each of those actions arise from the same course of conduct by the defendants. Among the numerous common questions of fact are:

- Uber's knowledge that its drivers have been sexually harassing, assaulting, and raping its passengers;

- Uber's failure to adopt or improve its safety procedures and policies;

- Uber's failure to require sexual harassment or assault training for its drivers;

- Uber's failure to conduct adequate background checks before hiring its drivers and otherwise failing to ensure that its drivers were fit to drive vulnerable passengers;

- Uber's failure to implement safety features into its app;

- Uber's failure to address passengers' reports of sexual harassment, assault, and rape by Uber drivers;

- Uber's failure to terminate drivers who assaulted passengers or were unfit to perform their duties;

- Uber's marketing tactics and failure to warn passengers of the risks of being sexually assaulted, harassed, or otherwise attacked by an Uber driver;

- Uber's status as a common carrier; and

- Uber's false statements indicating that would provide safe rides to vulnerable passengers.

Given that these common issues exist in each related case, which Uber acknowledges in the Alarcon Declaration quoted above, MDL treatment is appropriate.

### 2. Transfer will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the Actions.

Transfer and consolidation of similar actions is appropriate when it would enhance the convenience of the litigation and promote the just and efficient conduct of the actions to be coordinated. Here, pretrial coordination of the Actions will ease the burdens on the parties and the judicial system. All of the Actions are in their early stages. Defendants have filed motions to change venue and motions to dismiss in the majority of the Actions. To alleviate the parties' burden, stipulations to adjust briefing schedules for these motions are being requested as more and more cases are being filed. To the best of the undersigned's knowledge, no discovery has occurred in any of the Actions. The first action filed by Movants, *Hylin v. Uber Technologies, Inc., et al.* (Case No. 3:23-cv-01630), was filed in the Northern District of California, where Uber maintains its principal place of business, approximately three months ago. Now is the optimal time for coordination, for the convenience of the parties and witnesses and to ensure a just and efficient resolution of the Actions and similar cases yet to be filed. Consolidation by this Panel will avoid the waste of duplicative discovery and the risk of inconsistent rulings and will result in conservation of judicial and party resources. Taken collectively, these factors establish that the Actions are appropriate for coordination under 28 U.S.C. § 1407.

#### a. Transfer will eliminate duplicative discovery.

Pretrial transfer will reduce the burden and costs of discovery significantly for both the parties to the Actions and the judiciary. The pending actions share the same basic theory of liability and underlying factual allegations and injuries, such that all

cases will involve the same core discovery, fact witnesses, and general liability and causation experts. MDL treatment will enable a single court to establish a pretrial plan that will minimize the inconvenience and expenses of duplicative discovery, which is precisely the purpose of transfer and coordination under Section 1407.

Consolidation also will permit Plaintiffs' counsel to coordinate efforts and share the pretrial workload among the various Plaintiffs' counsel. Instead of different law firms pursuing different litigation strategies and engaging in duplicative discovery and motion practice, a coordinated team of attorneys can pursue the claims in one court, before one judge, preserving Plaintiffs' resources and allowing their attorneys to work together in common to further these cases. The Panel has previously endorsed this rationale, noting that "prudent counsel will combine their forces and apportion the workload in order to streamline the efforts of the parties and witnesses, their counsel and the judiciary, thereby effectuating an overall savings of case and a minimum of inconvenience to all concerned." *In re Baldwin-United Corp. Litig.*, 581 F. Supp. 739, 741 (J.P.M.L. 1984).

Pretrial centralization will also allow Defendants to concentrate their attention and discovery efforts in one federal forum, rather than numerous district courts throughout the country. As a result, Plaintiffs anticipate that Defendants will be able to move quickly and effectively through discovery, enhancing the overall efficiency of the litigation. *See In re Apple iPhone 3G Prod. Liab. Litig.*, 630 F. Supp. 2d 1382, 1383 (J.P.M.L. 2009) (noting efficiency obtained through MDL process). Rather than conducting general discovery in 22 different actions in at least 11

different district courts, written discovery and depositions of key witnesses can be coordinated and completed just once. This ability to streamline the work of discovery and coordinate efforts among counsel will serve the interests of justice.

Further, discovery has yet to begin in the California JCCP, as the court there only recently ruled on Uber's *Forum Non Conveniens* motion and its motions to dismiss and strike causes of action in Plaintiffs' Master Complaint. The next Case Management Conference in the JCCP is August 18, 2023, and there are currently no discovery orders, bellwether selection process, or trials set. Therefore, it would be impeccable timing for establishing an MDL now, as the opportunity remains to comprehensively coordinate discovery between the JCCP and an MDL, through liaison counsel appointed by both the JCCP and MDL, to facilitate cohesiveness between federal and state coordinated proceedings.

### b. Transfer will avoid inconsistent pretrial rulings.

A single centralized and coordinated pretrial plan will also further fairness and efficiency by avoiding inconsistent pretrial rulings. *See In re Levaquin Prods. Liab. Litig.*, 560 F. Supp. 2d 1384, 1385 (J.P.M.L. 2008). There are already 22 related cases pending in 11 district courts involving multiple different Plaintiffs' counsel, with many more to come. As discussed above, numerous identical motions have been filed (or are anticipated to be filed), including several pending before different judges in the same district court. Inconsistent rulings are inevitable as these various courts set discovery and trial schedules and tackle individual motions. Transfer and consolidation will avoid this serious risk.

