RANDALL S. LUSKEY (SBN: 240915)
    rluskey@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101

ROBERT ATKINS (*Pro Hac Vice forthcoming*)
    ratkins@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3183
Facsimile: (212) 492-0183

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.; RASIER, LLC;
RASIER-CA, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| LS 134, an individual,<br><br>                    Plaintiff,<br><br>         v.<br><br>UBER TECHNOLOGIES, INC.,<br>a Delaware Corporation; RASIER, LLC,<br>a Delaware Limited Liability Company;<br>RASIER-CA, LLC, a Delaware Limited<br>Liability Company; and DOES 1 through<br>50, Inclusive.<br><br>                    Defendants. | Case No. 4:23-cv-03811-JSW<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC. RASIER, LLC, AND RASIER-CA, LLC'S REPLY IN SUPPORT OF MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF ILLINOIS**<br><br>Date:   December 1, 2023<br>Time:  9:00 a.m.<br>Courtroom:  5 – 2nd Floor<br><br>Action Filed:   July 31, 2023<br>Trial Date:     None Set |

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...........................................................................................................................2

I.     Plaintiff's Second Bite At the Apple Should Be Rejected.......................................2

II.    Plaintiff's Choice of Forum Is Entitled Only Minimal Deference Because Plaintiff Is Not A California Resident And This Case Is Not Connected To This District. ...........................................................................................................4

III.   The Private Interest Factors Favor Transfer. ........................................................5

      A.    This is a Case About Sexual Assault Not Corporate Misconduct. .........5

      B.    Plaintiff Has Failed to Rebut Uber's Showing that Evidence Is Likely in Illinois.......................................................................................6

      C.    Uber Is Not Centralized In California: Relevant Witnesses Exist Outside California and In Illinois. ..........................................................7

      D.    The Location of A Company's Headquarters Is Not Dispositive As To Transfer.............................................................................................9

      E.    Uber Cannot Implead The Accused Driver In This District. .................11

IV.   Illinois's Public Interest In This Action Is Greater Than California's.............................12

V.    The MDL Petition Does Not Make Transfer Any Less Appropriate.................................14

CONCLUSION.........................................................................................................................15

- i -

DEFENDANTS UBER TECHNOLOGIES, INC. RASIER, LLC, AND     CASE NO. 4:23-cv-03811-JSW
RASIER-CA, LLC'S REPLY IN SUPPORT OF MOTION TO TRANSFER

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Blankenship* v. *Medtronic, Inc.*,
2013 WL 3322031 (C.D. Cal. June 7, 2013) ...................................................................6

*Brice* v. *Cal. Faculty Ass'n*,
2019 WL 2053586 (E.D. Cal. May 9, 2019) .................................................................10

*Doe* v. *Lyft, Inc.*,
176 N.E.3d 863 (Ill. App. Ct. 2020) ...........................................................................13

*Freeman* v. *Apple*,
2023 WL 5110926 (N.D. Cal. Aug. 9, 2023) .................................................................9

*In re: Gerber Probiotic Prod. Mktg. & Sales Pracs. Litig.*,
899 F. Supp. 2d 1378 (J.P.M.L. 2012).........................................................................14

*Gilmore-Webster* v. *Bayou City Homebuyers Inc.*,
2019 WL 1100492 (N.D. Cal. Mar. 8, 2019).................................................................13

*Gorne & Walker* v. *Uber Techs., Inc.*,
CGC-19-575852 (S.F. Super. Ct. July 1, 2019)........................................................7, 12

*Jaco Envtl. Inc.* v. *Appliance Recycling Cntrs. of Am., Inc.*,
2007 WL 951274 (N.D. Cal. Mar. 27, 2007)..................................................................4

*Jane Doe* v. *Uber Techs., Inc.*,
2017 WL 2352032 (N.D. Cal. May 17, 2017)......................................................4, 5, 6, 7, 13

*Jane Doe* v. *Uber Techs., Inc.*,
CGC- 19-579901 (S.F. Super. Ct. Mar. 24, 2020)....................................................7

*Jane Doe* v. *Uber Techs., Inc.*,
CGC-17-556481 (S.F. Super. Ct. Aug. 11, 2017)....................................................7

*Kawamura* v. *Boyd Gaming Corp.*,
2012 WL 6047728 (D. Haw. Dec. 5, 2012)................................................................12

*Lapachet* v. *Cal. Forensic Med. Grp.*,
2017 WL 3917209 (N.D. Cal. Sept. 7, 2017) .........................................................10, 11

*Perry* v. *Dep't of Fin. and Prof. Regul.*,
106 N.E.3d 1016 (Ill. 2018).........................................................................................13

*Piper Aircraft* v. *Reyno*,
454 U.S. 235 (1981)....................................................................................................11

- ii -

*Rycz* v. *Superior Ct. of S.F. Cnty.*,
   81 Cal. App. 5th 824 (2022) ...................................................................................7

*Tavel* v. *Riddle*,
   2021 WL 1121120 (N.D. Ill. Mar. 24, 2021).......................................................11

*In Re: Uber Rideshare Cases*,
   CGC-21-005188 (Jan. 23, 2023)....................................................................3, 5, 7

*Van Mourik* v. *Big Heart Pet Brands, Inc.*,
   2018 WL 3549122 (N.D. Cal. July 24, 2018).........................................................9

*Vu* v. *Ortho-McNeil Pharm., Inc.*,
   602 F. Supp. 2d 1151 ........................................................................................5, 13

*Williams* v. *Bowman*,
   157 F. Supp. 2d 1103 (N.D. Cal. 2001) .................................................................4