**c.** **Transfer will reduce litigation costs and save the resources of the parties, attorneys, witnesses, and courts.**

MDL treatment will enable a single court to establish a pretrial plan that will minimize the inconvenience and expenses of litigating numerous cases separately, which is precisely the purpose of transfer and coordination under Section 1407. Transferring the Actions for pretrial coordination will make this litigation far more efficient and convenient for all involved. One court overseeing these actions will allow the judiciary to conserve limited resources. If transfer is denied, however, the Actions and tag-along cases will proceed on independent tracks in at least 11 different courts, requiring duplicative discovery, including repeated depositions of the same corporate personnel and expert witnesses, risking inconsistent rulings and wasting resources.

**B.** **The Northern District of California is the most suitable forum for this MDL.**

Should the Panel agree that transfer of the Actions is proper, it should centralize these cases in the United States District Court for the Northern District of California. Although there are numerous judges in that district who are qualified to handle this MDL, including several who have presided over past or current MDLs, the Honorable Charles R. Breyer is well-qualified and has presided over numerous MDLs, such as this one.

Once it is determined that centralization is appropriate, the Panel determines the most suitable forum to do so. Manual for Complex Litigation (Fourth), § 22.33, pp. 366–67. Factors to guide the selection of the most appropriate forum include: (1) the location of parties, witnesses, and documents; (2) the accessibility of the proposed transferee district to parties and witnesses; and (3) the respective caseloads

of the proposed transferee district courts. *See In re Corn Derivatives Antitrust Litig.*, 486 F. Supp. 929, 931–32 (J.P.M.L. 1980) (discussing factors); *see also* Manual for Complex Litigation (Fourth), § 20.131, pp. 220–21. A forum that satisfies these factors and that already has pending cases is favorable. *Id.* at § 22.33, pp. 366–67. The Panel also looks for a forum that "i) is not currently overtaxed with other multidistrict dockets, and ii) possesses the resources and expertise to be able to devote the time and effort to pretrial matters that this docket is likely to require." *In re Gator Corp. Software Trademark & Copyright Litig.*, 259 F. Supp. 2d 1378, 1380 (J.P.M.L. 2003).

The United States District Court for the Northern District of California is well-versed in multidistrict litigation and has many distinguished judges capable of managing this MDL. The Northern District of California is not overtaxed with other MDL cases. At the time of filing this motion, there are 17 active MDLs pending in the district spread among the 21 district judges.[14] Two of those MDLs (*In re: Roundup Products Liability Litigation* (MDL 2741) and *In re: Juul Labs, Inc., Marketing, Sales Practices, and Products Liability Litigation* (MDL 2913)) are mature with partial or full settlements having been executed in both. There is currently one additional potential tag-along action filed in the Northern District of California- *Jane Doe LSA 340 v. Uber Technologies, Inc., et al.*, (Case No. 3:23-cv-01165-AMO).

---

[14] Active MDLs in the Northern District - file:///Users/rachel/Downloads/Pending_MDL_Dockets_By_District-June-15-2023.pdf (updated as of June 15, 2023).

In addition, the Northern District of California is adept at managing its docket and handling MDL litigation and is not overtaxed. In 2022, the district had 9,066 cases filed and terminated 7,823; it has 13,114 pending cases as of the end of last year.[15]

The Clerk's office is well-prepared to capably handle the administrative aspects of this matter upon consolidation given the experience of the district's jurists. Finally, the district is home to the greatest number of related cases with 9 pending cases at the time of this filing.[16]

Transferring the Actions to the Northern District of California would best serve the purposes of 28 U.S.C. § 1407. At this point, there is no single jurisdiction where the litigation is significantly further advanced than another. Given that fact, the Northern District of California is a suitable forum for the pretrial proceedings of the litigation.

In terms of convenience of the parties, the Northern District of California is the most appropriate forum. Defendants' headquarters are in San Francisco, California. The Uber JCCP is being litigated in the San Francisco Superior Court, just minutes from the United States District Court for the Northern District of California. As Defendants' homebase, the Northern District of California is a convenient forum for Defendants and their witnesses. The United States District

---

[15] Table C-1 U.S. District Courts Civil Cases Commenced, Terminated, and Pending by Jurisdiction During the 12-Month Period Ending December 31, 2022 (available at Table C-1—U.S. District Courts–Civil Statistical Tables For The Federal Judiciary (December 31, 2022) | United States Courts (uscourts.gov)) (last accessed July 13, 2023).