*Yi* v. *Uber Techs., Inc.*,
   2018 WL 5013568 (N.D. Ill. Oct. 15, 2018).........................................................11

**Statutes**

28 U.S.C. § 1404(a) ....................................................................................... *passim*

28 U.S.C. § 1407.........................................................................................2, 14

625 Ill. Comp. Stat. Ann 57/15................................................................................13

625 Ill. Comp. Stat. Ann. 57/25...............................................................................13

**Other Authorities**

Internal Revenue Service, Form 990 filed by the No More Foundation for Fiscal
   Year 2019, https://apps.
   irs.gov/pub/epostcard/cor/833491251_201912_990_2021033117845022.pdf
   (Nov. 13, 2020) (last visited Sept. 29, 2023) ...........................................................9

*LSA 134* v. *Uber Techs., Inc. et al.*,
   Complaint, CGC-21-594130 (S.F Super. Ct. July 29, 2021) ..................................2

*Lapachet* v. *Cal. Forensic Med. Grp.*,
   Complaint, No. 16-cv-06959-HSG, Dkt. No. 1 (Dec. 2, 2016)................................11

Mothers Against Drunk Driving, https://madd.org/ contact-us/ (last visited Sept.
   29, 2023) (last visited Sept. 28, 2023) .....................................................................9

NSVRC, https://www.nsvrc.org/contact (last visited Sept. 29, 2023)...........................9

RAINN, Form 990 filed by RAINN for Fiscal Year 2022,
https://www.rainn.org/sites/default/files/990%20FY22%20RAINN%20Public
%20Version.pdf (Nov. 29, 2022) (last visited Sept. 29, 2023)..................................................9

RALIANCE, https://www.raliance.org/about-us/ (last visited Sept. 28, 2023)..............................9

UBER, U.S. SAFETY REPORT 6–7, 9, 13–14 (2017-2018) 6–7, 9, 13–14 (2017-
2018), https://www.uber-
assets.com/image/upload/v1575580686/Documents/Sa
fety/UberUSSafetyReport_201718_FullReport.pdf?uclick_id=8888245a-
0834-4985-9c26-1bed1ab3c8dd ............................................................................................9

Urban Institute, https://www.urban.org/about/contact-us (last visited Sept. 28,
2023) ......................................................................................................................................9

DEFENDANTS UBER TECHNOLOGIES, INC. RASIER, LLC, AND        CASE NO. 4:23-cv-03811-JSW
RASIER-CA, LLC'S REPLY IN SUPPORT OF MOTION TO TRANSFER

1

**<u>PRELIMINARY STATEMENT</u>**

2   This Motion[1] should be granted because (1) Plaintiff does not dispute that this case could

3   have been brought in Illinois, and (2) most of her arguments for proceeding in California were

4   considered and rejected by other courts in granting previous forum motions brought by Uber,

5   including a *forum non conveniens* decision applicable to Plaintiff's own case.  In other actions

6   brought against Uber arising from alleged assaults by independent drivers, California state and

7   federal courts have consistently held that the state where the alleged assault occurred is best suited

8   to adjudicate claims arising from that alleged assault.  Plaintiff's opposition offers nothing to

9   compel a different result here.

10   The facts warranting transfer are largely uncontested.  Plaintiff is not a California resident

11   and thus her choice of forum is entitled to minimal deference.  That minimal deference does not

12   and cannot outweigh the many factors that favor transfer to the Northern District of Illinois

13   pursuant to 28 U.S.C. § 1404(a).  Despite the opportunity to do so, Plaintiff has not disputed that

14   some - - if not most - - witnesses to the alleged assault and Plaintiff's injuries reside where the

15   alleged incident occurred, in Illinois.  While Plaintiff criticizes Uber for not conclusively tying

16   specific witnesses to the State of Illinois - - including the accused independent driver against whom

17   Uber intends to file a cross-complaint - - the only reason Uber has been unable to do so is because

18   the allegations in the Complaint are too bare for Uber to even identify the ride in question.  Plaintiff

19   cannot blame Uber for her tactical choice to omit key details from her pleading.  Moreover,

20   Plaintiff has offered no countervailing evidence to suggest that such witnesses do *not* reside in

21   Illinois.

22   With regard to Uber witnesses, Plaintiff makes a purely volume-based argument that the

23   level of employees in a particular office dictates this forum dispute without any citations to law

24   and where the totality of evidence that will be essential to the case at hand likely rests in Illinois.

25   What matters is not, as Plaintiff suggests, the number of employees Uber has in California, but

26   rather the location of Uber employees relevant to this litigation.  And many of the Uber witnesses

27   relevant to the topics identified by Plaintiff in her opposition are located outside California - -

28

---

[1] All defined terms used in Defendants' Motion to Transfer Venue, Dkt. 20, are used here.

DEFENDANTS UBER TECHNOLOGIES, INC. RASIER, LLC, AND        CASE NO. 4:23-cv-03811-JSW
RASIER-CA, LLC'S REPLY IN SUPPORT OF MOTION TO TRANSFER

including some in Illinois.  This demonstrates that Uber is not centralized in California.  Rather, Uber has operations in numerous other states, including Illinois, and Uber's decision-making takes place across those states.  Likewise, there is no dispute that Uber is governed by a patchwork of different state and local laws and regulations specific TNCs, including those of Illinois.  There is no doubt that Illinois lawmakers and jurors have a greater interest than California in a case arising from injuries inflicted in Illinois, likely caused by an Illinois assailant, and which will require the application of Illinois laws and regulations.