[16] See Exhibit A, Schedule of Actions

Court for the Northern District of California also has a strong, vested interest in regulating one of the largest companies in the state. Uber chose California as its home jurisdiction. California had over 200,000 Uber drivers on the road in 2020.[17] California is a leader in addressing sexual assault and most Californians find safety measures to protect individuals from sexual assault to be a high priority.[18]

The United States District Court for the Northern District of California is also easily accessible. Centered around the San Francisco Bay area, the Northern District of California is a convenient forum for all parties and witnesses. The Bay Area has multiple large airports and other convenient modes of transportation. *See In re Worldcom, Inc., Sec. & ERISA Litig.*, 226 F. Supp. 2d 1352, 1355 (J.P.M.L. 2002) (noting the conveniences of a metropolitan area with major airline service, hotel, and office accommodations).

Offering convenience and accessibility, minimal docket congestion, and substantial experience with MDLs, consolidation of these actions to the United States District Court for the Northern District of California will serve all parties. Accordingly, the Northern District of California will uniquely serve the "just and efficient conduct of these actions." 28 U.S.C. § 1407(a).

---

[17] Alison Stein, *Analysis on Impacts of Driver Reclassification*, Uber Newsroom (May 28, 2020) https://medium.com/uber-under-the-hood/analysis-on-impacts-of-driver-reclassification-2f2639a7f902 (last accessed July 13, 2023).

[18] *See e.g.*, Samantha Solomon, *New California Law Expands Statute Of Limitations For Sexual Assault Survivors*, ABC10 News (December 20, 2018) California's new sexual assault law on statute of limitations, explained | abc10.com (last accessed July 13, 2023).

**C. The Honorable Judge Charles R. Breyer should preside over this consolidated litigation because of his distinguished experience in managing MDLs.**

The Honorable Judge Charles R. Breyer is eminently qualified to handle the complexity of this MDL. He is the presiding Judge in Plaintiff A.G.'s case.

The experience and knowledge of a particular judge is a third important factor that may be considered in determining the best transferee forum. *See, e.g.*, *In re "Factor VIII or IX Concentrate Blood Prods." Prod. Liab. Litig.*, 853 F. Supp. 454, 455 (J.P.M.L. 1993).

Judge Breyer has presided over numerous complex litigations, including several MDLs. Judge Breyer is one of the most qualified and experienced MDL judges in the country, having presided over 12 MDLs during his prestigious judicial tenure. Judge Breyer has tremendous insight on multidistrict litigations, which will without doubt benefit the parties. He currently presides over two MDLs,[19] one of which is currently in settlement. Judge Breyer's docket allows for an MDL such as this one.

**D. In the alternative, the Honorable Judge Araceli Martínez-Olguín should preside over this consolidated litigation because of her background and distinctive qualifications.**

The Honorable Judge Araceli Martínez-Olguín was assigned to the first currently active filed case, *Jane Doe LSA 340 v. Uber Technologies, Inc., et al.*, (Case No. 3:23-cv-01165-AMO), as well as subsequently filed cases by Movants, *Hylin v. Uber Technologies, Inc., et al.* (Case No. 3:23-cv-01630-AMO), and *Gavin v. Uber*

---

[19] *In Re: Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.* (MDL No. 2672) and *In Re: McKinsey & Co., Inc., Nat'l Prescription Opiate Consultant Litig.* (MDL No. 2996).

*Technologies, Inc., et al.* (Case No. 3:23-cv-02111-AMO). Judge Araceli Martínez-Olguín is well-suited to handle the complexity of an MDL and would bring a distinctive background to this complex litigation.

Judge Martínez-Olguín has worked for the National Immigration Law Center since 2018. Previously, she served as the managing attorney for the Immigrants' Rights Project, Community Legal Services in East Palo Alto, in East Palo Alto, California, from 2017 to 2018, and as an attorney for the U.S. Department of Education's Office of Civil Rights from 2016 to 2017. Judge Martínez Olguín also worked as a senior staff attorney, staff attorney, and Women's Rights Project Fellow for the American Civil Liberties Union in San Francisco and New York, from 2013 to 2015 and from 2006 to 2010, respectively. She was a staff attorney for Legal Aid at Work (formerly Legal Aid Society – Employment Law Center) from 2010 to 2013.[20] Judge Martínez Olguín's vast background and foundation would be ideal for an MDL such as this one.

In the alternative, one of the other numerous, well-qualified Judges in the Northern District of California should preside over this consolidated litigation.

## Conclusion

For the foregoing reasons, Plaintiffs respectfully requests that the Panel transfer the Actions to the Northern District of California for coordinated or consolidated pretrial proceedings under 28 U.S.C. § 1407 before the Honorable

---

[20] chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://cdn.ca9.uscourts.gov/datastore/ce9/2023/Martinez_Olguin_CAN_Confirmed.pdf

Charles Breyer or the Honorable Judge Araceli Martínez-Olguín. In the alternative, the Panel should transfer the Actions to one of the other numerous, well-qualified judges in the Northern District of California.

Dated: July 14, 2023

Respectfully submitted,

*/s/ Rachel Abrams*
**Rachel Abrams, Esq.**
**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: 415.766.3545
Facsimile: 415.402.0058
Email: rabrams@peifferwolf.com

*Counsel for Kathrine Hylin, Taylor Gavin, Cynthia Crawford, E.R., A.G., A.M., A.H.M., H.B., C.S., Jillian Sullivan, Elunda Murphy, N.R., S.W., Aundreya Rollo*