Plaintiff's opposition confirms that this action was brought in the Northern District of California solely because Uber maintains a headquarters in the Bay Area.  But the law is clear that the location of a defendant's corporate headquarters is not necessarily the forum that is most convenient to the parties and witnesses or the one that best serves the interests of justice.  Such is the case here, where Illinois clearly has the greater interest in adjudicating *LSA 134*'s claims under both the private and public factors.

Finally, that this case has been noticed as a related action to a proposed multidistrict litigation ("MDL") does not change the outcome.  Even if the MDL petition were ultimately granted, and even if the MDL were assigned to a judge in the Northern District of California - - neither of which is a foregone conclusion - - transferring this case to the Northern District of Illinois under § 1404(a) would not waste judicial resources.  To the contrary, it will resolve the inevitable question of where this case belongs for trial.  The statute permitting transfer to an MDL under 28 U.S.C. § 1407 is meant only to centralize cases for pretrial proceedings.  Regardless of whether the case is centralized in an MDL, it will need to be tried in its home district.  And for the reasons set forth here and in Uber's opening brief, the Northern District of Illinois is the more appropriate home district, and the pendency of an MDL petition is no basis to delay adjudication of that question.

## ARGUMENT

### I.    Plaintiff's Second Bite At the Apple Should Be Rejected

Plaintiff first filed these claims against Uber in California state court ("Plaintiff's State Court Case").  Complaint, *LSA 134* v. *Uber Techs., Inc. et al.*, CGC-21-594130 (S.F. Super. Ct.

DEFENDANTS UBER TECHNOLOGIES, INC. RASIER, LLC, AND                    CASE NO. 4:23-cv-03811-JSW
RASIER-CA, LLC'S REPLY IN SUPPORT OF MOTION TO TRANSFER

July 29, 2021) (Declaration of Randall Luskey in Support of Reply ("Luskey Reply Declaration") Ex. 1; Request for Judicial Notice in Support of Reply ("Reply RJN") ¶ 1).  Plaintiff's State Court Case was then was coordinated with other California state court cases brought against Uber for the alleged sexual misconduct of independent drivers (the "Uber JCCP").  Pl. Ex. A; April 12, 2022 Order Re Coordination To JCCP, Ex. A at 5, *In Re: Uber Rideshare Cases*, CJC-21-005188 (Luskey Reply Decl. Ex. 2; Reply RJN ¶ 2).

As discussed in Uber's opening brief, and all but ignored in Plaintiff's opposition, the judge presiding over the Uber JCCP granted *forum non conveniens* relief to Uber in two of the coordinated cases, both, as here, involving out-of-state incidents.  Motion at 4-5 (citing Order on Uber's Motions to Stay or Dismiss Based on *Forum Non Conveniens*, *In re Uber Rideshare Cases*, Case No. CJC-21-005188 (Jan. 23, 2023) (the "California Action") (Luskey Decl. Ex. 1; RJN ¶ 1).  The Court, after balancing the public and private factors, concluded that the cases should be adjudicated in the states in which the alleged incidents occurred.  *Id.*

After the court issued its decision, the parties, including Plaintiff, stipulated that the order "shall apply to all of the cases in this coordinated proceeding that arise from alleged incidents that occurred outside of California," including Plaintiff's State Court Case.  February 28, 2023 Stipulation and Order, *In Re: Uber Rideshare Cases*, CJC-21-005188 (Luskey Reply Decl. Ex. 3; Reply RJN ¶ 3).  Prior to agreeing to this stipulation, Plaintiff could have tried to argue that her case was distinct from the ones in which the court decided the *forum non conveniens* motions, and thus that the *forum non conveniens* decision was inapplicable.  *See* August 10, 2022 Case Management Order, *In Re: Uber Rideshare Cases*, CJC-21-005188 at ¶ 7 (Luskey Reply Decl. Ex. 4; Reply RJN ¶ 4) ("Following the resolution of the Forum Motions….the parties shall then meet and confer to discuss a process stipulating to or contesting the applicability of the Court's ruling on the Forum Motions to the remainder of the cases within this coordinated proceeding).  Plaintiff did not do so.  Luskey Reply Decl. ¶ 6.

Instead, Plaintiff appealed the stipulation and order and filed a second case in California - - this time in federal court.  She now asks this Court for the same relief sought in, and denied by,

DEFENDANTS UBER TECHNOLOGIES, INC. RASIER, LLC, AND       CASE NO. 4:23-cv-03811-JSW
RASIER-CA, LLC'S REPLY IN SUPPORT OF MOTION TO TRANSFER

the San Francisco Superior Court.[2]  Plaintiff requests that this second case remain in California, among other reasons, in order to ensure its proximity to the Uber JCCP from which she was intended to be dismissed.  Opp. at 1.[3]  The Court should reject Plaintiff's attempt to relitigate this issue.

## II.   Plaintiff's Choice of Forum Is Entitled Only Minimal Deference Because Plaintiff Is Not A California Resident And This Case Is Not Connected To This District.

As discussed in Uber's opening brief, the deference ordinarily accorded to a plaintiff's choice of forum is "'substantially reduced' when the plaintiff 'does not reside in the venue or where the forum lacks a significant connection to the activities alleged in the complaint.'"  Motion at 7 (quoting *Williams* v. *Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001)).  Plaintiff does not dispute this.  Opp. at 4.  Instead, Plaintiff insists that this Court accord "some deference" to her choice because, according to Plaintiff, it was not the product of forum shopping.  *Id.* (citing *Williams*, 157 F. Supp. 2d at 1107).  Plaintiff's argument is semantic at best.

While some courts in this district have referred to this "substantially reduced" form of deference as "some deference," *Williams*, 157 F. Supp. 2d at 1107, others have referred to it as "minimal deference," *Jane Doe* v. *Uber Techs., Inc.*, 2017 WL 2352032, at *1 (N.D. Cal. May 31, 2017) (the "Minnesota Action"), at *5.  Regardless of the term used, as an Arizona resident who has brought suit regarding an alleged assault that occurred in Illinois, Plaintiff's choice of forum simply is not entitled to the "substantial weight" that a California resident would receive.  *Williams*, 157 F. Supp. 2d at 1106.  And "[a]s deference to a plaintiff's choice of forum decreases, a defendant's burden to upset the plaintiff's choice of forum also decreases."  *Jaco Envtl. Inc.* v. *Appliance Recycling Cntr.s of Am., Inc.*, 2007 WL 951274, at *3 (N.D. Cal. Mar. 27, 2007).  Here,

---

[2] Because this issue - - whether the Northern District of California is the proper forum for this dispute - - has already been decided by another court, should the trial court's order be affirmed, Uber reserves the right to argue that Plaintiff is collaterally estopped, or otherwise procedurally barred, from pursuing this duplicative litigation (whether in this district or any other federal district).

[3] Going one step further, Plaintiff suggests that this action should remain here because a coordinated proceeding involving *Lyft* - - a separate TNC - - is proceeding in San Francisco Superior Court.  Opp. at 1.  Plaintiff does not (nor can she) articulate why physical proximity to that action is relevant to the resolution of Uber's Motion.

DEFENDANTS UBER TECHNOLOGIES, INC. RASIER, LLC, AND                    CASE NO. 4:23-cv-03811-JSW
RASIER-CA, LLC'S REPLY IN SUPPORT OF MOTION TO TRANSFER

whatever deference Plaintiff's choice of forum is entitled is insufficient to outweigh the factors favoring transfer to the Northern District of Illinois, which, unlike this district, has a significant connection to the activities alleged in the Complaint.[4]

**III.    The Private Interest Factors Favor Transfer.**

    **A.    This is a Case About Sexual Assault Not Corporate Misconduct.**

Plaintiff argues that it is a "fallacy" to conclude that "that the center of gravity for Plaintiff's claim is the state where the incident occurred." Opp. at 9. Her only support for this argument is a fleeting statement made in the order establishing the Uber JCCP. *Id.* Specifically, Plaintiff argues that the coordination order "concluded that the litigation will not center on the conduct of individual drivers or upon the individual incidents of assault." *Id.* Plaintiff cites no authority applying § 1404(a) or *forum non conveniens* - - the state court counterpart to § 1404(a) - - and ignores the existence of such authority to the contrary. In particular, Plaintiff's misplaced focus on the coordination order entirely ignores the on-point *forum non conveniens* ruling entered in the Uber JCCP. Contrary to Plaintiff's argument, when that court granted *forum non conveniens* relief in the Uber JCCP, the court found it "far more persuasive" to characterize the cases - - which involved claims substantively similar to those here - - "as individual sexual assault/misconduct cases" rather than "as corporate misconduct cases." *California Action*, CJC-21-005188 at 11 (Luskey Decl. Ex. 1; RJN ¶ 1). Critically, the court observed that to "prevail in [the] cases," each plaintiff "must first prove that an assault took place." *Id.* (citing *Minnesota Action* at *3).

In another similar out-of-state case against Uber, a federal California court came to the same conclusion. There, the plaintiff argued that "[t]he core disputes in this case hinge on questions of [Uber's] corporate misconduct and fraud, not on whether Plaintiff was actually assaulted or whether that assault caused her injury." *Minnesota Action*, 2017 WL 2352032, at *4. The court found that argument "unconvincing" and emphasized that the plaintiff "cannot recover damages without first establishing" that the independent contractor assaulted her. *Id.*

---

[4] Plaintiff also notes that her counsel is located in California, Opp. at 4, but that "is not an appropriate factor for the Court to consider when deciding a motion to transfer." *Vu* v. *Ortho-McNeil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1157.

In other words, when confronted with the question of *where* the cases should be litigated - - as opposed to the distinct question of whether they should be coordinated - - courts have already rejected Plaintiff's argument that the "primary focus" of these cases is about corporate misconduct.  The crux of Plaintiff's Complaint is that she was allegedly sexually assaulted by an independent driver with whom she was connected via the Uber App.  Compl. at ¶ 171.  As in the *California Action* and the *Minnesota Action*, the evidence relating to the alleged assault and the damages Plaintiff suffered, if any, are likely in the state where the alleged incident occurred.  Here, that state is Illinois.

**B.      Plaintiff Has Failed to Rebut Uber's Showing that Evidence Is Likely in Illinois.**

Plaintiff faults Uber for its inability to conclusively identify particular Illinois witnesses, Opp. at 9, but Uber's inability to identify such witnesses is a direct result of the fact that this Complaint contains only threadbare allegations regarding the alleged assault.  The Complaint alleges only that Plaintiff's alleged assault occurred "[o]n or around February of 2019" and that Plaintiff's "grandmother requested [the] Uber, through the Uber app."  Compl. at ¶ 171.  Without more information, Uber cannot reasonably be expected to identify the ride or the independent driver in question, let alone specific additional witnesses.  Uber thus has no choice but to draw the reasonable inference that witnesses to the alleged assault (including the driver) and Plaintiff's alleged injuries would likely reside in the state in which the alleged incident occurred, Illinois.  *See Blankenship* v. *Medtronic, Inc.*, 2013 WL 3322031, at *4 (C.D. Cal. June 7, 2013) (concluding that non-party witnesses would likely be in Missouri "based upon Plaintiff's core claims" that she, a Missouri resident, was injured during a surgery in Missouri).

Plaintiff, on the other hand, could have ruled out the existence of Illinois-based witnesses yet elected not to do so.  This omission is telling.  As explained in Uber's opening brief, potential witnesses in Illinois may include: (1) law enforcement personnel to whom the alleged assault was reported; (2) medical personnel and emergency responders who treated Plaintiff after the alleged assault; and (3) individuals with whom Plaintiff and the alleged assailant spoke about the alleged

assault.  Mot. at 9 (citing Luskey Decl. ¶ 2(b)).[5]  Plaintiff does not contest the fact that any such witnesses exist in Illinois.  Plaintiff obviously knows whether she spoke to anyone who resides in Illinois regarding the alleged incident, whether she reported the alleged incident to the police in Illinois, and whether she sought medical treatment in Illinois.  Yet she offers no declaration or other evidence refuting the existence of such witnesses, which speaks volumes.  Instead, Plaintiff acknowledges (without identifying specific people) that there *will* be non-party witnesses who reside in Illinois.  Opp. at 9.[6]

### C.    Uber Is Not Centralized In California: Relevant Witnesses Exist Outside California and In Illinois.

Plaintiff tries to tip the balance away from Illinois by asserting that "the vast number of Uber's current employees, former employees, and third-party consultants [] reside in this district."  Opp. at 6.  As an initial matter, if tallying up all the employees of a corporate defendant were enough to defeat a motion to transfer, then no California-based company could ever win such a motion and Uber would not have prevailed on its prior forum motions.[7]  That is not the correct analysis.  The Court should consider the location of ***relevant*** witnesses and their availability to testify in the proper forum as well as the totality of the evidence at issue.

---

[5] The Declaration of Randall Luskey submitted with Uber's opening brief mistakenly suggested that such parties may include "Plaintiff's friend and her boyfriend who Plaintiff was on the way to visit during the ride."  Luskey Dec. at ¶ 2(b).  This statement was included in error and should be disregarded.

[6] While Plaintiff does identify her grandmother and mother as witnesses who reside outside of Illinois, these assertions should be disregarded as Plaintiff provides no evidence in support of her claims.  Opp. at 9.  If the Court finds Plaintiff's unverified assertions about these witnesses relevant to this Motion, Uber respectfully requests leave to take a deposition of Plaintiff regarding the location of *all* relevant witnesses, including any law enforcement and medical personnel witnesses, which were the subject of *forum non conveniens* discovery in the Uber JCCP case.

[7] *See Minnesota Action*, 2017 WL 2352032 (granting motion to transfer in favor of the state where the alleged incident occurred);  *California Action*, CJC-21-005188 (Luskey Decl. Ex. 1 RJN ¶ 1) (granting *forum non conveniens* relief in favor of the state where alleged incident occurred); *Jane Doe* v. *Uber Techs., Inc.*, CGC-17-556481 (S.F. Super. Ct. Aug. 11, 2017) (Luskey Decl. Ex. 2; RJN ¶ 2) (same); *Jane Doe* v. *Uber Techs., Inc.*, CGC- 19-579901 (S.F. Super. Ct. Mar. 24, 2020) (Luskey Decl. Ex. 3; RJN ¶ 3) (same); *Gorne & Walker* v. *Uber Techs., Inc.*, CGC-19-575852 (S.F. Super. Ct. July 1, 2019) (Luskey Decl. Ex. 4; RJN ¶ 4) (same); *Rycz* v. *Superior Ct. of S.F. Cnty.*, 81 Cal. App. 5th 824 (2022) (granting Uber's motion to transfer venue to a different county, where alleged incident occurred).

As explained in Uber's opening brief, Uber's operations are not centralized; it operates on a state by state basis and is regulated locally in those states.  Mot. at 12.  Specifically, Uber's U.S. operations and decision-making are spread across 37 offices in 20 different states, ***including Illinois***.  Declaration of Alex Reitor in Support of Reply ("Reitor Reply Decl.") ¶ 3.  Thus, many relevant Uber witnesses reside outside of California.  For example, some current and former senior Uber employees who work or worked on teams related to safety live outside of California - - they reside in Washington D.C., Washington State, New York, Virginia, Arizona, and Illinois.  *Id.* ¶ 4.  More Uber employees are associated with offices outside of California than are associated with offices inside of California.  *Id.* ¶ 5.  Further, with nearly 1,500 employees associated with Uber's Illinois offices - - Illinois is the state associated with the second largest number of Uber employees in the United States.  *Id.* ¶¶ 6–7.

Furthermore, Plaintiff has made no showing that California is the location of any relevant employees, current or former - - let alone the location of most relevant employees.[8]  In fact, her own arguments point *outside* of California.  She focuses on Uber's Safety Report and its "specialized team" for users who report sexual assaults.  Opp. at 6-8.  Some of the principal drafters and contributors of the two Safety Reports reside outside California.  Reitor Reply Decl. ¶ 8.  The "specialized team" operates in Arizona.  *Id.*  ¶ 9.  She points to Uber's "global public safety liaison team," which by its very name conveys that its team members do not sit exclusively in California, but rather, are spread across the globe.  Opp. at 8.; Reitor Reply Decl. ¶ 10.

Plaintiff tries to inflate the number of putative California witnesses by referring vaguely to "non-party vendors, consultants, and contractors," and claiming there are non-party riders and independent drivers in California with knowledge of "passenger safety issues."  Opp. at 8-9.  None of these witnesses are identified.  And many of Uber's publicly known partners are based outside of California.  For example: Urban Institute, RALIANCE, and Rape, Abuse, & Incest National Network (RAINN) are each based in Washington, D.C.; the National Sexual Violence Resource Center (NSVRC) is based in Pennsylvania; and Mothers Against Drunk Driving ("MADD") is

---

[8] In any event, Uber's current employees will be available for trial in Illinois as employees of the company defendant, so that is a non-issue.

based in Texas.[9]  And even assuming that testimony from non-party riders and independent drivers were somehow relevant, such supposed witnesses are not confined to California, nor can Plaintiff credibly argue that no such witnesses are located in Illinois.

**D.    The Location of A Company's Headquarters Is Not Dispositive As To Transfer. [10]**

The law is clear that a defendant's headquarters "by themselves do not preclude transfer" in an action that otherwise has limited connections to the plaintiff's choice of forum.  *Freeman* v. *Apple*, 2023 WL 5110926, at *5 (N.D. Cal. Aug. 9, 2023) (granting Apple's motion to transfer). When the events giving rise to the plaintiff's claims occurred elsewhere, the fact that decisions and policies may have been set at defendant's corporate headquarters carries little weight.

For instance, in *Van Mourik* v. *Big Heart Pet Brands, Inc.*, 2018 WL 3549122 (N.D. Cal. July 24, 2018), the plaintiff, who brought consumer protection claims against a dog food manufacturer, argued that because the defendant "was formerly headquartered in California and made marketing decisions there," the action belonged in California federal court.  2018 WL 3549122, at *1.  The court rejected this argument, reasoning that the location of the defendant's headquarters was "not enough to outweigh" other factors, including that the plaintiff "saw the

---

[9]  *See, e.g.*, UBER, U.S. SAFETY REPORT 6–7, 9, 13–14 (2017-2018), https://www.uber-assets.com/image/upload/v1575580686/Documents/Safety/UberUSSafetyReport_201718_FullR eport.pdf?uclick_id=8888245a-0834-4985-9c26-1bed1ab3c8dd (identifying, among others, Uber's relationship with Urban Institute, RALIANCE, RAINN, NSVRC, and MADD). Urban Institute, https://www.urban.org/about/contact-us (last visited Sept. 29, 2023) (providing Urban Institute's address in Washington, D.C.); RALIANCE, https://www.raliance.org/about-us/ (last visited Sept. 29, 2023) (Providing RALIANCE's address in Washington, D.C.); RAINN, Form 990 filed by RAINN for Fiscal Year 2022, https://www.rainn.org/sites/default/files/990%20FY2 2%20RAINN%20Public%20Version.pdf (Nov. 29, 2022) (last visited Sept. 29, 2023) (providing RAINN's address in in Washington, D.C.); Internal Revenue Service, Form 990 filed by the No More Foundation, https://apps.irs.gov/pub/epostcard/cor/833491251_201912_990_20210331178 45022.pdf (Nov. 13, 2020) (providing NO MORE's address in New Jersey); NSVRC, https://www.nsvrc.org/contact (last visited Sept. 29, 2023) (providing NSVRC's address in Harrisburg, Pennsylvania); Mothers Against Drunk Driving, https://madd.org/contact-us/ (last visited Sept. 29, 2023) (providing MADD's address in Irving, Texas).

[10] Plaintiff makes much of the fact that Uber's principal place of business is in San Francisco and it is subject to general jurisdiction there.  Opp. at 5.  Uber does not dispute that it is within the jurisdiction of this Court.  But §1404(a) provides a mechanism by which Uber can seek transfer in the interest of justice even when it is in a court that is otherwise proper.

DEFENDANTS UBER TECHNOLOGIES, INC. RASIER, LLC, AND                    CASE NO. 4:23-cv-03811-JSW
RASIER-CA, LLC'S REPLY IN SUPPORT OF MOTION TO TRANSFER

advertising in Texas, purchased the product in Texas, and [sought] redress under Texas law." *Id.* The court further observed that Texas had a "much greater interest than California" in having the case decided by its own courts. *Id.* at *2.

So too here. Plaintiff claims to have relied on Uber's marketing and other statements (presumably) in Illinois, took a ride in Illinois that was facilitated by the Uber App, and now seeks redress that will most likely be governed by Illinois tort law. Moreover, as discussed above, Plaintiff cannot recover damages in this action, if at all, without first establishing that the accused independent driver assaulted her, the proof of which would likely be located *in Illinois*. Those facts cannot be outweighed by Uber's presence in California. *See Brice* v. *Cal. Faculty Ass'n*, 2019 WL 2053586, at *3 n.4 (E.D. Cal. May 9, 2019) ("Because that means that the bulk of the alleged events and/or injuries underlying this matter occurred outside the Eastern District, the relatively minimal nexus occasioned by the location of CFA's headquarters here in Sacramento does not point towards continuing to maintain this matter in the Eastern District."); *see also* Motion at 11-12.

Plaintiff's attempt to distinguish *Lapachet*, Opp. at 4, is unavailing. In that case, the plaintiff, who became quadriplegic as a result of injuries suffered while in custody at the Stanislaus County jail, brought a negligence suit against the County and CFMG, the correctional medical services company contracted to provide medical care at the County jail. *Lapachet* v. *Cal. Forensic Med. Grp.*, 2017 WL 3917209, at *1 (N.D. Cal. Sept. 7, 2017). The court granted defendants' motion to transfer the action to the district in which the County jail is located, rather than the district in which CMFG's corporate headquarters is located. *Id.* at *3-4. The court held that "there is a relatively minimal nexus between this District and the injuries Plaintiff suffered at the County jail . . . notwithstanding Plaintiff's argument that those events were 'set into motion' by policies and procedures set at CMFG's headquarters in this District." *Id.* at *3.

Plaintiff either misreads or misstates the facts of *Lapachet*. Plaintiff characterizes CMFG as "the medical facility where Plaintiff received care *after* suffering serious injuries" while in custody at the County jail, and seemingly concludes that the location of CMFG's headquarters did not defeat the transfer motion because, in Plaintiff's reading, CMFG's negligence was not in

question.  Opp. at 4.  But that is not what happened in *Lapachet*.  What plaintiff alleged there was that the CFMG nursing staff *overseeing his medical care at the County jail* negligently failed to "adequately monitor or care for" him, which eventually led him to be transported to a nearby emergency room.  *Lapachet*, 2017 WL 3917209, at *1; *see also generally* Complaint, *Lapachet* v. *Cal. Forensic Med. Grp.*, No. 16-cv-06959-HSG, Dkt. No. 1 (Dec. 2, 2016) (Luskey Reply Decl. Ex. 5; Reply RJN ¶ 5.).

Contrary to Plaintiff's portrayal, Uber's position is analogous to that of CFMG in *Lapachet*.  Just as the plaintiff in *Lapachet* claimed to have been injured as a result of CFMG's corporate policies, Plaintiff here claims to have been injured as a result of Uber's corporate policies.  And as in *Lapachet*, where the location of CMFG's corporate headquarters (and the policies and procedures set therein) was not enough to withstand a motion to transfer, Uber's headquarters in this district is not sufficient to retain this case in this district.

### E.   Uber Cannot Implead The Accused Driver In This District.

Uber has no reason to believe that the independent driver in this action has any connections to the State of California, nor has Plaintiff suggested that he does.  Uber therefore cannot file a cross-complaint against the accused driver because he is, in all likelihood, outside of the personal jurisdiction of this Court.  Although Plaintiff again faults Uber for not identifying the driver's state of residence (a direct consequence of Plaintiff's own bare pleading), his residence is irrelevant to impleader if this case is transferred to the Northern District of Illinois.  Even if the accused driver does not live in Illinois, he will be subject to specific personal jurisdiction in the Northern District of Illinois because Uber's anticipated claims against him relate to his contacts with Illinois, *i.e.* his alleged assault of Plaintiff during a ride in Illinois.  *Tavel* v. *Riddle*, 2021 WL 1121120, at *3–4 (N.D. Ill. Mar. 24, 2021).

Thus, transfer of this action to the Northern District of Illinois ensures that the driver will be subject to personal jurisdiction, which would obviate the need for Uber to pursue duplicative and inconvenient parallel litigation against the driver.  *Piper Aircraft* v. *Reyno*, 454 U.S. 235, 259 (1981) ("It is true, of course, that if [defendants] were found liable after a trial . . . they could institute an action for indemnity or contribution . . . It would be far more convenient, however, to

DEFENDANTS UBER TECHNOLOGIES, INC. RASIER, LLC, AND
RASIER-CA, LLC'S REPLY IN SUPPORT OF MOTION TO TRANSFER

CASE NO. 4:23-cv-03811-JSW

resolve all claims in one trial."); *Yi* v. *Uber Techs., Inc.*, 2018 WL 5013568, at *4 (N.D. Ill. Oct. 15, 2018) ("allowing the case to proceed in [the transferee court] avoids potentially duplicative litigation, as a judgment against Defendants would likely result in them bringing suit against [the driver] in [the transferee court]").

Although Uber believes that the independent driver is a necessary and indispensable party, this Court need not decide that issue in order to find that Uber's inability to implead the driver weighs in favor of transfer. In *Kawamura* v. *Boyd Gaming Corp.*, 2012 WL 6047728 (D. Haw. Dec. 5, 2012), the court held that "Defendants' desire to implead" a third-party outside the personal jurisdiction of the court "strongly favors transferring the litigation" to the state with such jurisdiction, notwithstanding the fact that the third-party likely was not an indispensable party. *Kawamura*, 2012 WL 6047728 at *15 (citing *Sparling* v. *Hoffman Const. Co. Inc.*, 864 F.2d 635, 639 (9th Cir. 1988)). In doing so, the court noted that "[d]istrict courts across the country have frequently transferred venue to allow a defendant to implead a party who is not subject to personal jurisdiction in the transferor court." *Id.* at *17 (collecting cases). Courts typically decline to transfer venue on this basis only where the "defendant's potential third-party claim was only vaguely delineated or was not closely related to the instant litigation." *Id.* That cannot be said of Uber's anticipated cross-complaint against the independent driver, who allegedly committed the sexual assault that is the subject of this lawsuit and for which Plaintiff seeks recovery from Uber.

## IV. Illinois's Public Interest In This Action Is Greater Than California's.

Plaintiff contends that "there is no district with a stronger interest in this controversy, and rideshare litigation as a whole, than this district." Opp. at 10. But Plaintiff's arguments in support of this contention amount to nothing more than a claim that California has an interest in regulating TNCs - - particularly those with a headquarters within its state. *Id.* at 10-11. As explained in Uber's Motion, so too does Illinois. Motion at 13-14.

Illinois has a profound interest in seeing its laws - - including its tort law and local regulations - - apply to businesses operating within its state. *Id*. In fact, that is one of the bases on which Uber's prior forum motions have been granted. *See Gorne*, CGC-19-575852, at 3 (Luskey Decl. Ex. 4; RJN ¶ 4) ("Washington also has an interest in ensuring that Uber and Uber

drivers comply with local rules and regulations in conducting business in Washington.");
*Minnesota Action*, 2017 WL 2352032, at *8 (observing that Minnesota has an "interest in the
conduct of corporations operating in Minnesota").

As a prime example, Plaintiff claims that Uber is liable as a "common carrier." This theory
of liability is central to Plaintiff's case. Compl. ¶¶ 208–225 ("Count Two – Common Carrier
Negligence"). However, Illinois has adopted a public policy on precisely this issue, codifying by
statute that TNCs, like Uber, are not common carriers. 625 ILL. COMP. STAT. ANN. 57/25 (Luskey
Reply Decl. Ex. 6; Reply RJN ¶ 6); *see also Doe* v. *Lyft, Inc*., 176 N.E.3d 863, 870 (Ill. App. Ct.
2020) ("The first certified question asks whether this provision precludes TNCs from being subject
to the same heightened duty of care and principles of vicarious liability applicable to common
carriers. We hold that it does.") (Luskey Reply Decl. Ex. 7; Reply RJN ¶ 7).[11] Illinois most
decidedly has a strong interest in applying its statute, and case law interpreting that statute, to
TNCs operating within its borders.

Another example is Plaintiff's allegation that Uber is liable because the background checks
for independent drivers are "inadequate," Compl. at ¶ 88–89, a topic Plaintiff has also deemed to
be a "pertinent subject area." Opp. at 6. There too, Illinois has expressed its strong governmental
interest: it promulgated rules by statute for TNCs regarding background checks on drivers using
their platforms. 625 ILL. COMP. STAT. ANN 57/15 (Luskey Reply Decl. Ex. 6; Reply RJN ¶ 6).
These rules differ from those adopted by California and from other states across the U.S.

That ridesharing was first established in California does not change the analysis. Nor does
the number of Uber employees or the number of independent drivers. Opp. at 10-11. Illinois
jurors have a greater interest in adjudicating this case than "Bay Area jurors" because this case
centers on an alleged assault committed in Illinois, implicating Illinois law and Illinois public
policy. *See Minnesota Action*, 2017 WL 2352032, at *8 ("While [] California has some interest in

---

[11] While the Transportation Network Providers Act was recently amended to eliminate the
statement that TNCs are not common carriers, Public Act 103-0527 (effective January 1, 2024)
(Luskey Reply Decl. Ex. 8; Reply RJN ¶ 8), that amendment does not apply retroactively. *See
Perry* v. *Department of Financial & Professional Regulation*, 106 N.E.3d 1016, 1027 (Ill. 2018)
("procedural changes to statutes will be applied retroactively, while substantive changes are
*prospective only*" (emphasis added)) (Luskey Reply Decl. Ex. 9; Reply RJN ¶ 9).

DEFENDANTS UBER TECHNOLOGIES, INC. RASIER, LLC, AND          CASE NO. 4:23-cv-03811-JSW
RASIER-CA, LLC'S REPLY IN SUPPORT OF MOTION TO TRANSFER

seeing this case decided here, as Uber is headquartered in San Francisco, Minnesota's interest is more substantial because the activities alleged to give rise to Doe's suit occurred there."); *Gilmore-Webster* v. *Bayou City Homebuyers Inc.*, 2019 WL 1100492, at \*11 (N.D. Cal. Mar. 8, 2019) (finding that, in case with California plaintiff, "Texas has a greater local interest because the lion's share of the events occurred in Texas" and granting transfer); *Vu*, 602 F. Supp. 2d at 1157 (holding the Central District has stronger interest because "the events giving rise to plaintiff's claims took place [there]").

**V.      The MDL Petition Does Not Make Transfer Any Less Appropriate.**

The fact that Plaintiff has noticed this case as a related action to a proposed MDL does not, as Plaintiff suggests, make transfer under § 1404(a) wasteful or "duplicative."  Opp. at 11-12. *First*, the MDL petition has not yet been decided, and was heard by the Judicial Panel on Multidistrict Litigation only yesterday.  Plaintiff has no basis to assume that this case will "likely be coordinated" with any others nor to assume that if an MDL is established, that it will be assigned to a judge in the Northern District of California.  *Id.* at 11.

*Second*, even if the MDL petition is granted, transferring this action to the Northern District of Illinois would not duplicate or conflict with transfer to the MDL.  Under 28 U.S.C. § 1407, centralization of cases in an MDL is "limited to pretrial proceedings only" - - meaning that cases centralized in an MDL must eventually return to the federal court from which they came.  *In re: Gerber Probiotic Prod. Mktg. & Sales Pracs. Litig.*, 899 F. Supp. 2d 1378, 1380 (J.P.M.L. 2012) (Luskey Reply Decl. Ex. 10; Reply RJN ¶ 10).  By contrast, venue transfer under section 1404(a), "is for all purposes, including trial."  *Id.*  Thus, resolving a section 1404(a) motion - - *i.e.* determining whether a case belongs in a different federal judicial district than the one in which it was filed - - prior to centralization in an MDL, ensures that a case is returned to the appropriate venue when it comes time for trial.  If anything it would be a waste of judicial resources to deny a fully briefed and meritorious motion and delay the resolution of this inevitable question.  For the reasons set forth above and in Uber's opening brief, the Northern District of Illinois is where this case should be tried, and there is no reason to delay resolution of this motion simply because an MDL might be established.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court transfer this case to the Northern District of Illinois.

DATED:  September 29, 2023                    **PAUL, WEISS, RIFKIND, WHARTON &**
                                              **GARRISON LLP**


By:     */s/ Randall S. Luskey*
                    RANDALL S. LUSKEY
                    ROBERT ATKINS

*Attorney for Defendants*
UBER TECHNOLOGIES, INC., RASIER, LLC,
and RASIER-CA, LLC

- 15 -