RANDALL S. LUSKEY (SBN: 240915)
    rluskey@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
    **& GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101

ROBERT ATKINS (*Pro Hac Vice forthcoming*)
    ratkins@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
    **& GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3183
Facsimile: (212) 492-0183

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.; RASIER, LLC;
and RASIER-CA, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| LS 134, an individual, | Case No. 4:23-cv-03811-JSW |
| Plaintiff, | **REPLY DECLARATION OF RANDALL S. LUSKEY IN SUPPORT OF DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF ILLINOIS** |
| v. | |
| UBER TECHNOLOGIES, INC., a Delaware Corporation; RASIER, LLC, a Delaware Limited Liability Company; RASIER-CA, LLC, a Delaware Limited Liability Company, and DOES 1 through 50, Inclusive. | Date:   December 1, 2023<br>Time:  9:00 a.m.<br>Courtroom:  5 – 2nd Floor |
| Defendants. | Action Filed:  August 1, 2023<br>Trial Date:    None Set |

## DECLARATION OF RANDALL S. LUSKEY

I, Randall S. Luskey, declare pursuant to 28 U.S.C. § 1746:

1.      I am an attorney at the law firm of Paul, Weiss, Rifkind, Wharton & Garrison LLP, attorneys of record for Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber").  I respectfully submit this reply declaration in further support of Uber's Motion to Transfer Venue to the Northern District of Illinois.  I know the following facts to be true of my own knowledge, except those matters stated to be based on information and belief, and if called to testify, I could competently do so.

2.      Attached as **Exhibit 1** is a true and correct copy of Plaintiff Jane Doe's Complaint in *LSA 134* v. *Uber Techs., Inc. et al.*, CGC-21-594130, filed in the Superior Court of California for the County of San Francisco, dated July 29, 2021.

3.      Attached as **Exhibit 2** is a true and correct copy of the Superior Court of California for the County of San Francisco's April 12, 2022 Order Re: Coordination to JCCP in *In Re: Uber Rideshare Cases*, CJC-21-005188.

4.      Attached as **Exhibit 3** is a true and correct copy of the Superior Court of California for the County of San Francisco's February 28, 2023 Stipulation and Order Re: Application of January 23, 2023 Order in *In Re: Uber Rideshare Cases*, CJC-21-005188.

5.      Attached as **Exhibit 4** is a true and correct copy of the Superior Court of California for the County of San Francisco's August 10, 2022 Case Management Order in *In Re: Uber Rideshare Cases*, CJC-21-005188.

6.      Following the resolution of Uber's *forum non conveniens* motions in *In Re: Uber Rideshare Cases*, CJC-21-005188, *i.e.*, the Uber JCCP, Plaintiff did not contest the applicability of the Court's ruling to her case.

7.      Attached as **Exhibit 5** is a true and correct copy of the Complaint filed in *Lapachet* v. *Cal. Forensic Med. Grp.*, No. 16-cv-06959-HSG, in the Northern District of California, dated December 2, 2016.

8.      Attached as **Exhibit 6** is a true and correct copy of Illinois Compiled Statutes Annotated, Chapter 625, Act 57, Sections 15 and 25.

REPLY DECLARATION OF RANDALL S. LUSKEY IN SUPPORT
OF DEFENDANTS' MOTION TO TRANSFER VENUE           CASE NO. 4:23-cv-03811-JSW

9.   Attached as **Exhibit 7** is a true and correct copy of *Doe* v. *Lyft, Inc.*, 176 N.E.3d 863, 870 (Ill. App. Ct. 2020).

10. Attached as **Exhibit 8** is a true and correct copy of the Illinois 2023 Legislative Service Public Act 103-0527 (H.B. 2231).

11. Attached as **Exhibit 9** is a true and correct copy of *Perry* v. *Department of Financial & Professional Regulation*, 106 N.E.3d 1016, 1027 (Ill. 2018).

12. Attached as **Exhibit 10** is a true and correct copy of *In re: Gerber Probiotic Prod. Mktg. & Sales Pracs. Litig.*, 899 F. Supp. 2d 1378, 1380 (J.P.M.L. 2012).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on September 29, 2023 in San Francisco, California.


DATED:  September 29, 2023                    */s/ Randall S. Luskey*
                                                            Randall S. Luskey

REPLY DECLARATION OF RANDALL S. LUSKEY IN SUPPORT
OF DEFENDANTS' MOTION TO TRANSFER VENUE          CASE NO. 4:23-cv-03811-JSW

# EXHIBIT 1

 **CT Corporation**

**Service of Process Transmittal**
08/25/2021
CT Log Number 540141311

TO:     Gabriela Lopez
        Uber Technologies, Inc.
        950 23RD ST
        SAN FRANCISCO, CA 94107-3401

RE:     **Process Served in California**

FOR:    UBER TECHNOLOGIES, INC.  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | ANE DOE LSA 115, ETC., ET AL., PLTFS. vs. UBER TECHNOLOGIES, INC., ETC., ET AL., DFTS. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, Cover Sheet, Notice(s), Order, Stipulation, Attachment(s) |
| **COURT/AGENCY:** | San Francisco County - Superior Court of the State of California, CA<br>Case # CGC21594130 |
| **NATURE OF ACTION:** | Personal Injury - Complaint for Damages and Demand for Jury Trial - Negligent Hiring, Retention, and Supervision |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, GLENDALE, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 08/25/2021 at 15:05 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | Within 30 calendar days after this summons and legal papers are served on you(Document(s) may contain additional answer dates) |
| **ATTORNEY(S) / SENDER(S):** | Laurel L. Simes<br>LEVIN SIMES ABRAMS LLP<br>1700 Montgomery Street, Suite 250<br>San Francisco, CA 94111<br>415-426-3000 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 08/26/2021, Expected Purge Date: 08/31/2021<br><br>Image SOP<br><br>Email Notification,  Claims Lit  intake@uber.com<br><br>Email Notification,  Gabriela Lopez  gabriela.lopez@uber.com<br><br>Email Notification,  Shanti Sconyers  shanti.sconyers@uber.com |
| **REGISTERED AGENT ADDRESS:** | C T Corporation System<br>330 N BRAND BLVD<br>STE 700<br>GLENDALE, CA 91203<br>877-564-7529<br>MajorAccountTeam2@wolterskluwer.com |

 CT Corporation

**Service of Process Transmittal**
08/25/2021
CT Log Number 540141311

**TO:**   Gabriela Lopez
Uber Technologies, Inc.
950 23RD ST
SAN FRANCISCO, CA 94107-3401

**RE:**   **Process Served in California**

**FOR:**   UBER TECHNOLOGIES, INC.  (Domestic State: DE)

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

 Wolters Kluwer

# PROCESS SERVER DELIVERY DETAILS

**Date:**                       Wed, Aug 25, 2021

**Server Name:**                Douglas Forrest

Entity Served                   UBER TECHNOLOGIES, INC.

Case Number                     Cgc 215 94130

Jurisdiction                    CA



**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

UBER TECHNOLOGIES, INC., a Delaware Corporation; RASIER, LLC, a Delaware Limited Liability Company; and DOES 1 through 50, Inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

JANE DOE LSA 115, an individual;
Additional Parties Attachment for is attached.

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is: San Francisco<br>*(El nombre y dirección de la corte es):*<br>Unlimited Civil Division<br>400 McAllister Street<br>San Francisco, CA 94102 | CASE NUMBER:<br>*(Número del Caso):* CGC-21-594130<br>~~CGC-21-594130~~ |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Laurel L. Simes (SBN 134637)
Levin Simes Abrams LLP (415) 426-3000
1700 Montgomery St., Suite 250 San Francisco, CA 94111

| | | | |
|---|---|---|---|
| DATE: **08/25/2021**<br>*(Fecha)* | Clerk, by<br>*(Secretario)* | **JACKIE LAPREVOTTE** | , Deputy<br>*(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* Uber Technologies Inc. a Delaware Corporation
   under: ☒ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☒ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

CEB
www.ceb.com

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| JANE DOE LSA 115, et al. v. UBER TECHNOLOGIES, INC., et al. | |

### INSTRUCTIONS FOR USE

➔ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
➔ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

[x] Plaintiff    [ ] Defendant    [ ] Cross-Complainant    [ ] Cross-Defendant

> JANE DOE LSA 116, an individual;
> JANE DOE LSA 117, an individual;
> JANE DOE LSA 118, an individual;
> JANE DOE LSA 119, an individual;
> JANE DOE LSA 120, an individual;
> JANE DOE LSA 121, an individual;
> JANE DOE LSA 122, an individual;
> JANE DOE LSA 123, an individual;
> JANE DOE LSA 124, an individual;
> JANE DOE LSA 125, an individual;
> JANE DOE LSA 126, an individual;
> JANE DOE LSA 127, an individual;
> JANE DOE LSA 128, an individual;
> JANE DOE LSA 129, an individual;
> JANE DOE LSA 130, an individual;
> JANE DOE LSA 131, an individual;
> JANE DOE LSA 132, an individual;
> JANE DOE LSA 133, an individual;
> JANE DOE LSA 134, an individual;
> JANE DOE LSA 135, an individual;
> JANE DOE LSA 136, an individual.

Page _____ of _____

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

CEB
www.ceb.com

William A. Levin (SBN 98592)
Laurel L. Simes (SBN 134637)
Rachel Abrams (SBN 209316)
Meghan E. McCormick (SBN 283853)
**LEVIN SIMES ABRAMS LLP**
1700 Montgomery Street, Suite 250
San Francisco, California 94111
Telephone: (415) 426-3000
Facsimile: (415) 426-3001
Email: wlevin@levinsimes.com
Email: llsimes@levinsimes.com
Email: rabrams@levinsimes.com
Email: mmccormick@levinsimes.com
*Attorneys for Plaintiffs*

ELECTRONICALLY
**F I L E D**
*Superior Court of California,
County of San Francisco*

**07/29/2021**
**Clerk of the Court**
BY: JACKIE LAPREVOTTE
Deputy Clerk

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**COUNTY OF SAN FRANCISCO**

CGC-21-594130

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

JANE DOE LSA 115, an individual; Jane Doe LSA 116, an individual; JANE DOE LSA 117, an individual; JANE DOE LSA 118, an individual; JANE DOE LSA 119, an individual; JANE DOE LSA 120, an individual; JANE DOE LSA 121, an individual; JANE DOE LSA 122, an individual; JANE DOE LSA 123, an individual; JANE DOE LSA 124, an individual; JANE DOE LSA 125, an individual; JANE DOE LSA 126, an individual; JANE DOE LSA 127, an individual; JANE DOE LSA 128, an individual; JANE DOE LSA 129, an individual; JANE DOE LSA 130, an individual; JANE DOE LSA 131, an individual; JANE DOE LSA 132, an individual; JANE DOE LSA 133, an individual; JANE DOE LSA 134, an individual; JANE DOE LSA 135, an individual; JANE DOE LSA 136, an individual; JANE DOE LSA 137, an individual,

Plaintiffs,

v.

UBER TECHNOLOGIES, INC., a Delaware Corporation; RASIER, LLC, a Delaware Limited Liability Company; and DOES 1 through 50, Inclusive,

Defendants.

Case No. _____

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

| | |
|---|---|
| 1. | **GENERAL NEGLIGENCE** |
| 2. | **NEGLIGENT HIRING, RETENTION, AND SUPERVISION** |
| 3. | **COMMON CARRIER NEGLIGENCE** |
| 4. | **NEGLIGENT FAILURE TO WARN** |
| 5. | **VICARIOUS LIABILITY/LIABILITY FOR THE TORTS OF UBER'S DRIVERS** |
| 6. | **VICARIOUS LIABILITY FOR SEXUAL ASSAULT** |
| 7. | **VICARIOUS LIABILITY FOR SEXUAL BATTERY** |
| 8. | **VICARIOUS LIABILITY FOR FALSE IMPRISONMENT** |
| 9. | **INTENTIONAL MISREPRESENTATION** |
| 10. | **NEGLIGENT MISREPRESENTATION** |
| 11. | **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS** |
| 12. | **BREACH OF CONTRACT** |
| 13. | **STRICT PRODUCT LIABILITY – DESIGN DEFECT** |
| 14. | **STRICT PRODUCT LIABILITY- FAILURE TO WARN** |

COMPLAINT FOR DAMAGES

1     Jane Doe LSA 115, Jane Doe LSA 116, Jane Doe LSA 117, Jane Doe LSA 118, Jane Doe

2  LSA 119, Jane Doe LSA 120, Jane Doe LSA 121, Jane Doe LSA 122, Jane Doe LSA 123, Jane

3  Doe LSA 124, Jane Doe LSA 125, Jane Doe LSA 126, Jane Doe LSA 127, Jane Doe LSA 128,

4  Jane Doe LSA 129, Jane Doe LSA 130, Jane Doe LSA 131, Jane Doe LSA 132, Jane Doe LSA

5  133, Jane Doe LSA 134, Jane Doe LSA 135, Jane Doe LSA 136 and Jane Doe LSA 137

6  ("Plaintiffs") by and through their attorneys of record, for causes of action against Uber, Inc.

7  ("Uber"), a corporation with its principal place of business in San Francisco, California, and

8  Rasier, LLC ("Rasier"), a corporation with its principal place of business in San Francisco,

9  California, and Does 1 through 50, inclusive, and each of them, complain and allege the following:

10                                    **INTRODUCTION**

11     1.     Plaintiffs were kidnapped, sexually assaulted, sexually battered, raped, falsely

12  imprisoned, stalked, harassed, and/or otherwise attacked by an Uber driver with whom they had

13  been paired through the Uber App. This case is about these attacks as well as the toxic-male

14  culture at Uber that caused these sexual attacks. A culture that started at the very top of Uber that

15  prized growth above all else and in the process exploited, endangered, and hurt women and girls,

16  including Plaintiffs.  This culture was put in place by Uber's officers and directors, including

17  Travis Kalanick, and it was put in place with conscious disregard to the rights and safety of Uber

18  passengers, particularly female Uber passengers.

19     2.     Uber is a transportation company headquartered in San Francisco, California that,

20  beginning in 2009, pioneered an App-based transportation system that has been implemented

21  around the world, including across the entire United States.

22     3.     As early as 2014 Uber became aware that Uber drivers were sexually assaulting

23  and raping female passengers.  In the seven years since, sexual predators driving for Uber have

24  continued to sexually assault, harass, kidnap, physically assault, and/or rape Uber's passengers.

25  Complaints to Uber by female passengers who had been attacked by Uber drivers, combined with

26  subsequent criminal investigations by law enforcement, clearly establish that Uber has been fully

27  aware of these continuing attacks by sexual predators driving for Uber.  Uber's response to these

28  ongoing sexual assaults by Uber drivers has been slow and inadequate.

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

4.      While Uber has, in recent years, publicly acknowledged this sexual assault crisis, including the publication of Uber's U.S. Safety Report, in December 2019, Uber has failed to implement basic safety measures necessary to prevent these serious sexual assaults, which continue to occur to this day.

5.      As more fully set forth herein, Plaintiffs were each kidnapped, sexually assaulted, sexually battered, raped, falsely imprisoned, stalked, harassed, and/or otherwise attacked by an Uber driver she was led to believe would give her a safe ride to her destination.   Each Uber ride at issue was ordered by or for Plaintiff through the ride-sharing software application owned and controlled by Uber ("the Uber App").   At all relevant times Defendants Uber and Rasier (referred to collectively herein as "Uber") operated and controlled the Uber App.   Each Uber driver, while in the course and scope of his employment for Uber and while otherwise working on behalf of Uber, kidnapped, sexually assaulted, sexually battered, raped, falsely imprisoned, stalked, harassed, and/or otherwise attacked the respective plaintiff as set forth below.

6.      Each Plaintiff named herein, individually, brings this civil action against Uber to recover damages for the injuries she suffered as a result of being kidnapped, sexually assaulted, sexually battered, raped, falsely imprisoned, stalked, harassed, and/or otherwise attacked by an Uber driver during an Uber ride.

7.      Uber is a common carrier under California law. Because of Defendants' acts and omissions, Plaintiffs have each suffered damages that far exceed the jurisdictional floor of this Court.

8.      This is an unlimited action. The amount in controversy with respect to each Plaintiff exceeds $25,000.00. Cal. Code Civ. P. § 85.

## PARTIES

9.      Each Plaintiff named herein is over the age of 18.

10.      Plaintiffs file this action under a pseudonym because as a victim of sexual assault, they need anonymity to protect their privacy in this sensitive and highly personal matter. Plaintiffs proceed in this manner to protect their legitimate privacy rights. Disclosure of their full name would expose them to stigmatization, invade their privacy, and make them vulnerable to

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

1   retaliation. For these reasons, Plaintiffs' needs for anonymity outweigh both the prejudice to

2   Defendants and the public's interest in knowing their identities. Counsel for Plaintiffs will inform

3   Defendants of Plaintiffs' true name and the circumstances surrounding these causes of action.

4   Plaintiffs further anticipate seeking concurrence from Defendants for entry into a protective order

5   to prevent the unnecessary disclosure Plaintiffs' real names in the public record.

6       11.     Defendant Uber Technologies, Inc. is a Delaware corporation with its corporate

7   headquarters, principal office, and principal place of business at 1515 3rd Street, San Francisco,

8   San Francisco County, California, 94158. Defendant Uber Technologies, Inc. has been served with

9   process through its registered agent, CT Corporation System.

10      12.     Defendant Rasier, LLC is a Delaware limited liability company. Upon information

11  and belief, Rasier is a wholly owned subsidiary of Uber Technologies, Inc. Rasier maintains its

12  corporate headquarters, principal office, and principal place of business at 1455 Market Street, 4th

13  Floor, San Francisco, California, 94158. Defendant Rasier has been served with process through

14  its registered agent, CT Corporation System.

15      13.     Unless otherwise specified, this Complaint refers to Defendants Uber

16  Technologies, Inc. and Rasier, LLC collectively as "Uber."

17      14.     The true names and capacities, whether individual, plural, corporate, partnership,

18  associate, or otherwise, of Does 1 through 50, inclusive, are unknown to Plaintiffs who therefore

19  sue said Defendants by such fictitious names. The full extent of the facts linking such fictitiously

20  sued Defendants is unknown to Plaintiffs. Plaintiffs are informed and believe, and thereon allege,

21  that each of the Defendants designated herein as a Doe was, and is, negligent, or in some other

22  actionable manner, responsible for the events and happenings hereinafter referred to, and thereby

23  negligently, or in some other actionable manner, legally caused the hereinafter described injuries

24  and damages to Plaintiffs. Plaintiffs will hereafter seek leave of the Court to amend this

25  Complaint to show the Defendants' true names and capacities after the same have been

26  ascertained.

27      15.     Plaintiffs are informed and believe, and on that basis allege, that at all times herein

28  mentioned, each of the defendants herein was the agent, servant, licensee, employee, assistant,

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

4

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

1 consultant, or alter ego, of each of the remaining defendants, and was at all times herein

2 mentioned acting within the course and scope of said relationship when Plaintiffs were injured as

3 set forth herein.  Plaintiffs are informed and believe that each and every Defendant, when acting as

4 a principal, was negligent in the selection, hiring, supervision or retention of each and every other

5 Defendant as an agent, servant, employee, assistant, or consultant.  Plaintiffs are further informed

6 and believe, and thereon allege, that at all times herein mentioned, each business, public entity  or

7 corporate employer, through its officers, directors, supervisors and managing agents, and each

8 individual defendant, had advance knowledge of the wrongful conduct, psychological profile, and

9 behavior propensity of said agents, servants, licensees, employees, assistants, consultants, and

10 alter egos, and allowed said wrongful conduct to occur and continue to occur, thereby ratifying

11 said wrongful conduct, and, after becoming aware of their wrongful conduct, each public entity,

12 and corporate defendant by and through its officers, directors, supervisors and managing agents,

13 and each individual defendant, authorized and ratified the wrongful conduct herein alleged.

14      16.     Defendants are liable for the acts of each other through principles of *respondeat*

15 *superior*, agency, ostensible agency, partnership, alter-ego and other forms of vicarious liability.

16      17.     In the instance of each sexual assault described below, The Uber driver who

17 perpetrated each assault described herein ("Uber Driver(s)") was an agent, servant, and employee

18 of Uber.

19      18.     This Complaint refers to Defendant Uber Technologies, Inc., Defendant Rasier,

20 LLC, and Does 1 through 50, inclusive, as Defendants.

21                             **JURISDICTION & VENUE**

22      19.     The California Superior Court has subject-matter jurisdiction over this action,

23 pursuant to California Constitution Article VI, Section 10, which grants the Superior Court

24 "original jurisdiction in all causes except those given by statute to other trial courts."

25      20.     Each Plaintiff named herein, individually seeks relief that is within the

26 jurisdictional limits of this Court.

27      21.     The California Superior Court has personal jurisdiction over Defendants Uber and

28 Rasier because both have their principal places of business in California and intentionally avail

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

1  themselves of the benefits and protection of California law such that the exercise of jurisdiction by

2  the California courts is consistent with traditional notions of fair play and substantial justice.

3      22.      Venue is proper in the Superior Court of the County of San Francisco, California,

4  pursuant to California Code of Civil Procedure §§ 395(a) and 395.5. Defendant Uber has its

5  principal place of business at 1515 3rd Street, San Francisco, CA 94158 and at all times relevant

6  has been doing business within the County of San Francisco.

7      23.      All other jurisdictional prerequisites and conditions precedent to suit have been

8  satisfied.

9      24.      This case is not removable. Some of the Plaintiffs named herein are domiciled in,

10 and are citizens of, California. Both named Defendants, Uber and Rasier are citizens of California,

11 as both have a principal place of business in San Francisco, California. As such, there is not

12 complete diversity between the parties, so there is no federal jurisdiction under 28 U.S.C. section

13 1332. Defendants, therefore, cannot avail themselves of snap removal – alleging they removed the

14 case to federal court before a defendant was properly joined or served.  Plaintiff is not relying on

15 28 U.S.C. section 1441(b)(2) to oust federal court jurisdiction. Federal-court jurisdiction never

16 existed, and, by its terms, section 1441(b)(2) does not apply because there is no diversity

17 jurisdiction under section 1332.

18                            **FACTUAL ALLEGATIONS**

19          **A.      Uber's Sexual Assault Problem Started At the Top**

20     25.      Uber is a transportation company. One of its founders, Travis Kalanick, became its

21 second chief executive officer and, at one time, its largest shareholder. Uber drivers and Uber split

22 the fare Uber charges riders for the riders' trips.

23     26.      In 2014, Uber's executives in San Francisco started charging Uber passengers an

24 extra $1 fee for each trip. Uber called this a *Safe Rides Fee*. When Uber announced the Safe Rides

25 Fee, it told the public that the "[f]ee supports our continued efforts to ensure the safest possible

26 platform for Uber riders and drivers, including an industry-leading background check process,

27 regular motor vehicle checks, driver safety education, development of safety features in the app,

28

1   and insurance."[1]  The Safe Rides Fee was not split with drivers.[2]  So it was pure revenue for Uber.

2   Uber gave hundreds of millions of rides with the Safe Ride Fee attached to them and made

3   hundreds of millions in revenue from the fee.[3]  But it never earmarked the money for improving

4   safety or spent it on safety.[4]  Instead, it pocketed the money it told the world it was going to

5   directly towards enhancing safety. As a former Uber employee said "[w]e boosted our margins

6   saying our rides were safer."[5]  It "was obscene."[6]

7       27.     Rider safety was never Uber's concern. Growth was. To increase growth, which

8   required not only new riders, but new drivers, Travis Kalanick and the executives at Uber made it

9   as easy as possible for Uber drivers to sign up. They used a background-check system designed to

10  get drivers approved as quickly and conveniently as possible.[7]  Uber hired Hirease, Inc. to do its

11  background checks.[8]  Hirease brags that it can vet drivers within 36 hours.[9]  To have such a short

12  turnaround, Uber eschewed industry standards used by other taxi companies and livery services.

13  For example, it abandoned fingerprinting — which takes weeks — and running applicant drivers

14  against private databases, such as FBI records.[10]  These shortcuts might have led to growth for

15  Uber, but they also put people, including Plaintiff, in danger. Indeed, Uber was so fixated on

16  growth that it began mailing cell phones to applicant drivers, so they could begin driving, before

17  Uber's cursory background check was even complete.[11]

18      28.     Travis Kalanick made the decision that Uber was not going to fingerprint its drivers

19

20  [1] Uber, *What is the Safe Rides Fee*,
    https://web.archive.org/web/20140420053019/http://support.uber.com/hc/en-
21  us/articles/201950566. (last visited March 10, 2021).
    [2] Mike Isaac, SUPER PUMPED: THE BATTLE FOR UBER 136 (2019) ("The drivers, of course, got no
22  share of the extra buck.").
    [3] *See id.*
23  [4] Isaac, *supra* note 4, at 136.
    [5] *Id.*
24  [6] *Id.*
25  [7] Isaac, *supra* note 4, at 115 ("Uber made it as easy as possible for drivers to sign up.").
    [8] Mike Isaac, *Uber's System for Screening Drivers Draws Scrutiny*, N.Y. TIMES, Dec. 9, 2014, at
26  A1 (available at https://www.nytimes.com/2014/12/10/technology/ubers-system-for-screening-
    drivers-comes-under-scrutiny.html?searchResultPosition=1.)
27  [9] *Id.*
    [10] *Id.*
28  [11] Isaac, *supra* note 4, at 218.

COMPLAINT FOR DAMAGES

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

1   and that it was not going to scrub applicant drivers against FBI records. Rather, the decision was

2   made to use a fast and shallow background check process.

3       29.     Travis Kalanick also made the decision not to interview drivers or train drivers to

4   ensure Uber's drivers understood their responsibilities and what was appropriate and inappropriate

5   when interacting with passengers.  Mr. Kalanick decided not to implement policies to protect

6   passengers from sexual assault—policies such a zero-tolerance policy with respect to fraternizing

7   or making sexual advances towards passengers, and most certainly with respect to sleeping with or

8   touching the passengers they pick up in a sexual manner.

9       30.     Mr. Kalanick had actual knowledge that these decisions would put passengers in

10   greater danger. As such, he acted with conscious disregard for the rights and safety of female

11   passengers, including Plaintiffs named herein.

12       31.     Travis Kalanick intentionally performed the act of hiring drivers without

13   fingerprinting them, without running them through the FBI databases, and using fast and or

14   shallow background checks. When he took these actions, he knew or should have known that it

15   was highly probable that harm would result.  When Uber's current Chief Executive Officer, Dara

16   Khosrowshahi, took over as Uber's top executive in August 2017, he continued the policy of

17   hiring drivers without biometric fingerprinting to be run through the FBI database.  This was a

18   very intentional and thought out decision, evidenced by Uber's active lobbying and resistance

19   against municipalities or regulatory bodies implementing any kind of biometric fingerprinting

20   requirement for drivers.

21       32.     Uber's greed and complete disregard for rider safety or the rule of law is

22   breathtaking. Uber's policy is that it will not report any criminal activity it learns of to law-

23   enforcement authorities.[12]  That includes allegations of sexual assault.[13]  Thus, Uber's policy is

24   that if it learns from an Uber rider, such as Plaintiff, that she was sexually assaulted, Uber will not

25

26

---

[12] Greg Bensinger, *Uber Says Safety is its First Priority. Employees Aren't so Sure*, WASH. POST
27   (Oct. 1, 2019) (available at  https://www.washingtonpost.com/podcasts/post-reports/uber-says-
safety-is-its-first-priority-employees-arent-so-sure/.)
28   [13] *Id.*

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

COMPLAINT FOR DAMAGES

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

1    report this sexual assault to law enforcement.[14]  Uber is proud of this policy and feels "very

2    strongly" that it is not Uber's job to go to the to the police on behalf of customers when an Uber

3    driver rapes an Uber passenger.[15]

4           33.    This policy has been supported by Uber's current Chief Executive Officer, Dara

5    Khosrowshahi.  When he took the action of intentionally embracing this policy, he knew or should

6    have known that it was highly probable that harm would result.  After all, riders will feel less

7    constrained to commit sexual assault if they know it is less likely that law enforcement will be

8    informed.

9           34.    Uber's greed, parochial focus on growth, and misogyny has had tragic

10   consequences. In December 2014, a 26-year-old finance worker hailed an Uber to take her home

11   from a work dinner near New Delhi, India.[16]  When she fell asleep in the car, her Uber driver

12   moved to the backseat and raped her.[17]  The driver had previously been detained for rape.[18]  The

13   rape caused an international imbroglio and New Delhi temporarily banned Uber.[19]  Uber dealt

14   with the situation by attacking the victim.

15          35.    Eric Alexander was president of Uber in the Asia–Pacific region; he was Uber's

16   "number three" and Kalanick's fixer.[20]  He secured, possibly illegally, the New Delhi rape

17   victim's medical records through a law firm.[21]  The records contained the medical examination

18   that doctors performed within hours of her rape.[22]  Alexander shared these records with Mr.

19

20

---

21   [14] *Id.*
     [15] Bensinger, *supra*, note 14.
22   [16] Ellen Barry and Suhasini Raj, *Uber Banned in India's Capital After Rape Accusation*, N.Y.
     TIMES, Dec. 8, 2014, at A4 (available at  https://www.nytimes.com/2014/12/09/world/asia/new-
23   delhi-bans-uber-after-driver-is-accused-of-rape.html?_r=0&module=inline.); Isaac, *supra* note 2,
24   at 149.
     [17] Isaac, *supra* note 4, at 149.
25   [18] Barry and Raj, *supra* note 2, at 149.
     [19]*See id.*
26   [20] Isaac, *supra* note 4, at 260.
     [21] Kara Swisher and Johana Bhuiyan, *A Top Uber Executive, Who Obtained the Medical Records*
27   *of a Customer Who was a Rape Victim, Has Been Fired*, VOX (June 7, 2017),
28   https://www.vox.com/2017/6/7/15754316/uber-executive-india-assault-rape-medical-records.
     [22] Isaac, *supra* note 4, at 261.

9

1  Kalanick and Uber's number two at the time, Emil Michael.[23]  Many other Uber executives here in

2  San Francisco either saw the records or learned of them.[24]  Mr. Kalanick latched on to the fact that

3  the victim's hymen was still intact.[25]  (This despite two people pointing out to him that the victim

4  could have been anally raped.[26]) He began cultivating and sharing a bizarre conspiracy that the

5  woman was not raped; the whole incident was a plot against Uber by Olga, Uber's major ride-

6  sharing competitor in India.[27]  No matter that the Uber driver had a history of sexual assault and

7  had confessed the assault to police.[28]

8       36.     Mr. Kalanick and Uber's leadership and board were the fountainhead of Uber's

9  culture of reckless growth, misogyny, and lawlessness.[29]  When Uber customers accused Uber

10  drivers of sexual assault, something that happened with increasing frequency as Uber grew —

11  given its lax supervision and shoddy background checks — Mr. Kalanick would pace around Uber

12  headquarters, not wondering about how to improve rider safety but repeating the bromide, legally

13  correct but a bromide nonetheless, "innocent until proven guilty."[30]  When law enforcement

14  decided not to bring criminal charges against an Uber driver accused of sexual assault because it

15  felt it did not have enough evidence for a criminal conviction, "a round of cheers would ring out

16  across the fifth floor of Uber HQ."[31]

17       37.     At a cocktail and dinner party with journalists in New York City, Mr. Michael

18  attacked journalists who criticized Uber.[32]  He was particularly angry with Sarah Lacy who had, in

19  a recent story, accused Uber of "sexism and misogyny" and had said she was going to delete her

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

---

[23] Swisher and Bhulyan, *supra* note 23.
[24] *Id.*
[25] Isaac, *supra* note 4, at 261.
[26] *Id.* at 262.
[27] *Id.* At 261; Swisher and Bhulyan, *supra* note 23.
[28] Barry and Raj, *supra* note 18.
[29] Isaac, *supra* note 4, at 194 ("The tone of Uber's culture was being set from the top : . : The result was a workforce that largely reflected Kalanick.
[30] Isaac, *supra* note 4, at 167.
[31] *Id.*
[32] Ben Smith, *Uber Executive Suggest Digging Up Dirt On Journalists*, BUZZ FEED (Nov. 17, 2014) https://www.buzzfeednews.com/article/bensmith/uber-executive-suggests-digging-up-dirt-on-journalists.

1    Uber app because she feared for her safety because of Uber's drivers.[33]  Mr. Michael said that if

2    any woman deleted her Uber app because of Ms. Lacy's story and was sexually assaulted, Ms.

3    Lacy "should be held personally responsible."[34]

4           38.    The actions of Uber's executives and board members demonstrate Uber's contempt

5    for women and myopic focus on profits. Uber only cares about growth. This culture permeates the

6    entire company and endangers Uber's female riders. Sarah Fowler wrote an explosive blog post,

7    describing how pervasive this culture was at Uber.[35]  Ms. Fowler was hired by Uber as a site-

8    reliability engineer in 2016.[36]  On her first day on the job, post-training, her manager sent her a

9    message over the Uber chat system.[37]  He said that he "was in an open relationship . . . and his

10   girlfriend was having an easy time finding new partners but he wasn't. He was trying to stay out of

11   trouble at work, he said, but he couldn't help getting in trouble, because he was looking for

12   women to have sex with."[38]  Ms. Fowler felt it "was clear that he was trying to get [her] to have

13   sex with him, and it was so clearly out of line that [she] immediately took screenshots of [the] chat

14   messages and reported him to" Human Resources.[39]  Uber Human Resources and "upper

15   management" told her that "even though this was clearly sexual harassment and he was

16   propositioning [her], it was this man's first offense, and that they wouldn't feel comfortable giving

17   him anything other than a warning and a stern talking-to."[40]  Upper management told her that her

18   manager "was a high performer," so "they wouldn't feel comfortable punishing him for what was

19   probably just an innocent mistake on his part."[41]  Upper management told Ms. Fowler that she had

20   two choices, join a new Uber team, or stay on her team, under the manager who propositioned her,

21   but she "would have to understand that [the manager] would most likely give [her] a poor

---

[33] *Id.*

[34] *Id*; Isaac, *supra* note 4, at 129.

[35] Susan Fowler, *Reflecting on One Very, Very Strange Year at Uber*, SUSAN J. FOWLER, (Feb. 19, 2017), https://www.susanjfowler.com/blog/2017/2/19/reflecting-on-one-very-strange-year-at-uber.

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *Id.*

[41] *Id.*

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

1  performance review when review time came around, and there was nothing [Human Resources]

2  could do about that."[42]  She was told that by Human Resources that if she chose to stick with the

3  team she was on, that a poor review by her then manger wouldn't be retaliation because she had

4  "been given an option."[43]  Because working under a harassing manager was untenable to Ms.

5  Fowler, she chose to switch teams.[44]  She eventually learned, by talking to other women

6  employees at Uber, that many of them had similar sexual-harassment stories and that the manager

7  who sexually harassed her had sexually harassed others before he sexually harassed her.[45]  That is,

8  she learned that Human Resources and upper management had been mendacious with her. "Within

9  a few months, [the harasser] was reported once again for inappropriate behavior, and those who

10 reported him were told it was still his 'first offense.' The situation was escalated as far up the

11 chain as it could be escalated, and still nothing was done" by Uber.[46]

12       39.     With the bad press Uber was getting because of the sexual assaults, Mr. Michael's

13 comments, and the Sarah Fowler affair, Uber realized it needed to appear that it was making

14 changes and trying to eradicate its toxic-male culture, so it held a company-wide meeting to

15 announce changes. At the meeting, when Uber announced that it was going to increase its

16 diversity and sensitivity by adding a female board member, David Bonderman, another Uber

17 board member, chimed in, announcing to the company that the addition of a woman to the board

18 meant "it's much likelier [there will] be more talking on the board."[47]  Uber's "culture was

19 poisoned from the very top."[48]  Indeed, John William Gurley was a longtime board member of

20 Uber and a close confidant of Mr. Kalanick. He sat on his hands and watched silently as Uber put

21 in place a culture and policies that have hurt many innocent women, including Plaintiffs.

22

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

---

23  [42] *Id.*
    [43] *Id.*

24  [44] Fowler, *supra* note 52.
    [45] *Id.*

25  [46] *Id.*
    [47] Mike Isaac and Susan Chira, *David Bonderman Resigns From Uber Board After Sexist Remark*,

26  N.Y. TIMES, June 13, 2017, at A16 (available at

27  https://www.nytimes.com/2017/06/13/technology/uber-sexual-harassment-huffington-bonderman.html?hp=&action=click&pgtype=Homepage&clickSource=story-heading&module=inline&region=top-news&WT.nav=top-news); Isaac, *supra* note 4,

28  [48] Isaac, *supra* note 4, at 280.

1   40.   In an attempt to buff its tarnished reputation, Uber also hired former Attorney

2   General Eric Holder and his law firm, Covington & Burling LLP, to investigate Uber's culture and

3   work-place environment.[49]

4   41.   During his investigation, as detailed in the publicly released "Holder Report,"

5   Attorney General Holder uncovered "a winding, repetitive list of infractions that had occurred

6   across hundreds of global offices, including sexual assault and physical violence."[50]

7   42.   Uber's sexual-assault and harassment problems have become so big and so public

8   that it has made pale and perfunctory attempts to act as though it is trying to confront them. In

9   May 2018, Uber acknowledged its "deeply rooted problem" of sexual assault. It proclaimed it was

10   committed to solving the problem, stating that "we're making some important changes today."[51]

11   Included in these "important changes" was Uber's promise to publish a "safety transparency report

12   that will include data on sexual assaults . . . that occur on the Uber platform."[52]

13   43.   Despite these promises, no data on sexual assaults for another year and a half.

14   44.   When Uber finally released the report in December 2019, it was forced to

15   acknowledge that in 2018 alone there were 3,045 sexual assaults in the United States during Uber

16   trips — 235 sexual assaults of the "most serious kind."

17   45.   Uber has not publicly disclosed any sexual assault data since that December 2019

18   report. Tony West, Uber's chief legal officer since October 2017 made, and continues to make,

19   the decision of whether and when to release sexual assault data following Uber's

20   acknowledgement of its deeply rooted sexual assault problem. Mr. West continues to withhold the

21   data that would alert Uber passengers and the public to the fact that sexual assaults by Uber

22   drivers continue to occur at an unacceptable and alarming rate.

23   46.   Uber became aware of its sexual assault problem long before it released the Holder

24   report. Uber's operations team "dealt with thousands of misconduct cases every year, including

25

26   [49] Covington & Burling, LLP, *Covington Recommendations* (available at
https://drive.google.com/file/d/0B1s08BdVqCgrUVM4UHBpTGROLXM/view.)
27   [50] Isaac, *supra* note 4, at 271.
[51] Uber, *Turning the Lights On*, https://www.uber.com/newsroom/turning-the-lights-on/.
28   [52] *Id.*

1  instances of sexual assault."[53]

2      47.    Uber "had so lowered the bar to become a driver that people who might have been

3  prevented from driving in the official taxi industry could easily join Uber."[54]

4      48.    As described earlier, these decisions to lower the bar were made by Travis Kalanick

5  and other officers, directors, and managing agents.

6      49.    But it was not that Uber simply lowered the bar. It failed to take adequate steps to

7  make its rides safe; it failed to provide everything necessary for safe transportation of its

8  passengers. For example, Uber failed to install video cameras in the cars. Such a step would have

9  chilled the wantonness of potential predators. It failed to provide an option in the Uber App that

10  allowed female riders to select to be driven by female drivers. And it failed to adopt adequate

11  training of its drivers on issues of sexual assault and sexual harassment. That is, it failed to provide

12  adequately trained drivers.  These policies to fail to make its rides safe were put in place by Travis

13  Kalanick and other officers, directors, and managing agents of Uber.

14      50.    Mr. Kalanick's successor, Dara Khosowshahi, continued the policy of not requiring

15  third-party operated cameras in Uber vehicles.

16      51.    Mr. Kalanick, Mr. Khosowshahi, and other officers, directors, and managing agents

17  of Uber knew that if they put cameras in cars less sexual assaults during Uber rides would occur.

18  They knew that if they provided an option that would allow female passengers to choose to be

19  driven by female drivers, fewer sexual assaults during rides would occur. They knew that if they

20  better trained their drivers in sexual-assault prevention, less sexual assaults would occur during

21  Uber rides. They intentionally refused to put these safety policies in place with actual and

22  constructive knowledge that not putting these policies in place made it highly probable that harm

23  to female Uber passengers would result.

24      52.    Uber's response to the driver sexual assaults that were reported to the company also

25  evidenced the conscious disregard of Uber executives, including Mr. Kalanick and Mr.

26  Khosrowshahi.  A 2019 Washington Post investigative piece revealed Uber maintained a three

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

[53] Issac, *supra* note 4, at 166.
[54] *Id.* at 177.

strikes policy for its drivers.[55] Investigators hired by Uber to investigate the more serious passenger complaints about drivers, such as drug use, physical violence, and sexual assault reported, "A driver would only be deactivated under three circumstances: 1) if it was the second or third reported offense; 2) if there is corroborative evidence like video or a police report; 3) if the driver admits to the assault."[56] Even with a three-strikes policy, Uber executives would make exceptions to keep dangerous drivers on the road. "For instance, a New York-area driver allegedly made three separate sexual advances on riders, said an investigator assigned to the case. After an executive overruled the investigator, the driver was allowed to continue working until a fourth incident, when a rider claimed he raped her."[57]

53.     As Uber became more popular, more people realized Uber had so lowered the bar that people with checkered backgrounds could drive for Uber. People also realized that Uber had not provided everything necessary for safe rides, that is, everything that might make it more difficult to get away with sexual assaults, like video cameras in cars. In addition, they recognized Uber was at the same time marketing itself to women as a safe mode of transportation, including after drinking. Because of these factors, Uber became a magnet for sexual predators — men who knew that driving for Uber meant they would get to drive around intoxicated women late at night. These men started sexually assaulting women at alarming rates, as the Holder Report shows. And, as stated earlier, Uber and its officers, directors, and managing agents — including Travis Kalanick — had actual knowledge that these sexual assaults were going on, on the platform and women were being hurt. But they did nothing. They failed to start screening drivers better and failed to place video cameras in cars. They intentionally refused to implement these safety measures despite actual knowledge of the problem, and these officers, directors, and managing agents — including Travis Kalanick — had actual or constructive knowledge that refusing to do so meant there was a high probability that more female passengers would be harmed, which is

---

[55] https://www.washingtonpost.com/technology/2019/09/25/ubers-investigations-unit-finds-what-went-wrong-rides-its-never-companys-fault/

[56] *Id.*
[57] *Id.*

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

1    what ended up happening to Plaintiffs.

2                              **B.  The Attack on Plaintiffs**

3            54.      This suit arises from the grave injuries Plaintiffs suffered (set forth in more detail

4    below) as a result of the wrongful acts and omissions of Defendants.

5                                **1. Jane Doe LSA 115**

6            55.      Plaintiff Jane Doe LSA 115 ("Doe 115") is transgender. In or around August 2018,

7    Doe 115 ordered an Uber to get her safely home. When the driver assigned by the Uber App

8    arrived, his mannerisms led Plaintiff to believe the driver recognized Plaintiff was transgender.

9
10   After complimenting Doe 115's lips, in a manner that was sexually charged and inappropriate, the

11   comments escalated, and the driver started requesting that Plaintiff perform sexual acts on him.

12   Plaintiff was uncomfortable and frightened and repeatedly refused the driver's requests.  The Uber

13   driver called Doe 115 a "pussy" and continued with his requests, threatening to leave her stranded

14   if she did not agree to perform oral sex on him.  Doe 115 demanded the driver let her out of the

15   car, but he did not pull over.  Afraid of what the driver might do next, Plaintiff jumped out of the

16   vehicle while it was still moving. She had to cross the on-ramp of the freeway and walk the rest of

17   the way home in the dark. When Doe 115 arrived home, she saw that Uber charged her for the full

18
19   ride and a $150 cleaning fee, for which there was no justification. Uber refused to reverse the

20   cleaning charge and locked Doe 115 out of her Uber account.  The Uber driver's disgusting and

21   inappropriate behavior frightened, humiliated, degraded, violated, and robbed Plaintiff Doe 115 of

22   her dignity and personal safety.
23
24           56.      Uber collected and retained a fee for the Uber trip that resulted in Plaintiff Doe 115

25   being falsely imprisoned and sexually assaulted.

26           57.      By failing to take reasonable steps to confront the problem of multiple rapes and

27   sexual assaults of Uber passengers by Uber drivers, Uber has acted in conscious disregard of the

28

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

1    safety of its passengers, including Doe 115, has breached its duty of reasonable care, and has

2    breached the implied and express covenants arising from its contract with its passengers.

3        58.    The Uber driver who perpetrated the above-described assault, sexually assaulted, or

4    otherwise attacked Doe 115 in the course and scope of his employment with Uber and while he

5    was still under Uber's direction and control. These acts caused Plaintiff pain and suffering that

6    persists to this day.

7

8        59.    The Uber driver was acting on behalf of, for the benefit of, at the direction of, and

9    within the course and scope of employment with Uber and engagement by Uber. Uber provided

10   the Uber driver with access to its ride-sharing app platform, a tool necessary for Uber drivers to

11   perform the work Uber assigned. Uber, through the Uber App, directed the Uber driver regarding

12   the location of the pickup, time of the pickup, and routes for both the pickup of Plaintiff and

13   transportation to her destination, and much more, as discussed below.

14       60.    The Uber driver, who assaulted Doe 115 was an agent or employee of Uber, which

15   is a common carrier. His duties were directed at the comfort and protection of passengers in his

16   car, including Jane Doe LSA 115.

17

18       61.    Uber derived a monetary benefit from every ride to an Uber driver through its app,

19   including the Plaintiff's ride during which she was falsely imprisoned and sexually assaulted.

20                              **2. Jane Doe LSA 116**

21       62.    In or around August 2015, Plaintiff Jane Doe LSA 116 ("Doe 116") was

22   intoxicated and ordered an Uber to get home safely. After being paired with Plaintiff through the

23   Uber App and picking her up, the Uber driver deviated significantly from Plaintiff's intended

24   route. Plaintiff was terrified and began to cry. The Uber driver then reached over and put his hand

25   up Doe 116's skirt and groped her vagina. Doe 116 pushed his hand away, but the Uber driver

26   groped her vagina again. This happened numerous times before the driver finally took Plaintiff

27

28

1   home. This sexual assault frightened, humiliated, degraded, violated, and robbed Plaintiff Doe 116

2   of her dignity and personal safety.

3       63.    Uber collected and retained a fee for the Uber trip that resulted in Plaintiff Doe 116

4   being falsely imprisoned, sexually assaulted and sexually battered.

5

6       64.    By failing to take reasonable steps to confront the problem of multiple rapes and

7   sexual assaults of Uber passengers by Uber drivers, Uber has acted in conscious disregard of the

8   safety of its passengers, including Doe 116, has breached its duty of reasonable care, and has

9   breached the implied and express covenants arising from its contract with its passengers.

10      65.    The Uber driver who perpetrated the above-described assault, sexually assaulted, or

11  otherwise attacked Doe 116 in the course and scope of his employment with Uber and while he

12  was still under Uber's direction and control. These acts caused Plaintiff pain and suffering that

13  persists to this day.

14

15      66.    The Uber driver was acting on behalf of, for the benefit of, at the direction of, and

16  within the course and scope of employment with Uber and engagement by Uber. Uber provided

17  the Uber driver with access to its ride-sharing app platform, a tool necessary for Uber drivers to

18  perform the work Uber assigned. Uber, through the Uber App, directed the Uber driver regarding

19  the location of the pickup, time of the pickup, and routes for both the pickup of Plaintiff and

20  transportation to her destination, and much more, as discussed below.

21

22      67.    The Uber driver, who assaulted Doe 116 was an agent or employee of Uber, which

23  is a common carrier. His duties were directed at the comfort and protection of passengers in his

24  car, including Jane Doe LSA 116.

25      68.    Uber derived a monetary benefit from every ride to an Uber driver through its app,

26  including the Plaintiff's ride during which she was falsely imprisoned, sexually assaulted and

27  sexually battered.

28

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

18

### 3. Jane Doe LSA 117

69.     In or around March 2019, Plaintiff Jane Doe LSA 117's ("Doe 117") friend ordered her an Uber to take her across state lines in Louisville, KY to go to Illinois using the Uber App. During the ride, Plaintiff fell asleep and woke up halfway through the trip to find the assigned driver groping her while masturbating at the same time. When Plaintiff demanded the driver to stop, he threatened to kick her out and kill her if she spoke up again. This sexual assault frightened, humiliated, degraded, violated, and robbed Plaintiff Doe 117 of her dignity and personal safety.

70.     Uber collected and retained a fee for the Uber trip that resulted in Plaintiff Doe 117 being falsely imprisoned, sexually assaulted and sexually battered.

71.     By failing to take reasonable steps to confront the problem of multiple rapes and sexual assaults of Uber passengers by Uber drivers, Uber has acted in conscious disregard of the safety of its passengers, including Doe 117, has breached its duty of reasonable care, and has breached the implied and express covenants arising from its contract with its passengers.

72.     The Uber driver who perpetrated the above-described assault, sexually assaulted, or otherwise attacked Doe 117 in the course and scope of his employment with Uber and while he was still under Uber's direction and control. These acts caused Plaintiff pain and suffering that persists to this day.

73.     The Uber driver was acting on behalf of, for the benefit of, at the direction of, and within the course and scope of employment with Uber and engagement by Uber. Uber provided the Uber driver with access to its ride-sharing app platform, a tool necessary for Uber drivers to perform the work Uber assigned. Uber, through the Uber App, directed the Uber driver regarding the location of the pickup, time of the pickup, and routes for both the pickup of Plaintiff and transportation to her destination, and much more, as discussed below.

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

74.     The Uber driver, who assaulted Doe 117 was an agent or employee of Uber, which is a common carrier. His duties were directed at the comfort and protection of passengers in his car, including Jane Doe LSA 117.

75.     Uber derived a monetary benefit from every ride to an Uber driver through its app, including the Plaintiff's ride during which she was falsely imprisoned, sexually assaulted and sexually battered.

### 4. Jane Doe LSA 118

76.     Early one morning in or around June 2016, Plaintiff Jane Doe LSA 118 ("Doe 118") ordered an Uber to take her to a friend's house. After the driver paired with Plaintiff through the Uber App picked her up, the driver began asking probing personal questions and said he wanted to touch Plaintiff's body. Doe 118 told the driver she was gay, thinking that would put an end to the driver's advances, however, the driver's questions and statements got even raunchier, and he propositioned Plaintiff for a threesome. Plaintiff did her best to ignore the driver's inappropriate behavior. She had a long ride home and was afraid he would dump her on the side of the highway or do something even worse. As they were getting close to the neighborhood where Doe 118's friend lived, the Uber driver slowed to a near stop and reached back trying to grope Plaintiff's breasts, but she was able to block his hand. He continued to drive, and as they approached Doe 118's intended destination, the Uber driver climbed over the seat repeating his attempts to grope Doe 118's breasts and kiss her. This sexual assault frightened, humiliated, degraded, violated, and robbed Plaintiff Doe 118 of her dignity and personal safety.

77.     Uber collected and retained a fee for the Uber trip that resulted in Plaintiff Doe 118 being sexually assaulted.

78.     By failing to take reasonable steps to confront the problem of multiple rapes and sexual assaults of Uber passengers by Uber drivers, Uber has acted in conscious disregard of the

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

1  safety of its passengers, including Doe 118, has breached its duty of reasonable care, and has

2  breached the implied and express covenants arising from its contract with its passengers.

3      79.    The Uber driver who perpetrated the above-described assault, sexually assaulted, or

4  otherwise attacked Doe 118 in the course and scope of his employment with Uber and while he

5  was still under Uber's direction and control. These acts caused Plaintiff pain and suffering that

6
7  persists to this day.

8      80.    The Uber driver was acting on behalf of, for the benefit of, at the direction of, and

9  within the course and scope of employment with Uber and engagement by Uber. Uber provided

10  the Uber driver with access to its ride-sharing app platform, a tool necessary for Uber drivers to

11  perform the work Uber assigned. Uber, through the Uber App, directed the Uber driver regarding

12  the location of the pickup, time of the pickup, and routes for both the pickup of Plaintiff and

13
14  transportation to her destination, and much more, as discussed below.

15      81.    The Uber driver, who assaulted Doe 118 was an agent or employee of Uber, which

16  is a common carrier. His duties were directed at the comfort and protection of passengers in his

17  car, including Jane Doe LSA 118.

18      82.    Uber derived a monetary benefit from every ride to an Uber driver through its app,

19  including the Plaintiff's ride during which she was sexually assaulted.       .

20
21                        **5. Jane Doe LSA 119**

22      83.    In or around April 2016, Plaintiff Jane Doe LSA 119 ("Doe 119") ordered an Uber

23  using the Uber App. After being paired with Plaintiff through the Uber App, the Uber driver put

24  his hand between Plaintiff's legs, grabbed her crotch, and tried to insert his fingers into her vagina.

25  Terrified, Doe 119 immediately told the driver to pull over and began to try and make a scene to

26  attract attention while in traffic until he finally stopped the car and let her out. This depraved

27
28

---

21

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

attack frightened, humiliated, degraded, violated, and robbed Plaintiff Doe 119 of her dignity and personal safety.

84.     Uber collected and retained a fee for the Uber trip that resulted in Plaintiff Doe 119 being sexually assaulted and sexually battered.

85.     By failing to take reasonable steps to confront the problem of multiple rapes and sexual assaults of Uber passengers by Uber drivers, Uber has acted in conscious disregard of the safety of its passengers, including Doe 119, has breached its duty of reasonable care, and has breached the implied and express covenants arising from its contract with its passengers.

86.     The Uber driver who perpetrated the above-described assault, sexually assaulted, or otherwise attacked Doe 119 in the course and scope of his employment with Uber and while he was still under Uber's direction and control. These acts caused Plaintiff pain and suffering that persists to this day.

87.     The Uber driver was acting on behalf of, for the benefit of, at the direction of, and within the course and scope of employment with Uber and engagement by Uber. Uber provided the Uber driver with access to its ride-sharing app platform, a tool necessary for Uber drivers to perform the work Uber assigned. Uber, through the Uber App, directed the Uber driver regarding the location of the pickup, time of the pickup, and routes for both the pickup of Plaintiff and transportation to her destination, and much more, as discussed below.

88.     The Uber driver, who assaulted Doe 119 was an agent or employee of Uber, which is a common carrier. His duties were directed at the comfort and protection of passengers in his car, including Jane Doe LSA 119.

89.     Uber derived a monetary benefit from every ride to an Uber driver through its app, including the Plaintiff's ride during which she was sexually assaulted and sexually battered.

///

**6. Jane Doe LSA 120**

90.     In or around March 2017, Plaintiff Jane Doe LSA 120 ("Doe 120") ordered an Uber to get safely to the train station after work.  At several points during the ride, the Uber driver assigned to the ride ignored the GPS and went the wrong way. When Doe 120 tried to correct the driver and tell him the correct way to go or asked him why he was going the wrong way, he would become angry.  Plaintiff asked the driver to let her out of the car, but he refused, and the doors were child locked. What was supposed to be around a three-mile trip turned into a terrifying hour and a half long ride. Throughout the ride the Uber driver made sexual comments about Doe 120's appearance and being attracted to her because of her body type and ethnicity.  An hour into the ride, the driver ended the ride on the app without letting Plaintiff out of the vehicle. Eventually the driver pulled into a deserted area that was not Plaintiff's intended destination.  Scared of what the driver was going to do next, Doe 120 said she had a gun and was not afraid to use it. It was only then that the driver let her out of the car.  This kidnapping and sexual assault terrified, humiliated, degraded, violated, and robbed Plaintiff Doe 120 of her dignity and personal safety.

91.     Uber collected and retained a fee for the Uber trip that resulted in Plaintiff Doe 120 being kidnapped, falsely imprisoned and sexually assaulted.

92.     By failing to take reasonable steps to confront the problem of multiple rapes and sexual assaults of Uber passengers by Uber drivers, Uber has acted in conscious disregard of the safety of its passengers, including Doe 120, has breached its duty of reasonable care, and has breached the implied and express covenants arising from its contract with its passengers.

93.     The Uber driver who perpetrated the above-described assault, sexually assaulted, or otherwise attacked Doe 120 in the course and scope of his employment with Uber and while he was still under Uber's direction and control. These acts caused Plaintiff pain and suffering that persists to this day.

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

94.     The Uber driver was acting on behalf of, for the benefit of, at the direction of, and within the course and scope of employment with Uber and engagement by Uber. Uber provided the Uber driver with access to its ride-sharing app platform, a tool necessary for Uber drivers to perform the work Uber assigned. Uber, through the Uber App, directed the Uber driver regarding the location of the pickup, time of the pickup, and routes for both the pickup of Plaintiff and transportation to her destination, and much more, as discussed below.

95.     The Uber driver, who assaulted Doe 120 was an agent or employee of Uber, which is a common carrier. His duties were directed at the comfort and protection of passengers in his car, including Jane Doe LSA 120.

96.     Uber derived a monetary benefit from every ride to an Uber driver through its app, including the Plaintiff's ride during which she was kidnapped, falsely imprisoned and sexually assaulted.

### 7. Jane Doe LSA 121

97.     In or around November 2016, Plaintiff Jane Doe LSA 121 ("Doe 121") was out with friends, one of whom ordered an Uber to get them home safely. Upon arriving at their destination, Doe 121's friends exited the vehicle as Doe 121 was gathering her belongings. Before Plaintiff could exit, the driver jumped over the console into the back seat, pinned Doe 121 down and sexually molested her by groping her breasts and vaginal area and kissing her all over as he held the door handle of the car to keep Doe 121 from escaping. Eventually Doe 121 manipulated the driver into moving his hand from the door handle while shifting his weight and Plaintiff managed to escape. This depraved attack humiliated, degraded, violated, and robbed Plaintiff Doe 121 of her dignity and personal safety.

98.     Uber collected and retained a fee for the Uber trip that resulted in Plaintiff Doe 121 being falsely imprisoned, sexually assaulted and sexually battered.

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

99.     By failing to take reasonable steps to confront the problem of multiple rapes and sexual assaults of Uber passengers by Uber drivers, Uber has acted in conscious disregard of the safety of its passengers, including Doe 121, has breached its duty of reasonable care, and has breached the implied and express covenants arising from its contract with its passengers.

100.     The Uber driver who perpetrated the above-described assault, sexually assaulted, or otherwise attacked Doe 121 in the course and scope of his employment with Uber and while he was still under Uber's direction and control. These acts caused Plaintiff pain and suffering that persists to this day.

101.     The Uber driver was acting on behalf of, for the benefit of, at the direction of, and within the course and scope of employment with Uber and engagement by Uber. Uber provided the Uber driver with access to its ride-sharing app platform, a tool necessary for Uber drivers to perform the work Uber assigned. Uber, through the Uber App, directed the Uber driver regarding the location of the pickup, time of the pickup, and routes for both the pickup of Plaintiff and transportation to her destination, and much more, as discussed below.

102.     The Uber driver, who assaulted Doe 121 was an agent or employee of Uber, which is a common carrier. His duties were directed at the comfort and protection of passengers in his car, including Jane Doe LSA 121.

103.     Uber derived a monetary benefit from every ride to an Uber driver through its app, including the Plaintiff's ride during which she was falsely imprisoned, sexually assaulted and sexually battered.

### 8. Jane Doe LSA 122

104.     In or around June 2017, Plaintiff Jane Doe LSA 122 ("Doe 122") ordered an Uber to get home safely. After being paired with Plaintiff through the Uber App, the driver sexually

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

harassed Plaintiff and groped her thigh. This unwanted and inappropriate behavior frightened, humiliated, degraded, violated, and robbed Plaintiff Doe 122 of her dignity and personal safety.

105.    Uber collected and retained a fee for the Uber trip that resulted in Plaintiff Doe 122 being sexually assaulted and sexually battered.

106.    By failing to take reasonable steps to confront the problem of multiple rapes and sexual assaults of Uber passengers by Uber drivers, Uber has acted in conscious disregard of the safety of its passengers, including Doe 122, has breached its duty of reasonable care, and has breached the implied and express covenants arising from its contract with its passengers.

107.    The Uber driver who perpetrated the above-described assault, sexually assaulted, or otherwise attacked Doe 122 in the course and scope of his employment with Uber and while he was still under Uber's direction and control. These acts caused Plaintiff pain and suffering that persists to this day.

108.    The Uber driver was acting on behalf of, for the benefit of, at the direction of, and within the course and scope of employment with Uber and engagement by Uber. Uber provided the Uber driver with access to its ride-sharing app platform, a tool necessary for Uber drivers to perform the work Uber assigned. Uber, through the Uber App, directed the Uber driver regarding the location of the pickup, time of the pickup, and routes for both the pickup of Plaintiff and transportation to her destination, and much more, as discussed below.

109.    The Uber driver, who assaulted Doe 122 was an agent or employee of Uber, which is a common carrier. His duties were directed at the comfort and protection of passengers in his car, including Jane Doe LSA 122.

110.    Uber derived a monetary benefit from every ride to an Uber driver through its app, including the Plaintiff's ride during which she was sexually assaulted and sexually battered.

///

### 9. Jane Doe LSA 123

111.     In or around March 2015, Plaintiff Jane Doe LSA 123 ("Doe 123") went out to brunch with friends that turned into a day of drinking. At the end of the day, Plaintiff ordered an Uber to get home safely. After being paired with Plaintiff through the Uber App, the Uber driver digitally penetrated Plaintiff while she was unconscious or blacked out due to intoxication. A rape exam confirmed fingernail shaped lacerations on Doe 123's labia, a black eye, and a contusion to her face. This depraved attack humiliated, degraded, violated, and robbed Plaintiff Doe 123 of her dignity and personal safety.

112.     Uber collected and retained a fee for the Uber trip that resulted in Plaintiff Doe 123 being falsely imprisoned, sexually assaulted and sexually battered.

113.     By failing to take reasonable steps to confront the problem of multiple rapes and sexual assaults of Uber passengers by Uber drivers, Uber has acted in conscious disregard of the safety of its passengers, including Doe 123, has breached its duty of reasonable care, and has breached the implied and express covenants arising from its contract with its passengers.

114.     The Uber driver who perpetrated the above-described assault, sexually assaulted, or otherwise attacked Doe 123 in the course and scope of his employment with Uber and while he was still under Uber's direction and control. These acts caused Plaintiff pain and suffering that persists to this day.

115.     The Uber driver was acting on behalf of, for the benefit of, at the direction of, and within the course and scope of employment with Uber and engagement by Uber. Uber provided the Uber driver with access to its ride-sharing app platform, a tool necessary for Uber drivers to perform the work Uber assigned. Uber, through the Uber App, directed the Uber driver regarding the location of the pickup, time of the pickup, and routes for both the pickup of Plaintiff and transportation to her destination, and much more, as discussed below.

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

116.    The Uber driver, who assaulted Doe 123 was an agent or employee of Uber, which is a common carrier. His duties were directed at the comfort and protection of passengers in his car, including Jane Doe LSA 123.

117.    Uber derived a monetary benefit from every ride to an Uber driver through its app, including the Plaintiff's ride during which she was falsely imprisoned, sexually assaulted and sexually battered.

### 10. Jane Doe LSA 124

118.    In or around March 2019, Plaintiff Jane Doe LSA 124 ("Doe 124") ordered an Uber to get her and a friend home safely. After arriving to the Plaintiff's destination, Plaintiff and her friend exited the vehicle. Doe 124 noticed that she left her phone and turned back to get it. The Uber driver, who was outside of the car, pulled out his penis, grabbed her arm and forced Plaintiff to touch it. The Uber driver also groped her breasts and vagina. This depraved attack humiliated, degraded, violated, and robbed Plaintiff Doe 124 of her dignity and personal safety.

119.    Uber collected and retained a fee for the Uber trip that resulted in Plaintiff Doe 124 being sexually assaulted and sexually battered.

120.    By failing to take reasonable steps to confront the problem of multiple rapes and sexual assaults of Uber passengers by Uber drivers, Uber has acted in conscious disregard of the safety of its passengers, including Doe 124, has breached its duty of reasonable care, and has breached the implied and express covenants arising from its contract with its passengers.

121.    The Uber driver who perpetrated the above-described assault, sexually assaulted, or otherwise attacked Doe 124 in the course and scope of his employment with Uber and while he was still under Uber's direction and control. These acts caused Plaintiff pain and suffering that persists to this day.

///

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

122.    The Uber driver was acting on behalf of, for the benefit of, at the direction of, and within the course and scope of employment with Uber and engagement by Uber. Uber provided the Uber driver with access to its ride-sharing app platform, a tool necessary for Uber drivers to perform the work Uber assigned. Uber, through the Uber App, directed the Uber driver regarding the location of the pickup, time of the pickup, and routes for both the pickup of Plaintiff and transportation to her destination, and much more, as discussed below.

123.    The Uber driver, who assaulted Doe 124 was an agent or employee of Uber, which is a common carrier. His duties were directed at the comfort and protection of passengers in his car, including Jane Doe LSA 124.

124.    Uber derived a monetary benefit from every ride to an Uber driver through its app, including the Plaintiff's ride during which she was sexually assaulted and sexually battered.

**11. Jane Doe LSA 125**

125.    In or around August 2018, Plaintiff Jane Doe LSA 125 ("Doe 125") ordered an Uber to get home safely.  After being paired with Plaintiff through the Uber App, the Uber driver sexually harassed the Plaintiff by asking her to perform oral sex and by touching her breasts. This unwanted and inappropriate behavior frightened, humiliated, degraded, violated, and robbed Plaintiff Doe 125 of her dignity and personal safety.

126.    Uber collected and retained a fee for the Uber trip that resulted in Plaintiff Doe 125 being sexually harassed and sexually assaulted and sexually battered.

127.    By failing to take reasonable steps to confront the problem of multiple rapes and sexual assaults of Uber passengers by Uber drivers, Uber has acted in conscious disregard of the safety of its passengers, including Doe 125, has breached its duty of reasonable care, and has breached the implied and express covenants arising from its contract with its passengers.

///

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

128.   The Uber driver who perpetrated the above-described assault, sexually assaulted, or otherwise attacked Doe 125 in the course and scope of his employment with Uber and while he was still under Uber's direction and control. These acts caused Plaintiff pain and suffering that persists to this day.

129.   The Uber driver was acting on behalf of, for the benefit of, at the direction of, and within the course and scope of employment with Uber and engagement by Uber. Uber provided the Uber driver with access to its ride-sharing app platform, a tool necessary for Uber drivers to perform the work Uber assigned. Uber, through the Uber App, directed the Uber driver regarding the location of the pickup, time of the pickup, and routes for both the pickup of Plaintiff and transportation to her destination, and much more, as discussed below.

130.   The Uber driver, who assaulted Doe 125 was an agent or employee of Uber, which is a common carrier. His duties were directed at the comfort and protection of passengers in his car, including Jane Doe LSA 125.

131.   Uber derived a monetary benefit from every ride to an Uber driver through its app, including the Plaintiff's ride during which she was sexually harassed, sexually assaulted and sexually battered.

### 12. Jane Doe LSA 126

132.   In or around August 2019, Plaintiff Jane Doe LSA 126 ("Doe 126") was intoxicated and ordered an Uber to get home safely.  After being paired with Plaintiff through the Uber App, the Uber driver pulled over, exposed himself and insisted Doe 126 touch his genitals. This unwanted and inappropriate behavior frightened, humiliated, degraded, violated, and robbed Plaintiff Doe 126 of her dignity and personal safety.

133.   Uber collected and retained a fee for the Uber trip that resulted in Plaintiff Doe 126 being sexually assaulted.

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

134.     By failing to take reasonable steps to confront the problem of multiple rapes and sexual assaults of Uber passengers by Uber drivers, Uber has acted in conscious disregard of the safety of its passengers, including Doe 126, has breached its duty of reasonable care, and has breached the implied and express covenants arising from its contract with its passengers.

135.     The Uber driver who perpetrated the above-described assault, sexually assaulted, or otherwise attacked Doe 126 in the course and scope of his employment with Uber and while he was still under Uber's direction and control. These acts caused Plaintiff pain and suffering that persists to this day.

136.     The Uber driver was acting on behalf of, for the benefit of, at the direction of, and within the course and scope of employment with Uber and engagement by Uber. Uber provided the Uber driver with access to its ride-sharing app platform, a tool necessary for Uber drivers to perform the work Uber assigned. Uber, through the Uber App, directed the Uber driver regarding the location of the pickup, time of the pickup, and routes for both the pickup of Plaintiff and transportation to her destination, and much more, as discussed below.

137.     The Uber driver, who assaulted Doe 126 was an agent or employee of Uber, which is a common carrier. His duties were directed at the comfort and protection of passengers in his car, including Jane Doe LSA 126.

138.     Uber derived a monetary benefit from every ride to an Uber driver through its app, including the Plaintiff's ride during which she was sexually assaulted.

### 13. Jane Doe LSA 127

139.     In or around October 2018, Plaintiff Jane Doe LSA 127 ("Doe 127"), ordered an Uber to get home safely from work. Doe 127 ordered an Uber Pool and shared the ride with other passengers, who sat in the backseat. After dropping the other passengers off, the driver assigned by the Uber App made inappropriate sexual comments to Plaintiff and then pulled over and

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

touched her inappropriately. Doe 127 had to beg the Uber driver to take her home. This disgusting behavior frightened, humiliated, degraded, violated, and robbed Plaintiff Doe 127 of her dignity and personal safety.

140.    Uber collected and retained a fee for the Uber trip that resulted in Plaintiff Doe 127 being sexually assaulted and sexually battered.

141.    By failing to take reasonable steps to confront the problem of multiple rapes and sexual assaults of Uber passengers by Uber drivers, Uber has acted in conscious disregard of the safety of its passengers, including Doe 127, has breached its duty of reasonable care, and has breached the implied and express covenants arising from its contract with its passengers.

142.    The Uber driver who perpetrated the above-described assault, sexually assaulted, or otherwise attacked Doe 127 in the course and scope of his employment with Uber and while he was still under Uber's direction and control. These acts caused Plaintiff pain and suffering that persists to this day.

143.    The Uber driver was acting on behalf of, for the benefit of, at the direction of, and within the course and scope of employment with Uber and engagement by Uber. Uber provided the Uber driver with access to its ride-sharing app platform, a tool necessary for Uber drivers to perform the work Uber assigned. Uber, through the Uber App, directed the Uber driver regarding the location of the pickup, time of the pickup, and routes for both the pickup of Plaintiff and transportation to her destination, and much more, as discussed below.

144.    The Uber driver, who assaulted Doe 127 was an agent or employee of Uber, which is a common carrier. His duties were directed at the comfort and protection of passengers in his car, including Jane Doe LSA 127.

145.    Uber derived a monetary benefit from every ride to an Uber driver through its app, including the Plaintiff's ride during which she was sexually assaulted and sexually battered.

**14. Jane Doe LSA 128**

146.    Early one morning in or around May 2017, Plaintiff Jane Doe LSA 128 ("Doe 128") ordered an Uber to take her from her mother's house to work. The driver assigned to the ride through the Uber App inappropriately touched Plaintiff while making inappropriate comments during the ride. Plaintiff immediately asked the driver to pull over and let her out at a gas station. This unwanted and inappropriate behavior frightened, humiliated, degraded, violated, and robbed Plaintiff Doe 127 of her dignity and personal safety.

147.    Uber collected and retained a fee for the Uber trip that resulted in Plaintiff Doe 128 being sexually assaulted and sexually battered.

148.    By failing to take reasonable steps to confront the problem of multiple rapes and sexual assaults of Uber passengers by Uber drivers, Uber has acted in conscious disregard of the safety of its passengers, including Doe 128, has breached its duty of reasonable care, and has breached the implied and express covenants arising from its contract with its passengers.

149.    The Uber driver who perpetrated the above-described assault, sexually assaulted, or otherwise attacked Doe 128 in the course and scope of his employment with Uber and while he was still under Uber's direction and control. These acts caused Plaintiff pain and suffering that persists to this day.

150.    The Uber driver was acting on behalf of, for the benefit of, at the direction of, and within the course and scope of employment with Uber and engagement by Uber. Uber provided the Uber driver with access to its ride-sharing app platform, a tool necessary for Uber drivers to perform the work Uber assigned. Uber, through the Uber App, directed the Uber driver regarding the location of the pickup, time of the pickup, and routes for both the pickup of Plaintiff and transportation to her destination, and much more, as discussed below.

///

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

151.     The Uber driver, who assaulted Doe 128 was an agent or employee of Uber, which is a common carrier. His duties were directed at the comfort and protection of passengers in his car, including Jane Doe LSA 128.

152.     Uber derived a monetary benefit from every ride to an Uber driver through its app, including the Plaintiff's ride during which she was sexually assaulted and sexually battered.

### 15. Jane Doe LSA 129

153.     In or around April 2019, Plaintiff Jane Doe LSA 129 ("Doe 129") ordered an Uber to get home safely after going out with friends using the Uber App. The driver assigned to the ride made inappropriate comments that frightened Plaintiff. He then pulled over at a gas station and sexually molested Plaintiff, groping her crotch area and forcibly trying to kiss her.  Plaintiff tried to escape, but the driver had locked her in the car. She had to call out the window of the car for help, and the attendant at the gas station made the driver let her out of the car.  This depraved attack frightened, humiliated, degraded, violated, and robbed Plaintiff Doe 129 of her dignity and personal safety.

154.     Uber collected and retained a fee for the Uber trip that resulted in Plaintiff Doe 129 being falsely imprisoned, sexually assaulted and sexually battered.

155.     By failing to take reasonable steps to confront the problem of multiple rapes and sexual assaults of Uber passengers by Uber drivers, Uber has acted in conscious disregard of the safety of its passengers, including Doe 129, has breached its duty of reasonable care, and has breached the implied and express covenants arising from its contract with its passengers.

156.     The Uber driver who perpetrated the above-described assault, sexually assaulted, or otherwise attacked Doe 129 in the course and scope of his employment with Uber and while he was still under Uber's direction and control. These acts caused Plaintiff pain and suffering that persists to this day.

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

157.   The Uber driver was acting on behalf of, for the benefit of, at the direction of, and within the course and scope of employment with Uber and engagement by Uber. Uber provided the Uber driver with access to its ride-sharing app platform, a tool necessary for Uber drivers to perform the work Uber assigned. Uber, through the Uber App, directed the Uber driver regarding the location of the pickup, time of the pickup, and routes for both the pickup of Plaintiff and transportation to her destination, and much more, as discussed below.

158.   The Uber driver, who assaulted Doe 129 was an agent or employee of Uber, which is a common carrier. His duties were directed at the comfort and protection of passengers in his car, including Jane Doe LSA 129.

159.   Uber derived a monetary benefit from every ride to an Uber driver through its app, including the Plaintiff's ride during which she was falsely imprisoned, sexually assaulted and sexually battered.

### 16. Jane Doe LSA 130

160.   In or around March 2018, Plaintiff Jane Doe LSA 130 ("Doe 130") needed a ride to her car and a friend, who was not with her, ordered her an Uber. After being paired with Plaintiff through the Uber App, the Uber driver drove around for a bit before cancelling the ride, without letting Doe 130 out of the car.  Plaintiff's phone was dead, so she could not call for help. The Uber driver forced Plaintiff to sit in the front seat and kidnapped her for close to seven hours. During this time, Plaintiff was terrified, believing she was going to be sexually assaulted or sexually trafficked. Plaintiff managed to charge her phone without the driver seeing, at which point she was able to share her location with her friend, who had to come rescue her. Doe 130's friend had to pay the driver hundreds of dollars before the driver would let her out of the car. The seven-hour kidnapping frightened, humiliated, degraded, violated, and robbed Plaintiff Doe 130 of her dignity and personal safety.

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

161.    Uber collected and retained a fee for the Uber trip that resulted in Plaintiff Doe 130 being falsely imprisoned and kidnapped.

162.    By failing to take reasonable steps to confront the problem of multiple rapes and sexual assaults of Uber passengers by Uber drivers, Uber has acted in conscious disregard of the safety of its passengers, including Doe 130, has breached its duty of reasonable care, and has breached the implied and express covenants arising from its contract with its passengers.

163.    The Uber driver who perpetrated the above-described assault, sexually assaulted, or otherwise attacked Doe 130 in the course and scope of his employment with Uber and while he was still under Uber's direction and control. These acts caused Plaintiff pain and suffering that persists to this day.

164.    The Uber driver was acting on behalf of, for the benefit of, at the direction of, and within the course and scope of employment with Uber and engagement by Uber. Uber provided the Uber driver with access to its ride-sharing app platform, a tool necessary for Uber drivers to perform the work Uber assigned. Uber, through the Uber App, directed the Uber driver regarding the location of the pickup, time of the pickup, and routes for both the pickup of Plaintiff and transportation to her destination, and much more, as discussed below.

165.    The Uber driver, who assaulted Doe 130 was an agent or employee of Uber, which is a common carrier. His duties were directed at the comfort and protection of passengers in his car, including Jane Doe LSA 130.

166.    Uber derived a monetary benefit from every ride to an Uber driver through its app, including the Plaintiff's ride during which she was falsely imprisoned and kidnapped.

— **17: Jane Doe LSA 131**

167.    In or around August 2016, Plaintiff Jane Doe LSA 131 ("Doe 131") was intoxicated and ordered an Uber to get home safely.  After being paired with Plaintiff through the

36

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

Uber App, the Uber driver drove past her destination to another city 1.5 hours away. When the Plaintiff noticed how far she was, she asked the driver to let her out. Instead of complying, the driver pretended not to understand. Fearing the driver was kidnapping her so he could sexually assault her, Doe 131 had to jump out of the vehicle at a stop sign. This unwanted and inappropriate behavior frightened, humiliated, degraded, violated, and robbed Plaintiff Doe 131 of her dignity and personal safety.

168.   Uber collected and retained a fee for the Uber trip that resulted in Plaintiff Doe 131 being falsely imprisoned and kidnapped.

169.   By failing to take reasonable steps to confront the problem of multiple rapes and sexual assaults of Uber passengers by Uber drivers, Uber has acted in conscious disregard of the safety of its passengers, including Doe 131, has breached its duty of reasonable care, and has breached the implied and express covenants arising from its contract with its passengers.

170.   The Uber driver who perpetrated the above-described assault, sexually assaulted, or otherwise attacked Doe 131 in the course and scope of his employment with Uber and while he was still under Uber's direction and control. These acts caused Plaintiff pain and suffering that persists to this day.

171.   The Uber driver was acting on behalf of, for the benefit of, at the direction of, and within the course and scope of employment with Uber and engagement by Uber. Uber provided the Uber driver with access to its ride-sharing app platform, a tool necessary for Uber drivers to perform the work Uber assigned. Uber, through the Uber App, directed the Uber driver regarding the location of the pickup, time of the pickup, and routes for both the pickup of Plaintiff and transportation to her destination, and much more, as discussed below.

///

///

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

172.    The Uber driver, who assaulted Doe 131 was an agent or employee of Uber, which is a common carrier. His duties were directed at the comfort and protection of passengers in his car, including Jane Doe LSA 131.

173.    Uber derived a monetary benefit from every ride to an Uber driver through its app, including the Plaintiff's ride during which she was falsely imprisoned and kidnapped.

### 18. Jane Doe LSA 132

174.    In or around October 2016, Plaintiff Jane Doe LSA 132 ("Doe 132") ordered an Uber to get home safely from a friend's house. After being paired with Plaintiff through the Uber App, the Uber driver made inappropriate comments to Plaintiff before exposing himself to Plaintiff and masturbating. The Uber driver then reached back and groped Plaintiff's breasts and vagina. This disgusting attack humiliated, degraded, violated, and robbed Plaintiff Doe 132 of her dignity and personal safety.

175.    Uber collected and retained a fee for the Uber trip that resulted in Plaintiff Doe 132 being sexually assaulted and sexually battered.

176.    By failing to take reasonable steps to confront the problem of multiple rapes and sexual assaults of Uber passengers by Uber drivers, Uber has acted in conscious disregard of the safety of its passengers, including Doe 132, has breached its duty of reasonable care, and has breached the implied and express covenants arising from its contract with its passengers.

177.    The Uber driver who perpetrated the above-described assault, sexually assaulted, or otherwise attacked Doe 132 in the course and scope of his employment with Uber and while he was still under Uber's direction and control. These acts caused Plaintiff pain and suffering that persists to this day.

178.    The Uber driver was acting on behalf of, for the benefit of, at the direction of, and within the course and scope of employment with Uber and engagement by Uber. Uber provided

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

the Uber driver with access to its ride-sharing app platform, a tool necessary for Uber drivers to perform the work Uber assigned. Uber, through the Uber App, directed the Uber driver regarding the location of the pickup, time of the pickup, and routes for both the pickup of Plaintiff and transportation to her destination, and much more, as discussed below.

179.   The Uber driver, who assaulted Doe 132 was an agent or employee of Uber, which is a common carrier. His duties were directed at the comfort and protection of passengers in his car, including Jane Doe LSA 132.

180.   Uber derived a monetary benefit from every ride to an Uber driver through its app, including the Plaintiff's ride during which she was sexually assaulted and sexually battered.

**19. Jane Doe LSA 133**

181.   In or around December 2016, Plaintiff Jane Doe 133 ("Doe 133") ordered an Uber to get safely home from work.  The driver paired with Plaintiff through the Uber App made inappropriate comments regarding Plaintiff's physical appearance and sexually assaulted Plaintiff, groping her breasts and genitalia. This depraved attack humiliated, degraded, violated, and robbed Plaintiff Doe 133 of her dignity and personal safety.

182.   Uber collected and retained a fee for the Uber trip that resulted in Plaintiff Doe 133 being sexually assaulted and sexually battered.

183.   By failing to take reasonable steps to confront the problem of multiple rapes and sexual assaults of Uber passengers by Uber drivers, Uber has acted in conscious disregard of the safety of its passengers, including Doe 133, has breached its duty of reasonable care, and has breached the implied and express covenants arising from its contract with its passengers.

184.   The Uber driver who perpetrated the above-described assault, sexually assaulted, or otherwise attacked Doe 133 in the course and scope of his employment with Uber and while he

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

1    was still under Uber's direction and control. These acts caused Plaintiff pain and suffering that

2    persists to this day.

3        185.    The Uber driver was acting on behalf of, for the benefit of, at the direction of, and

4    within the course and scope of employment with Uber and engagement by Uber. Uber provided

5    the Uber driver with access to its ride-sharing app platform, a tool necessary for Uber drivers to

6    perform the work Uber assigned. Uber, through the Uber App, directed the Uber driver regarding

7    the location of the pickup, time of the pickup, and routes for both the pickup of Plaintiff and

8    transportation to her destination, and much more, as discussed below.

9

10       186.    The Uber driver, who assaulted Doe 133 was an agent or employee of Uber, which

11   is a common carrier. His duties were directed at the comfort and protection of passengers in his

12   car, including Jane Doe LSA 133.

13       187.    Uber derived a monetary benefit from every ride to an Uber driver through its app,

14   including the Plaintiff's ride during which she was sexually assaulted and sexually battered.

15

16                              **20. Jane Doe LSA 134**

17       188.    In or around February 2019, an acquaintance ordered an Uber to get Plaintiff Jane

18   Doe LSA 134 ("Doe 134") to her destination safely. After being paired with Plaintiff through the

19   Uber App, the Uber driver pulled over, pinned Plaintiff down in the back seat and raped her.  This

20   depraved attack humiliated, degraded, violated, and robbed Plaintiff Doe 134 of her dignity and

21   personal safety.

22

23       189.    Uber collected and retained a fee for the Uber trip that resulted in Plaintiff Doe 134

24   being falsely imprisoned, sexually assaulted, sexually battered and raped.

25       190.    By failing to take reasonable steps to confront the problem of multiple rapes and

26   sexual assaults of Uber passengers by Uber drivers, Uber has acted in conscious disregard of the

27

28

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

safety of its passengers, including Doe 134, has breached its duty of reasonable care, and has breached the implied and express covenants arising from its contract with its passengers.

191.   The Uber driver who perpetrated the above-described assault, sexually assaulted, or otherwise attacked Doe 134 in the course and scope of his employment with Uber and while he was still under Uber's direction and control. These acts caused Plaintiff pain and suffering that persists to this day.

192.   The Uber driver was acting on behalf of, for the benefit of, at the direction of, and within the course and scope of employment with Uber and engagement by Uber. Uber provided the Uber driver with access to its ride-sharing app platform, a tool necessary for Uber drivers to perform the work Uber assigned. Uber, through the Uber App, directed the Uber driver regarding the location of the pickup, time of the pickup, and routes for both the pickup of Plaintiff and transportation to her destination, and much more, as discussed below.

193.   The Uber driver, who assaulted Doe 134 was an agent or employee of Uber, which is a common carrier. His duties were directed at the comfort and protection of passengers in his car, including Jane Doe LSA 134.

194.   Uber derived a monetary benefit from every ride to an Uber driver through its app, including the Plaintiff's ride during which she was falsely imprisoned, sexually assaulted, sexually battered and raped.

### 21. Jane Doe LSA 135

195.   In or around October 2019, Plaintiff Jane Doe LSA 135 ("Doe 135") ordered an Uber to get safely to her destination. After being paired with Plaintiff through the Uber App, the Uber driver made inappropriate comments to Plaintiff, propositioned her for sex, threatened her, groped her breasts, and refused to let Doe 135 out of the car when she asked. The Uber driver appeared to Plaintiff to be intoxicated and he was driving dangerously and erratically. Plaintiff

was terrified for the entire ride.  This depraved attack humiliated, degraded, violated, and robbed Plaintiff Doe 135 of her dignity and personal safety.

196.    Uber collected and retained a fee for the Uber trip that resulted in Plaintiff Doe 135 being falsely imprisoned, sexually assaulted and sexually battered.

197.    By failing to take reasonable steps to confront the problem of multiple rapes and sexual assaults of Uber passengers by Uber drivers, Uber has acted in conscious disregard of the safety of its passengers, including Doe 135, has breached its duty of reasonable care, and has breached the implied and express covenants arising from its contract with its passengers.

198.    The Uber driver who perpetrated the above-described assault, sexually assaulted, or otherwise attacked Doe 135 in the course and scope of his employment with Uber and while he was still under Uber's direction and control. These acts caused Plaintiff pain and suffering that persists to this day.

199.    The Uber driver was acting on behalf of, for the benefit of, at the direction of, and within the course and scope of employment with Uber and engagement by Uber. Uber provided the Uber driver with access to its ride-sharing app platform, a tool necessary for Uber drivers to perform the work Uber assigned. Uber, through the Uber App, directed the Uber driver regarding the location of the pickup, time of the pickup, and routes for both the pickup of Plaintiff and transportation to her destination, and much more, as discussed below.

200.    The Uber driver, who assaulted Doe 135 was an agent or employee of Uber, which is a common carrier. His duties were directed at the comfort and protection of passengers in his car, including Jane Doe LSA 135.

201.    Uber derived a monetary benefit from every ride to an Uber driver through its app, including the Plaintiff's ride during which she was falsely imprisoned, sexually assaulted and sexually battered.

**22. Jane Doe LSA 136**

202.    In or around December 2016, Plaintiff Jane Doe LSA 136 ("Doe 136") ordered an Uber to get safely to her destination. After they arrived at Plaintiff's destination, the Uber driver who had been paired with Plaintiff through the Uber App, opened the door to the backseat and groped plaintiff's vaginal area.  This depraved attack humiliated, degraded, violated, and robbed Plaintiff Doe 137 of her dignity and personal safety.

203.    Uber collected and retained a fee for the Uber trip that resulted in Plaintiff Doe 136 being sexually assaulted and sexually battered.

204.    By failing to take reasonable steps to confront the problem of multiple rapes and sexual assaults of Uber passengers by Uber drivers, Uber has acted in conscious disregard of the safety of its passengers, including Doe 136, has breached its duty of reasonable care, and has breached the implied and express covenants arising from its contract with its passengers.

205.    The Uber driver who perpetrated the above-described assault, sexually assaulted, or otherwise attacked Doe 136 in the course and scope of his employment with Uber and while he was still under Uber's direction and control. These acts caused Plaintiff pain and suffering that persists to this day.

206.    The Uber driver was acting on behalf of, for the benefit of, at the direction of, and within the course and scope of employment with Uber and engagement by Uber. Uber provided the Uber driver with access to its ride-sharing app platform, a tool necessary for Uber drivers to perform the work Uber assigned. Uber, through the Uber App, directed the Uber driver regarding the location of the pickup, time of the pickup, and routes for both the pickup of Plaintiff and transportation to her destination, and much more, as discussed below.

///

///

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

207.   The Uber driver, who assaulted Doe 136 was an agent or employee of Uber, which is a common carrier. His duties were directed at the comfort and protection of passengers in his car, including Jane Doe LSA 136.

208.   Uber derived a monetary benefit from every ride to an Uber driver through its app, including the Plaintiff's ride during which she was sexually assaulted and sexually battered.

### 23. Jane Doe LSA 137

209.   In or around February 2016, Plaintiff Jane Doe LSA 137 ("Doe 137") ordered an Uber for her and a friend to get them home safely after drinking. After dropping off Doe 137's friend, the Uber driver who had been paired with Plaintiff through the Uber app pulled over to the side of the road and groped Plaintiff under her shorts, going as far as to kiss her buttocks at the same time. This depraved attack humiliated, degraded, violated, and robbed Plaintiff Doe 137 of her dignity and personal safety.

210.   Uber collected and retained a fee for the Uber trip that resulted in Plaintiff Doe 137 being sexually assaulted and sexually battered.

211.   By failing to take reasonable steps to confront the problem of multiple rapes and sexual assaults of Uber passengers by Uber drivers, Uber has acted in conscious disregard of the safety of its passengers, including Doe 137, has breached its duty of reasonable care, and has breached the implied and express covenants arising from its contract with its passengers.

212.   The Uber driver who perpetrated the above-described assault, sexually assaulted, or otherwise attacked Doe 137 in the course and scope of his employment with Uber and while he was still under Uber's direction and control. These acts caused Plaintiff pain and suffering that persists to this day.

213.   The Uber driver was acting on behalf of, for the benefit of, at the direction of, and within the course and scope of employment with Uber and engagement by Uber. Uber provided

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

44

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

the Uber driver with access to its ride-sharing app platform, a tool necessary for Uber drivers to perform the work Uber assigned. Uber, through the Uber App, directed the Uber driver regarding the location of the pickup, time of the pickup, and routes for both the pickup of Plaintiff and transportation to her destination, and much more, as discussed below.

214.    The Uber driver, who assaulted Doe 137 was an agent or employee of Uber, which is a common carrier. His duties were directed at the comfort and protection of passengers in his car, including Jane Doe LSA 137.

215.    Uber derived a monetary benefit from every ride to an Uber driver through its app, including the Plaintiff's ride during which she was sexually assaulted and sexually battered.

### C. Uber

216.    Uber is a transportation company. Its core business is providing transportation to the public at large through its network of drivers. It connects its drivers to the public through the Uber App. Anyone from the public may download the Uber App for free. Using the app, a customer may request a ride from one of Uber's drivers for a standardized charge unilaterally set by Uber. Uber directs its drivers to pick up the passengers and transport them to their destinations.

217.    Uber provides transportation through a digital application made available to the general public for the purpose of transporting its users, the passengers, from place to place for profit. Uber has widely offered its services to the general public and charges standard fees for its services through its application.  Uber does not allow discrimination against passengers on the basis of race, color, national origin, religion, gender, gender identity, physical or mental disability, medical condition, marital status, age, or sexual orientation.  Any member of the public can use Uber's services for transportation.

218.    Uber is a common carrier under California Civil Code § 2168 and the common law.[58]  Uber holds itself out to the public generally and indifferently to transport persons from

---

[58] *See, e.g., Doe v. Uber Techs., Inc.*, 184 F. Supp.3d 774, 787 (N.D. Cal. 2016) ("Plaintiff's allegations support the claim that Uber 'offers to the public to carry persons,' thereby bringing it within California's definition of common carrier for tort purposes.").

COMPLAINT FOR DAMAGES

place to place for profit. As a common carrier, Uber owes its passengers, including the Plaintiffs named herein, a heightened duty of care, under both the common law and California Civil Code § 2100. Uber has an affirmative duty to protect its passengers from assault by one of its employees or contractors and is liable for its employees' or agents' assaults, regardless of whether such acts were committed within the course and scope of employment for Uber.

219.   Given the heightened duty Uber has as a common carrier, to the extent it failed or refused to implement procedures, policies, and app functions that it knew or should have known would prevent assaults such as those suffered by Plaintiffs, as Plaintiffs have alleged herein, Uber is liable for the above-described tortious acts of its drivers, which caused harm to Plaintiffs.

220.   Further, the heightened duty Uber has as a common carrier is a non-delegable duty. Under the common law, Uber has a non-delegable duty to safely transport its passengers from the place it picks them up to their destination. This duty cannot be delegated to Uber drivers. When an Uber driver assaults a passenger, Uber is liable for the driver's actions due to its non-delegable duty.

221.   Uber drivers are largely nonprofessional, untrained, and use their own vehicles. Uber employs and engages its drivers, including Uber Driver, in traditional at-will relationships, in which:

    a.  Uber has the discretion to fire its drivers for any reason and at any time; that is, Uber maintains the right to discharge its drivers at will, and without cause;

    b.  Drivers are not charged a fee by Uber to apply to become employees;

    c.  At all times relevant, there was no agreement between Uber and driver designating the driver as an independent contractor;

    d.  Drivers are not charged a fee to download the app or to receive notifications from Uber that customers want rides;

    e.  Fare prices for rides are set exclusively by Uber;

    f.  Drivers have no input on fares charged to consumers;

    g.  Drivers are not permitted to negotiate with consumers on fares charged;

    h.  Uber can and does modify charges to consumers; for example, if Uber determines that

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

a driver has taken a circuitous route to a destination;

i.  Uber takes a fee of every ride charged to a consumer;

j.  Uber retains control over customer-contact information;

k.  Uber controls its drivers' contacts with its consumer base and considers its consumer list to be proprietary information;

l.  In some instances, Uber controls the hours a driver works;

m.  Drivers are not permitted to answer passenger inquiries about booking future rides outside of the Uber App;

n.  Driving for Uber is not a specialized skill;

o.  Uber's business model depends on having a large pool of non-professional drivers;

p.  Drivers must abide by a list of regulations to drive for Uber;

q.  Uber requires its drivers to pick up Uber customers on the correct side of the street;

r.  Uber forbids its drivers from talking on their cell phones while the drivers are driving customers;

s.  Uber tracks drivers' speed and braking and sends drivers reports based on how many times the driver had to brake hard;

t.  Uber drivers are not allowed to ask Uber customers for their contact information;

u.  Drivers who reject too many ride requests risk facing discipline, including suspension or termination;

v.  Consumers give feedback on rides they have taken, and rate drivers on a scale from one to five stars. These ratings are used by Uber to discipline and terminate drivers; and

w.  Such other acts of control that discovery will show.

222.   Uber actively markets itself as a safe company that provides safe rides. Both before 2014 and after, Uber actively and aggressively marketed the supposed safety of its transportation services. These efforts continue to this day, and include email messages sent to every Uber customer, including Plaintiffs.

223.   Over the years, Uber has launched a number of marketing campaigns specifically marketing its transportation services to, among others, young women too intoxicated to drive.

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

224.   Uber represented to its customers, including Plaintiffs, on its website all of the following:

a.   "How we help keep you safe – We're committed to helping you get where you want to go with confidence, whether it's building emergency features in the app or making it easy for you to check your ride."

b.   "Ride with confidence – The Uber experience was built with safety in mind. Through incident prevention tools, insurance coverage, and technology that keeps you connected, we're dedicated to helping you move safely and focus on what matters most."

c.   "Ride with confidence – Designing a safer ride – driver screenings – All potential drivers in the US must complete a screening before becoming an Uber driver-partner, and current drivers continue to be vetted for criminal offenses."

d.   "Ride with confidence – Designing a safer ride – On every trip, you can tap a button for safety tools and get help whenever you need it."

e.   "Ride with confidence – Designing a safer ride – An inclusive community – Through our joint efforts with cities and safety experts and by working together, we're helping to create safe journeys for everyone."

f.   "Our commitment to safety – You deserve to be able to move safely. To look forward to the opportunities ahead. To be connected to people and places that matter most. Which is why we're focused on your safety, from setting new standards to developing technology with the goal of reducing incidents."

g.   "How safety is built into your experience – Safety features in the app – Tap a button for emergency assistance. Share your trip details with loved ones. Our technology helps put peace of mind at your fingertips."

h.   "How safety is built into your experience – An inclusive community – Millions of riders and drivers share a set of Community Guidelines, holding each other accountable to do the right thing."

i.   "How safety is built into your experience – Coverage on every trip – We've put

48

insurance from leading companies in place for every ride."

j. "Building safer journeys for everyone – Rider safety – Uber driver-partners in the US go through a multi-point screening check for their driving and criminal history before they are authorized to take trips through the app. Every rider has access to safety features built into the app and a support team if you need them."

k. "The future of safety – More than 200 Uber employees, from researchers and scientists to designers and engineers, are focused on building technology that puts safety at the heart of your experience."

l. "Safe rides around the clock – Affordable, reliable transportation can help make roads safer. Need a late-night ride and can't drive yourself? Request a ride with Uber."

225.   Uber actively and publicly markets its transportation services to be safe and reliable services.

226.   Uber has cultivated an image among its customers of safety and superiority to public transportation and traditional taxis. Because of aggressive marketing, most Uber customers are generally unaware of the real risks associated with Uber rides and continue to believe a ride with Uber is a safer and better alternative.

227.   In 2016, Uber agreed to pay $28.5 million to settle a class action lawsuit over its fraudulent marketing of its security screening as "industry-leading."

228.   Riders, including Plaintiffs, reasonably rely on Uber's representations and promises regarding safety and security measures. Riders, including Plaintiffs, choose to ride with Uber as a result of this reliance.

229.   Uber markets its ride hailing service to female riders as a safer alternative to traditional taxis.

230.   Uber advertised, "driving change for women's safety" on its website to specifically represent and promote women's safety while using Uber, which states "[s]exual assault and gender-based violence don't belong anywhere in our communities, which is why Uber is committed to help stop incidents before they happen".

231.   In 2015, Uber released a report with Mothers Against Drunk Driving "MADD" that

49

states "The Uber App was created to ensure reliable access to safe rides." The report states that with Uber, intoxicated persons can find "a safe, reliable ride home" that is "always within reach."[59]

232.    The safe image that Uber aggressively cultivates suggests to customers, including Plaintiff, that riding while intoxicated with Uber is safe. Uber does not inform riders, like Plaintiffs, that hailing a ride after drinking puts riders in peril from the drivers themselves. By marketing heavily to young women who have been drinking, and promising safe rides, Uber puts riders in peril.

233.    Uber knew its representations and promises about rider safety were false and misleading yet continued to allow riders to believe in the truth of these representations and promises and continued to profit from riders' reliance on those representations and promises.

234.    Unfortunately, an Uber driver sexually assaulting a passenger is not an isolated or rare occurrence. A safety report Uber released in December 2019, showed there were thousands of sexual assaults during Uber rides in 2018 alone.[60] Tony West, Uber's Chief Legal Officer, said in response to that report, the "numbers are jarring and hard to digest."[61]

235.    Uber employs a vast network of drivers. But, at all relevant times, Uber provided its drivers with inadequate training regarding sexual assault, sexual relations, sexually inappropriate behavior, sensitivity, and customer relations.

236.    Uber has also provided inadequate background checks and screening of its drivers. Among other things, it does not fingerprint its drivers, it does not run the applicant drivers against all available public databases, and it does not do international background checks.

237.    Uber lobbies state and local governments to limit what is required of Uber with respect to driver background checks.  Uber also lobbies local government entities to continue allowing Uber to perform its own background checks of its driver applicants, rather than municipalities performing the more stringent screening they do for traditional taxi drivers.

---

[59] Uber and MADD Report, "More Options. Shifting Mindsets. Driving Better Choices," January 2015.
[60] New York Times, "Uber says 3,045 sexual assaults were reported in U.S. rides last year," December 5, 2019.
[61] *Id.*

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax.

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

238.    Uber has successfully persuaded lawmakers in several states, including California, to keep background check requirements for its drivers limited.

239.    As a direct result of Uber's lobbying efforts, those entities largely self-enforce hiring standards for their drivers. Whereas, in cities where municipalities perform the screening, such as in Houston, Texas and Seattle Washington, hundreds of driver applicants Uber approved are ultimately rejected by the municipality.

240.    Even where authorized to do so, Uber generally does not perform driver background checks and instead outsource the checks to a third-party vendor that often limits the extent of its background check and that does not verify the information provided by the applicant is accurate or complete. The turnaround time for an Uber background check is often under 36 hours.

241.    The application process to become an Uber driver is simple, fast, and designed to allow the company to hire as many drivers as possible while incurring minimal associated costs. Uber fought for and implemented a less robust hiring process knowing it would be at the expense of passenger safety.

242.    Although Uber claims its drivers are not employees, Uber engages its drivers as part of its business and the Uber drivers are charged with the responsibility of safely transporting Uber passengers to their destination.

**DELAYED DISCOVERY AND FRAUDULENT CONCEALMENT**

243.    The discovery rule applies to toll the running of the statute of limitations until Plaintiffs knew, or through the exercise of reasonable care and diligence, should have known of the existence of their claim against Uber.

244.    Plaintiffs were not aware of the foreseeability of the sexual assault they endured because Uber intentionally concealed the fact that Uber drivers had been regularly sexually assaulting women since at least 2014 and instead represented that Uber was a safe mode of transportation.

245.    A reasonable investigation by Plaintiffs at the time of their sexual assault would not have revealed the factual basis of their causes of action against Uber.  This is because Uber,

51

1  through marketing and more, took actions to conceal that its drivers regularly and frequently

2  assaulted women. This is also because Uber has publicly claimed that it does not control its drivers

3  and that its drivers are not Uber employees.  As such, despite reasonable diligence, Plaintiffs were

4  unable to discover Uber's negligent or wrongful conduct, which brought about or contributed to

5  bringing about the sexual assault suffered.

6        246.    Furthermore, the running of any statute of limitations has been equitably tolled by

7  reason of Uber's intentional representations and fraudulent concealment and conduct.

8        247.    Through its affirmative misrepresentations and omissions, Uber actively concealed

9  from Plaintiffs the true risks associated with using the Uber App and riding in an Uber,

10  specifically, the risk of being kidnapped, sexually assaulted, sexually battered, raped, falsely

11  imprisoned, stalked, harassed, and/or otherwise attacked.

12        248.    As a result of Uber's actions, Plaintiffs were unaware, and could not reasonably

13  know or have learned through reasonable diligence that Uber could be held liable for the risks its

14  drivers posed as alleged herein and that those risks were the direct and proximate result of Uber's

15  acts and omissions.

16        249.    Plaintiffs did not learn of Uber's negligent or wrongful cause in bringing about the

17  sexual assault until after they saw advertisements for legal help, so their claims are not time

18  barred.

19        250.    Furthermore, Uber is estopped from relying on any statute of limitations because of

20  its concealment of the truth about its failure to adequately employ measures to ensure the safety of

21  its passengers. Uber had a duty to disclose the true character, quality and nature of its background

22  checks and the incidence of Uber drivers sexually assaulting or otherwise attacking passengers,

23  because this was non-public information over which Defendants had, and continue to have,

24  exclusive control, and because Defendants knew this information was not available to Plaintiffs,

25  Uber passengers/customers, and/or the general public.

26  ///

27  ///

28  ///

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

## CAUSES OF ACTION
## COUNT ONE– GENERAL NEGLIGENCE
### *(All Plaintiffs)*

251.    The preceding paragraphs of this Complaint are incorporated by reference.

252.    By providing transportation to the general public using its application and network of drivers, Uber owed a duty to act with due and reasonable care towards the public and in particular its own passengers, including Plaintiffs.

253.    Uber has been on notice that its drivers have been sexually harassing, sexually assaulting, and raping its passengers since at least 2014.  Uber was aware or should have been aware that some Uber drivers would continue to sexually assault, stalk, harass, kidnap, physically assault, rape, and/or otherwise attack their vulnerable Uber patrons and passengers.

254.    Since learning of the sexual assaults perpetrated by its drivers, Uber never adapted or improved its safety procedures in any meaningful way.

255.    Uber does not require video monitoring of its drivers that cannot be turned off, nor does it provide emergency notification to Uber and the authorities when a driver drastically veers off course from the passenger's destination, abruptly cancels the ride, or ends the ride at the intended destination but GPS data indicates the passenger remains in the car for a significant period of time.

256.    At all times relevant, Uber was well aware of the dangers its drivers posed, yet it still induced, and continues to induce, the public, including Plaintiffs, to rely on Uber as a safe means of transportation.  In doing so, Uber failed to warn passengers, including Plaintiffs, of the possibility of being kidnapped, sexually assaulted, sexually battered, raped, falsely imprisoned, stalked, harassed, and/or otherwise attacked by an Uber driver.

257.    At the time Plaintiffs were assaulted, Uber did not require sexual harassment/assault training for its drivers, nor did it have any policies in place for immediate termination if a driver engages in sexual misconduct.

258.    Uber does not cooperate with the police when a driver commits an illegal sexual attack on its passengers.  Despite having the express right to disclose driver information at Uber's sole discretion, Uber requires that extensive standards be met before the company will even

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

consider law enforcement requests for information. Even after a report of sexual assault has been made, Uber generally requires a subpoena before it will release information. Uber's policy of noncooperation discourages police agencies from making recommendations to District Attorneys' offices to file complaints against Uber drivers, and provides Uber's predatory drivers with tacit assurance that their illegal attacks will not be detected by law enforcement.

259. When hiring new drivers, Uber does not verify driver identities with biometric background checks. Uber does not correct for false negatives created by its name-based screening procedures. Uber does not provide industry-standard background checks which would provide the most comprehensive means of screening applicant drivers. Uber does not invest in continuous monitoring of its drivers and is not immediately alerted when one of its drivers is implicated in criminal acts.

260. Uber does not have a consistent, reliable system for addressing passenger reports of sexual assault by its drivers and continues to let dangerous predators drive for and earn money for Uber.

261. For the above reasons and others, Uber breached its duty of reasonable care to Plaintiffs.

262. As a legal and direct result of Uber's aforementioned conduct and omissions, Plaintiffs were kidnapped, sexually assaulted, sexually battered, raped, falsely imprisoned, stalked, harassed, and/or otherwise attacked by an Uber Driver, which humiliated, degraded, violated, and robbed Plaintiffs of their dignity and personal safety. The assaults on Plaintiffs caused them to suffer psychological and physical harm from which some or all may never fully recover.

263. As a direct and legal result of Uber's general negligence, Plaintiffs suffered damages, both economic and general, non-economic damages, according to proof.

**COUNT TWO – NEGLIGENT HIRING, SUPERVISION, AND RETENTION**

***(All Plaintiffs)***

264. Plaintiffs hereby incorporate by reference the preceding causes of action and factual allegations.

265. Uber engaged and retained or otherwise employed Uber drivers who sexually

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

1  assaulted, stalked, harassed, kidnapped, physically assaulted, raped, and/or otherwise attacked
2  Plaintiffs as described above.

3      266.    Uber did not interview, check the references of, provide training to, or advise the
4  Uber drivers of any anti-sexual assault policies when hiring them. Uber had no reasonable basis
5  for believing Uber drivers in general were fit to drive vulnerable women around, particularly at
6  night, and failed to use reasonable care in determining whether each driver was fit for the task.
7  Uber should have known of the unfitness of the Uber drivers involved in the assaults described
8  herein, but failed to use reasonable care to discover their unfitness and incompetence.

9      267.    Despite failing to reasonably endeavor to investigate the incompetence of Uber
10  drivers, including the ones who harmed Plaintiffs, for transporting vulnerable and or intoxicated
11  women late at night in a moving vehicle, Uber hired said drivers to do exactly that.

12      268.    Uber knew or should have known that assigning the task of transporting vulnerable
13  passengers late at night to an inadequately screened driver created an unreasonable risk of harm to
14  Uber's passengers, including Plaintiffs, particularly when Uber had been on notice of the string of
15  sexual assaults committed by Uber's drivers.

16      269.    Uber failed to employ measures to adequately supervise its drivers.

17      270.    Uber failed to adequately record, investigate, and respond to passenger reports of
18  unsafe conduct such as sexual harassment and sexual assault by Uber drivers.

19      271.    Uber was negligent in failing to terminate drivers it knew or reasonably should
20  have known were a threat to passengers, including but not limited to Plaintiffs and other
21  vulnerable female passengers traveling alone.

22      272.    The Uber drivers who assaulted Plaintiffs were, and/or became, unfit to perform the
23  work for which they were hired as they improperly and illegally took advantage of Plaintiffs when
24  they attempted to use the service for a safe ride to their destinations, thereby causing psychological
25  and or physical harm.

26      273.    Because of the Uber drivers' unfitness to perform the task of transporting Plaintiffs,
27  Plaintiffs were sexually assaulted, harassed, sexually battered, raped, falsely imprisoned, and/or
28  otherwise attacked which humiliated, degraded, violated, and robbed Plaintiffs of their dignity and

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

1  personal safety.

2  274.  Uber's negligence in hiring, retaining, and or supervising Uber drivers, including

3  the drivers who harmed Plaintiffs, caused Plaintiffs to be kidnapped, sexually assaulted, sexually

4  battered, raped, falsely imprisoned, stalked, harassed, and/or otherwise attacked by their Uber

5  drivers, which humiliated, degraded, violated, and robbed Plaintiffs of their dignity and personal

6  safety.  The depraved attacks on Plaintiffs caused Plaintiffs to suffer both physical and or

7  psychological harm from which some may never fully recover.

8  275.  As a direct and legal result of Defendants' negligent supervision, hiring, and

9  retention of Uber drivers, including the drivers who harmed Plaintiffs, Plaintiffs have suffered

10  damages, both economic and general, non-economic damages according to proof.

## COUNT THREE – COMMON CARRIER NEGLIGENCE
### *(All Plaintiffs)*

12  276.  Plaintiffs hereby incorporate by reference the preceding causes of action and

13  factual allegations.

14  277.  At the time Plaintiffs were falsely imprisoned and sexually assaulted, Uber was a

16  common carrier as it provided transportation to the general public.

17  278.  Uber provides transportation through a digital application made available to the

18  general public for the purpose of transporting its users, the passengers, from place to place for

19  profit.  Uber has widely offered its services to the general public and charges standard fees for its

20  services through its application.  Uber does not allow discrimination against passengers on the

21  basis of race, color, national origin, religion, gender, gender identity, physical or mental disability,

22  medical condition, marital status, age, or sexual orientation.  Any member of the public can use

23  Uber's services for transportation.

24  279.  As a common carrier, Uber must carry its passengers, including Plaintiffs, safely.

25  280.  Uber has a duty to employ the utmost degree of care and diligence that would be

26  expected of a very cautious company.  Uber has a duty to do all that human care, vigilance, and

27  foresight reasonably can do under the circumstances to avoid harm to passengers, including

28  Plaintiffs.

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

281.     Uber must use reasonable skill to provide everything necessary for safe transportation, in view of the transportation used and the practical operation of the business.

282.     Despite complaints to Uber of sexual assaults committed by Uber drivers and lawsuits against Uber for sexual assault, Uber has failed to implement safety precautions that would adequately address its sexual assault problem.

283.     Uber does not provide a consistent and reliable way for passengers to report sexual abuse and rape.

284.     Uber does not warn passengers of the dangers of riding with Uber and fails to warn passengers of past complaints regarding Uber drivers.

285.     Uber does not have an effective program in place to deal with the sexual predator crisis posed by some of its drivers.

286.     Uber knows its female passengers are in a uniquely vulnerable situation enclosed in a moving vehicle and that a subset of its drivers are sexual predators.

287.     Uber has not exercised reasonable care to protect its passengers from harassment, assault, and rape by Uber's drivers.

288.     Uber has not exercised the utmost degree of care in order to protect its passengers from the danger posed by sexual predators who drive for Uber. If Uber had used the highest degree of care, Uber could have prevented or dramatically reduced the likelihood of the sexual assault of its passengers, including Plaintiffs.

289.     Uber failed to safely transport Plaintiffs.

290.     Uber failed to use the utmost care and vigilance to protect Plaintiffs from its own drivers who sexually assaulted, stalked, harassed, kidnapped, physically assaulted, raped, and/or otherwise attacked Plaintiffs while they were being transported by Uber.

291.     Uber failed to take reasonable precautions to protect its vulnerable female passengers, including Plaintiffs, from the foreseeable and known risk of sexual assault, harassment and/or rape by its drivers. If Uber had used the highest degree of care, Uber could have prevented or reduced the likelihood of the sexual assault of its passengers, including Plaintiffs.

292.     As a legal and direct result of the aforementioned conduct and omissions of Uber,

Plaintiffs were kidnapped, sexually assaulted, sexually battered, raped, falsely imprisoned, stalked, harassed, and/or otherwise attacked by an Uber driver, which humiliated, degraded, violated, and robbed Plaintiffs of their dignity and personal safety. The depraved attack on Plaintiffs caused Plaintiffs to suffer both physical and or psychological harm from which some or all may never fully recover.

293.    As a direct and legal result of Uber's negligence as a common carrier, Plaintiffs have suffered damages, both economic and general, non-economic damages according to proof.

## COUNT FOUR – NEGLIGENT FAILURE TO WARN
### *(All Plaintiffs)*

294.    Plaintiffs hereby incorporate by reference the preceding causes of action and factual allegations.

295.    Uber's conduct created a risk of physical or emotional harm to its passengers, including Plaintiffs.

296.    In operating its business, Uber knew and had reason to know that its passengers were at risk of sexual assault and abuse by Uber's drivers since at least 2014. Since then, Uber has received frequent passenger complaints about driver misbehavior, has been notified of police investigations of drivers' criminal conduct while acting within their capacity as Uber drivers, and has been the subject of numerous civil suits alleging the sexual harassment and sexual assault of Uber's passengers by Uber's drivers.

297.    Despite the knowledge of the danger its enterprise created, Uber prioritized profits over passenger safety and did not alert its passengers, including Plaintiffs, to the risk of sexual assault by Uber drivers. In fact, Uber continued to market itself as a service that provides "safe" rides, even to unaccompanied and/or intoxicated passengers, knowing sufficient measures had not been employed to keep passengers safe from being sexually assaulted.

298.    Uber itself represented to its passengers that riding with Uber is safe, implying it is free of risk from sexual assault.

299.    Uber did not warn that its criminal background checks of Uber drivers were limited, nor did it warn that it sometimes allows drivers to continue driving for Uber even after a

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

1  passenger reports to Uber she was sexually assaulted.

2      300.    Uber had reason to know that passengers would be unaware of the risk of sexual

3  assault by Uber drivers.

4      301.    A warning to its passengers that they were at risk of sexual assault by Uber drivers

5  would have reduced the risk of harm to passengers, including Plaintiffs, who could have arranged

6  for alternative transportation or taken additional safety precautions and avoided the assaults they

7  suffered at the hands of Uber drivers.

8      302.    Plaintiffs would not have ridden alone in an Uber had Uber provided an adequate

9  warning regarding the risk of being kidnapped, sexually assaulted, sexually battered, raped, falsely

10 imprisoned, stalked, harassed, and/or otherwise attacked by an Uber driver.

11     303.    As a legal and direct result of Uber's aforementioned conduct and omissions,

12 Plaintiffs were kidnapped, sexually assaulted, sexually battered, raped, falsely imprisoned, stalked,

13 harassed, and/or otherwise attacked by an Uber driver, which humiliated, degraded, violated, and

14 robbed Plaintiffs of their dignity and personal safety. The depraved attacks on Plaintiffs caused

15 Plaintiffs to suffer both physical and or psychological harm from which some or all may never

16 fully recover.

17     304.    As a direct and legal result of Defendants' negligent failure to warn, Plaintiffs have

18 suffered damages, both economic and general, non-economic damages, according to proof.

19          **COUNT FIVE – VICARIOUS LIABILITY/**
            **LIABILITY FOR THE TORTS OF UBER'S DRIVERS**
20                        *(All Plaintiffs)*

21     305.    Plaintiffs hereby incorporate by reference the preceding causes of action and

22 factual allegations.

23     306.    Uber is vicariously liable for the torts of its drivers through the theories of

24 *respondeat superior*, nondelegable duties, agency, and ostensible agency. Uber's liability for the

25 acts of its drivers is not contingent upon the classification of its drivers as employees.

26     307.    Under the doctrine of *respondeat superior*, Uber is responsible for the torts of its

27 employees committed within the scope of employment. The modern rationale for the theory is

28 that an employer who profits from an enterprise which, through the torts of his employees, causes

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

1  harm to others should bear the costs of the injury instead of the innocent injured Plaintiffs.

2      308.    Uber profits from transporting vulnerable passengers late at night.  Uber

3  encourages intoxicated passengers to use its services.  At the same time, Uber does not take

4  reasonable steps to protect its passengers or warn them of the dangers of riding with Uber.  Uber

5  should bear the costs of injuries that result from torts such as sexual assault, kidnapping, and rape,

6  not the victims of Uber's negligence, willful wrongdoing and intentional omissions made at the

7  expense of passenger safety.

8      309.    Uber drivers are employees and agents of Uber.  Uber reserves the right to control

9  the activities of Uber drivers.  Uber controls the prices charged to customers, controls contact with

10  the customer base, controls the ability of a driver to see where he will be driving before he accepts

11  a ride, and reserves the right to terminate drivers with or without cause.

12      310.    The kidnapping, sexually assault, sexually battery, rape, falsely imprisonment,

13  stalking, harassment, and/or other attack Plaintiffs suffered was perpetrated by Uber Drivers

14  within the scope of their employment and authority.  The kidnapping, sexual assault and/or rape of

15  intoxicated and unaccompanied women who have been placed in an improperly screened Uber

16  driver's car with little to no supervision is incidental to and a foreseeable result of the act of

17  transporting passengers.

18      311.    Uber may maintain that its drivers are contractors and not employees.

19  Nevertheless, whether Uber drivers are characterized as contractors, employees or agents, Uber

20  has a non-delegable duty to transport its passengers safely.

21      312.    The doctrine of nondelegable duty recognizes that for public policy reasons, certain

22  duties cannot be delegated to a third party.  It operates to ensure that when a harm occurs the

23  injured party will be compensated by the party whose activity caused the harm and who may

24  therefore properly be held liable for the acts of his agent, whether the agent was an employee or an

25  independent contractor.  The doctrine recognizes that an entity may not delegate its duties to a

26  contractor in order to evade its own responsibilities.  This is especially so when allowing

27  delegation would incentivize the employers to hire incompetent contractors in order to further the

28

1 employer's pecuniary interests.[62]

2    313.   In advertising to passengers, including Plaintiffs, that Uber provides them a safe

3 ride to their destinations, and by profiting off women who use Uber for that very purpose but then

4 are attacked, Uber has a duty to its passengers that cannot be delegated.  To allow Uber to delegate

5 the liability for the assaults committed by its drivers to anyone else would encourage Uber to

6 continue to utilize the cheapest, fastest, and most haphazard safety procedures.  Uber would be

7 disincentivized from hiring only competent drivers, since the more drivers Uber has, the more

8 money Uber makes.

9    314.   Further, Uber drivers act as agents of and operate as extensions of Uber.  Uber

10 drivers represent Uber's business and further Uber's pecuniary interests.

11    315.   Uber drivers display the Uber logo when interacting with passengers, and in many

12 cases Uber drivers are the only people with whom Uber's passengers have direct contact.  Uber

13 drivers provide the service that Uber claims to provide-- transportation.

14    316.   By allowing Uber drivers to represent Uber's business, Uber creates the impression

15 that its drivers, including Uber Driver, were Uber's employees and/or agents.

16    317.   Plaintiffs reasonably believed that their Uber driver was an employee or agent of

17 Uber, and, relying on this belief, got in a vehicle with him in exchange for a fee and suffered harm

18 as a result of their contact with the driver.

19    318.   For these reasons and others, Uber is vicariously liable for the tortious acts of its

20 drivers, regardless of whether Uber's drivers are employees, agents, apparent agents, or

21 contractors of Uber.

22    319.   As a direct and legal result of the Uber driver's tortious conduct, Plaintiffs were

23 kidnapped, sexually assaulted, sexually battered, raped, falsely imprisoned, stalked, harassed,

24 and/or otherwise attacked which humiliated, degraded, violated, and robbed Plaintiffs of their

25 dignity and personal safety.  The depraved attacks on Plaintiffs caused Plaintiffs to suffer both

26

27 ---

[62] See, for example, *Barry v. Raskov* (Ct. App. 1991) 232 Cal. App. 3d 447, 454, where the court recognized that allowing a broker to delegate the liability for the fraudulent torts of its contractor

28 property appraiser would incentivize the broker to hire potentially insolvent contractors, to the detriment of the public.

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone  •  415.426.3001 fax

1    physical and or psychological harm from which some or all may never fully recover.

2        320.    As a direct and legal result of Uber Drivers' tortious conduct for which Uber is

3    legally liable, Plaintiffs have suffered economic and general, non-economic damages according to

4    proof.

5              ## COUNT SIX – VICARIOUS LIABILITY FOR SEXUAL ASSAULT
6                                    *(All Plaintiffs)*

7        321.    Plaintiffs hereby incorporate by reference the preceding causes of action and

8    factual allegations.

9        322.    At the times each Plaintiff was sexually assaulted, the Uber Driver involved

10   intended to cause harmful and offensive contact with Plaintiffs and Plaintiffs were in reasonable

11   apprehension of imminent, harmful, and offensive contact. The Uber drivers involved in each

12   assault intentionally and recklessly did acts which placed Plaintiffs in apprehension of imminent

13   harm, including being sexual assaulted, battered and/ or raped.

14       323.    These Uber drivers committed these tortious and wrongful acts while acting in the

15   course and scope of their employment with Uber as an employee/agent of Uber.  Therefore, Uber

16   is liable for the Uber drivers' sexual assaults of Plaintiffs and is responsible for damages caused

17   by said conduct under the principles of vicarious liability, including the doctrine of *respondeat*

18   *superior*.  Even if the Uber drivers had not been employees, Uber's duty to provide transportation

19   free of assault is nondelegable, and Uber is liable for its drivers' actions, because to allow Uber to

20   delegate its duty of providing the safe transportation it promises would incentivize Uber to create a

21   greater risk of harm to the public.

22       324.    For these reasons and others, Uber is vicariously liable for the sexual assaults

23   Plaintiffs suffered at the hands of their respective Uber driver.

24       325.    As a direct and legal result of the Uber drivers' sexual assaults, Plaintiffs were

25   humiliated, degraded, violated, and robbed of their dignity and personal safety.  The depraved

26   attacks on Plaintiffs caused Plaintiffs to suffer both physical and psychological harm from which

27   some or all may never fully recover.

28       326.    As a direct and legal result of the Uber drivers' sexual assault for which Uber is

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

1  vicariously liable, Plaintiffs have suffered economic and general, non-economic damages

2  according to proof.

### COUNT SEVEN – SEXUAL BATTERY
*(As to All Plaintiffs Except Jane Doe LSA 115, 120, 126, 130 and 131)*

327.  The above-referenced Plaintiffs hereby incorporate by reference the preceding causes of action and factual allegations.

328.  In the instance of each above-referenced Plaintiff, the Uber driver involved made harmful and offensive contact with the Plaintiff. None of the Plaintiffs consented to the contact. Plaintiffs were each harmed and offended by the respective Uber drivers' contact. The Uber drivers intentionally and recklessly committed acts that resulted in harmful contact with the respective Plaintiff's person, including but not limited to sexual molestation and or penetration, touching of a sexual body part without consent, touching of Plaintiff in a sexual manner, forced kissing without consent, and or forcing Plaintiff to touch the drivers in a sexual manner.

329.  As a result of the respective Uber Driver's sexual battery of the above-listed Plaintiffs, which occurred while in the course and scope of Uber drivers' employment, Plaintiffs were humiliated, degraded, violated, and robbed of their dignity and personal safety.  The depraved attacks on Plaintiffs caused Plaintiffs to suffer both physical and psychological harm from which some or all may never fully recover.

330.  As a legal result of the sexual battery committed by the Uber driver involved in each instance, and Uber's liability and vicarious liability for the same, Plaintiffs have suffered damages, both economic and general, non-economic damages according to proof.

### COUNT EIGHT– FALSE IMPRISONMENT
*(As to all Plaintiffs Except Jane Doe LSA 117,*
*118, 119, 122, 124, 125, 126, 127, 128, 132, 133 and 136)*

331.  Plaintiffs hereby incorporate by reference the preceding causes of action and factual allegations.

332.  At the time of the Uber rides and accompanying sexual assaults, the above-listed Plaintiffs were held against their will by force and were physically prevented from escaping.

333.  As such, said Plaintiffs were falsely imprisoned in violation of their rights.

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

334.    As a legal result of each respected Uber driver's false imprisonment, which occurred while in the course and scope of his employment, Plaintiffs were robbed of their dignity and personal safety.  The false imprisonment of Plaintiffs caused Plaintiffs to suffer psychological harm from which some may never fully recover.

335.    As a legal result of the Uber drivers' false imprisonment of Plaintiffs and Uber's liability and vicarious liability for the same, Plaintiffs have suffered damages, both economic and general, non-economic damages according to proof.

<div align="center">

**COUNT NINE– INTENTIONAL MISREPRESENTATION**
*(All Plaintiffs)*

</div>

336.    Plaintiffs hereby incorporate by reference the preceding causes of action and factual allegations.

337.    At the time Plaintiffs were kidnapped, sexually assaulted, sexually battered, falsely imprisoned, stalked, harassed, and/or otherwise attacked, they had downloaded the Uber application and had an account with Uber.

338.    Uber represented to Plaintiffs and the general public that safety was Uber's top priority, and it was Uber's goal to make every ride safe, comfortable, and reliable.  At the same time, Uber already knew that a number of its drivers had preyed on vulnerable female passengers by sexually molesting, assaulting and/or raping them.

339.    Uber made intentional misrepresentations of fact to all users of the Uber app, including Plaintiffs, that were known by Uber to be false including the false statements Uber made, stating it would provide Plaintiffs with a safe ride to their destinations.

340.    These representations regarding safety were made to Uber customers, including Plaintiffs, through periodic emails Uber sent to its customers, social media advertisements, and Uber's own website and app.  Plaintiffs relied upon several advertisements and statements wherein Uber proclaimed it would provide a safe ride.  Plaintiffs read Uber's self-promoting statements regarding safety both before and after Plaintiffs were sexually assaulted, harassed, sexually battered, falsely imprisoned, and/or otherwise attacked by their Uber drivers.

341.    Prioritizing profits over passenger safety, Uber made these intentional

<div align="center">

64
COMPLAINT FOR DAMAGES

</div>

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

1    misrepresentations of material fact to induce women, including Plaintiffs, into using Uber's

2    services.

3        342.    Uber made these representations to Plaintiffs and the general public despite

4    knowing it had chosen not to take the measures necessary to provide a safe ride to her intended

5    destination and as a result, continued sexual assault of its passengers by its drivers was a

6    foreseeable occurrence.

7        343.    Uber made these representations to induce women, like Plaintiffs, into using

8    Uber's services and to derive profit from women like Plaintiffs.

9        344.    In ordering and getting into an Uber vehicle, Plaintiffs reasonably relied on Uber's

10   representations that it would get them safely to their destination.

11       345.    In trusting and relying on Uber's representations, Plaintiffs were placed in a

12   uniquely vulnerable position that was taken advantage of by Uber drivers who kidnapped, sexually

13   assaulted, sexually battered, raped, falsely imprisoned, stalked, harassed, and/or otherwise

14   attacked Plaintiffs.

15       346.    As a legal result of Uber's intentional misrepresentations, Plaintiffs were

16   kidnapped, sexually assaulted, sexually battered, raped, falsely imprisoned, stalked, harassed,

17   and/or otherwise attacked by an Uber driver which humiliated, degraded, violated, and robbed

18   Plaintiffs of their dignity and personal safety.  The depraved attacks on Plaintiffs caused Plaintiffs

19   to suffer both physical and psychological harm from which some or all may never fully recover.

20       347.    As a legal result of Uber's intentional misrepresentations, Plaintiffs have suffered

21   damages, both economic and general, non-economic damages according to proof.

## COUNT TEN – NEGLIGENT MISREPRESENTATION
### *(All Plaintiffs)*

24       348.    Plaintiffs hereby incorporate by reference the preceding causes of action and

25   factual allegations.

26       349.    Uber represented to Plaintiffs and the general public that safety is Uber's top

27   priority, and that it is Uber's goal to make every ride safe, comfortable, and reliable.  At the time

28   of the assaults alleged herein, Uber knew that a number of its drivers had previously preyed on

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

1  vulnerable female passengers by sexually molesting, assaulting, and/or raping them.

2      350.    Uber continued to represent that its services were safe to further Uber's own

3  pecuniary interests.

4      351.    In representing to its customers/users that its services were safe, Uber had a duty to

5  provide correct and accurate information about the actual safety of its services.

6      352.    Uber knew or should have known that it could not provide the safe ride that it

7  represented it could.

8      353.    Knowing of the incidence of sexual assault of its passengers by its drivers and

9  knowing that Uber had not implemented adequate precautions, Uber had no reasonable grounds

10 for believing that it could provide Plaintiffs and other passengers a safe ride home as represented.

11      354.    In getting into the Uber, Plaintiffs reasonably relied on Uber's representations that it

12 would get them safely to their intended destination.

13      355.    In trusting and relying on Uber's representations, Plaintiffs were placed in a

14 uniquely vulnerable position that was taken advantage of by an Ubers employee, an Uber driver,

15 who kidnapped, sexually assaulted, sexually battered, raped, falsely imprisoned, stalked, harassed,

16 and/or otherwise attacked Plaintiffs.

17      356.    As a legal result of Uber's aforementioned conduct, Plaintiffs were sexually

18 assaulted, harassed, sexually battered, raped, falsely imprisoned, stalked, kidnapped, and/or

19 otherwise attacked by their Uber driver, which humiliated, degraded, violated, and robbed them of

20 their dignity and personal safety.  The depraved attacks on Plaintiffs caused them to suffer both

21 physical and psychological harm from which some may never fully recover.

22      357.    As a legal result of Uber's negligent misrepresentations, Plaintiffs have suffered

23 damages, both economic and general, non-economic damages according to proof.

24      **COUNT ELEVEN – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
            *(All Plaintiffs)*

25

26      358.    Plaintiffs hereby incorporate by reference the preceding causes of action and

27 factual allegations.

28      359.    For several years prior to each Plaintiff being sexually assaulted by an Uber driver,

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

1 │ Uber was fully aware that other female passengers had been sexually assaulted and raped by Uber

2 │ drivers. Since at least 2014, Uber has received frequent passenger complaints about driver

3 │ misbehavior, has been notified of police investigations of the criminal conduct of drivers acting

4 │ within their capacity as Uber drivers, and has been the subject of numerous civil suits alleging the

5 │ sexual harassment and sexual assault of Uber's passengers by Uber's drivers.

6 │    360.    Uber made a conscious decision not to implement procedures that would

7 │ effectively screen its drivers and monitor its drivers to identify and terminate drivers who were

8 │ sexual predators.

9 │    361.    Safety precautions such as enhanced background checks, biometric fingerprinting,

10 │ job interviews, electronic monitoring systems, warnings to passengers of the dangers of being

11 │ attacked by Uber drivers, and cooperation with law enforcement when a driver attacks a passenger

12 │ would have cost Uber money and reputational damage. Because of this, Uber decided not to

13 │ implement such precautions and instead continues to place its passengers at greater risk of sexual

14 │ assault and rape by Uber's own drivers.

15 │    362.    Additional safety precautions that Uber chose not to make include but are not

16 │ limited to: ongoing monitoring of Uber drivers through available technology including cameras

17 │ and GPS; a zero tolerance policy for drivers who deviate from expected behavior by leaving the

18 │ vehicle with passengers, or by deviating substantially from the assigned route; a zero-tolerance

19 │ program for sexual assault and guidelines mandating immediate termination; creating and

20 │ instituting a system encouraging customer reporting; and adequate monitoring of customer

21 │ complaints by well-trained and effective customer service representatives. Uber chose not to

22 │ implement such precautions, nor did it warn passengers of the risk of being sexually assaulted in

23 │ light of the fact that these safety precautions had not been implemented.

24 │    363.    In failing to take these and other safety precautions designed to protect passengers

25 │ from sexual predators driving for Uber, Uber breached its duty of reasonable care, negligently

26 │ inflicting emotional harm upon Plaintiffs, and acted recklessly and in conscious disregard of their

27 │ safety.

28 │    364.    As a direct and legal result of Uber's negligent infliction of emotional distress,

Plaintiffs have suffered damages, both economic and general, non-economic damages according to proof.

### COUNT TWELVE – BREACH OF CONTRACT
#### *(As to all Plaintiffs Except Jane Doe LSA 121, 130 and 134)*

365. The Plaintiffs listed above hereby incorporate by reference the preceding causes of action and factual allegations.

366. The above-listed Plaintiffs entered into a contract with Uber. The essence of this commercial transaction was the payment of a fee to Uber in exchange for safe and reasonable transportation to their destination.

367. As a result of the conduct, acts and omissions set forth above, Uber breached its contract with Plaintiffs, including breaching implied covenants which would be inherent in such a contract.

368. As a legal result of Uber's Breach of Contract, Plaintiffs have suffered damages, both economic and general, non-economic damages according to proof.

### COUNT THIRTEEN – STRICT PRODUCT LIABILITY BASED ON DESIGN DEFECT OF THE UBER APP AND FAILURE OF THE UBER APP TO MEET MINIMUM REASONABLE CONSUMER SAFETY EXPECTATIONS
#### *(All Plaintiffs)*

369. Plaintiffs hereby incorporate by reference the preceding causes of action and factual allegations.

370. Uber manufactured and distributed the Uber App.

371. The Uber App did not perform as an ordinary consumer would have expected it to perform when used or misused in an intended or reasonably foreseeable way, because the Uber App falsely led Plaintiffs to form a reasonable minimum safety expectation that was not met.

372. The Uber App did not include safety features such as a GPS tracking system that would alert Uber, to the early termination of a ride, substantial deviation from the intended route, or a passenger continuing to travel in the Uber vehicle after the driver ended the ride in the app. It also did not include the automatic activation of the camera in drivers' smart phones when a ride is in progress.

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

373.     The Uber App also failed to communicate with Plaintiffs a true expectation of the lack of safety in using Uber.

374.     These flaws in the design of the Uber App, were a substantial factor in causing harm to the Plaintiffs, which included being kidnapped, sexually assaulted, sexually battered, raped, falsely imprisoned, stalked, harassed, and/or otherwise attacked by Uber Driver, which humiliated, degraded, violated, and robbed Plaintiffs of their dignity and personal safety. The depraved attacks on Plaintiffs caused Plaintiffs to suffer physical and or psychological harm from which they may never fully recover.

375.     As a legal result of Uber's aforementioned acts and omissions, Plaintiffs have suffered damages, both economic and general, non-economic damages, according to proof.

## COUNT FOURTEEN – STRICT PRODUCT LIABILITY BASED ON FAILURE TO WARN OF THE RISKS POSED BY THE UBER RIDESHARING APP
### *(All Plaintiffs)*

376.     Plaintiffs hereby incorporate by reference the preceding causes of action and factual allegations.

377.     Uber manufactured and distributed the Uber App.

378.     The Uber App presented potential risks of introducing each driver to a passenger who, because of the nature of the ridesharing arrangement created and facilitated by the Uber App, could neither escape from the Uber driver's vehicle nor control the place where the driver would take the passenger, which could result in the sexual assault of that passenger; these are risks that were known or knowable at the time of manufacture and distribution of the Uber App.

379.     The potential risks presented a substantial danger when the Uber App was used or misused in an intended or reasonably foreseeable way.

380.     Ordinary consumers such as Plaintiffs would not have recognized the potential risks.

381.     Defendant Uber failed to adequately warn consumers, including Plaintiffs, of these potential risks.

382.     Uber's failure to provide passengers, including Plaintiffs, with sufficient warnings regarding the risk of harm to which they were being exposed with each Uber ride was a substantial

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

1   factor in causing the harm suffered by Plaintiffs, including being kidnapped, sexually assaulted,

2   sexually battered, raped, falsely imprisoned, stalked, harassed, and/or otherwise attacked by an

3   Uber driver which humiliated, degraded, violated, and robbed Plaintiffs of their dignity and

4   personal safety.  The depraved attack on Plaintiffs caused Plaintiffs to suffer physical and or

5   psychological harm from which some may never fully recover.

6       383.    As a legal result of Uber's aforementioned acts and omissions, Plaintiffs have

7   suffered damages, both economic and general, non-economic damages according to proof.

8                               **PUNITIVE DAMAGES**

9       384.    Plaintiffs hereby incorporate by reference the preceding causes of action and

10  factual allegations.

11      385.    As stated above, Uber knew that it faced an ongoing problem of sexual predators

12  driving for Uber and assaulting its passengers.  As early as 2014 Uber knew that its drivers were

13  sexually assaulting female passengers. Since 2014, Uber has received frequent passenger

14  complaints about driver sexual misconduct, including sexual assault and rape, it has been notified

15  of police investigations of the criminal sexual conduct of drivers acting within their capacity as

16  Uber drivers, and it has been the subject of numerous civil suits alleging the sexual harassment

17  and sexual assault of Uber's passengers by Uber's drivers.

18      386.    Nevertheless, even though Uber was fully aware of its sexual predator problem it

19  failed to take safety precautions to protect its passengers.

20      387.    Even after Uber was aware some Uber drivers were using driving for Uber as an

21  opportunity to get unsuspecting women into their vehicle and to sexually assault them, Uber and

22  its executing officers made the conscious decision not to implement more thoroughly vet its

23  drivers before and after hiring them.

24      388.    The decision not to implement more thorough and persistent background checks

25  was driven by Uber Executives desire for rapid expansion and increased profits, because the more

26  drivers driving for Uber, the more money there was to be made.

27      389.    Prioritizing profits over safety, Uber and its executive officers also made the

28  conscious decision not to warn its customers/users of the risk of being sexually assaulted even

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

70

1    after they were fully aware of this risk.

2        390.    Safety precautions such as enhanced background checks, biometric fingerprinting,

3    job interviews, electronic monitoring systems, ongoing monitoring of Uber drivers and rides

4    through available technology including cameras and GPS; a zero tolerance policy for drivers who

5    deviate from expected behavior by leaving the vehicle with passengers, or by deviating

6    substantially from the assigned route, a warning system for when a driver significantly deviates

7    from the intended route or prematurely terminates a ride, a system for checking in with and

8    verifying a passenger's safety when a driver prematurely terminates a ride or significantly deviates

9    from the intended route ; a zero-tolerance program for sexual assault and guidelines mandating

10   immediate termination; a zero-tolerance policy for fraternizing with passengers, creating and

11   instituting a system encouraging customer reporting; and adequate monitoring of customer

12   complaints by well-trained and effective customer service representatives, warnings to passengers

13   of the dangers of being attacked by Uber drivers, and cooperation with law enforcement when a

14   driver attacks a passenger would have cost Uber money and reputational damage.  Because of this,

15   Uber, at the direction of its corporate officers, decided not to implement such precautions and

16   instead has continued to place its passengers at greater risk of kidnapping, sexual assault, rape, and

17   exploitation by Uber's own drivers.

18       391.    Prioritizing profits over passenger safety, Uber and its executive officers acted, and

19   continues to act, recklessly and in knowing, conscious disregard of the safety of its passengers,

20   including that of Plaintiffs, and the public.

21       392.    As a legal result of the aforementioned negligent, reckless and grossly negligent

22   conduct of Uber, Plaintiffs were kidnapped, sexually assaulted, sexually battered, raped, falsely

23   imprisoned, stalked, harassed, and/or otherwise attacked by an Uber driver, which humiliated,

24   degraded, violated, and robbed them of their dignity and personal safety.

25       393.    The depraved attack on Plaintiffs caused Plaintiffs to suffer serious emotional

26   distress as well as physical and or psychological harm from which she may never fully recover.

27       394.    As a result of Uber's misconduct as stated above, Plaintiffs pray for exemplary

28   damages to punish Uber for its misconduct and to deter future misconduct.

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

**PRAYER FOR RELIEF**

395.  For these reasons, Plaintiffs pray for judgment against Defendants Uber Technologies, Inc., Rasier, LLC, and Does 1-50 inclusive.  They ask that this judgment be inclusive of all Defendants, and that they be held jointly and severally liable, as follows:

a.  For special damages, according to proof;

b.  For past and future general damages, including physical pain, mental anguish, disfigurement and physical impairment, according to proof;

c.  For past and future lost earnings and/or earning capacity, according to proof;

d.  For medical expenses, past and future, according to proof;

e.  For punitive and exemplary damages, according to proof;

f.  For prejudgment interest from the date of each Plaintiffs' respective incidents to the date of judgment, as provided by law, according to proof at the time of trial;

g.  For costs of litigation incurred herein;

h.  For attorney's fees;

i.  For such other and further relief as this court may deem just and proper.

DATED: July 29, 2021                    LEVIN SIMES ABRAMS LLP

By: _____

Laurel L. Simes

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Laurel L. Simes (SBN: 134637)<br>LEVIN SIMES ABRAMS LLP<br>1700 Montgomery Street, Suite 250, San Francisco, CA 94111<br>TELEPHONE NO.: (415) 426-3000   FAX NO.: (415) 426-3001<br>ATTORNEY FOR *(Name):* Plaintiffs JANE DOE LSA 115, et al. | **ELECTRONICALLY**<br>**F I L E D**<br>*Superior Court of California,*<br>*County of San Francisco*<br>**08/25/2021**<br>**Clerk of the Court**<br>BY: JACKIE LAPREVOTTE<br>Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SAN FRANCISCO
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME: Civil

CASE NAME:
JANE DOE LSA 115, et al. v. UBER TECHNOLOGIES, INC., et al.

| CIVIL CASE COVER SHEET<br>[X] Unlimited   [ ] Limited<br>(Amount      (Amount<br>demanded    demanded is<br>exceeds $25,000)  $25,000 or less) | Complex Case Designation<br>[ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | CASE NUMBER:<br>CGC-21-594130 |
|---|---|---|
| | | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[X] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [X] is  [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [X] Large number of separately represented parties       d. [ ] Large number of witnesses
   b. [X] Extensive motion practice raising difficult or novel    e. [ ] Coordination with related actions pending in one or more courts
      issues that will be time-consuming to resolve            in other counties, states, or countries, or in a federal court
   c. [X] Substantial amount of documentary evidence          f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [X] monetary   b. [ ] nonmonetary; declaratory or injunctive relief   c. [X] punitive
4. Number of causes of action *(specify):* 14
5. This case [ ] is   [X] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: July 29, 2021

Laurel L. Simes
_____                          ▶ _____
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | CEB<br>www.ceb.com | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
Uninsured Motorist (46) *(if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto)*
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
        Wrongful Death
Product Liability *(not asbestos or
    toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice–
        Physicians & Surgeons
    Other Professional Health Care
        Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip
        and fall)
    Intentional Bodily Injury/PD/WD
        (e.g., assault, vandalism)
    Intentional Infliction of
        Emotional Distress
    Negligent Infliction of
        Emotional Distress
    Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
    Practice (07)
Civil Rights (e.g., discrimination,
    false arrest) *(not civil
    harassment)* (08)
Defamation (e.g., slander, libel)
    (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
        *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease
        Contract *(not unlawful detainer
            or wrongful eviction)*
    Contract/Warranty Breach–Seller
        Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
        Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
        Case
Insurance Coverage *(not provisionally
    complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
    Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent
        domain, landlord/tenant, or
        foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
        Case Matter
    Writ–Other Limited Court Case
        Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
        Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
    *(arising from provisionally complex
    case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of
        County)
    Confession of Judgment *(non-
        domestic relations)*
    Sister State Judgment
    Administrative Agency Award
        *(not unpaid taxes)*
    Petition/Certification of Entry of
        Judgment on Unpaid Taxes
    Other Enforcement of Judgment
        Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
    above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-
        harassment)*
    Mechanics Lien
    Other Commercial Complaint
        Case *(non-tort/non-complex)*
    Other Civil Complaint
        *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate
    Governance (21)
Other Petition *(not specified
    above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
        Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
        Claim
    Other Civil Petition

**CIVIL CASE COVER SHEET**

## NOTICE TO PLAINTIFF

A Case Management Conference is set for:

**DATE:** **DEC-29-2021**

**TIME:** **10:30AM**

**PLACE:** **Department 610**
**400 McAllister Street**
**San Francisco, CA 94102-3680**

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference. However, it would facilitate the issuance of a case management order **without an appearance** at the case management conference if the case management statement is filed and served twenty-five days before the case management conference.

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state. **This case is eligible for electronic filing and service per Local Rule 2.11. For more information, please visit the Court's website at www.sfsuperiorcourt.org under Online Services.**

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**

### ALTERNATIVE DISPUTE RESOLUTION REQUIREMENTS

**IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE SHOULD PARTICIPATE IN MEDIATION, ARBITRATION, NEUTRAL EVALUATION, AN EARLY SETTLEMENT CONFERENCE, OR OTHER APPROPRIATE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A TRIAL.**

(SEE LOCAL RULE 4)

Plaintiff **must** serve a copy of the Alternative Dispute Resolution (ADR) Information Package on each defendant along with the complaint. (CRC 3.221.) The ADR package may be accessed at www.sfsuperiorcourt.org/divisions/civil/dispute-resolution or you may request a paper copy from the filing clerk. All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the ADR Information Package prior to filing the Case Management Statement.

**Superior Court Alternative Dispute Resolution Administrator**
**400 McAllister Street, Room 103-A**
**San Francisco, CA 94102**
**(415) 551-3869**

**See Local Rules 3.3, 6.0 C and 10 B re stipulation to judge pro tem.**



## Superior Court of California, County of San Francisco
## Alternative Dispute Resolution
## Information Package



> The plaintiff must serve a copy of the ADR Information Package on each defendant along with the complaint. Cross-complainants must serve a copy of the ADR Information Package on any new parties to the action together with the cross-complaint. (CRC 3.221(c).)

**WHAT IS ADR?**

Alternative Dispute Resolution (ADR) is the term used to describe the various options available for settling a dispute without a trial. There are many different ADR processes, the most common forms of which are mediation, arbitration and settlement conferences.  In ADR, trained, impartial people decide disputes or help parties decide disputes themselves. They can help parties resolve disputes without having to go to trial.

**WHY CHOOSE ADR?**

It is the policy of the Superior Court that every long cause, non-criminal, non-juvenile case should participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to trial. (Local Rule 4.)

ADR can have a number of advantages over traditional litigation:

- **ADR can save time.**  A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.
- **ADR can save money,** including court costs, attorney fees, and expert fees.
- **ADR encourages participation.** The parties may have more opportunities to tell their story than in court and may have more control over the outcome of the case.
- **ADR is more satisfying.** For all the above reasons, many people participating in ADR have reported a high degree of satisfaction.

**\*\*Electing to participate in an ADR process does not stop the time period to respond to a complaint or cross-complaint\*\***

**WHAT ARE THE ADR OPTIONS?**

The San Francisco Superior Court offers different types of ADR processes for general civil matters. The programs are described below:

**1) MANDATORY SETTLEMENT CONFERENCES**

Settlement conferences are appropriate in any case where settlement is an option. The goal of settlement conferences is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of a dispute. Mandatory settlement conferences are ordered by the court and are often held near the date a case is set for trial, although they may be held earlier if appropriate. A party may elect to apply to the Presiding Judge for a specially set mandatory settlement conference by filing an ex parte application. See Local Rule 5.0 for further instructions. Upon approval by the Presiding Judge, the court will schedule the conference and assign a settlement conference officer.

## 2) MEDIATION

Mediation is a voluntary, flexible, and confidential process in which a neutral third party facilitates negotiations. The goal of mediation is to reach a mutually satisfactory agreement that resolves all or part of a dispute after exploring the interests, needs, and priorities of the parties in light of relevant evidence and the law.

(A) **MEDIATION SERVICES OF THE BAR ASSOCIATION OF SAN FRANCISCO (BASF),** in cooperation with the Superior Court, is designed to help civil litigants resolve disputes before they incur substantial costs in litigation. While it is best to utilize the program at the outset of litigation, parties may use the program at any time while a case is pending. Experienced professional mediators work with parties to arrive at a mutually agreeable solution. The mediators provide one hour of preparation time and the first two hours of mediation time. Mediation time beyond that is charged at the mediator's hourly rate. BASF pre-screens all mediators based upon strict educational and experience requirements. Parties can select their mediator from the panels at www.sfbar.org/mediation or BASF can assist with mediator selection. BASF staff handles conflict checks and full case management. The success rate for the program is 67% and the satisfaction rate is 99%. BASF charges an administrative fee of $295 per party. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Waivers of the fee are available to those who qualify. For more information, call 415-982-1600 or email adr@sfbar.org.

(B) **JUDICIAL MEDIATION PROGRAM** provides mediation with a San Francisco Superior Court judge for civil cases, which include but are not limited to, personal injury, construction defect, employment, professional malpractice, insurance coverage, toxic torts and industrial accidents. Parties may utilize this program at any time throughout the litigation process. Parties interested in judicial mediation should file a Stipulation to Judicial Mediation indicating a joint request for inclusion in the program. A preference for a specific judge may be indicated. The court will coordinate assignment of cases for the program. There is no charge. Information about the Judicial Mediation Program may be found by visiting the ADR page on the court's website: www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

(C) **PRIVATE MEDIATION:** Although not currently a part of the court's ADR program, parties may select any private mediator of their choice. The selection and coordination of private mediation is the responsibility of the parties. Parties may find mediators and organizations on the Internet. The cost of private mediation will vary depending on the mediator selected.

(D) **COMMUNITY BOARDS MEDIATION SERVICES:** Mediation services are offered by Community Boards (CB), a nonprofit resolution center, under the Dispute Resolution Programs Act. CB utilizes a three-person panel mediation process in which mediators work as a team to assist the parties in reaching a shared solution. To the extent possible, mediators are selected to reflect the demographics of the disputants. CB has a success rate of 85% for parties reaching a resolution and a consumer satisfaction rate of 99%. The fee is $45-$100 to open a case, and an hourly rate of $180 for complex cases. Reduction and waiver of the fee are available. For more information, call 415-920-3820 or visit communityboards.org.

## 3) ARBITRATION

An arbitrator is a neutral attorney who presides at a hearing where the parties present evidence through exhibits and testimony. The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case.

### (A) JUDICIAL ARBITRATION

When the court orders a case to arbitration it is called "judicial arbitration". The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial. Pursuant to CCP 1141.11, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration. (Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.) An arbitrator is chosen from the court's arbitration panel. Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is not binding unless all parties agree to be bound by the arbitrator's decision. Any party may request a trial within 60 days after the arbitrator's award has been filed. Local Rule 4.1 allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate after being assigned to judicial arbitration. There is no cost to the parties for judicial arbitration.

### (B) PRIVATE ARBITRATION

Although not currently a part of the court's ADR program, civil disputes may also be resolved through private arbitration. Here, the parties voluntarily consent to arbitration. If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision. In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

## HOW DO I PARTICIPATE IN ADR?

Litigants may elect to participate in ADR at any point in a case. General civil cases may voluntarily enter into the court's or court-affiliated ADR programs by any of the following means:

- Filing a Stipulation to ADR: Complete and file the Stipulation form (attached to this packet and available on the court's website); or
- Indicating your ADR preferences on the Case Management Statement (available on the court's website); or
- Contacting the court's ADR Department (see below), the Bar Association of San Francisco's ADR Services, or Community Boards.

**For more information about ADR programs or dispute resolution alternatives, contact:**

Superior Court Alternative Dispute Resolution
400 McAllister Street, Room 103-A, San Francisco, CA 94102
415-551-3869
Or, visit the court's ADR page at www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

TO PARTICIPATE IN ANY OF THE COURT'S ADR PROGRAMS, PLEASE COMPLETE AND FILE THE ATTACHED STIPULATION TO ADR AND SUBMIT IT TO THE COURT. YOU MUST ALSO CONTACT BASF OR COMMUNITY BOARDS TO ENROLL IN THEIR LISTED PROGRAMS. THE COURT DOES NOT FORWARD COPIES OF STIPULATIONS TO BASF OR COMMUNITY BOARDS.

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name *and address*) | *FOR COURT USE ONLY* |
|---|---|
| TELEPHONE NO.:<br>ATTORNEY FOR *(Name)*: | |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO<br>400 McAllister Street<br>San Francisco, CA 94102-4514 | |
| PLAINTIFF/PETITIONER:<br><br>DEFENDANT/RESPONDENT: | |

| STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION (ADR) | CASE NUMBER: _____ |
|---|---|
| | **DEPARTMENT 610** |

**1)    The parties hereby stipulate that this action shall be submitted to the following ADR process:**

☐    **Mediation Services of the Bar Association of San Francisco (BASF)** - Experienced professional mediators, screened and approved, provide one hour of preparation and the first two hours of mediation time for a BASF administrative fee of $295 per party. Mediation time beyond that is charged at the mediator's hourly rate. Waivers of the administrative fee are available to those who qualify. BASF assists parties with mediator selection, conflicts checks and full case management. www.sfbar.org/mediation

☐    **Mediation Services of Community Boards (CB)** – Service in conjunction with DRPA, CB provides case development and one three-hour mediation session.  Additional sessions may be scheduled. The cost is $45-$100 to open a case, and an hourly rate of $180 for complex cases. Reduction and waiver of the fee are available to those who qualify. communityboards.org

☐    **Private Mediation** - Mediators and ADR provider organizations charge by the hour or by the day, current market rates. ADR organizations may also charge an administrative fee. Parties may find experienced mediators and organizations on the Internet.

☐    **Judicial Arbitration** - Non-binding arbitration is available to cases in which the amount in controversy is $50,000 or less and no equitable relief is sought. The court appoints a pre-screened arbitrator who will issue an award. There is no fee for this program. www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

☐    **Judicial Mediation** - The Judicial Mediation program offers mediation in civil litigation with a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. There is no fee for this program. www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

Judge Requested (see list of Judges currently participating in the program): _____

Date range requested for Judicial Mediation (from the filing of stipulation to Judicial Mediation):

☐ 30-90 days  ☐ 90-120 days  ☐ Other (please specify) _____

☐    **Other ADR process** (describe) _____

**2)    The parties agree that the ADR Process shall be completed by (date):** _____

**3)    Plaintiff(s) and Defendant(s) further agree as follows:**

_____

| | |
|---|---|
| _____<br>Name of Party Stipulating | _____<br>Name of Party Stipulating |
| _____<br>Name of Party or Attorney Executing Stipulation | _____<br>Name of Party or Attorney Executing Stipulation |
| _____<br>Signature of Party or Attorney | _____<br>Signature of Party or Attorney |
| ☐ Plaintiff ☐ Defendant ☐ Cross-defendant | ☐ Plaintiff ☐ Defendant ☐ Cross-defendant |
| Dated: _____ | Dated: _____ |

☐ *Additional signature(s) attached*

ADR-2  10/18                          **STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION**

# EXHIBIT 2

**BUCHALTER**
A Professional Corporation
GARY A. WOLENSKY (SBN: 154041)
gwolensky@buchalter.com
BOBBIE E. HOOPER (SBN: 240102)
bhooper@buchalter.com
PAUL A. ALARCON (SBN: 275036)
palarcon@buchalter.com
SAMUEL Q. SCHLEIER (SBN: 312449)
sschleier@buchalter.com
ELENI A. SWANK (SBN: 318462)
eswank@buchalter.com
18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
Telephone: (949) 760-1121 / Fax: (949) 720-0182

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
RANDY LUSKEY (SBN: 240915)
rluskey@paulweiss.com
ROBERT ATKINS (*Admitted Pro Hac Vice*)
ratkins@paulweiss.com
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5112 / Fax: (202) 204-7391

Attorneys for Defendants/Cross-Complainants,
UBER TECHNOLOGIES, INC., RASIER, LLC and RASIER-CA, LLC

FILED
San Francisco County Superior Court

APR 1 2 2022

CLERK OF THE COURT
BY: _____
Deputy Clerk

E-SERVICE
67473193
Apr 12 2022
12:11PM
File & ServeXpress

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO – UNLIMITED CIVIL JURISDICTION

| | |
|---|---|
| Coordination Proceeding<br><br>*In Re: Uber Sexual Assault Cases*<br><br>This Document Relates to:<br>ALL ACTIONS | JUDICIAL COUNCIL COORDINATION PROCEEDING CASE NO. 5188<br><br>CASE NO. CJG-21-005188<br>Assigned to Hon. Ethan P. Schulman, Dept. 304<br><br>[PROPOSED] ORDER RE: COORDINATION TO JCCP PROCEEDING CASE NO. 5188 |

1

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

## [PROPOSED] ORDER

By an order dated December 9, 2021, Judge Andrew Cheng granted the Petition for Coordination with respect to 86 actions and ordered those actions stayed. Requests to coordinate an additional 649[1] add-on cases have been made through the filing of Notices of Potential Add-On Cases For Coordination Consideration or through stipulation of the parties to the individual cases (either via prior stipulation, or via the filing of this submission). There being no timely objection currently on file for any currently pending case requested for add-on listed in Schedule A, and the time for such objection having passed, the Court hereby **GRANTS** the coordination of all actions listed in Schedule A and orders those actions stayed until such time as directed by this Court.[2]

For the actions listed in Schedule A that were originally filed in a court other than the San Francisco County Superior Court, the Court requests that the individual courts in which each of those cases were pending send a copy of the case file for the respective case to Department 304 of the San Francisco County Superior Court within 30 days of entry of this Order.

It is further ordered that the name of this proceeding is now "*In re: Uber Rideshare Cases*" and the caption of all further pleadings will be noted as such.

**IT IS SO ORDERED.**

DATED: Apr. 5, 2022

Judge Ethan P. Schulman

---

[1] At the time of the filing of the February 25, 2022 Case Management Statement, there had been 636 served cases, but the number recently increased to 735.

[2] A timely objection was filed with respect to case number CGC-20-585095, but the plaintiff subsequently filed a notice of dismissal of that matter.

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

[PROPOSED] ORDER RE: COORDINATION TO JCCP PROCEEDING CASE NO. 5188

BN 69108094v3

# EXHIBIT A

**Schedule A**

| Plaintiff Identifier | Case Number | Originating County of California Superior Court | Date of Case Filing | JCCP Status |
|---|---|---|---|---|
| Jane Doe | 20STCV12243 | Los Angeles | 3/26/2020 | Pending 12/23/2021 Add-On Request |
| WHBE 4 (Never officially renamed from Jane Doe) | CGC-20-584691 (listed in petition as CGC-20-584961) | San Francisco | 6/2/2020 | Petition Granted |
| WHBE 2 | CGC-20-584648 | San Francisco | 6/8/2020 | Pending 9/28/2021 Add-On Request |
| WHBE 3 (Never officially renamed from Jane Doe) | CGC-20-584649 | San Francisco | 6/8/2020 | Petition Granted |
| WHBE 1 | 20STCV22433 | Los Angeles | 6/15/2020 | Petition Granted |
| WHBE 5 | CGC-20-585094 | San Francisco | 6/29/2020 | Pending 12/23/2021 Add-On Request |
| ADZ 2 | CGC-20-585158 | San Francisco | 7/1/2020 | Pending 10/28/2021 Add-On Request |
| Jane Doe | 20STCV33948 | Los Angeles | 9/3/2020 | Pending 1/18/2022 Add-On Request |
| WHBE 6 | CGC-20-588388 | San Francisco | 12/11/2020 | Petition Granted |
| WHBE 7 (JCCP Add-On Notice lists as WHBE 1) | 20STCV48919 | Los Angeles | 12/22/2020 | Pending 10/28/2021 Add-On Request |
| WHBE 8 | CGC-21-588761 | San Francisco | 1/8/2021 | Petition Granted |
| WHBE 10 | CGC-21-590116 | San Francisco | 3/4/2021 | Petition Granted |
| WHBE 11 | CGC-21-590540 | San Francisco | 3/17/2021 | Petition Granted |
| Jane Doe | 21STCV15957 | Los Angeles | 4/28/2021 | Pending 12/23/2021 Add-On Request |
| Jane Doe 1 | CGC-21-591205 | San Francisco | 5/3/2021 | Petition Granted |
| Jane Doe 2 | CGC-21-592095 (listed in petition as CGC-21-592059) | San Francisco | 5/20/2021 | Petition Granted |
| LSA 1 | CGC-21-591790 | San Francisco | 5/25/2021 | Petition Granted |
| LSA 2 | CGC-21-591791 | San Francisco | 5/25/2021 | Petition Granted |
| LSA 3 (LSA 3-10) | CGC-21-591921 | San Francisco | 6/1/2021 | Pending 12/9/2021 Add-On Request |
| LSA 4 (LSA 3-10) | | | | |
| LSA 5 (LSA 3-10) | | | | |
| LSA 6 (LSA 3-10) | | | | |
| LSA 7 (LSA 3-10) | | | | |
| LSA 8 (LSA 3-10) | | | | |
| LSA 9 (LSA 3-10) | | | | |
| LSA 10 (LSA 3-10) | | | | |
| LSA 12 | 21CV382914 | Santa Clara | 6/10/2021 | Petition Granted |
| LSA 13 | CGC-21-592190 | San Francisco | 6/14/2021 | Petition Granted |

**Schedule A**

| Plaintiff Identifier | Case Number | Originating County of California Superior Court | Date of Case Filing | JCCP Status |
|---|---|---|---|---|
| LSA 14 | CGC-21-592192 | San Francisco | 6/14/2021 | Petition Granted |
| LSA 15 | CGC-21-592189 | San Francisco | 6/14/2021 | Petition Granted |
| LSA 16 | CGC-21-592187 | San Francisco | 6/14/2021 | Petition Granted |
| LSA 17 | CGC-21-592188 | San Francisco | 6/14/2021 | Petition Granted |
| LSA 18 | CGC-21-592194 (listed in petition as CGC-21-592079) | San Francisco | 6/14/2021 | Petition Granted |
| LSA 19 | CGC-21-592191 | San Francisco | 6/14/2021 | Petition Granted |
| LSA 20 | CGC-21-592193 | San Francisco | 6/14/2021 | Petition Granted |
| LSA 21 | CGC-21-592195 | San Francisco | 6/14/2021 | Petition Granted |
| LSA 22 | CGC-21-592196 | San Francisco | 6/14/2021 | Petition Granted |
| LSA 23 | CGC-21-592223 | San Francisco | 6/15/2021 | Petition Granted |
| LSA 24 | CGC-21-592224 | San Francisco | 6/15/2021 | Petition Granted |
| LSA 25 | CGC-21-592225 | San Francisco | 6/15/2021 | Petition Granted |
| LSA 26 | CGC-21-592227 | San Francisco | 6/15/2021 | Petition Granted |
| LSA 27 | CGC-21-592226 | San Francisco | 6/15/2021 | Petition Granted |
| LSA 28 | CGC-21-592228 | San Francisco | 6/15/2021 | Petition Granted |
| LSA 29 | CGC-21-592232 | San Francisco | 6/15/2021 | Petition Granted |
| LSA 30 | CGC-21-592231 | San Francisco | 6/15/2021 | Petition Granted |
| LSA 31 | CGC-21-592230 (listed in petition as CGC-21-592229) | San Francisco | 6/15/2021 | Petition Granted |
| LSA 32 | CGC-21-592229 (listed in petition as CGC-21-592231) | San Francisco | 6/15/2021 | Petition Granted |
| LSA 33 | CGC-21-592271 | San Francisco | 6/16/2021 | Petition Granted |
| LSA 34 | CGC-21-592272 | San Francisco | 6/16/2021 | Petition Granted |
| LSA 35 | CGC-21-592274 | San Francisco | 6/16/2021 | Petition Granted |
| LSA 36 | CGC-21-592273 | San Francisco | 6/16/2021 | Petition Granted |
| LSA 37 | CGC-21-592275 | San Francisco | 6/16/2021 | Petition Granted |
| LSA 38 | CGC-21-592276 | San Francisco | 6/16/2021 | Petition Granted |
| LSA 39 | CGC-21-592278 | San Francisco | 6/16/2021 | Petition Granted |
| LSA 40 | CGC-21-592279 | San Francisco | 6/16/2021 | Petition Granted |
| LSA 41 | CGC-21-592280 | San Francisco | 6/16/2021 | Petition Granted |
| LSA 42 | CGC-21-592281 | San Francisco | 6/16/2021 | Petition Granted |
| LSA 43 | CGC-21-592317 | San Francisco | 6/17/2021 | Petition Granted |
| LSA 44 | CGC-21-592320 | San Francisco | 6/17/2021 | Petition Granted |

## Schedule A

| Plaintiff Identifier | Case Number | Originating County of California Superior Court | Date of Case Filing | JCCP Status |
|---|---|---|---|---|
| LSA 45 | CGC-21-592322 | San Francisco | 6/17/2021 | Petition Granted |
| LSA 46 | CGC-21-592319 | San Francisco | 6/17/2021 | Petition Granted |
| LSA 47 | CGC-21-592318 | San Francisco | 6/17/2021 | Petition Granted |
| LSA 48 | CGC-21-592324 | San Francisco | 6/17/2021 | Petition Granted |
| LSA 49 | CGC-21-592321 | San Francisco | 6/17/2021 | Petition Granted |
| LSA 50 | CGC-21-592323 | San Francisco | 6/17/2021 | Petition Granted |
| LSA 51 | CGC-21-592325 | San Francisco | 6/17/2021 | Petition Granted |
| LSA 52 | CGC-21-592326 | San Francisco | 6/17/2021 | Petition Granted |
| LSA 53 | CGC-21-592348 | San Francisco | 6/18/2021 | Petition Granted |
| LSA 54 | CGC-21-592350 | San Francisco | 6/18/2021 | Petition Granted |
| LSA 55 | CGC-21-592351 | San Francisco | 6/18/2021 | Petition Granted |
| LSA 56 | CGC-21-592353 | San Francisco | 6/18/2021 | Petition Granted |
| LSA 57 | CGC-21-592352 | San Francisco | 6/18/2021 | Petition Granted |
| LSA 58 | CGC-21-592359 | San Francisco | 6/18/2021 | Petition Granted |
| LSA 59 | CGC-21-592358 | San Francisco | 6/18/2021 | Petition Granted |
| LSA 60 | CGC-21-592354 | San Francisco | 6/18/2021 | Petition Granted |
| LSA 61 | CGC-21-592356 | San Francisco | 6/18/2021 | Petition Granted |
| LSA 62 | CGC-21-592355 | San Francisco | 6/18/2021 | Petition Granted |
| LSA 63 | CGC-21-592382 | San Francisco | 6/21/2021 | Petition Granted |
| LSA 64 | CGC-21-592383 | San Francisco | 6/21/2021 | Petition Granted |
| LSA 65 | CGC-21-592385 | San Francisco | 6/21/2021 | Petition Granted |
| LSA 66 | CGC-21-592386 | San Francisco | 6/21/2021 | Petition Granted |
| LSA 67 | CGC-21-592387 | San Francisco | 6/21/2021 | Petition Granted |
| LSA 68 | CGC-21-592389 | San Francisco | 6/21/2021 | Petition Granted |
| LSA 69 | CGC-21-592391 | San Francisco | 6/21/2021 | Petition Granted |
| LSA 70 | CGC-21-592388 | San Francisco | 6/21/2021 | Petition Granted |
| LSA 71 | CGC-21-592392 | San Francisco | 6/21/2021 | Petition Granted |
| LSA 72 | CGC-21-592390 | San Francisco | 6/21/2021 | Petition Granted |
| LSA 73 | CGC-21-592421 | San Francisco | 6/22/2021 | Petition Granted |
| LSA 74 | CGC-21-592422 | San Francisco | 6/22/2021 | Petition Granted |
| LSA 75 | CGC-21-592425 | San Francisco | 6/22/2021 | Petition Granted |
| LSA 76 | CGC-21-592424 | San Francisco | 6/22/2021 | Petition Granted |
| LSA 77 | CGC-21-592426 | San Francisco | 6/22/2021 | Petition Granted |
| LSA 78 | CGC-21-592427 | San Francisco | 6/22/2021 | Petition Granted |
| LSA 79 | CGC-21-592428 | San Francisco | 6/22/2021 | Petition Granted |
| LSA 80 | CGC-21-592429 | San Francisco | 6/22/2021 | Petition Granted |
| LSA 81 | CGC-21-592431 | San Francisco | 6/22/2021 | Petition Granted |

# Schedule A

| Plaintiff Identifier | Case Number | Originating County of California Superior Court | Date of Case Filing | JCCP Status |
|---|---|---|---|---|
| LSA 82 | CGC-21-592430 | San Francisco | 6/22/2021 | Petition Granted |
| Jane Doe 3 | 34-2021-00303958 (listed as pending in petition) | Sacramento | 6/24/2021 | Petition Granted |
| LSA 83 | BCV-21-101470 (listed as pending in petition) | Kern | 6/24/2021 | Petition Granted |
| LSA 84 | 21STCV23848 (listed as pending in petition) | Los Angeles | 6/25/2021 | Petition Granted |
| LSA 85 | 21STCV23843 (listed as pending in petition) | Los Angeles | 6/25/2021 | Petition Granted |
| LSA 86 (LSA 86-94) | CGC-21-592766 | San Francisco | 7/9/2021 | Pending 9/28/2021 Add-On Request |
| LSA 87 (LSA 86-94) | | | | |
| LSA 88 (LSA 86-94) | | | | |
| LSA 89 (LSA 86-94) | | | | |
| LSA 90 (LSA 86-94) | | | | |
| LSA 91 (LSA 86-94) | | | | |
| LSA 92 (LSA 86-94) | | | | |
| LSA 93 (LSA 86-94) | | | | |
| LSA 94 (LSA 86-94) | | | | |
| Jane Doe | CGC-21-594086 | San Francisco | 7/26/2021 | Pending 1/24/2022 Add-On Request |
| LSA 95 (LSA 95-114) | CGC-21-594122 | San Francisco | 7/26/2021 | Pending 9/28/2021 Add-On Request |
| LSA 96 (LSA 95-114) | | | | |
| LSA 97 (LSA 95-114) | | | | |
| LSA 98 (LSA 95-114) | | | | |
| LSA 99 (LSA 95-114) | | | | |
| LSA 100 (LSA 95-114) | | | | |
| LSA 101 (LSA 95-114) | | | | |
| LSA 102 (LSA 95-114) | | | | |
| LSA 103 (LSA 95-114) | | | | |
| LSA 104 (LSA 95-114) | | | | |
| LSA 105 (LSA 95-114) | | | | |
| LSA 106 (LSA 95-114) | | | | |

## Schedule A

| Plaintiff Identifier | Case Number | Originating County of California Superior Court | Date of Case Filing | JCCP Status |
|---|---|---|---|---|
| LSA 107 (LSA 95-114) | | | | |
| LSA 108 (LSA 95-114) | | | | |
| LSA 109 (LSA 95-114) | | | | |
| LSA 110 (LSA 95-114) | | | | |
| LSA 111 (LSA 95-114) | | | | |
| LSA 112 (LSA 95-114) | | | | |
| LSA 113 (LSA 95-114) | | | | |
| LSA 114 (LSA 95-114) | | | | |
| LSA 115 (LSA 115-137) | CGC-21-594130 | San Francisco | 7/29/2021 | Pending 9/28/2021 Add-On Request |
| LSA 116 (LSA 115-137) | | | | |
| LSA 117 (LSA 115-137) | | | | |
| LSA 118 (LSA 115-137) | | | | |
| LSA 119 (LSA 115-137) | | | | |
| LSA 120 (LSA 115-137) | | | | |
| LSA 121 (LSA 115-137) | | | | |
| LSA 122 (LSA 115-137) | | | | |
| LSA 123 (LSA 115-137) | | | | |
| LSA 124 (LSA 115-137) | | | | |
| LSA 125 (LSA 115-137) | | | | |
| LSA 126 (LSA 115-137) | | | | |
| LSA 127 (LSA 115-137) | | | | |
| LSA 128 (LSA 115-137) | | | | |
| LSA 129 (LSA 115-137) | | | | |
| LSA 130 (LSA 115-137) | | | | |
| LSA 131 (LSA 115-137) | | | | |
| LSA 132 (LSA 115-137) | | | | |
| LSA 133 (LSA 115-137) | | | | |
| LSA 134 (LSA 115-137) | | | | |
| LSA 135 (LSA 115-137) | | | | |
| LSA 136 (LSA 115-137) | | | | |
| LSA 137 (LSA 115-137) | | | | |
| WHBE 12 | CGC-21-594245 | San Francisco | 8/2/2021 | Pending 9/28/2021 Add-On Request |
| LSA 138 (LSA 138-145) | CGC-21-594835 | San Francisco | 8/26/2021 | Pending 9/28/2021 Add-On Request |
| LSA 139 (LSA 138-145) | | | | |
| LSA 140 (LSA 138-145) | | | | |
| LSA 141 (LSA 138-145) | | | | |
| LSA 142 (LSA 138-145) | | | | |

**Schedule A**

| Plaintiff Identifier | Case Number | Originating County of California Superior Court | Date of Case Filing | JCCP Status |
|---|---|---|---|---|
| LSA 143 (LSA 138-145) | | | | |
| LSA 144 (LSA 138-145) | | | | |
| LSA 145 (LSA 138-145) | | | | |
| WHBE 29 | CGC-21-594917 | San Francisco | 8/31/2021 | Pending 10/28/2021 Add-On Request |
| WHBE 30 | CGC-21-595061 | San Francisco | 9/3/2021 | Pending 10/28/2021 Add-On Request |
| WHBE 31 | CGC-21-595077 | San Francisco | 9/7/2021 | Pending 10/28/2021 Add-On Request |
| WHBE 32 | CGC-21-595121 | San Francisco | 9/9/2021 | Pending 10/28/2021 Add-On Request |
| LSA 146 (LSA 146-154) | CGC-21-595506 | San Francisco | 9/24/2021 | Pending 10/28/2021 Add-On Request |
| LSA 147 (LSA 146-154) | | | | |
| LSA 148 (LSA 146-154) | | | | |
| LSA 149 (LSA 146-154) | | | | |
| LSA 150 (LSA 146-154) | | | | |
| LSA 151 (LSA 146-154) | | | | |
| LSA 152 (LSA 146-154) | | | | |
| LSA 153 (LSA 146-154) | | | | |
| LSA 154 (LSA 146-154) | | | | |
| WHBE 34 (WHBE 34-39) | CGC-21-595866 | San Francisco | 10/7/2021 | Pending 12/9/2021 Add-On Request |
| WHBE 35 (WHBE 34-39) | | | | |
| WHBE 36 (WHBE 34-39) | | | | |
| WHBE 37 (WHBE 34-39) | | | | |
| WHBE 38 (WHBE 34-39) | | | | |
| WHBE 39 (WHBE 34-39) | | | | |
| WHBE 40 | CGC-21-596076 | San Francisco | 10/26/2021 | Pending 12/9/2021 Add-On Request |
| WHBE 54 (WHBE 54-70) | CGC-21-596078 | San Francisco | 11/4/2021 | Pending 12/9/2021 Add-On Request |
| WHBE 55 (WHBE 54-70) | | San Francisco | 11/4/2021 | |
| WHBE 56 (WHBE 54-70) | | | | |
| WHBE 57 (WHBE 54-70) | | | | |
| WHBE 58 (WHBE 54-70) | | | | |
| WHBE 59 (WHBE 54-70) | | | | |
| WHBE 60 (WHBE 54-70) | | | | |
| WHBE 61 (WHBE 54-70) | | | | |
| WHBE 62 (WHBE 54-70) | | | | |
| WHBE 63 (WHBE 54-70) | | | | |
| WHBE 64 (WHBE 54-70) | | | | |

## Schedule A

| Plaintiff Identifier | Case Number | Originating County of California Superior Court | Date of Case Filing | JCCP Status |
|---|---|---|---|---|
| WHBE 65 (WHBE 54-70) | | | | |
| WHBE 66 (WHBE 54-70) | | | | |
| WHBE 67 (WHBE 54-70) | | | | |
| WHBE 68 (WHBE 54-70) | | | | |
| WHBE 69 (WHBE 54-70) | | | | |
| WHBE 70 (WHBE 54-70) | | | | |
| LSA 155 (LSA 155-175) | CGC-21-596907 | San Francisco | 12/2/2021 | Pending 12/23/2021 Add-On Request |
| LSA 156 (LSA 155-175) | | | | |
| LSA 157 (LSA 155-175) | | | | |
| LSA 158 (LSA 155-175) | | | | |
| LSA 159 (LSA 155-175) | | | | |
| LSA 160 (LSA 155-175) | | | | |
| LSA 161 (LSA 155-175) | | | | |
| LSA 162 (LSA 155-175) | | | | |
| LSA 163 (LSA 155-175) | | | | |
| LSA 164 (LSA 155-175) | | | | |
| LSA 165 (LSA 155-175) | | | | |
| LSA 166 (LSA 155-175) | | | | |
| LSA 167 (LSA 155-175) | | | | |
| LSA 168 (LSA 155-175) | | | | |
| LSA 169 (LSA 155-175) | | | | |
| LSA 170 (LSA 155-175) | | | | |
| LSA 171 (LSA 155-175) | | | | |
| LSA 172 (LSA 155-175) | | | | |
| LSA 173 (LSA 155-175) | | | | |
| LSA 174 (LSA 155-175) | | | | |
| LSA 175 (LSA 155-175) | | | | |
| LSA 176 (LSA 176-182) | CGC-21-597216 | San Francisco | 12/20/2021 | Pending 2/15/2022 Add-On Request |
| LSA 177 (LSA 176-182) | | | | |
| LSA 178 (LSA 176-182) | | | | |
| LSA 179 (LSA 176-182) | | | | |
| LSA 180 (LSA 176-182) | | | | |
| LSA 181 (LSA 176-182) | | | | |
| LSA 182 (LSA 176-182) | | | | |
| WHBE 175 (WHBE 175-204) | CGC-22-597462 | San Francisco | 1/5/2022 | Pending 2/15/2022 Add-On Request |
| WHBE 176 (WHBE 175-204) | | | | |
| WHBE 177 (WHBE 175-204) | | | | |

**Schedule A**

| Plaintiff Identifier | Case Number | Originating County of California Superior Court | Date of Case Filing | JCCP Status |
|---|---|---|---|---|
| WHBE 178 (WHBE 175-204) | | | | |
| WHBE 179 (WHBE 175-204) | | | | |
| WHBE 180 (WHBE 175-204) | | | | |
| WHBE 181 (WHBE 175-204) | | | | |
| WHBE 182 (WHBE 175-204) | | | | |
| WHBE 183 (WHBE 175-204) | | | | |
| WHBE 184 (WHBE 175-204) | | | | |
| WHBE 185 (WHBE 175-204) | | | | |
| WHBE 186 (WHBE 175-204) | | | | |
| WHBE 187 (WHBE 175-204) | | | | |
| WHBE 188 (WHBE 175-204) | | | | |
| WHBE 189 (WHBE 175-204) | | | | |
| WHBE 190 (WHBE 175-204) | | | | |
| WHBE 191 (WHBE 175-204) | | | | |
| WHBE 192 (WHBE 175-204) | | | | |
| WHBE 193 (WHBE 175-204) | | | | |
| WHBE 194 (WHBE 175-204) | | | | |
| WHBE 195 (WHBE 175-204) | | | | |
| WHBE 196 (WHBE 175-204) | | | | |
| WHBE 197 (WHBE 175-204) | | | | |
| WHBE 198 (WHBE 175-204) | | | | |
| WHBE 199 (WHBE 175-204) | | | | |
| WHBE 200 (WHBE 175-204) | | | | |
| WHBE 201 (WHBE 175-204) | | | | |
| WHBE 202 (WHBE 175-204) | | | | |
| WHBE 203 (WHBE 175-204) | | | | |
| WHBE 204 (WHBE 175-204) | | | | |
| LSA 183 (LSA 183-194) | CGC-22-597509 | San Francisco | 1/7/2022 | Pending 2/15/2022 Add-On Request |
| LSA 184 (LSA 183-194) | | | | |
| LSA 185 (LSA 183-194) | | | | |
| LSA 186 (LSA 183-194) | | | | |
| LSA 187 (LSA 183-194) | | | | |
| LSA 188 (LSA 183-194) | | | | |
| LSA 189 (LSA 183-194) | | | | |
| LSA 190 (LSA 183-194) | | | | |
| LSA 191 (LSA 183-194) | | | | |
| LSA 192 (LSA 183-194) | | | | |

**Schedule A**

| Plaintiff Identifier | Case Number | Originating County of California Superior Court | Date of Case Filing | JCCP Status |
|---|---|---|---|---|
| LSA 193 (LSA 183-194) | | | | |
| LSA 194 (LSA 183-194) | | | | |
| WHBE 295 (WHBE 295-324) | CGC-22-597568 | San Francisco | 1/11/2022 | |
| WHBE 296 (WHBE 295-324) | | | | |
| WHBE 297 (WHBE 295-324) | | | | |
| WHBE 298 (WHBE 295-324) | | | | |
| WHBE 299 (WHBE 295-324) | | | | |
| WHBE 300 (WHBE 295-324) | | | | |
| WHBE 301 (WHBE 295-324) | | | | |
| WHBE 302 (WHBE 295-324) | | | | |
| WHBE 303 (WHBE 295-324) | | | | |
| WHBE 304 (WHBE 295-324) | | | | |
| WHBE 305 (WHBE 295-324) | | | | |
| WHBE 306 (WHBE 295-324) | | | | |
| WHBE 307 (WHBE 295-324) | | | | |
| WHBE 308 (WHBE 295-324) | | | | |
| WHBE 309 (WHBE 295-324) | | | | |
| WHBE 310 (WHBE 295-324) | | | | |
| WHBE 311 (WHBE 295-324) | | | | |
| WHBE 312 (WHBE 295-324) | | | | |
| WHBE 313 (WHBE 295-324) | | | | |
| WHBE 314 (WHBE 295-324) | | | | |
| WHBE 315 (WHBE 295-324) | | | | |
| WHBE 316 (WHBE 295-324) | | | | |
| WHBE 317 (WHBE 295-324) | | | | |
| WHBE 318 (WHBE 295-324) | | | | |
| WHBE 319 (WHBE 295-324) | | | | |
| WHBE 320 (WHBE 295-324) | | | | |
| WHBE 321 (WHBE 295-324) | | | | |
| WHBE 322 (WHBE 295-324) | | | | |
| WHBE 323 (WHBE 295-324) | | | | |
| WHBE 324 (WHBE 295-324) | | | | |
| WHBE 325 (WHBE 325-354) | CGC-22-597601 | San Francisco | 1/12/2022 | Pending 2/15/2022 Add-On Request |
| WHBE 326 (WHBE 325-354) | | | | |
| WHBE 327 (WHBE 325-354) | | | | |
| WHBE 328 (WHBE 325-354) | | | | |
| WHBE 329 (WHBE 325-354) | | | | |

**Schedule A**

| Plaintiff Identifier | Case Number | Originating County of California Superior Court | Date of Case Filing | JCCP Status |
|---|---|---|---|---|
| WHBE 330 (WHBE 325-354) | | | | |
| WHBE 331 (WHBE 325-354) | | | | |
| WHBE 332 (WHBE 325-354) | | | | |
| WHBE 333 (WHBE 325-354) | | | | |
| WHBE 334 (WHBE 325-354) | | | | |
| WHBE 335 (WHBE 325-354) | | | | |
| WHBE 336 (WHBE 325-354) | | | | |
| WHBE 337 (WHBE 325-354) | | | | |
| WHBE 338 (WHBE 325-354) | | | | |
| WHBE 339 (WHBE 325-354) | | | | |
| WHBE 340 (WHBE 325-354) | | | | |
| WHBE 341 (WHBE 325-354) | | | | |
| WHBE 342 (WHBE 325-354) | | | | |
| WHBE 343 (WHBE 325-354) | | | | |
| WHBE 344 (WHBE 325-354) | | | | |
| WHBE 345 (WHBE 325-354) | | | | |
| WHBE 346 (WHBE 325-354) | | | | |
| WHBE 347 (WHBE 325-354) | | | | |
| WHBE 348 (WHBE 325-354) | | | | |
| WHBE 349 (WHBE 325-354) | | | | |
| WHBE 350 (WHBE 325-354) | | | | |
| WHBE 351 (WHBE 325-354) | | | | |
| WHBE 352 (WHBE 325-354) | | | | |
| WHBE 353 (WHBE 325-354) | | | | |
| WHBE 354 (WHBE 325-354) | | | | |
| WHBE 355 (WHBE 355-384) | CGC-22-597609 | San Francisco | 1/13/2022 | Pending 2/15/2022 Add-On Request |
| WHBE 356 (WHBE 355-384) | | | | |
| WHBE 357 (WHBE 355-384) | | | | |
| WHBE 358 (WHBE 355-384) | | | | |
| WHBE 359 (WHBE 355-384) | | | | |
| WHBE 360 (WHBE 355-384) | | | | |
| WHBE 361 (WHBE 355-384) | | | | |
| WHBE 362 (WHBE 355-384) | | | | |
| WHBE 363 (WHBE 355-384) | | | | |
| WHBE 364 (WHBE 355-384) | | | | |
| WHBE 365 (WHBE 355-384) | | | | |
| WHBE 366 (WHBE 355-384) | | | | |

**Schedule A**

| Plaintiff Identifier | Case Number | Originating County of California Superior Court | Date of Case Filing | JCCP Status |
|---|---|---|---|---|
| WHBE 367 (WHBE 355-384) | | | | |
| WHBE 368 (WHBE 355-384) | | | | |
| WHBE 369 (WHBE 355-384) | | | | |
| WHBE 370 (WHBE 355-384) | | | | |
| WHBE 371 (WHBE 355-384) | | | | |
| WHBE 372 (WHBE 355-384) | | | | |
| WHBE 373 (WHBE 355-384) | | | | |
| WHBE 374 (WHBE 355-384) | | | | |
| WHBE 375 (WHBE 355-384) | | | | |
| WHBE 376 (WHBE 355-384) | | | | |
| WHBE 377 (WHBE 355-384) | | | | |
| WHBE 378 (WHBE 355-384) | | | | |
| WHBE 379 (WHBE 355-384) | | | | |
| WHBE 380 (WHBE 355-384) | | | | |
| WHBE 381 (WHBE 355-384) | | | | |
| WHBE 382 (WHBE 355-384) | | | | |
| WHBE 383 (WHBE 355-384) | | | | |
| WHBE 384 (WHBE 355-384) | | | | |
| WHBE 385 (WHBE 385-414) | CGC-22-597631 | San Francisco | 1/13/2022 | Pending 2/15/2022 Add-On Request |
| WHBE 386 (WHBE 385-414) | | | | |
| WHBE 387 (WHBE 385-414) | | | | |
| WHBE 388 (WHBE 385-414) | | | | |
| WHBE 389 (WHBE 385-414) | | | | |
| WHBE 390 (WHBE 385-414) | | | | |
| WHBE 391 (WHBE 385-414) | | | | |
| WHBE 392 (WHBE 385-414) | | | | |
| WHBE 393 (WHBE 385-414) | | | | |
| WHBE 394 (WHBE 385-414) | | | | |
| WHBE 395 (WHBE 385-414) | | | | |
| WHBE 396 (WHBE 385-414) | | | | |
| WHBE 397 (WHBE 385-414) | | | | |
| WHBE 398 (WHBE 385-414) | | | | |
| WHBE 399 (WHBE 385-414) | | | | |
| WHBE 400 (WHBE 385-414) | | | | |
| WHBE 401 (WHBE 385-414) | | | | |
| WHBE 402 (WHBE 385-414) | | | | |
| WHBE 403 (WHBE 385-414) | | | | |

**Schedule A**

| Plaintiff Identifier | Case Number | Originating County of California Superior Court | Date of Case Filing | JCCP Status |
|---|---|---|---|---|
| WHBE 404 (WHBE 385-414) | | | | |
| WHBE 405 (WHBE 385-414) | | | | |
| WHBE 406 (WHBE 385-414) | | | | |
| WHBE 407 (WHBE 385-414) | | | | |
| WHBE 408 (WHBE 385-414) | | | | |
| WHBE 409 (WHBE 385-414) | | | | |
| WHBE 410 (WHBE 385-414) | | | | |
| WHBE 411 (WHBE 385-414) | | | | |
| WHBE 412 (WHBE 385-414) | | | | |
| WHBE 413 (WHBE 385-414) | | | | |
| WHBE 414 (WHBE 385-414) | | | | |
| WHBE 415 (WHBE 415-444) | CGC-22-597637 | San Francisco | 1/13/2022 | Pending 2/15/2022 Add-On Request |
| WHBE 416 (WHBE 415-444) | | | | |
| WHBE 417 (WHBE 415-444) | | | | |
| WHBE 418 (WHBE 415-444) | | | | |
| WHBE 419 (WHBE 415-444) | | | | |
| WHBE 420 (WHBE 415-444) | | | | |
| WHBE 421 (WHBE 415-444) | | | | |
| WHBE 422 (WHBE 415-444) | | | | |
| WHBE 423 (WHBE 415-444) | | | | |
| WHBE 424 (WHBE 415-444) | | | | |
| WHBE 425 (WHBE 415-444) | | | | |
| WHBE 426 (WHBE 415-444) | | | | |
| WHBE 427 (WHBE 415-444) | | | | |
| WHBE 428 (WHBE 415-444) | | | | |
| WHBE 429 (WHBE 415-444) | | | | |
| WHBE 430 (WHBE 415-444) | | | | |
| WHBE 431 (WHBE 415-444) | | | | |
| WHBE 432 (WHBE 415-444) | | | | |
| WHBE 433 (WHBE 415-444) | | | | |
| WHBE 434 (WHBE 415-444) | | | | |
| WHBE 435 (WHBE 415-444) | | | | |
| WHBE 436 (WHBE 415-444) | | | | |
| WHBE 437 (WHBE 415-444) | | | | |
| WHBE 438 (WHBE 415-444) | | | | |
| WHBE 439 (WHBE 415-444) | | | | |
| WHBE 440 (WHBE 415-444) | | | | |

**Schedule A**

| Plaintiff Identifier | Case Number | Originating County of California Superior Court | Date of Case Filing | JCCP Status |
|---|---|---|---|---|
| WHBE 441 (WHBE 415-444) | | | | |
| WHBE 442 (WHBE 415-444) | | | | |
| WHBE 443 (WHBE 415-444) | | | | |
| WHBE 444 (WHBE 415-444) | | | | |
| WHBE 445 (WHBE 445-474) | CGC-22-597640 | San Francisco | 1/13/2022 | Pending 2/15/2022 Add-On Request |
| WHBE 446 (WHBE 445-474) | | | | |
| WHBE 447 (WHBE 445-474) | | | | |
| WHBE 448 (WHBE 445-474) | | | | |
| WHBE 449 (WHBE 445-474) | | | | |
| WHBE 450 (WHBE 445-474) | | | | |
| WHBE 451 (WHBE 445-474) | | | | |
| WHBE 452 (WHBE 445-474) | | | | |
| WHBE 453 (WHBE 445-474) | | | | |
| WHBE 454 (WHBE 445-474) | | | | |
| WHBE 455 (WHBE 445-474) | | | | |
| WHBE 456 (WHBE 445-474) | | | | |
| WHBE 457 (WHBE 445-474) | | | | |
| WHBE 458 (WHBE 445-474) | | | | |
| WHBE 459 (WHBE 445-474) | | | | |
| WHBE 460 (WHBE 445-474) | | | | |
| WHBE 461 (WHBE 445-474) | | | | |
| WHBE 462 (WHBE 445-474) | | | | |
| WHBE 463 (WHBE 445-474) | | | | |
| WHBE 464 (WHBE 445-474) | | | | |
| WHBE 465 (WHBE 445-474) | | | | |
| WHBE 466 (WHBE 445-474) | | | | |
| WHBE 467 (WHBE 445-474) | | | | |
| WHBE 468 (WHBE 445-474) | | | | |
| WHBE 469 (WHBE 445-474) | | | | |
| WHBE 470 (WHBE 445-474) | | | | |
| WHBE 471 (WHBE 445-474) | | | | |
| WHBE 472 (WHBE 445-474) | | | | |
| WHBE 473 (WHBE 445-474) | | | | |
| WHBE 474 (WHBE 445-474) | | | | |
| WHBE 475 (WHBE 475-504) | CGC-22-597642 | San Francisco | 1/13/2022 | Pending 2/15/2022 Add-On Request |
| WHBE 476 (WHBE 475-504) | | | | |
| WHBE 477 (WHBE 475-504) | | | | |

**Schedule A**

| Plaintiff Identifier | Case Number | Originating County of California Superior Court | Date of Case Filing | JCCP Status |
|---|---|---|---|---|
| WHBE 478 (WHBE 475-504) | | | | |
| WHBE 479 (WHBE 475-504) | | | | |
| WHBE 480 (WHBE 475-504) | | | | |
| WHBE 481 (WHBE 475-504) | | | | |
| WHBE 482 (WHBE 475-504) | | | | |
| WHBE 483 (WHBE 475-504) | | | | |
| WHBE 484 (WHBE 475-504) | | | | |
| WHBE 485 (WHBE 475-504) | | | | |
| WHBE 486 (WHBE 475-504) | | | | |
| WHBE 487 (WHBE 475-504) | | | | |
| WHBE 488 (WHBE 475-504) | | | | |
| WHBE 489 (WHBE 475-504) | | | | |
| WHBE 490 (WHBE 475-504) | | | | |
| WHBE 491 (WHBE 475-504) | | | | |
| WHBE 492 (WHBE 475-504) | | | | |
| WHBE 493 (WHBE 475-504) | | | | |
| WHBE 494 (WHBE 475-504) | | | | |
| WHBE 495 (WHBE 475-504) | | | | |
| WHBE 496 (WHBE 475-504) | | | | |
| WHBE 497 (WHBE 475-504) | | | | |
| WHBE 498 (WHBE 475-504) | | | | |
| WHBE 499 (WHBE 475-504) | | | | |
| WHBE 500 (WHBE 475-504) | | | | |
| WHBE 501 (WHBE 475-504) | | | | |
| WHBE 502 (WHBE 475-504) | | | | |
| WHBE 503 (WHBE 475-504) | | | | |
| WHBE 504 (WHBE 475-504) | | | | |
| Jane Doe | 22STCV01821 | Los Angeles | 1/18/2022 | Pending 2/15/2022 Add-On Request |
| LSA 195 (LSA 195-198) | CGC-22-597919 | San Francisco | 1/31/2022 | Pending 2/15/2022 Add-On Request |
| LSA 196 (LSA 195-198) | | | | |
| LSA 197 (LSA 195-198) | | | | |
| LSA 198 (LSA 195-198) | | | | |
| WHBE 505 (WHBE 505-534) | CGC-22-597988 | San Francisco | 2/3/2022 | Pending 2/15/2022 Add-On Request |
| WHBE 506 (WHBE 505-534) | | | | |
| WHBE 507 (WHBE 505-534) | | | | |
| WHBE 508 (WHBE 505-534) | | | | |
| WHBE 509 (WHBE 505-534) | | | | |

**Schedule A**

| Plaintiff Identifier | Case Number | Originating County of California Superior Court | Date of Case Filing | JCCP Status |
|---|---|---|---|---|
| WHBE 510 (WHBE 505-534) | | | | |
| WHBE 511 (WHBE 505-534) | | | | |
| WHBE 512 (WHBE 505-534) | | | | |
| WHBE 513 (WHBE 505-534) | | | | |
| WHBE 514 (WHBE 505-534) | | | | |
| WHBE 515 (WHBE 505-534) | | | | |
| WHBE 516 (WHBE 505-534) | | | | |
| WHBE 517 (WHBE 505-534) | | | | |
| WHBE 518 (WHBE 505-534) | | | | |
| WHBE 519 (WHBE 505-534) | | | | |
| WHBE 520 (WHBE 505-534) | | | | |
| WHBE 521 (WHBE 505-534) | | | | |
| WHBE 522 (WHBE 505-534) | | | | |
| WHBE 523 (WHBE 505-534) | | | | |
| WHBE 524 (WHBE 505-534) | | | | |
| WHBE 525 (WHBE 505-534) | | | | |
| WHBE 526 (WHBE 505-534) | | | | |
| WHBE 527 (WHBE 505-534) | | | | |
| WHBE 528 (WHBE 505-534) | | | | |
| WHBE 529 (WHBE 505-534) | | | | |
| WHBE 530 (WHBE 505-534) | | | | |
| WHBE 531 (WHBE 505-534) | | | | |
| WHBE 532 (WHBE 505-534) | | | | |
| WHBE 533 (WHBE 505-534) | | | | |
| WHBE 534 (WHBE 505-534) | | | | |
| WHBE 590 (WHBE 590-619) | CGC-22-598198 | San Francisco | 2/14/2022 | All Parties Agree to Stipulate |
| WHBE 591 (WHBE 590-619) | | | | |
| WHBE 592 (WHBE 590-619) | | | | |
| WHBE 593 (WHBE 590-619) | | | | |
| WHBE 594 (WHBE 590-619) | | | | |
| WHBE 595 (WHBE 590-619) | | | | |
| WHBE 596 (WHBE 590-619) | | | | |
| WHBE 597 (WHBE 590-619) | | | | |
| WHBE 598 (WHBE 590-619) | | | | |
| WHBE 599 (WHBE 590-619) | | | | |
| WHBE 600 (WHBE 590-619) | | | | |
| WHBE 601 (WHBE 590-619) | | | | |

**Schedule A**

| Plaintiff Identifier | Case Number | Originating County of California Superior Court | Date of Case Filing | JCCP Status |
|---|---|---|---|---|
| WHBE 602 (WHBE 590-619) | | | | |
| WHBE 603 (WHBE 590-619) | | | | |
| WHBE 604 (WHBE 590-619) | | | | |
| WHBE 605 (WHBE 590-619) | | | | |
| WHBE 606 (WHBE 590-619) | | | | |
| WHBE 607 (WHBE 590-619) | | | | |
| WHBE 608 (WHBE 590-619) | | | | |
| WHBE 609 (WHBE 590-619) | | | | |
| WHBE 610 (WHBE 590-619) | | | | |
| WHBE 611 (WHBE 590-619) | | | | |
| WHBE 612 (WHBE 590-619) | | | | |
| WHBE 613 (WHBE 590-619) | | | | |
| WHBE 614 (WHBE 590-619) | | | | |
| WHBE 615 (WHBE 590-619) | | | | |
| WHBE 616 (WHBE 590-619) | | | | |
| WHBE 617 (WHBE 590-619) | | | | |
| WHBE 618 (WHBE 590-619) | | | | |
| WHBE 619 (WHBE 590-619) | | | | |
| LSA 199 (LSA 199-208) | CGC-22-598208 | San Francisco | 2/15/2022 | All Parties Agree to Stipulate |
| LSA 200 (LSA 199-208) | | | | |
| LSA 201 (LSA 199-208) | | | | |
| LSA 202 (LSA 199-208) | | | | |
| LSA 203 (LSA 199-208) | | | | |
| LSA 204 (LSA 199-208) | | | | |
| LSA 205 (LSA 199-208) | | | | |
| LSA 206 (LSA 199-208) | | | | |
| LSA 207 (LSA 199-208) | | | | |
| LSA 208 (LSA 199-208) | | | | |
| WHBE 620 (WHBE 620-649) | CGC-22-598229 | San Francisco | 2/17/2022 | All Parties Agree to Stipulate |
| WHBE 621 (WHBE 620-649) | | | | |
| WHBE 622 (WHBE 620-649) | | | | |
| WHBE 623 (WHBE 620-649) | | | | |
| WHBE 624 (WHBE 620-649) | | | | |
| WHBE 625 (WHBE 620-649) | | | | |
| WHBE 626 (WHBE 620-649) | | | | |
| WHBE 627 (WHBE 620-649) | | | | |
| WHBE 628 (WHBE 620-649) | | | | |

**Schedule A**

| Plaintiff Identifier | Case Number | Originating County of California Superior Court | Date of Case Filing | JCCP Status |
|---|---|---|---|---|
| WHBE 629 (WHBE 620-649) | | | | |
| WHBE 630 (WHBE 620-649) | | | | |
| WHBE 631 (WHBE 620-649) | | | | |
| WHBE 632 (WHBE 620-649) | | | | |
| WHBE 633 (WHBE 620-649) | | | | |
| WHBE 634 (WHBE 620-649) | | | | |
| WHBE 635 (WHBE 620-649) | | | | |
| WHBE 636 (WHBE 620-649) | | | | |
| WHBE 637 (WHBE 620-649) | | | | |
| WHBE 638 (WHBE 620-649) | | | | |
| WHBE 639 (WHBE 620-649) | | | | |
| WHBE 640 (WHBE 620-649) | | | | |
| WHBE 641 (WHBE 620-649) | | | | |
| WHBE 642 (WHBE 620-649) | | | | |
| WHBE 643 (WHBE 620-649) | | | | |
| WHBE 644 (WHBE 620-649) | | | | |
| WHBE 645 (WHBE 620-649) | | | | |
| WHBE 646 (WHBE 620-649) | | | | |
| WHBE 647 (WHBE 620-649) | | | | |
| WHBE 648 (WHBE 620-649) | | | | |
| WHBE 649 (WHBE 620-649) | | | | |
| WHBE 650 (WHBE 650-679) | CGC-22-598231 | San Francisco | 2/18/2022 | All Parties Agree to Stipulate |
| WHBE 651 (WHBE 650-679) | | | | |
| WHBE 652 (WHBE 650-679) | | | | |
| WHBE 653 (WHBE 650-679) | | | | |
| WHBE 654 (WHBE 650-679) | | | | |
| WHBE 655 (WHBE 650-679) | | | | |
| WHBE 656 (WHBE 650-679) | | | | |
| WHBE 657 (WHBE 650-679) | | | | |
| WHBE 658 (WHBE 650-679) | | | | |
| WHBE 659 (WHBE 650-679) | | | | |
| WHBE 660 (WHBE 650-679) | | | | |
| WHBE 661 (WHBE 650-679) | | | | |
| WHBE 662 (WHBE 650-679) | | | | |
| WHBE 663 (WHBE 650-679) | | | | |
| WHBE 664 (WHBE 650-679) | | | | |
| WHBE 665 (WHBE 650-679) | | | | |

**Schedule A**

| Plaintiff Identifier | Case Number | Originating County of California Superior Court | Date of Case Filing | JCCP Status |
|---|---|---|---|---|
| WHBE 666 (WHBE 650-679) | | | | |
| WHBE 667 (WHBE 650-679) | | | | |
| WHBE 668 (WHBE 650-679) | | | | |
| WHBE 669 (WHBE 650-679) | | | | |
| WHBE 670 (WHBE 650-679) | | | | |
| WHBE 671 (WHBE 650-679) | | | | |
| WHBE 672 (WHBE 650-679) | | | | |
| WHBE 673 (WHBE 650-679) | | | | |
| WHBE 674 (WHBE 650-679) | | | | |
| WHBE 675 (WHBE 650-679) | | | | |
| WHBE 676 (WHBE 650-679) | | | | |
| WHBE 677 (WHBE 650-679) | | | | |
| WHBE 678 (WHBE 650-679) | | | | |
| WHBE 679 (WHBE 650-679) | | | | |
| WHBE 680 (WHBE 680-699) | CGC-22-598263 | San Francisco | 2/23/2022 | All Parties Agree to Stipulate |
| WHBE 681 (WHBE 680-699) | | | | |
| WHBE 682 (WHBE 680-699) | | | | |
| WHBE 683 (WHBE 680-699) | | | | |
| WHBE 684 (WHBE 680-699) | | | | |
| WHBE 685 (WHBE 680-699) | | | | |
| WHBE 686 (WHBE 680-699) | | | | |
| WHBE 687 (WHBE 680-699) | | | | |
| WHBE 688 (WHBE 680-699) | | | | |
| WHBE 689 (WHBE 680-699) | | | | |
| WHBE 690 (WHBE 680-699) | | | | |
| WHBE 691 (WHBE 680-699) | | | | |
| WHBE 692 (WHBE 680-699) | | | | |
| WHBE 693 (WHBE 680-699) | | | | |
| WHBE 694 (WHBE 680-699) | | | | |
| WHBE 695 (WHBE 680-699) | | | | |
| WHBE 696(WHBE 680-699) | | | | |
| WHBE 697 (WHBE 680-699) | | | | |
| WHBE 698 (WHBE 680-699) | | | | |
| WHBE 699 (WHBE 680-699) | | | | |
| WHBE 700 (WHBE 700-709) | CGC-22-598459 | San Francisco | 3/1/2022 | All Parties Agree to Stipulate |
| WHBE 701 (WHBE 700-709) | | | | |
| WHBE 702 (WHBE 700-709) | | | | |

**Schedule A**

| Plaintiff Identifier | Case Number | Originating County of California Superior Court | Date of Case Filing | JCCP Status |
|---|---|---|---|---|
| WHBE 703 (WHBE 700-709) | | | | |
| WHBE 704 (WHBE 700-709) | | | | |
| WHBE 705 (WHBE 700-709) | | | | |
| WHBE 706 (WHBE 700-709) | | | | |
| WHBE 707 (WHBE 700-709) | | | | |
| WHBE 708 (WHBE 700-709) | | | | |
| WHBE 709 (WHBE 700-709) | | | | |
| LSA 209 (LSA 209-218) | CGC-22-598449 | San Francisco | 3/1/2022 | All Parties Agree to Stipulate |
| LSA 210 (LSA 209-218) | | | | |
| LSA 211 (LSA 209-218) | | | | |
| LSA 212 (LSA 209-218) | | | | |
| LSA 213 (LSA 209-218) | | | | |
| LSA 214 (LSA 209-218) | | | | |
| LSA 215 (LSA 209-218) | | | | |
| LSA 216 (LSA 209-218) | | | | |
| LSA 217 (LSA 209-218) | | | | |
| LSA 218 (LSA 209-218) | | | | |
| WHBE 753 (WHBE 753-762) | CGC-22-598743 | San Francisco | 3/17/2022 | All Parties Agree to Stipulate |
| WHBE 754 (WHBE 753-762) | | | | |
| WHBE 755 (WHBE 753-762) | | | | |
| WHBE 756 (WHBE 753-762) | | | | |
| WHBE 757 (WHBE 753-762) | | | | |
| WHBE 758 (WHBE 753-762) | | | | |
| WHBE 759 (WHBE 753-762) | | | | |
| WHBE 760 (WHBE 753-762) | | | | |
| WHBE 761 (WHBE 753-762) | | | | |
| WHBE 762 (WHBE 753-762) | | | | |
| WHBE 823 (WHBE 823-852) | CGC-22-598770 | San Francisco | 3/18/2022 | All Parties Agree to Stipulate |
| WHBE 824 (WHBE 823-852) | | | | |
| WHBE 825 (WHBE 823-852) | | | | |
| WHBE 826 (WHBE 823-852) | | | | |
| WHBE 827 (WHBE 823-852) | | | | |
| WHBE 828 (WHBE 823-852) | | | | |
| WHBE 829 (WHBE 823-852) | | | | |
| WHBE 830 (WHBE 823-852) | | | | |
| WHBE 831 (WHBE 823-852) | | | | |
| WHBE 832 (WHBE 823-852) | | | | |

## Schedule A

| Plaintiff Identifier | Case Number | Originating County of California Superior Court | Date of Case Filing | JCCP Status |
|---|---|---|---|---|
| WHBE 833 (WHBE 823-852) | | | | |
| WHBE 834 (WHBE 823-852) | | | | |
| WHBE 835 (WHBE 823-852) | | | | |
| WHBE 836 (WHBE 823-852) | | | | |
| WHBE 837 (WHBE 823-852) | | | | |
| WHBE 838 (WHBE 823-852) | | | | |
| WHBE 839 (WHBE 823-852) | | | | |
| WHBE 840 (WHBE 823-852) | | | | |
| WHBE 841 (WHBE 823-852) | | | | |
| WHBE 842 (WHBE 823-852) | | | | |
| WHBE 843 (WHBE 823-852) | | | | |
| WHBE 844 (WHBE 823-852) | | | | |
| WHBE 845 (WHBE 823-852) | | | | |
| WHBE 846 (WHBE 823-852) | | | | |
| WHBE 847 (WHBE 823-852) | | | | |
| WHBE 848 (WHBE 823-852) | | | | |
| WHBE 849 (WHBE 823-852) | | | | |
| WHBE 850 (WHBE 823-852) | | | | |
| WHBE 851 (WHBE 823-852) | | | | |
| WHBE 852 (WHBE 823-852) | | | | |
| WHBE 853 (WHBE 853-872) | CGC-22-598891 | San Francisco | 3/25/2022 | All Parties Agree to Stipulate |
| WHBE 854 (WHBE 853-872) | | | | |
| WHBE 855 (WHBE 853-872) | | | | |
| WHBE 856 (WHBE 853-872) | | | | |
| WHBE 857 (WHBE 853-872) | | | | |
| WHBE 858 (WHBE 853-872) | | | | |
| WHBE 859 (WHBE 853-872) | | | | |
| WHBE 860 (WHBE 853-872) | | | | |
| WHBE 861 (WHBE 853-872) | | | | |
| WHBE 862 (WHBE 853-872) | | | | |
| WHBE 863 (WHBE 853-872) | | | | |
| WHBE 864 (WHBE 853-872) | | | | |
| WHBE 865 (WHBE 853-872) | | | | |
| WHBE 866 (WHBE 853-872) | | | | |
| WHBE 867 (WHBE 853-872) | | | | |
| WHBE 868 (WHBE 853-872) | | | | |
| WHBE 869 (WHBE 853-872) | | | | |

## Schedule A

| Plaintiff Identifier | Case Number | Originating County of California Superior Court | Date of Case Filing | JCCP Status |
|---|---|---|---|---|
| WHBE 870 (WHBE 853-872) | | | | |
| WHBE 871 (WHBE 853-872) | | | | |
| WHBE 872 (WHBE 853-872) | | | | |
| LSA 219 (LSA 219-238) | CGC-22-598907 | San Francisco | 3/28/2022 | All Parties Agree to Stipulate |
| LSA 220 (LSA 219-238) | | | | |
| LSA 221 (LSA 219-238) | | | | |
| LSA 222 (LSA 219-238) | | | | |
| LSA 223 (LSA 219-238) | | | | |
| LSA 224 (LSA 219-238) | | | | |
| LSA 225 (LSA 219-238) | | | | |
| LSA 226 (LSA 219-238) | | | | |
| LSA 227 (LSA 219-238) | | | | |
| LSA 228 (LSA 219-238) | | | | |
| LSA 229 (LSA 219-238) | | | | |
| LSA 230 (LSA 219-238) | | | | |
| LSA 231 (LSA 219-238) | | | | |
| LSA 232 (LSA 219-238) | | | | |
| LSA 233 (LSA 219-238) | | | | |
| LSA 234 (LSA 219-238) | | | | |
| LSA 235 (LSA 219-238) | | | | |
| LSA 236 (LSA 219-238) | | | | |
| LSA 237 (LSA 219-238) | | | | |
| LSA 238 (LSA 219-238) | | | | |

**CERTIFICATE OF ELECTRONIC SERVICE**
(CCP 1010.6(6) & CRC 2.260(g))

I, Felicia Green, a Deputy Clerk of the Superior Court of the County of San Francisco, certify that I am not a party to the within action.

On April 12, 2022, I electronically served ORDER RE: COORDINATION TO JCCP PROCEEDING CASE NO. 5188 via File & ServeXpress on the recipients designated on the Transaction Receipt located on the File & ServeXpress website.

Dated: 4-12-2022

T. Michael Yuen, Clerk

By: _____
Felicia Green, Deputy Clerk

# Superior Court of California
County of San Francisco

|  |  |
|---|---|
| COORDINATION PROCEEDING<br>SPECIAL TITLE [RULE 3.550]<br><br>**IN RE: UBER RIDESHARE CASES**<br><br><br>This Documents Relates to: | JUDICIAL COUNCIL COORDINATION<br>PROCEEDING CASE NO. 5188 |

I, Felicia Green, a Deputy Clerk of the Superior Court of the City and County of San Francisco, certify that I am not a party to the within action.

On April 12, 2022, I served the attached **ORDER RE: COORDINATION TO JCCP PROCEEDING CASE NO. 5188** by placing copies thereof in sealed envelopes, addressed as follows:

Chair, Judicial Council of California
Attn: Appellate Court Services
(Civil Case Coordination)
455 Golden Gate Avenue, 5th Floor
San Francisco, CA 94102-3688

I then placed the sealed envelopes in the outgoing mail at 400 McAllister Street, San Francisco, CA. 94102 on the date indicated above for collection, attachment of required prepaid postage, and mailing on that date following standard court practices.

Dated:  April 12, 2022

MICHAEL YUEN, Clerk

By:  *Felicia Green*

Felicia Green, Deputy Court Clerk

**In Re: Uber Rideshare Cases – JCCP 5188**
**COORDINATED ACTIONS**

| COURT | NUMBER | SHORT TITLE |
|---|---|---|
| Superior Court of California County of Kern | BCV-21-101470 | Jane Doe LSA 83 v Uber Technologies, Inc., et al |
| Superior Court of California County of Los Angeles | Case No. TBD | Jane Doe LSA 84 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of Los Angeles | Case No. TBD | Jane Doe LSA 85 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of Los Angeles | 20STCV22433 | Jane Doe v. Uber Technologies, Inc., et al. |
| Superior Court of California County of Sacramento | Case No. TBD | Jane Doe 3, et al. v. Uber Technologies, Inc. |
| Superior Court of California County of San Francisco | CGC-20-584649 | Jane Doe v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-20-584961 | Jane Doe v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-20-588388 | Jane Doe v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-588761 | Jane Doe v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-590116 | Jane Doe WHBE 10 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-590540 | Jane Doe WHBE 11 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-591205 | Jane Doe 1, et al v. Uber Technologies, Inc. |
| Superior Court of California County of San Francisco | CGC-21-591790 | Jane Doe LSA 1 v. Uber Technologies, Inc., et al. |

| | | |
|---|---|---|
| Superior Court of California County of San Francisco | CGC-21-591791 | Jane Doe LSA 2 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592059 | Jane Doe 2, et al. v. Uber Technologies, Inc. |
| Superior Court of California County of San Francisco | CGC-21-592187 | Jane Doe LSA 16 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592188 | Jane Doe LSA 17 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592189 | Jane Doe LSA 15 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592190 | Jane Doe 13 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592191 | Jane Doe LSA 19 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592192 | Jane Doe LSA 14 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592193 | Jane Doe LSA 20 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592194 | Jane Doe LSA 18 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592195 | Jane Doe LSA 21 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592196 | Jane Doe LSA 22 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592223 | Jane Doe LSA 23 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592224 | Jane Doe LSA 24 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592225 | Jane Doe LSA 25 v. Uber Technologies, Inc., et al. |

| | | |
|---|---|---|
| Superior Court of California County of San Francisco | CGC-21-592226 | Jane Doe LSA 27 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592227 | Jane Doe LSA 26 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592228 | Jane Doe LSA 28 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592229 | Jane Doe LSA 32 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592230 | Jane Doe 31 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592231 | Jane Doe 30 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592232 | Jane Doe 29 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592271 | Jane Doe LSA 33 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592272 | Jane Doe LSA 34 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592273 | Jane Doe LSA 36 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592274 | Jane Doe LSA 35 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592275 | Jane Doe LSA 37 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592276 | Jane Doe LSA 38 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592278 | Jane Doe 39 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592279 | Jane Doe LSA 40 v. Uber Technologies, Inc., et al. |

| | | |
|---|---|---|
| Superior Court of California County of San Francisco | CGC-21-592280 | Jane Doe LSA 41 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592281 | Jane Doe LSA 42 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592317 | Jane Doe LSA 43 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592318 | Jane Doe LSA 47 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592319 | Jane Doe LSA 46 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592320 | Jane Doe LSA 44 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592321 | Jane Doe LSA 49 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592323 | Jane Doe LSA 50 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592324 | Jane Doe LSA 48 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592325 | Jane Doe LSA 51 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592326 | Jane Doe LSA 52 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592348 | Jane Doe LSA 53 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592350 | Jane Doe LSA 54 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592351 | Jane Doe LSA 55 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592352 | Jane Doe LSA 57 v. Uber Technologies, Inc., et al. |

| | | |
|---|---|---|
| Superior Court of California County of San Francisco | CGC-21-592353 | Jane Doe 56 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592354 | Jane Doe LSA 60 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592355 | Jane Doe LSA 62 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592356 | Jane Doe LSA 61 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592358 | Jane Doe LSA 59 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592359 | Jane Doe LSA 58 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592382 | Jane Doe LSA 63 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592383 | Jane Doe LSA 64 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592385 | Jane Doe LSA 65 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592386 | Jane Doe LSA 66 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592387 | Jane Doe LSA 67 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592388 | Jane Doe LSA 70 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592389 | Jane Doe LSA 68 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592390 | Jane Doe LSA 72 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592391 | Jane Doe LSA 69 v. Uber Technologies, Inc., et al. |

| | | |
|---|---|---|
| Superior Court of California County of San Francisco | CGC-21-592392 | Jane Doe LSA 71 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592421 | Jane Doe LSA 73 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592422 | Jane Doe LSA 74 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592424 | Jane Doe LSA 76 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592425 | Jane Doe LSA 75 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592426 | Jane Doe LSA 77 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592427 | Jane Doe LSA 78 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592428 | Jane Doe LSA 79 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592429 | Jane Doe LSA 80 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592430 | Jane Doe LSA 82 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of San Francisco | CGC-21-592431 | Jane Doe LSA 81 v. Uber Technologies, Inc., et al. |
| Superior Court of California County of Santa Clara | 21-CV-382914 | Jane Doe LSA 12 v. Uber Technologies, Inc., et al. |

# EXHIBIT 3

1  ROBERT ATKINS (*Admitted Pro Hac Vice*)
   ratkins@paulweiss.com
2  **PAUL, WEISS, RIFKIND, WHARTON**
   **& GARRISON LLP**
3  1285 Avenue of the Americas
4  New York, NY 10019
Telephone: (212) 373-3183
5  Facsimile: (212) 492-0183

6  RANDALL S. LUSKEY (SBN: 240915)
   rluskey@paulweiss.com
7  **PAUL, WEISS, RIFKIND, WHARTON**
   **& GARRISON LLP**
8  535 Mission Street, 24th Floor
9  San Francisco, CA 94105
Telephone: (628) 432-5100
10  Facsimile: (628) 232-3101

11  *Attorneys for Defendants/Cross-Complainants,*
12  UBER TECHNOLOGIES, INC., RASIER, LLC
and RASIER-CA, LLC
13

**FILED**
San Francisco County Superior Court

FEB 2 8 2023

CLERK OF THE COURT
BY: _____
Deputy Clerk

14       **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
15  **COUNTY OF SAN FRANCISCO – UNLIMITED CIVIL JURISDICTION**
16

17  Coordination Proceeding

18  *In Re: Uber Rideshare Cases*

19  This Document Relates to:

20  ALL ACTIONS

21

22

23

JUDICIAL COUNCIL COORDINATION
PROCEEDING CASE NO. 5188

CASE NO. CJC-21-005188

*(Assigned to Hon. Ethan P. Schulman, Dept. 304)*

[PROPOSED] **ORDER RE: APPLICATION OF
JANUARY 23, 2023 ORDER TO ALL CASES IN
THIS PROCEEDING**

24

25

26

27

28

1

# [PROPOSED] ORDER

**IT IS HEREBY ORDERED:**

1.     This Order shall be binding on all Plaintiffs whose claims are currently coordinated into this coordinated proceeding.

2.     The Order granting Uber's motions to stay or dismiss *Jane Doe LSA 35* v. *Uber Techs., Inc., et al.*, CGC-21-592274 and *Jane Doe WHBE 3* v. *Uber Techs., Inc. et al.*, CGC 20-584649 based on *forum non conveniens* (the "FNC Order") shall apply to all of the cases in this coordinated proceeding that arise from alleged incidents that occurred outside of California (the "Non-California Cases"). A list of the Non-California Cases is attached hereto as **Exhibit A**. The FNC Order will have full force and effect with respect to the plaintiffs in each of the Non-California Cases. Accordingly, each of the Non-California Cases is hereby stayed pursuant and subject to the terms of the FNC Order.

3.     On the 30th day after a plaintiff re-files in an alternative forum, the stay set forth in the preceding paragraph shall convert to an order of dismissal with prejudice.

4.     For any plaintiff who has re-filed in an alternative forum within 180 days of the date of entry of this Order, the time that accrued between the date of filing of the plaintiff's action in this Court and the date of re-filing in the alternative forum shall not be counted for purposes of the statute of limitations.

5.     For any plaintiff who has re-filed in an alternative forum within 180 days of the date of entry of this Order, the statute of limitations that applies to the plaintiff's claims shall be *the longer of* (a) the statute of limitations that would apply had the action been litigated in California or (b) the statute of limitation that applies under the law of the alternative forum in which the case is re-filed.

6.     Any Plaintiff who seeks an extension beyond the 180 days may do so by application to the Court with a showing of good cause and diligence prior to the expiration of the 180-day period.

7.     With respect to any plaintiff who has not re-filed in an alternative forum within 180 days after the date of entry of this Order, or has not sought and obtained an extension for good

2

cause as set forth in paragraph six above, the stay set forth in the preceding paragraphs shall convert to an order of dismissal with prejudice. With respect to any Plaintiff who has sought an extension for good cause prior to expiration of the 180-day period and such application has not been adjudicated by the end of that period, the stay set forth in the preceding paragraphs shall convert to an order of dismissal with prejudice upon denial of the application, or otherwise on such terms as the Court orders in its resolution of the Plaintiff's application.

8.    For any plaintiff added to this coordinated proceeding subsequent to the date of entry of this Order, in addition to complying with the aforementioned requirements set forth in Paragraph 2 of the August 10, 2022 Case Management Order, such plaintiff shall, within 30 days of that plaintiff's action being added to this coordinated proceeding, serve on counsel for Uber a statement identifying the state of her residence at the time of the alleged incident and the state in which the alleged incident took place. [1] Within 10 days thereafter, counsel for such plaintiff and counsel for Uber shall meet and confer regarding the applicability of the FNC Order and this Order to the plaintiff's case. Within 10 days after that meet and confer, the plaintiff and Uber shall submit a joint statement to the Court regarding the applicability of the Court Order and this Order to the plaintiff's case.

9.    This Order in no way alters any plaintiff's right to appeal the FNC Order as such right otherwise exists under California law.

**IT IS SO ORDERED.**

DATED: _Feb. 28, 2023_

_[signature]_

THE HONORABLE ETHAN P. SCHULMAN
JUDGE OF THE SUPERIOR COURT FOR THE
COUNTY OF SAN FRANCISCO

---

[1] There are a few cases that have already been added to this coordinated proceeding, but for which Uber has not yet received sufficient information to determine whether those cases should be included in Exhibit A. Uber has identified those cases for Plaintiffs separately. Once the necessary information has been provided by Plaintiffs (as required by the August 10, 2022 Case Management Order), the parties shall meet and confer about those cases and submit a joint statement or stipulation pursuant to the provisions of this paragraph.

3

[PROPOSED] ORDER RE: APPLICATION OF JANUARY 23, 2023 ORDER
TO REMAINING CASES IN THIS PROCEEDING                          Case No. CJC-21-005188

# EXHIBIT A

EXHIBIT A

**Updated List of Cases for Application of Order on Defendants and
Cross-Complainants Uber Technologies, Inc. and Rasier LLC's
Motions to Stay or Dismiss Based on *Forum Non Conveniens***

Case No. CJC-21-005188

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens* Category[3] |
|---|---|---|---|---|
| Jane Doe v. Uber Technologies, Inc. et al. | CGC-20-584649 | ADZ Law, LLP; Williams Hart & Boundas, LLP | Jane Doe | Category 2 |
| Jane Doe LSA 3, et al. v. Uber Technologies, Inc., et al. | CGC-21-591921 | Levin Simes Abrams, LLP | LSA 4 | Category 1 |
| Jane Doe LSA 3, et al. v. Uber Technologies, Inc., et al. | CGC-21-591921 | Levin Simes Abrams, LLP | LSA 5 | Category 1 |
| Jane Doe LSA 3, et al. v. Uber Technologies, Inc., et al. | CGC-21-591921 | Levin Simes Abrams, LLP | LSA 7 | Category 1 |
| Jane Doe LSA 3, et al. v. Uber Technologies, Inc., et al. | CGC-21-591921 | Levin Simes Abrams, LLP | LSA 9 | Category 1 |
| Jane Doe LSA 13 v. Uber Technologies, Inc., et al. | CGC-21-592190 | Levin Simes Abrams, LLP | LSA 13 | Category 1 |
| Jane Doe LSA 15 v. Uber Technologies, Inc., et al. | CGC-21-592189 | Levin Simes Abrams, LLP | LSA 15 | Category 1 |
| Jane Doe LSA 16 v. Uber Technologies, Inc., et al. | CGC-21-592187 | Levin Simes Abrams, LLP | LSA 16 | Category 1 |
| Jane Doe LSA 17 v. Uber Technologies, Inc., et al. | CGC-21-592188 | Levin Simes Abrams, LLP | LSA 17 | Category 1 |
| Jane Doe LSA 24 v. Uber Technologies, Inc., et al. | CGC-21-592224 | Levin Simes Abrams, LLP | LSA 24 | Category 1 |

---

[1]   Case numbers followed by a "*" signify cases not yet coordinated in the JCCP.

[2]   Based on the original Plaintiff forum fact sheets, WHBE 445 (CGC-22-597640) and WHBE 1410 (CGC-22-600282) would be included, but counsel for Plaintiffs has represented that corrected fact sheets will be submitted for these two cases resulting in their removal from this list.  Uber reserves all rights to revisit upon review of the two correct forum fact sheets.

[3]   Category designations followed by a "^" signify cases not included in prior *forum non conveniens* briefing or letter appendices.

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | Forum Non Conveniens Category[3] |
|---|---|---|---|---|
| Jane Doe LSA 25 v. Uber Technologies, Inc., et al. | CGC-21-592225 | Levin Simes Abrams, LLP | LSA 25 | Category 1 |
| Jane Doe LSA 33 v. Uber Technologies, Inc., et al. | CGC-21-592271 | Levin Simes Abrams, LLP | LSA 33 | Category 1 |
| Jane Doe LSA 34 v. Uber Technologies, Inc., et al. | CGC-21-592272 | Levin Simes Abrams, LLP | LSA 34 | Category 1 |
| Jane Doe LSA 35 v. Uber Technologies, Inc., et al. | CGC-21-592274 | Levin Simes Abrams, LLP | LSA 35 | Category 1 |
| Jane Doe LSA 37 v. Uber Technologies, Inc., et al. | CGC-21-592275 | Levin Simes Abrams, LLP | LSA 37 | Category 1 |
| Jane Doe LSA 43 v. Uber Technologies, Inc., et al. | CGC-21-592317 | Levin Simes Abrams, LLP | LSA 43 | Category 1 |
| Jane Doe LSA 44 v. Uber Technologies, Inc., et al. | CGC-21-592320 | Levin Simes Abrams, LLP | LSA 44 | Category 1 |
| Jane Doe LSA 45 v. Uber Technologies, Inc., et al. | CGC-21-592322 | Levin Simes Abrams, LLP | LSA 45 | Category 1 |
| Jane Doe LSA 46 v. Uber Technologies, Inc., et al. | CGC-21-592319 | Levin Simes Abrams, LLP | LSA 46 | Category 1 |
| Jane Doe LSA 47 v. Uber Technologies, Inc., et al. | CGC-21-592318 | Levin Simes Abrams, LLP | LSA 47 | Category 1 |
| Jane Doe LSA 48 v. Uber Technologies, Inc., et al. | CGC-21-592324 | Levin Simes Abrams, LLP | LSA 48 | Category 1 |
| Jane Doe LSA 53 v. Uber Technologies, Inc., et al. | CGC-21-592348 | Levin Simes Abrams, LLP | LSA 53 | Category 1 |
| Jane Doe LSA 54 v. Uber Technologies, Inc., et al. | CGC-21-592350 | Levin Simes Abrams, LLP | LSA 54 | Category 1 |
| Jane Doe LSA 55 v. Uber Technologies, Inc., et al. | CGC-21-592351 | Levin Simes Abrams, LLP | LSA 55 | Category 1 |
| Jane Doe LSA 56 v. Uber Technologies, Inc., et al. | CGC-21-592353 | Levin Simes Abrams, LLP | LSA 56 | Category 1 |
| Jane Doe LSA 57 v. Uber Technologies, Inc., et al. | CGC-21-592352 | Levin Simes Abrams, LLP | LSA 57 | Category 1 |
| Jane Doe LSA 59 v. Uber Technologies, Inc., et al. | CGC-21-592358 | Levin Simes Abrams, LLP | LSA 59 | Category 1 |
| Jane Doe LSA 60 v. Uber Technologies, Inc., et al. | CGC-21-592354 | Levin Simes Abrams, LLP | LSA 60 | Category 1 |
| Jane Doe LSA 62 v. Uber Technologies, Inc., et al. | CGC-21-592355 | Levin Simes Abrams, LLP | LSA 62 | Category 1 |
| Jane Doe LSA 63 v. Uber Technologies, Inc., et al. | CGC-21-592382 | Levin Simes Abrams, LLP | LSA 63 | Category 1 |
| Jane Doe LSA 64 v. Uber Technologies, Inc., et al. | CGC-21-592383 | Levin Simes Abrams, LLP | LSA 64 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | Forum Non Conveniens Category[3] |
|---|---|---|---|---|
| Jane Doe LSA 65 v. Uber Technologies, Inc., et al. | CGC-21-592385 | Levin Simes Abrams, LLP | LSA 65 | Category 2 |
| Jane Doe LSA 66 v. Uber Technologies, Inc., et al. | CGC-21-592386 | Levin Simes Abrams, LLP | LSA 66 | Category 1 |
| Jane Doe LSA 67 v. Uber Technologies, Inc., et al. | CGC-21-592387 | Levin Simes Abrams, LLP | LSA 67 | Category 1 |
| Jane Doe LSA 73 v. Uber Technologies, Inc., et al. | CGC-21-592421 | Levin Simes Abrams, LLP | LSA 73 | Category 1 |
| Jane Doe LSA 74 v. Uber Technologies, Inc., et al. | CGC-21-592422 | Levin Simes Abrams, LLP | LSA 74 | Category 1 |
| Jane Doe LSA 75 v. Uber Technologies, Inc., et al. | CGC-21-592425 | Levin Simes Abrams, LLP | LSA 75 | Category 1 |
| Jane Doe LSA 76 v. Uber Technologies, Inc., et al. | CGC-21-592424 | Levin Simes Abrams, LLP | LSA 76 | Category 1 |
| Jane Doe LSA 77 v. Uber Technologies, Inc., et al. | CGC-21-592426 | Levin Simes Abrams, LLP | LSA 77 | Category 1 |
| Jane Doe LSA 86 v. Uber Technologies, Inc. et al. | CGC-21-592766 | Levin Simes Abrams, LLP | LSA 86 | Category 1 |
| Jane Doe LSA 86, et al. v. Uber Technologies, Inc. et al. | CGC-21-592766 | Levin Simes Abrams, LLP | LSA 87 | Category 1 |
| Jane Doe LSA 86, et al. v. Uber Technologies, Inc. et al. | CGC-21-592766 | Levin Simes Abrams, LLP | LSA 89 | Category 1 |
| Jane Doe LSA 86, et al. v. Uber Technologies, Inc. et al. | CGC-21-592766 | Levin Simes Abrams, LLP | LSA 90 | Category 1 |
| Jane Doe LSA 86, et al. v. Uber Technologies, Inc. et al. | CGC-21-592766 | Levin Simes Abrams, LLP | LSA 91 | Category 1 |
| Jane Doe LSA 86, et al. v. Uber Technologies, Inc. et al. | CGC-21-592766 | Levin Simes Abrams, LLP | LSA 92 | Category 1 |
| Jane Doe LSA 86, et al. v. Uber Technologies, Inc. et al. | CGC-21-592766 | Levin Simes Abrams, LLP | LSA 93 | Category 1 |
| Jane Doe LSA 86, et al. v. Uber Technologies, Inc. et al. | CGC-21-592766 | Levin Simes Abrams, LLP | LSA 94 | Category 1 |
| Jane Doe v. Uber Technologies, Inc. et al. | CGC-21-594086 | Downtown LA Law Group | Jane Doe | Category 1 |

3

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe LSA 95, et al. v. Uber Technologies, Inc. et al. | CGC-21-594122 | Levin Simes Abrams, LLP | LSA 100 | Category 1 |
| Jane Doe LSA 95, et al. v. Uber Technologies, Inc. et al. | CGC-21-594122 | Levin Simes Abrams, LLP | LSA 101 | Category 1 |
| Jane Doe LSA 95, et al. v. Uber Technologies, Inc. et al. | CGC-21-594122 | Levin Simes Abrams, LLP | LSA 102 | Category 1 |
| Jane Doe LSA 95, et al. v. Uber Technologies, Inc. et al. | CGC-21-594122 | Levin Simes Abrams, LLP | LSA 103 | Category 1 |
| Jane Doe LSA 95, et al. v. Uber Technologies, Inc. et al. | CGC-21-594122 | Levin Simes Abrams, LLP | LSA 104 | Category 1 |
| Jane Doe LSA 95, et al. v. Uber Technologies, Inc. et al. | CGC-21-594122 | Levin Simes Abrams, LLP | LSA 106 | Category 1 |
| Jane Doe LSA 95, et al. v. Uber Technologies, Inc. et al. | CGC-21-594122 | Levin Simes Abrams, LLP | LSA 107 | Category 1 |
| Jane Doe LSA 95, et al. v. Uber Technologies, Inc. et al. | CGC-21-594122 | Levin Simes Abrams, LLP | LSA 108 | Category 1 |
| Jane Doe LSA 95, et al. v. Uber Technologies, Inc. et al. | CGC-21-594122 | Levin Simes Abrams, LLP | LSA 109 | Category 1 |
| Jane Doe LSA 95, et al. v. Uber Technologies, Inc. et al. | CGC-21-594122 | Levin Simes Abrams, LLP | LSA 110 | Category 1 |
| Jane Doe LSA 95, et al. v. Uber Technologies, Inc. et al. | CGC-21-594122 | Levin Simes Abrams, LLP | LSA 111 | Category 1 |
| Jane Doe LSA 95, et al. v. Uber Technologies, Inc. et al. | CGC-21-594122 | Levin Simes Abrams, LLP | LSA 112 | Category 1 |
| Jane Doe LSA 95, et al. v. Uber Technologies, Inc. et al. | CGC-21-594122 | Levin Simes Abrams, LLP | LSA 113 | Category 1 |
| Jane Doe LSA 95, et al. v. Uber Technologies, Inc. et al. | CGC-21-594122 | Levin Simes Abrams, LLP | LSA 114 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category[3]* |
|---|---|---|---|---|
| Jane Doe LSA 95, et al. v. Uber Technologies, Inc. et al. | CGC-21-594122 | Levin Simes Abrams, LLP | LSA 95 | Category 1 |
| Jane Doe LSA 95, et al. v. Uber Technologies, Inc. et al. | CGC-21-594122 | Levin Simes Abrams, LLP | LSA 97 | Category 1 |
| Jane Doe LSA 95, et al. v. Uber Technologies, Inc. et al. | CGC-21-594122 | Levin Simes Abrams, LLP | LSA 98 | Category 1 |
| Jane Doe LSA 95, et al. v. Uber Technologies, Inc. et al. | CGC-21-594122 | Levin Simes Abrams, LLP | LSA 99 | Category 1 |
| Jane Doe LSA 115 et al. v. Uber Technologies, Inc. et al. | CGC-21-594130 | Levin Simes Abrams, LLP | LSA 117 | Category 2 |
| Jane Doe LSA 115, et al. v. Uber Technologies, Inc. et al. | CGC-21-594130 | Levin Simes Abrams, LLP | LSA 119 | Category 1 |
| Jane Doe LSA 115, et al. v. Uber Technologies, Inc. et al. | CGC-21-594130 | Levin Simes Abrams, LLP | LSA 120 | Category 1 |
| Jane Doe LSA 115, et al. v. Uber Technologies, Inc. et al. | CGC-21-594130 | Levin Simes Abrams, LLP | LSA 121 | Category 1 |
| Jane Doe LSA 115, et al. v. Uber Technologies, Inc. et al. | CGC-21-594130 | Levin Simes Abrams, LLP | LSA 122 | Category 1 |
| Jane Doe LSA 115, et al. v. Uber Technologies, Inc. et al. | CGC-21-594130 | Levin Simes Abrams, LLP | LSA 123 | Category 1 |
| Jane Doe LSA 115, et al. v. Uber Technologies, Inc. et al. | CGC-21-594130 | Levin Simes Abrams, LLP | LSA 124 | Category 1 |
| Jane Doe LSA 115, et al. v. Uber Technologies, Inc. et al. | CGC-21-594130 | Levin Simes Abrams, LLP | LSA 125 | Category 1 |
| Jane Doe LSA 115, et al. v. Uber Technologies, Inc. et al. | CGC-21-594130 | Levin Simes Abrams, LLP | LSA 126 | Category 1 |
| Jane Doe LSA 115, et al. v. Uber Technologies, Inc. et al. | CGC-21-594130 | Levin Simes Abrams, LLP | LSA 128 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe LSA 115, et al. v. Uber Technologies, Inc. et al. | CGC-21-594130 | Levin Simes Abrams, LLP | LSA 129 | Category 1 |
| Jane Doe LSA 115, et al. v. Uber Technologies, Inc. et al. | CGC-21-594130 | Levin Simes Abrams, LLP | LSA 130 | Category 1 |
| Jane Doe LSA 115, et al. v. Uber Technologies, Inc. et al. | CGC-21-594130 | Levin Simes Abrams, LLP | LSA 131 | Category 1 |
| Jane Doe LSA 115, et al. v. Uber Technologies, Inc. et al. | CGC-21-594130 | Levin Simes Abrams, LLP | LSA 132 | Category 1 |
| Jane Doe LSA 115, et al. v. Uber Technologies, Inc. et al. | CGC-21-594130 | Levin Simes Abrams, LLP | LSA 134 | Category 1 |
| Jane Doe LSA 115 et al. v. Uber Technologies, Inc. et al. | CGC-21-594130 | Levin Simes Abrams, LLP | LSA 135 | Category 2 |
| Jane Doe LSA 115, et al. v. Uber Technologies, Inc. et al. | CGC-21-594130 | Levin Simes Abrams, LLP | LSA 136 | Category 1 |
| Jane Doe LSA 115, et al. v. Uber Technologies, Inc. et al. | CGC-21-594130 | Levin Simes Abrams, LLP | LSA 137 | Category 1 |
| Jane Doe WHBE 12 v. Uber Technologies, Inc. et al. | CGC-21-594245 | Williams Hart & Boundas, LLP | WHBE 12 | Category 2 |
| Jane Doe LSA 138, et al. v. Uber Technologies, Inc. et al. | CGC-21-594835 | Levin Simes Abrams, LLP | LSA 139 | Category 1 |
| Jane Doe LSA 138, et al. v. Uber Technologies, Inc. et al. | CGC-21-594835 | Levin Simes Abrams, LLP | LSA 140 | Category 1 |
| Jane Doe LSA 138, et al. v. Uber Technologies, Inc. et al. | CGC-21-594835 | Levin Simes Abrams, LLP | LSA 141 | Category 1 |
| Jane Doe LSA 138, et al. v. Uber Technologies, Inc. et al. | CGC-21-594835 | Levin Simes Abrams, LLP | LSA 142 | Category 1 |
| Jane Doe LSA 138, et al. v. Uber Technologies, Inc. et al. | CGC-21-594835 | Levin Simes Abrams, LLP | LSA 144 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe LSA 146, et al. v. Uber Technologies, Inc. et al. | CGC-21-595506 | Levin Simes Abrams, LLP | LSA 146 | Category 1 |
| Jane Doe LSA 146, et al. v. Uber Technologies, Inc. et al. | CGC-21-595506 | Levin Simes Abrams, LLP | LSA 147 | Category 1 |
| Jane Doe LSA 146, et al. v. Uber Technologies, Inc. et al. | CGC-21-595506 | Levin Simes Abrams, LLP | LSA 148 | Category 1 |
| Jane Doe LSA 146, et al. v. Uber Technologies, Inc. et al. | CGC-21-595506 | Levin Simes Abrams, LLP | LSA 149 | Category 1 |
| Jane Doe LSA 146, et al. v. Uber Technologies, Inc. et al. | CGC-21-595506 | Levin Simes Abrams, LLP | LSA 150 | Category 1 |
| Jane Doe LSA 146, et al. v. Uber Technologies, Inc. et al. | CGC-21-595506 | Levin Simes Abrams, LLP | LSA 151 | Category 1 |
| Jane Doe LSA 146, et al. v. Uber Technologies, Inc. et al. | CGC-21-595506 | Levin Simes Abrams, LLP | LSA 152 | Category 1 |
| Jane Doe LSA 146, et al. v. Uber Technologies, Inc. et al. | CGC-21-595506 | Levin Simes Abrams, LLP | LSA 153 | Category 1 |
| Jane Doe LSA 146, et al. v. Uber Technologies, Inc. et al. | CGC-21-595506 | Levin Simes Abrams, LLP | LSA 154 | Category 1 |
| Jane Doe WHBE 34, et al vs. Uber Technologies, Inc. et al | CGC-21-595866 | Williams Hart & Boundas, LLP | WHBE 34 | Category 1 |
| Jane Doe WHBE 54, et al vs. Uber Technologies, Inc. et al | CGC-21-596078 | Williams Hart & Boundas, LLP | WHBE 56 | Category 1 |
| Jane Doe WHBE 54, et al vs. Uber Technologies, Inc. et al | CGC-21-596078 | Williams Hart & Boundas, LLP | WHBE 57 | Category 1 |
| Jane Doe WHBE 54, et al vs. Uber Technologies, Inc. et al | CGC-21-596078 | Williams Hart & Boundas, LLP | WHBE 58 | Category 1 |
| Jane Doe WHBE 54, et al vs. Uber Technologies, Inc. et al | CGC-21-596078 | Williams Hart & Boundas, LLP | WHBE 70 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe LSA 155, et al. v. Uber Technologies, Inc., et al. | CGC-21-596907 | Levin Simes Abrams, LLP | LSA 155 | Category 1 |
| Jane Doe LSA 155, et al. v. Uber Technologies, Inc., et al. | CGC-21-596907 | Levin Simes Abrams, LLP | LSA 156 | Category 1 |
| Jane Doe LSA 155, et al. v. Uber Technologies, Inc., et al. | CGC-21-596907 | Levin Simes Abrams, LLP | LSA 158 | Category 1 |
| Jane Doe LSA 155, et al. v. Uber Technologies, Inc., et al. | CGC-21-596907 | Levin Simes Abrams, LLP | LSA 159 | Category 1 |
| Jane Doe LSA 155, et al. v. Uber Technologies, Inc., et al. | CGC-21-596907 | Levin Simes Abrams, LLP | LSA 160 | Category 1 |
| Jane Doe LSA 155, et al. v. Uber Technologies, Inc., et al. | CGC-21-596907 | Levin Simes Abrams, LLP | LSA 161 | Category 1 |
| Jane Doe LSA 155, et al. v. Uber Technologies, Inc., et al. | CGC-21-596907 | Levin Simes Abrams, LLP | LSA 162 | Category 1 |
| Jane Doe LSA 155, et al. v. Uber Technologies, Inc., et al. | CGC-21-596907 | Levin Simes Abrams, LLP | LSA 163 | Category 1 |
| Jane Doe LSA 155, et al. v. Uber Technologies, Inc., et al. | CGC-21-596907 | Levin Simes Abrams, LLP | LSA 164 | Category 1 |
| Jane Doe LSA 155, et al. v. Uber Technologies, Inc., et al. | CGC-21-596907 | Levin Simes Abrams, LLP | LSA 165 | Category 1 |
| Jane Doe LSA 155, et al. v. Uber Technologies, Inc., et al. | CGC-21-596907 | Levin Simes Abrams, LLP | LSA 166 | Category 1 |
| Jane Doe LSA 155, et al. v. Uber Technologies, Inc., et al. | CGC-21-596907 | Levin Simes Abrams, LLP | LSA 167 | Category 1 |
| Jane Doe LSA 155, et al. v. Uber Technologies, Inc., et al. | CGC-21-596907 | Levin Simes Abrams, LLP | LSA 168 | Category 1 |
| Jane Doe LSA 155, et al. v. Uber Technologies, Inc., et al. | CGC-21-596907 | Levin Simes Abrams, LLP | LSA 169 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe LSA 155, et al. v. Uber Technologies, Inc., et al. | CGC-21-596907 | Levin Simes Abrams, LLP | LSA 170 | Category 1 |
| Jane Doe LSA 155, et al. v. Uber Technologies, Inc., et al. | CGC-21-596907 | Levin Simes Abrams, LLP | LSA 171 | Category 1 |
| Jane Doe LSA 155, et al. v. Uber Technologies, Inc., et al. | CGC-21-596907 | Levin Simes Abrams, LLP | LSA 172 | Category 1 |
| Jane Doe LSA 155, et al. v. Uber Technologies, Inc., et al. | CGC-21-596907 | Levin Simes Abrams, LLP | LSA 173 | Category 1 |
| Jane Doe LSA 155, et al. v. Uber Technologies, Inc., et al. | CGC-21-596907 | Levin Simes Abrams, LLP | LSA 174 | Category 1 |
| Jane Doe LSA 176, et al. v. Uber Technologies, Inc., et al. | CGC-21-597216 | Levin Simes Abrams, LLP | LSA 176 | Category 1 |
| Jane Doe LSA 176, et al. v. Uber Technologies, Inc., et al. | CGC-21-597216 | Levin Simes Abrams, LLP | LSA 177 | Category 1 |
| Jane Doe LSA 176, et al. v. Uber Technologies, Inc., et al. | CGC-21-597216 | Levin Simes Abrams, LLP | LSA 179 | Category 1 |
| Jane Doe LSA 176, et al. v. Uber Technologies, Inc., et al. | CGC-21-597216 | Levin Simes Abrams, LLP | LSA 180 | Category 1 |
| Jane Doe LSA 176, et al. v. Uber Technologies, Inc., et al. | CGC-21-597216 | Levin Simes Abrams, LLP | LSA 181 | Category 1 |
| Jane Doe WHBE 175, et al. v. Uber Technologies, Inc., et al. | CGC-22-597462 | Williams Hart & Boundas, LLP | WHBE 175 | Category 1 |
| Jane Doe WHBE 175, et al. v. Uber Technologies, Inc., et al. | CGC-22-597462 | Williams Hart & Boundas, LLP | WHBE 176 | Category 1 |
| Jane Doe WHBE 175, et al. v. Uber Technologies, Inc., et al. | CGC-22-597462 | Williams Hart & Boundas, LLP | WHBE 178 | Category 1 |
| Jane Doe WHBE 175, et al. v. Uber Technologies, Inc., et al. | CGC-22-597462 | Williams Hart & Boundas, LLP | WHBE 179 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | Forum Non Conveniens Category[3] |
|---|---|---|---|---|
| Jane Doe WHBE 175, et al. v. Uber Technologies, Inc., et al. | CGC-22-597462 | Williams Hart & Boundas, LLP | WHBE 180 | Category 1 |
| Jane Doe WHBE 175, et al. v. Uber Technologies, Inc., et al. | CGC-22-597462 | Williams Hart & Boundas, LLP | WHBE 181 | Category 1 |
| Jane Doe WHBE 175 et al. v. Uber Technologies, Inc. et al. | CGC-22-597462 | Williams Hart & Boundas, LLP | WHBE 182 | Category 2 |
| Jane Doe WHBE 175, et al. v. Uber Technologies, Inc., et al. | CGC-22-597462 | Williams Hart & Boundas, LLP | WHBE 187 | Category 1 |
| Jane Doe WHBE 175, et al. v. Uber Technologies, Inc., et al. | CGC-22-597462 | Williams Hart & Boundas, LLP | WHBE 188 | Category 1 |
| Jane Doe WHBE 175, et al. v. Uber Technologies, Inc., et al. | CGC-22-597462 | Williams Hart & Boundas, LLP | WHBE 189 | Category 1 |
| Jane Doe WHBE 175, et al. v. Uber Technologies, Inc., et al. | CGC-22-597462 | Williams Hart & Boundas, LLP | WHBE 190 | Category 1 |
| Jane Doe WHBE 175, et al. v. Uber Technologies, Inc., et al. | CGC-22-597462 | Williams Hart & Boundas, LLP | WHBE 191 | Category 1 |
| Jane Doe WHBE 175, et al. v. Uber Technologies, Inc., et al. | CGC-22-597462 | Williams Hart & Boundas, LLP | WHBE 192 | Category 1 |
| Jane Doe WHBE 175, et al. v. Uber Technologies, Inc., et al. | CGC-22-597462 | Williams Hart & Boundas, LLP | WHBE 193 | Category 1 |
| Jane Doe WHBE 175, et al. v. Uber Technologies, Inc., et al. | CGC-22-597462 | Williams Hart & Boundas, LLP | WHBE 194 | Category 1 |
| Jane Doe WHBE 175, et al. v. Uber Technologies, Inc., et al. | CGC-22-597462 | Williams Hart & Boundas, LLP | WHBE 195 | Category 1 |
| Jane Doe WHBE 175, et al. v. Uber Technologies, Inc., et al. | CGC-22-597462 | Williams Hart & Boundas, LLP | WHBE 196 | Category 1 |
| Jane Doe WHBE 175, et al. v. Uber Technologies, Inc., et al. | CGC-22-597462 | Williams Hart & Boundas, LLP | WHBE 197 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | Forum Non Conveniens Category[3] |
|---|---|---|---|---|
| Jane Doe WHBE 175, et al. v. Uber Technologies, Inc., et al. | CGC-22-597462 | Williams Hart & Boundas, LLP | WHBE 198 | Category 1 |
| Jane Doe WHBE 175, et al. v. Uber Technologies, Inc., et al. | CGC-22-597462 | Williams Hart & Boundas, LLP | WHBE 199 | Category 1 |
| Jane Doe WHBE 175, et al. v. Uber Technologies, Inc., et al. | CGC-22-597462 | Williams Hart & Boundas, LLP | WHBE 200 | Category 1 |
| Jane Doe WHBE 175, et al. v. Uber Technologies, Inc., et al. | CGC-22-597462 | Williams Hart & Boundas, LLP | WHBE 201 | Category 1 |
| Jane Doe WHBE 175, et al. v. Uber Technologies, Inc., et al. | CGC-22-597462 | Williams Hart & Boundas, LLP | WHBE 202 | Category 1 |
| Jane Doe WHBE 175, et al. v. Uber Technologies, Inc., et al. | CGC-22-597462 | Williams Hart & Boundas, LLP | WHBE 203 | Category 1 |
| Jane Doe LSA 183, et al. v. Uber Technologies, Inc., et al. | CGC-22-597509 | Levin Simes Abrams, LLP | LSA 184 | Category 1 |
| Jane Doe LSA 183, et al. v. Uber Technologies, Inc., et al. | CGC-22-597509 | Levin Simes Abrams, LLP | LSA 185 | Category 1 |
| Jane Doe LSA 183, et al. v. Uber Technologies, Inc., et al. | CGC-22-597509 | Levin Simes Abrams, LLP | LSA 186 | Category 1 |
| Jane Doe LSA 183, et al. v. Uber Technologies, Inc., et al. | CGC-22-597509 | Levin Simes Abrams, LLP | LSA 187 | Category 1 |
| Jane Doe LSA 183, et al. v. Uber Technologies, Inc., et al. | CGC-22-597509 | Levin Simes Abrams, LLP | LSA 188 | Category 1 |
| Jane Doe LSA 183, et al. v. Uber Technologies, Inc., et al. | CGC-22-597509 | Levin Simes Abrams, LLP | LSA 189 | Category 1 |
| Jane Doe LSA 183, et al. v. Uber Technologies, Inc., et al. | CGC-22-597509 | Levin Simes Abrams, LLP | LSA 190 | Category 1 |
| Jane Doe LSA 183, et al. v. Uber Technologies, Inc., et al. | CGC-22-597509 | Levin Simes Abrams, LLP | LSA 191 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe LSA 183, et al. v. Uber Technologies, Inc., et al. | CGC-22-597509 | Levin Simes Abrams, LLP | LSA 192 | Category 1 |
| Jane Doe LSA 183, et al. v. Uber Technologies, Inc., et al. | CGC-22-597509 | Levin Simes Abrams, LLP | LSA 194 | Category 1 |
| Jane Doe WHBE 295, et al. v. Uber Technologies, Inc., et al. | CGC-22-597568 | Williams Hart & Boundas, LLP | WHBE 295 | Category 1 |
| Jane Doe WHBE 295 et al. v. Uber Technologies, Inc. et al. | CGC-22-597568 | Williams Hart & Boundas, LLP | WHBE 298 | Category 2 |
| Jane Doe WHBE 295, et al. v. Uber Technologies, Inc., et al. | CGC-22-597568 | Williams Hart & Boundas, LLP | WHBE 299 | Category 1 |
| Jane Doe WHBE 295, et al. v. Uber Technologies, Inc., et al. | CGC-22-597568 | Williams Hart & Boundas, LLP | WHBE 300 | Category 1 |
| Jane Doe WHBE 295, et al. v. Uber Technologies, Inc., et al. | CGC-22-597568 | Williams Hart & Boundas, LLP | WHBE 301 | Category 1 |
| Jane Doe WHBE 295, et al. v. Uber Technologies, Inc., et al. | CGC-22-597568 | Williams Hart & Boundas, LLP | WHBE 302 | Category 1 |
| Jane Doe WHBE 295 et al. v. Uber Technologies, Inc. et al. | CGC-22-597568 | Williams Hart & Boundas, LLP | WHBE 303 | Category 2 |
| Jane Doe WHBE 295, et al. v. Uber Technologies, Inc., et al. | CGC-22-597568 | Williams Hart & Boundas, LLP | WHBE 304 | Category 1 |
| Jane Doe WHBE 295, et al. v. Uber Technologies, Inc., et al. | CGC-22-597568 | Williams Hart & Boundas, LLP | WHBE 305 | Category 1 |
| Jane Doe WHBE 295, et al. v. Uber Technologies, Inc., et al. | CGC-22-597568 | Williams Hart & Boundas, LLP | WHBE 310 | Category 1 |
| Jane Doe WHBE 295, et al. v. Uber Technologies, Inc., et al. | CGC-22-597568 | Williams Hart & Boundas, LLP | WHBE 311 | Category 1 |
| Jane Doe WHBE 295, et al. v. Uber Technologies, Inc., et al. | CGC-22-597568 | Williams Hart & Boundas, LLP | WHBE 312 | Category 1 |

12

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe WHBE 295, et al. v. Uber Technologies, Inc., et al. | CGC-22-597568 | Williams Hart & Boundas, LLP | WHBE 313 | Category 1 |
| Jane Doe WHBE 295, et al. v. Uber Technologies, Inc., et al. | CGC-22-597568 | Williams Hart & Boundas, LLP | WHBE 317 | Category 1 |
| Jane Doe WHBE 295, et al. v. Uber Technologies, Inc., et al. | CGC-22-597568 | Williams Hart & Boundas, LLP | WHBE 318 | Category 1 |
| Jane Doe WHBE 295, et al. v. Uber Technologies, Inc., et al. | CGC-22-597568 | Williams Hart & Boundas, LLP | WHBE 319 | Category 1 |
| Jane Doe WHBE 295, et al. v. Uber Technologies, Inc., et al. | CGC-22-597568 | Williams Hart & Boundas, LLP | WHBE 321 | Category 1 |
| Jane Doe WHBE 295, et al. v. Uber Technologies, Inc., et al. | CGC-22-597568 | Williams Hart & Boundas, LLP | WHBE 322 | Category 1 |
| Jane Doe WHBE 295, et al. v. Uber Technologies, Inc., et al. | CGC-22-597568 | Williams Hart & Boundas, LLP | WHBE 324 | Category 1 |
| Jane Doe WHBE 325, et al. v. Uber Technologies, Inc., et al. | CGC-22-597601 | Williams Hart & Boundas, LLP | WHBE 326 | Category 1 |
| Jane Doe WHBE 325, et al. v. Uber Technologies, Inc., et al. | CGC-22-597601 | Williams Hart & Boundas, LLP | WHBE 329 | Category 1 |
| Jane Doe WHBE 325, et al. v. Uber Technologies, Inc., et al. | CGC-22-597601 | Williams Hart & Boundas, LLP | WHBE 331 | Category 1 |
| Jane Doe WHBE 325, et al. v. Uber Technologies, Inc., et al. | CGC-22-597601 | Williams Hart & Boundas, LLP | WHBE 333 | Category 1 |
| Jane Doe WHBE 325, et al. v. Uber Technologies, Inc., et al. | CGC-22-597601 | Williams Hart & Boundas, LLP | WHBE 334 | Category 1 |
| Jane Doe WHBE 325, et al. v. Uber Technologies, Inc., et al. | CGC-22-597601 | Williams Hart & Boundas, LLP | WHBE 335 | Category 1 |
| Jane Doe WHBE 325, et al. v. Uber Technologies, Inc., et al. | CGC-22-597601 | Williams Hart & Boundas, LLP | WHBE 336 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe WHBE 325, et al. v. Uber Technologies, Inc., et al. | CGC-22-597601 | Williams Hart & Boundas, LLP | WHBE 337 | Category 1 |
| Jane Doe WHBE 325, et al. v. Uber Technologies, Inc., et al. | CGC-22-597601 | Williams Hart & Boundas, LLP | WHBE 338 | Category 1 |
| Jane Doe WHBE 325, et al. v. Uber Technologies, Inc., et al. | CGC-22-597601 | Williams Hart & Boundas, LLP | WHBE 339 | Category 1 |
| Jane Doe WHBE 325, et al. v. Uber Technologies, Inc., et al. | CGC-22-597601 | Williams Hart & Boundas, LLP | WHBE 340 | Category 1 |
| Jane Doe WHBE 325, et al. v. Uber Technologies, Inc., et al. | CGC-22-597601 | Williams Hart & Boundas, LLP | WHBE 341 | Category 1 |
| Jane Doe WHBE 325, et al. v. Uber Technologies, Inc., et al. | CGC-22-597601 | Williams Hart & Boundas, LLP | WHBE 342 | Category 1 |
| Jane Doe WHBE 325, et al. v. Uber Technologies, Inc., et al. | CGC-22-597601 | Williams Hart & Boundas, LLP | WHBE 345 | Category 1 |
| Jane Doe WHBE 325, et al. v. Uber Technologies, Inc., et al. | CGC-22-597601 | Williams Hart & Boundas, LLP | WHBE 346 | Category 1 |
| Jane Doe WHBE 325, et al. v. Uber Technologies, Inc., et al. | CGC-22-597601 | Williams Hart & Boundas, LLP | WHBE 347 | Category 1 |
| Jane Doe WHBE 325, et al. v. Uber Technologies, Inc., et al. | CGC-22-597601 | Williams Hart & Boundas, LLP | WHBE 348 | Category 1 |
| Jane Doe WHBE 325, et al. v. Uber Technologies, Inc., et al. | CGC-22-597601 | Williams Hart & Boundas, LLP | WHBE 349 | Category 1 |
| Jane Doe WHBE 325, et al. v. Uber Technologies, Inc., et al. | CGC-22-597601 | Williams Hart & Boundas, LLP | WHBE 350 | Category 1 |
| Jane Doe WHBE 325, et al. v. Uber Technologies, Inc., et al. | CGC-22-597601 | Williams Hart & Boundas, LLP | WHBE 352 | Category 1 |
| Jane Doe WHBE 325, et al. v. Uber Technologies, Inc., et al. | CGC-22-597601 | Williams Hart & Boundas, LLP | WHBE 353 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe WHBE 355, et al. v. Uber Technologies, Inc., et al. | CGC-22-597609 | Williams Hart & Boundas, LLP | WHBE 358 | Category 1 |
| Jane Doe WHBE 355, et al. v. Uber Technologies, Inc., et al. | CGC-22-597609 | Williams Hart & Boundas, LLP | WHBE 359 | Category 1 |
| Jane Doe WHBE 355, et al. v. Uber Technologies, Inc., et al. | CGC-22-597609 | Williams Hart & Boundas, LLP | WHBE 360 | Category 1 |
| Jane Doe WHBE 355, et al. v. Uber Technologies, Inc., et al. | CGC-22-597609 | Williams Hart & Boundas, LLP | WHBE 361 | Category 1 |
| Jane Doe WHBE 355, et al. v. Uber Technologies, Inc., et al. | CGC-22-597609 | Williams Hart & Boundas, LLP | WHBE 363 | Category 1 |
| Jane Doe WHBE 355, et al. v. Uber Technologies, Inc., et al. | CGC-22-597609 | Williams Hart & Boundas, LLP | WHBE 366 | Category 1 |
| Jane Doe WHBE 355, et al. v. Uber Technologies, Inc., et al. | CGC-22-597609 | Williams Hart & Boundas, LLP | WHBE 367 | Category 1 |
| Jane Doe WHBE 355, et al. v. Uber Technologies, Inc., et al. | CGC-22-597609 | Williams Hart & Boundas, LLP | WHBE 368 | Category 1 |
| Jane Doe WHBE 355, et al. v. Uber Technologies, Inc., et al. | CGC-22-597609 | Williams Hart & Boundas, LLP | WHBE 369 | Category 1 |
| Jane Doe WHBE 355, et al. v. Uber Technologies, Inc., et al. | CGC-22-597609 | Williams Hart & Boundas, LLP | WHBE 371 | Category 1 |
| Jane Doe WHBE 355, et al. v. Uber Technologies, Inc., et al. | CGC-22-597609 | Williams Hart & Boundas, LLP | WHBE 372 | Category 1 |
| Jane Doe WHBE 355, et al. v. Uber Technologies, Inc., et al. | CGC-22-597609 | Williams Hart & Boundas, LLP | WHBE 373 | Category 1 |
| Jane Doe WHBE 355, et al. v. Uber Technologies, Inc., et al. | CGC-22-597609 | Williams Hart & Boundas, LLP | WHBE 374 | Category 1 |
| Jane Doe WHBE 355, et al. v. Uber Technologies, Inc., et al. | CGC-22-597609 | Williams Hart & Boundas, LLP | WHBE 375 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | Forum Non Conveniens Category[3] |
|---|---|---|---|---|
| Jane Doe WHBE 355, et al. v. Uber Technologies, Inc., et al. | CGC-22-597609 | Williams Hart & Boundas, LLP | WHBE 380 | Category 1 |
| Jane Doe WHBE 355, et al. v. Uber Technologies, Inc., et al. | CGC-22-597609 | Williams Hart & Boundas, LLP | WHBE 381 | Category 1 |
| Jane Doe WHBE 355, et al. v. Uber Technologies, Inc., et al. | CGC-22-597609 | Williams Hart & Boundas, LLP | WHBE 382 | Category 1 |
| Jane Doe WHBE 355, et al. v. Uber Technologies, Inc., et al. | CGC-22-597609 | Williams Hart & Boundas, LLP | WHBE 383 | Category 1 |
| Jane Doe WHBE 385, et al. v. Uber Technologies, Inc., et al. | CGC-22-597631 | Williams Hart & Boundas, LLP | WHBE 392 | Category 1 |
| Jane Doe WHBE 385, et al. v. Uber Technologies, Inc., et al. | CGC-22-597631 | Williams Hart & Boundas, LLP | WHBE 393 | Category 1 |
| Jane Doe WHBE 385, et al. v. Uber Technologies, Inc., et al. | CGC-22-597631 | Williams Hart & Boundas, LLP | WHBE 396 | Category 1 |
| Jane Doe WHBE 385, et al. v. Uber Technologies, Inc., et al. | CGC-22-597631 | Williams Hart & Boundas, LLP | WHBE 397 | Category 1 |
| Jane Doe WHBE 385, et al. v. Uber Technologies, Inc., et al. | CGC-22-597631 | Williams Hart & Boundas, LLP | WHBE 398 | Category 1 |
| Jane Doe WHBE 385, et al. v. Uber Technologies, Inc., et al. | CGC-22-597631 | Williams Hart & Boundas, LLP | WHBE 399 | Category 1 |
| Jane Doe WHBE 385, et al. v. Uber Technologies, Inc., et al. | CGC-22-597631 | Williams Hart & Boundas, LLP | WHBE 400 | Category 1 |
| Jane Doe WHBE 385, et al. v. Uber Technologies, Inc., et al. | CGC-22-597631 | Williams Hart & Boundas, LLP | WHBE 401 | Category 1 |
| Jane Doe WHBE 385, et al. v. Uber Technologies, Inc., et al. | CGC-22-597631 | Williams Hart & Boundas, LLP | WHBE 402 | Category 1 |
| Jane Doe WHBE 385, et al. v. Uber Technologies, Inc., et al. | CGC-22-597631 | Williams Hart & Boundas, LLP | WHBE 403 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe WHBE 385, et al. v. Uber Technologies, Inc., et al. | CGC-22-597631 | Williams Hart & Boundas, LLP | WHBE 404 | Category 1 |
| Jane Doe WHBE 385, et al. v. Uber Technologies, Inc., et al. | CGC-22-597631 | Williams Hart & Boundas, LLP | WHBE 405 | Category 1 |
| Jane Doe WHBE 385, et al. v. Uber Technologies, Inc., et al. | CGC-22-597631 | Williams Hart & Boundas, LLP | WHBE 406 | Category 1 |
| Jane Doe WHBE 385, et al. v. Uber Technologies, Inc., et al. | CGC-22-597631 | Williams Hart & Boundas, LLP | WHBE 407 | Category 1 |
| Jane Doe WHBE 385, et al. v. Uber Technologies, Inc., et al. | CGC-22-597631 | Williams Hart & Boundas, LLP | WHBE 409 | Category 1 |
| Jane Doe WHBE 385, et al. v. Uber Technologies, Inc., et al. | CGC-22-597631 | Williams Hart & Boundas, LLP | WHBE 410 | Category 1 |
| Jane Doe WHBE 385, et al. v. Uber Technologies, Inc., et al. | CGC-22-597631 | Williams Hart & Boundas, LLP | WHBE 411 | Category 1 |
| Jane Doe WHBE 385, et al. v. Uber Technologies, Inc., et al. | CGC-22-597631 | Williams Hart & Boundas, LLP | WHBE 412 | Category 1 |
| Jane Doe WHBE 385, et al. v. Uber Technologies, Inc., et al. | CGC-22-597631 | Williams Hart & Boundas, LLP | WHBE 413 | Category 1 |
| Jane Doe WHBE 385, et al. v. Uber Technologies, Inc., et al. | CGC-22-597631 | Williams Hart & Boundas, LLP | WHBE 414 | Category 1 |
| Jane Doe WHBE 415, et al. v. Uber Technologies, Inc., et al. | CGC-22-597637 | Williams Hart & Boundas, LLP | WHBE 423 | Category 1 |
| Jane Doe WHBE 415, et al. v. Uber Technologies, Inc., et al. | CGC-22-597637 | Williams Hart & Boundas, LLP | WHBE 424 | Category 1 |
| Jane Doe WHBE 415, et al. v. Uber Technologies, Inc., et al. | CGC-22-597637 | Williams Hart & Boundas, LLP | WHBE 425 | Category 1 |
| Jane Doe WHBE 415, et al. v. Uber Technologies, Inc., et al. | CGC-22-597637 | Williams Hart & Boundas, LLP | WHBE 426 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe WHBE 415, et al. v. Uber Technologies, Inc., et al. | CGC-22-597637 | Williams Hart & Boundas, LLP | WHBE 427 | Category 1 |
| Jane Doe WHBE 415, et al. v. Uber Technologies, Inc., et al. | CGC-22-597637 | Williams Hart & Boundas, LLP | WHBE 428 | Category 1 |
| Jane Doe WHBE 415, et al. v. Uber Technologies, Inc., et al. | CGC-22-597637 | Williams Hart & Boundas, LLP | WHBE 429 | Category 1 |
| Jane Doe WHBE 415, et al. v. Uber Technologies, Inc., et al. | CGC-22-597637 | Williams Hart & Boundas, LLP | WHBE 431 | Category 1 |
| Jane Doe WHBE 415, et al. v. Uber Technologies, Inc., et al. | CGC-22-597637 | Williams Hart & Boundas, LLP | WHBE 432 | Category 1 |
| Jane Doe WHBE 415, et al. v. Uber Technologies, Inc., et al. | CGC-22-597637 | Williams Hart & Boundas, LLP | WHBE 433 | Category 1 |
| Jane Doe WHBE 415, et al. v. Uber Technologies, Inc., et al. | CGC-22-597637 | Williams Hart & Boundas, LLP | WHBE 434 | Category 1 |
| Jane Doe WHBE 415, et al. v. Uber Technologies, Inc., et al. | CGC-22-597637 | Williams Hart & Boundas, LLP | WHBE 435 | Category 1 |
| Jane Doe WHBE 415, et al. v. Uber Technologies, Inc., et al. | CGC-22-597637 | Williams Hart & Boundas, LLP | WHBE 436 | Category 1 |
| Jane Doe WHBE 415, et al. v. Uber Technologies, Inc., et al. | CGC-22-597637 | Williams Hart & Boundas, LLP | WHBE 437 | Category 1 |
| Jane Doe WHBE 415, et al. v. Uber Technologies, Inc., et al. | CGC-22-597637 | Williams Hart & Boundas, LLP | WHBE 438 | Category 1 |
| Jane Doe WHBE 415, et al. v. Uber Technologies, Inc., et al. | CGC-22-597637 | Williams Hart & Boundas, LLP | WHBE 439 | Category 1 |
| Jane Doe WHBE 415, et al. v. Uber Technologies, Inc., et al. | CGC-22-597637 | Williams Hart & Boundas, LLP | WHBE 441 | Category 1 |
| Jane Doe WHBE 415, et al. v. Uber Technologies, Inc., et al. | CGC-22-597637 | Williams Hart & Boundas, LLP | WHBE 442 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category[3]* |
|---|---|---|---|---|
| Jane Doe WHBE 415, et al. v. Uber Technologies, Inc., et al. | CGC-22-597637 | Williams Hart & Boundas, LLP | WHBE 443 | Category 1 |
| Jane Doe WHBE 415, et al. v. Uber Technologies, Inc., et al. | CGC-22-597637 | Williams Hart & Boundas, LLP | WHBE 444 | Category 1 |
| Jane Doe WHBE 445 et al. v. Uber Technologies, Inc. et al. | CGC-22-597640 | Williams Hart & Boundas, LLP | WHBE 451 | Category 2 |
| Jane Doe WHBE 445, et al. v. Uber Technologies, Inc., et al. | CGC-22-597640 | Williams Hart & Boundas, LLP | WHBE 454 | Category 1 |
| Jane Doe WHBE 445, et al. v. Uber Technologies, Inc., et al. | CGC-22-597640 | Williams Hart & Boundas, LLP | WHBE 458 | Category 1 |
| Jane Doe WHBE 445, et al. v. Uber Technologies, Inc., et al. | CGC-22-597640 | Williams Hart & Boundas, LLP | WHBE 459 | Category 1 |
| Jane Doe WHBE 445, et al. v. Uber Technologies, Inc., et al. | CGC-22-597640 | Williams Hart & Boundas, LLP | WHBE 460 | Category 1 |
| Jane Doe WHBE 445, et al. v. Uber Technologies, Inc., et al. | CGC-22-597640 | Williams Hart & Boundas, LLP | WHBE 461 | Category 1 |
| Jane Doe WHBE 445, et al. v. Uber Technologies, Inc., et al. | CGC-22-597640 | Williams Hart & Boundas, LLP | WHBE 462 | Category 1 |
| Jane Doe WHBE 445, et al. v. Uber Technologies, Inc., et al. | CGC-22-597640 | Williams Hart & Boundas, LLP | WHBE 464 | Category 1 |
| Jane Doe WHBE 445, et al. v. Uber Technologies, Inc., et al. | CGC-22-597640 | Williams Hart & Boundas, LLP | WHBE 465 | Category 1 |
| Jane Doe WHBE 445, et al. v. Uber Technologies, Inc., et al. | CGC-22-597640 | Williams Hart & Boundas, LLP | WHBE 466 | Category 1 |
| Jane Doe WHBE 445, et al. v. Uber Technologies, Inc., et al. | CGC-22-597640 | Williams Hart & Boundas, LLP | WHBE 467 | Category 1 |
| Jane Doe WHBE 445, et al. v. Uber Technologies, Inc., et al. | CGC-22-597640 | Williams Hart & Boundas, LLP | WHBE 468 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe WHBE 445, et al. v. Uber Technologies, Inc., et al. | CGC-22-597640 | Williams Hart & Boundas, LLP | WHBE 469 | Category 1 |
| Jane Doe WHBE 445, et al. v. Uber Technologies, Inc., et al. | CGC-22-597640 | Williams Hart & Boundas, LLP | WHBE 470 | Category 1 |
| Jane Doe WHBE 445, et al. v. Uber Technologies, Inc., et al. | CGC-22-597640 | Williams Hart & Boundas, LLP | WHBE 471 | Category 1 |
| Jane Doe WHBE 445, et al. v. Uber Technologies, Inc., et al. | CGC-22-597640 | Williams Hart & Boundas, LLP | WHBE 473 | Category 1 |
| Jane Doe WHBE 445, et al. v. Uber Technologies, Inc., et al. | CGC-22-597640 | Williams Hart & Boundas, LLP | WHBE 474 | Category 1 |
| Jane Doe WHBE 475 et al. v. Uber Technologies, Inc. et al. | CGC-22-597642 | Williams Hart & Boundas, LLP | WHBE 477 | Category 2 |
| Jane Doe WHBE 475, et al. v. Uber Technologies, Inc., et al. | CGC-22-597642 | Williams Hart & Boundas, LLP | WHBE 484 | Category 1 |
| Jane Doe WHBE 475, et al. v. Uber Technologies, Inc., et al. | CGC-22-597642 | Williams Hart & Boundas, LLP | WHBE 485 | Category 1 |
| Jane Doe WHBE 475, et al. v. Uber Technologies, Inc., et al. | CGC-22-597642 | Williams Hart & Boundas, LLP | WHBE 486 | Category 1 |
| Jane Doe WHBE 475, et al. v. Uber Technologies, Inc., et al. | CGC-22-597642 | Williams Hart & Boundas, LLP | WHBE 487 | Category 1 |
| Jane Doe WHBE 475, et al. v. Uber Technologies, Inc., et al. | CGC-22-597642 | Williams Hart & Boundas, LLP | WHBE 488 | Category 1 |
| Jane Doe WHBE 475, et al. v. Uber Technologies, Inc., et al. | CGC-22-597642 | Williams Hart & Boundas, LLP | WHBE 489 | Category 1 |
| Jane Doe WHBE 475, et al. v. Uber Technologies, Inc., et al. | CGC-22-597642 | Williams Hart & Boundas, LLP | WHBE 490 | Category 1 |
| Jane Doe WHBE 475, et al. v. Uber Technologies, Inc., et al. | CGC-22-597642 | Williams Hart & Boundas, LLP | WHBE 491 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | Forum Non Conveniens Category[3] |
|---|---|---|---|---|
| Jane Doe WHBE 475, et al. v. Uber Technologies, Inc., et al. | CGC-22-597642 | Williams Hart & Boundas, LLP | WHBE 492 | Category 1 |
| Jane Doe WHBE 475, et al. v. Uber Technologies, Inc., et al. | CGC-22-597642 | Williams Hart & Boundas, LLP | WHBE 493 | Category 1 |
| Jane Doe WHBE 475, et al. v. Uber Technologies, Inc., et al. | CGC-22-597642 | Williams Hart & Boundas, LLP | WHBE 494 | Category 1 |
| Jane Doe WHBE 475, et al. v. Uber Technologies, Inc., et al. | CGC-22-597642 | Williams Hart & Boundas, LLP | WHBE 495 | Category 1 |
| Jane Doe WHBE 475, et al. v. Uber Technologies, Inc., et al. | CGC-22-597642 | Williams Hart & Boundas, LLP | WHBE 497 | Category 1 |
| Jane Doe WHBE 475, et al. v. Uber Technologies, Inc., et al. | CGC-22-597642 | Williams Hart & Boundas, LLP | WHBE 498 | Category 1 |
| Jane Doe WHBE 475, et al. v. Uber Technologies, Inc., et al. | CGC-22-597642 | Williams Hart & Boundas, LLP | WHBE 499 | Category 1 |
| Jane Doe WHBE 475, et al. v. Uber Technologies, Inc., et al. | CGC-22-597642 | Williams Hart & Boundas, LLP | WHBE 500 | Category 1 |
| Jane Doe WHBE 475, et al. v. Uber Technologies, Inc., et al. | CGC-22-597642 | Williams Hart & Boundas, LLP | WHBE 501 | Category 1 |
| Jane Doe WHBE 475, et al. v. Uber Technologies, Inc., et al. | CGC-22-597642 | Williams Hart & Boundas, LLP | WHBE 502 | Category 1 |
| Jane Doe WHBE 475, et al. v. Uber Technologies, Inc., et al. | CGC-22-597642 | Williams Hart & Boundas, LLP | WHBE 503 | Category 1 |
| Jane Doe WHBE 475, et al. v. Uber Technologies, Inc., et al. | CGC-22-597642 | Williams Hart & Boundas, LLP | WHBE 504 | Category 1 |
| Jane Doe LSA 197, et al. v. Uber Technologies, Inc., et al. | CGC-22-597919 | Levin Simes Abrams, LLP | LSA 197 | Category 1 |
| Jane Doe WHBE 505, et al. v. Uber Technologies, Inc., et al. | CGC-22-597988 | Williams Hart & Boundas, LLP | WHBE 505 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe WHBE 505 et al. v. Uber Technologies, Inc. et al. | CGC-22-597988 | Williams Hart & Boundas, LLP | WHBE 506 | Category 2 |
| Jane Doe WHBE 505, et al. v. Uber Technologies, Inc., et al. | CGC-22-597988 | Williams Hart & Boundas, LLP | WHBE 507 | Category 1 |
| Jane Doe WHBE 505, et al. v. Uber Technologies, Inc., et al. | CGC-22-597988 | Williams Hart & Boundas, LLP | WHBE 508 | Category 1 |
| Jane Doe WHBE 505, et al. v. Uber Technologies, Inc., et al. | CGC-22-597988 | Williams Hart & Boundas, LLP | WHBE 510 | Category 1 |
| Jane Doe WHBE 505, et al. v. Uber Technologies, Inc., et al. | CGC-22-597988 | Williams Hart & Boundas, LLP | WHBE 511 | Category 1 |
| Jane Doe WHBE 505, et al. v. Uber Technologies, Inc., et al. | CGC-22-597988 | Williams Hart & Boundas, LLP | WHBE 513 | Category 1 |
| Jane Doe WHBE 505, et al. v. Uber Technologies, Inc., et al. | CGC-22-597988 | Williams Hart & Boundas, LLP | WHBE 514 | Category 1 |
| Jane Doe WHBE 505, et al. v. Uber Technologies, Inc., et al. | CGC-22-597988 | Williams Hart & Boundas, LLP | WHBE 515 | Category 1 |
| Jane Doe WHBE 505, et al. v. Uber Technologies, Inc., et al. | CGC-22-597988 | Williams Hart & Boundas, LLP | WHBE 516 | Category 1 |
| Jane Doe WHBE 505, et al. v. Uber Technologies, Inc., et al. | CGC-22-597988 | Williams Hart & Boundas, LLP | WHBE 517 | Category 1 |
| Jane Doe WHBE 505, et al. v. Uber Technologies, Inc., et al. | CGC-22-597988 | Williams Hart & Boundas, LLP | WHBE 518 | Category 1 |
| Jane Doe WHBE 505, et al. v. Uber Technologies, Inc., et al. | CGC-22-597988 | Williams Hart & Boundas, LLP | WHBE 519 | Category 1 |
| Jane Doe WHBE 505, et al. v. Uber Technologies, Inc., et al. | CGC-22-597988 | Williams Hart & Boundas, LLP | WHBE 520 | Category 1 |
| Jane Doe WHBE 505, et al. v. Uber Technologies, Inc., et al. | CGC-22-597988 | Williams Hart & Boundas, LLP | WHBE 521 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe WHBE 505, et al. v. Uber Technologies, Inc., et al. | CGC-22-597988 | Williams Hart & Boundas, LLP | WHBE 522 | Category 1 |
| Jane Doe WHBE 505, et al. v. Uber Technologies, Inc., et al. | CGC-22-597988 | Williams Hart & Boundas, LLP | WHBE 523 | Category 1 |
| Jane Doe WHBE 505, et al. v. Uber Technologies, Inc., et al. | CGC-22-597988 | Williams Hart & Boundas, LLP | WHBE 524 | Category 1 |
| Jane Doe WHBE 505, et al. v. Uber Technologies, Inc., et al. | CGC-22-597988 | Williams Hart & Boundas, LLP | WHBE 525 | Category 1 |
| Jane Doe WHBE 505, et al. v. Uber Technologies, Inc., et al. | CGC-22-597988 | Williams Hart & Boundas, LLP | WHBE 526 | Category 1 |
| Jane Doe WHBE 505, et al. v. Uber Technologies, Inc., et al. | CGC-22-597988 | Williams Hart & Boundas, LLP | WHBE 527 | Category 1 |
| Jane Doe WHBE 505, et al. v. Uber Technologies, Inc., et al. | CGC-22-597988 | Williams Hart & Boundas, LLP | WHBE 528 | Category 1 |
| Jane Doe WHBE 505, et al. v. Uber Technologies, Inc., et al. | CGC-22-597988 | Williams Hart & Boundas, LLP | WHBE 529 | Category 1 |
| Jane Doe WHBE 505, et al. v. Uber Technologies, Inc., et al. | CGC-22-597988 | Williams Hart & Boundas, LLP | WHBE 530 | Category 1 |
| Jane Doe WHBE 505, et al. v. Uber Technologies, Inc., et al. | CGC-22-597988 | Williams Hart & Boundas, LLP | WHBE 531 | Category 1 |
| Jane Doe WHBE 505, et al. v. Uber Technologies, Inc., et al. | CGC-22-597988 | Williams Hart & Boundas, LLP | WHBE 532 | Category 1 |
| Jane Doe WHBE 505, et al. v. Uber Technologies, Inc., et al. | CGC-22-597988 | Williams Hart & Boundas, LLP | WHBE 533 | Category 1 |
| Jane Doe DMA 1 v. Uber Technologies, Inc., et al. | CGC-22-598062 | Williams Hart & Boundas, LLP | DMA 1 | Category 1 |
| Jane Doe WHBE 590, et al. v. Uber Technologies, Inc., et al. | CGC-22-598198 | Williams Hart & Boundas, LLP | WHBE 597 | Category 1 |

23

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe WHBE 590 et al. v. Uber Technologies, Inc. et al. | CGC-22-598198 | Williams Hart & Boundas, LLP | WHBE 598 | Category 2 |
| Jane Doe WHBE 590, et al. v. Uber Technologies, Inc., et al. | CGC-22-598198 | Williams Hart & Boundas, LLP | WHBE 599 | Category 1 |
| Jane Doe WHBE 590 et al. v. Uber Technologies, Inc. et al. | CGC-22-598198 | Williams Hart & Boundas, LLP | WHBE 600 | Category 2 |
| Jane Doe WHBE 590, et al. v. Uber Technologies, Inc., et al. | CGC-22-598198 | Williams Hart & Boundas, LLP | WHBE 601 | Category 1 |
| Jane Doe WHBE 590, et al. v. Uber Technologies, Inc., et al. | CGC-22-598198 | Williams Hart & Boundas, LLP | WHBE 602 | Category 1 |
| Jane Doe WHBE 590, et al. v. Uber Technologies, Inc., et al. | CGC-22-598198 | Williams Hart & Boundas, LLP | WHBE 603 | Category 1 |
| Jane Doe WHBE 590, et al. v. Uber Technologies, Inc., et al. | CGC-22-598198 | Williams Hart & Boundas, LLP | WHBE 604 | Category 1 |
| Jane Doe WHBE 590 et al. v. Uber Technologies, Inc. et al. | CGC-22-598198 | Williams Hart & Boundas, LLP | WHBE 605 | Category 2 |
| Jane Doe WHBE 590, et al. v. Uber Technologies, Inc., et al. | CGC-22-598198 | Williams Hart & Boundas, LLP | WHBE 615 | Category 1 |
| Jane Doe WHBE 590, et al. v. Uber Technologies, Inc., et al. | CGC-22-598198 | Williams Hart & Boundas, LLP | WHBE 619 | Category 1 |
| Jane Doe LSA 199, et al. v. Uber Technologies, Inc., et al. | CGC-22-598208 | Levin Simes Abrams, LLP | LSA 199 | Category 1 |
| Jane Doe LSA 199, et al. v. Uber Technologies, Inc., et al. | CGC-22-598208 | Levin Simes Abrams, LLP | LSA 200 | Category 1 |
| Jane Doe LSA 199, et al. v. Uber Technologies, Inc., et al. | CGC-22-598208 | Levin Simes Abrams, LLP | LSA 201 | Category 1 |
| Jane Doe LSA 199, et al. v. Uber Technologies, Inc., et al. | CGC-22-598208 | Levin Simes Abrams, LLP | LSA 202 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe LSA 199, et al. v. Uber Technologies, Inc., et al. | CGC-22-598208 | Levin Simes Abrams, LLP | LSA 203 | Category 1 |
| Jane Doe LSA 199, et al. v. Uber Technologies, Inc., et al. | CGC-22-598208 | Levin Simes Abrams, LLP | LSA 205 | Category 1 |
| Jane Doe LSA 199, et al. v. Uber Technologies, Inc., et al. | CGC-22-598208 | Levin Simes Abrams, LLP | LSA 206 | Category 1 |
| Jane Doe LSA 199, et al. v. Uber Technologies, Inc., et al. | CGC-22-598208 | Levin Simes Abrams, LLP | LSA 207 | Category 1 |
| Jane Doe LSA 199 et al. v. Uber Technologies, Inc. et al. | CGC-22-598208 | Levin Simes Abrams, LLP | LSA 208 | Category 2 |
| Jane Doe WHBE 620, et al. v. Uber Technologies, Inc., et al. | CGC-22-598229 | Williams Hart & Boundas, LLP | WHBE 621 | Category 1 |
| Jane Doe WHBE 620, et al. v. Uber Technologies, Inc., et al. | CGC-22-598229 | Williams Hart & Boundas, LLP | WHBE 622 | Category 1 |
| Jane Doe WHBE 620, et al. v. Uber Technologies, Inc., et al. | CGC-22-598229 | Williams Hart & Boundas, LLP | WHBE 623 | Category 1 |
| Jane Doe WHBE 620, et al. v. Uber Technologies, Inc., et al. | CGC-22-598229 | Williams Hart & Boundas, LLP | WHBE 624 | Category 1 |
| Jane Doe WHBE 620, et al. v. Uber Technologies, Inc., et al. | CGC-22-598229 | Williams Hart & Boundas, LLP | WHBE 625 | Category 1 |
| Jane Doe WHBE 620, et al. v. Uber Technologies, Inc., et al. | CGC-22-598229 | Williams Hart & Boundas, LLP | WHBE 628 | Category 1 |
| Jane Doe WHBE 620, et al. v. Uber Technologies, Inc., et al. | CGC-22-598229 | Williams Hart & Boundas, LLP | WHBE 630 | Category 1 |
| Jane Doe WHBE 620, et al. v. Uber Technologies, Inc., et al. | CGC-22-598229 | Williams Hart & Boundas, LLP | WHBE 631 | Category 1 |
| Jane Doe WHBE 620, et al. v. Uber Technologies, Inc., et al. | CGC-22-598229 | Williams Hart & Boundas, LLP | WHBE 632 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe WHBE 620, et al. v. Uber Technologies, Inc., et al. | CGC-22-598229 | Williams Hart & Boundas, LLP | WHBE 633 | Category 1 |
| Jane Doe WHBE 620, et al. v. Uber Technologies, Inc., et al. | CGC-22-598229 | Williams Hart & Boundas, LLP | WHBE 634 | Category 1 |
| Jane Doe WHBE 620, et al. v. Uber Technologies, Inc., et al. | CGC-22-598229 | Williams Hart & Boundas, LLP | WHBE 636 | Category 1 |
| Jane Doe WHBE 620, et al. v. Uber Technologies, Inc., et al. | CGC-22-598229 | Williams Hart & Boundas, LLP | WHBE 637 | Category 1 |
| Jane Doe WHBE 620, et al. v. Uber Technologies, Inc., et al. | CGC-22-598229 | Williams Hart & Boundas, LLP | WHBE 638 | Category 1 |
| Jane Doe WHBE 620, et al. v. Uber Technologies, Inc., et al. | CGC-22-598229 | Williams Hart & Boundas, LLP | WHBE 639 | Category 1 |
| Jane Doe WHBE 620, et al. v. Uber Technologies, Inc., et al. | CGC-22-598229 | Williams Hart & Boundas, LLP | WHBE 640 | Category 1 |
| Jane Doe WHBE 620, et al. v. Uber Technologies, Inc., et al. | CGC-22-598229 | Williams Hart & Boundas, LLP | WHBE 643 | Category 1 |
| Jane Doe WHBE 620, et al. v. Uber Technologies, Inc., et al. | CGC-22-598229 | Williams Hart & Boundas, LLP | WHBE 644 | Category 1 |
| Jane Doe WHBE 620, et al. v. Uber Technologies, Inc., et al. | CGC-22-598229 | Williams Hart & Boundas, LLP | WHBE 645 | Category 1 |
| Jane Doe WHBE 620, et al. v. Uber Technologies, Inc., et al. | CGC-22-598229 | Williams Hart & Boundas, LLP | WHBE 646 | Category 1 |
| Jane Doe WHBE 620, et al. v. Uber Technologies, Inc., et al. | CGC-22-598229 | Williams Hart & Boundas, LLP | WHBE 647 | Category 1 |
| Jane Doe WHBE 620, et al. v. Uber Technologies, Inc., et al. | CGC-22-598229 | Williams Hart & Boundas, LLP | WHBE 648 | Category 1 |
| Jane Doe WHBE 620, et al. v. Uber Technologies, Inc., et al. | CGC-22-598229 | Williams Hart & Boundas, LLP | WHBE 649 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe WHBE 650 et al. v. Uber Technologies, Inc. et al. | CGC-22-598231 | Williams Hart & Boundas, LLP | WHBE 652 | Category 2 |
| Jane Doe WHBE 650 et al. v. Uber Technologies, Inc. et al. | CGC-22-598231 | Williams Hart & Boundas, LLP | WHBE 657 | Category 2 |
| Jane Doe WHBE 650 et al. v. Uber Technologies, Inc. et al. | CGC-22-598231 | Williams Hart & Boundas, LLP | WHBE 658 | Category 2 |
| Jane Doe WHBE 650, et al. v. Uber Technologies, Inc., et al. | CGC-22-598231 | Williams Hart & Boundas, LLP | WHBE 659 | Category 1 |
| Jane Doe WHBE 650, et al. v. Uber Technologies, Inc., et al. | CGC-22-598231 | Williams Hart & Boundas, LLP | WHBE 660 | Category 1 |
| Jane Doe WHBE 650, et al. v. Uber Technologies, Inc., et al. | CGC-22-598231 | Williams Hart & Boundas, LLP | WHBE 661 | Category 1 |
| Jane Doe WHBE 650, et al. v. Uber Technologies, Inc., et al. | CGC-22-598231 | Williams Hart & Boundas, LLP | WHBE 662 | Category 1 |
| Jane Doe WHBE 650, et al. v. Uber Technologies, Inc., et al. | CGC-22-598231 | Williams Hart & Boundas, LLP | WHBE 663 | Category 1 |
| Jane Doe WHBE 650, et al. v. Uber Technologies, Inc., et al. | CGC-22-598231 | Williams Hart & Boundas, LLP | WHBE 665 | Category 1 |
| Jane Doe WHBE 650, et al. v. Uber Technologies, Inc., et al. | CGC-22-598231 | Williams Hart & Boundas, LLP | WHBE 666 | Category 1 |
| Jane Doe WHBE 650, et al. v. Uber Technologies, Inc., et al. | CGC-22-598231 | Williams Hart & Boundas, LLP | WHBE 667 | Category 1 |
| Jane Doe WHBE 650, et al. v. Uber Technologies, Inc., et al. | CGC-22-598231 | Williams Hart & Boundas, LLP | WHBE 669 | Category 1 |
| Jane Doe WHBE 650, et al. v. Uber Technologies, Inc., et al. | CGC-22-598231 | Williams Hart & Boundas, LLP | WHBE 670 | Category 1 |
| Jane Doe WHBE 650, et al. v. Uber Technologies, Inc., et al. | CGC-22-598231 | Williams Hart & Boundas, LLP | WHBE 671 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | Forum Non Conveniens Category[3] |
|---|---|---|---|---|
| Jane Doe WHBE 650, et al. v. Uber Technologies, Inc., et al. | CGC-22-598231 | Williams Hart & Boundas, LLP | WHBE 672 | Category 1 |
| Jane Doe WHBE 650, et al. v. Uber Technologies, Inc., et al. | CGC-22-598231 | Williams Hart & Boundas, LLP | WHBE 673 | Category 1 |
| Jane Doe WHBE 650, et al. v. Uber Technologies, Inc., et al. | CGC-22-598231 | Williams Hart & Boundas, LLP | WHBE 674 | Category 1 |
| Jane Doe WHBE 650, et al. v. Uber Technologies, Inc., et al. | CGC-22-598231 | Williams Hart & Boundas, LLP | WHBE 676 | Category 1 |
| Jane Doe WHBE 650, et al. v. Uber Technologies, Inc., et al. | CGC-22-598231 | Williams Hart & Boundas, LLP | WHBE 677 | Category 1 |
| Jane Doe WHBE 650, et al. v. Uber Technologies, Inc., et al. | CGC-22-598231 | Williams Hart & Boundas, LLP | WHBE 678 | Category 1 |
| Jane Doe WHBE 650, et al. v. Uber Technologies, Inc., et al. | CGC-22-598231 | Williams Hart & Boundas, LLP | WHBE 679 | Category 1 |
| Jane Doe WHBE 680, et al. v. Uber Technologies, Inc., et al. | CGC-22-598263 | Williams Hart & Boundas, LLP | WHBE 680 | Category 1 |
| Jane Doe WHBE 680, et al. v. Uber Technologies, Inc., et al. | CGC-22-598263 | Williams Hart & Boundas, LLP | WHBE 681 | Category 1 |
| Jane Doe WHBE 680, et al. v. Uber Technologies, Inc., et al. | CGC-22-598263 | Williams Hart & Boundas, LLP | WHBE 682 | Category 1 |
| Jane Doe WHBE 680, et al. v. Uber Technologies, Inc., et al. | CGC-22-598263 | Williams Hart & Boundas, LLP | WHBE 683 | Category 1 |
| Jane Doe WHBE 680, et al. v. Uber Technologies, Inc., et al. | CGC-22-598263 | Williams Hart & Boundas, LLP | WHBE 685 | Category 1 |
| Jane Doe WHBE 680, et al. v. Uber Technologies, Inc., et al. | CGC-22-598263 | Williams Hart & Boundas, LLP | WHBE 686 | Category 1 |
| Jane Doe WHBE 680, et al. v. Uber Technologies, Inc., et al. | CGC-22-598263 | Williams Hart & Boundas, LLP | WHBE 689 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe WHBE 680, et al. v. Uber Technologies, Inc., et al. | CGC-22-598263 | Williams Hart & Boundas, LLP | WHBE 695 | Category 1 |
| Jane Doe WHBE 680, et al. v. Uber Technologies, Inc., et al. | CGC-22-598263 | Williams Hart & Boundas, LLP | WHBE 696 | Category 1 |
| Jane Doe LSA 209, et al. v. Uber Technologies, Inc., et al. | CGC-22-598449 | Levin Simes Abrams, LLP | LSA 209 | Category 1 |
| Jane Doe LSA 209, et al. v. Uber Technologies, Inc., et al. | CGC-22-598449 | Levin Simes Abrams, LLP | LSA 211 | Category 1 |
| Jane Doe LSA 209, et al. v. Uber Technologies, Inc., et al. | CGC-22-598449 | Levin Simes Abrams, LLP | LSA 212 | Category 1 |
| Jane Doe LSA 209, et al. v. Uber Technologies, Inc., et al. | CGC-22-598449 | Levin Simes Abrams, LLP | LSA 214 | Category 1 |
| Jane Doe LSA 209, et al. v. Uber Technologies, Inc., et al. | CGC-22-598449 | Levin Simes Abrams, LLP | LSA 215 | Category 1 |
| Jane Doe LSA 209, et al. v. Uber Technologies, Inc., et al. | CGC-22-598449 | Levin Simes Abrams, LLP | LSA 216 | Category 1 |
| Jane Doe 209 et al. v. Uber Technologies, Inc. et al. | CGC-22-598449 | Levin Simes Abrams, LLP | LSA 217 | Category 2 |
| Jane Doe LSA 209, et al. v. Uber Technologies, Inc., et al. | CGC-22-598449 | Levin Simes Abrams, LLP | LSA 218 | Category 1 |
| Jane Doe WHBE 700, et al. v. Uber Technologies, Inc., et al. | CGC-22-598459 | Williams Hart & Boundas, LLP | WHBE 700 | Category 1 |
| Jane Doe WHBE 700 et al. v. Uber Technologies, Inc. et al. | CGC-22-598459 | Williams Hart & Boundas, LLP | WHBE 701 | Category 2 |
| Jane Doe WHBE 700, et al. v. Uber Technologies, Inc., et al. | CGC-22-598459 | Williams Hart & Boundas, LLP | WHBE 702 | Category 1 |
| Jane Doe WHBE 700, et al. v. Uber Technologies, Inc., et al. | CGC-22-598459 | Williams Hart & Boundas, LLP | WHBE 703 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe WHBE 700, et al. v. Uber Technologies, Inc., et al. | CGC-22-598459 | Williams Hart & Boundas, LLP | WHBE 704 | Category 1 |
| Jane Doe WHBE 700, et al. v. Uber Technologies, Inc., et al. | CGC-22-598459 | Williams Hart & Boundas, LLP | WHBE 706 | Category 1 |
| Jane Doe WHBE 700, et al. v. Uber Technologies, Inc., et al. | CGC-22-598459 | Williams Hart & Boundas, LLP | WHBE 707 | Category 1 |
| Jane Doe WHBE 700, et al. v. Uber Technologies, Inc., et al. | CGC-22-598459 | Williams Hart & Boundas, LLP | WHBE 709 | Category 1 |
| Jane Doe WHBE 753, et al. v. Uber Technologies, Inc., et al. | CGC-22-598743 | Williams Hart & Boundas, LLP | WHBE 754 | Category 1 |
| Jane Doe WHBE 753, et al. v. Uber Technologies, Inc., et al. | CGC-22-598743 | Williams Hart & Boundas, LLP | WHBE 755 | Category 1 |
| Jane Doe WHBE 753, et al. v. Uber Technologies, Inc., et al. | CGC-22-598743 | Williams Hart & Boundas, LLP | WHBE 756 | Category 1 |
| Jane Doe WHBE 753, et al. v. Uber Technologies, Inc., et al. | CGC-22-598743 | Williams Hart & Boundas, LLP | WHBE 757 | Category 1 |
| Jane Doe WHBE 753, et al. v. Uber Technologies, Inc., et al. | CGC-22-598743 | Williams Hart & Boundas, LLP | WHBE 758 | Category 1 |
| Jane Doe WHBE 753, et al. v. Uber Technologies, Inc., et al. | CGC-22-598743 | Williams Hart & Boundas, LLP | WHBE 759 | Category 1 |
| Jane Doe WHBE 753, et al. v. Uber Technologies, Inc., et al. | CGC-22-598743 | Williams Hart & Boundas, LLP | WHBE 760 | Category 1 |
| Jane Doe WHBE 753, et al. v. Uber Technologies, Inc., et al. | CGC-22-598743 | Williams Hart & Boundas, LLP | WHBE 761 | Category 1 |
| Jane Doe WHBE 753, et al. v. Uber Technologies, Inc., et al. | CGC-22-598743 | Williams Hart & Boundas, LLP | WHBE 762 | Category 1 |
| Jane Doe SSS 1, et al. v. Uber Technologies, Inc., et al. | CGC-22-598771 | Slater Slater Schulman, LLP | SSS 1 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | Forum Non Conveniens Category[3] |
|---|---|---|---|---|
| Jane Doe WHBE 823, et al. v. Uber Technologies, Inc., et al. | CGC-22-598770 | Williams Hart & Boundas, LLP | WHBE 823 | Category 1 |
| Jane Doe WHBE 823, et al. v. Uber Technologies, Inc., et al. | CGC-22-598770 | Williams Hart & Boundas, LLP | WHBE 824 | Category 1 |
| Jane Doe WHBE 823, et al. v. Uber Technologies, Inc., et al. | CGC-22-598770 | Williams Hart & Boundas, LLP | WHBE 825 | Category 1 |
| Jane Doe WHBE 823, et al. v. Uber Technologies, Inc., et al. | CGC-22-598770 | Williams Hart & Boundas, LLP | WHBE 826 | Category 1 |
| Jane Doe WHBE 823, et al. v. Uber Technologies, Inc., et al. | CGC-22-598770 | Williams Hart & Boundas, LLP | WHBE 827 | Category 1 |
| Jane Doe WHBE 823, et al. v. Uber Technologies, Inc., et al. | CGC-22-598770 | Williams Hart & Boundas, LLP | WHBE 828 | Category 1 |
| Jane Doe WHBE 823, et al. v. Uber Technologies, Inc., et al. | CGC-22-598770 | Williams Hart & Boundas, LLP | WHBE 829 | Category 1 |
| Jane Doe WHBE 823, et al. v. Uber Technologies, Inc., et al. | CGC-22-598770 | Williams Hart & Boundas, LLP | WHBE 830 | Category 1 |
| Jane Doe WHBE 823, et al. v. Uber Technologies, Inc., et al. | CGC-22-598770 | Williams Hart & Boundas, LLP | WHBE 831 | Category 1 |
| Jane Doe WHBE 823, et al. v. Uber Technologies, Inc., et al. | CGC-22-598770 | Williams Hart & Boundas, LLP | WHBE 832 | Category 1 |
| Jane Doe WHBE 823, et al. v. Uber Technologies, Inc., et al. | CGC-22-598770 | Williams Hart & Boundas, LLP | WHBE 833 | Category 1 |
| Jane Doe WHBE 823, et al. v. Uber Technologies, Inc., et al. | CGC-22-598770 | Williams Hart & Boundas, LLP | WHBE 834 | Category 1 |
| Jane Doe WHBE 823, et al. v. Uber Technologies, Inc., et al. | CGC-22-598770 | Williams Hart & Boundas, LLP | WHBE 835 | Category 1 |
| Jane Doe WHBE 823, et al. v. Uber Technologies, Inc., et al. | CGC-22-598770 | Williams Hart & Boundas, LLP | WHBE 838 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe WHBE 823 et al. v. Uber Technologies, Inc. et al. | CGC-22-598770 | Williams Hart & Boundas, LLP | WHBE 839 | Category 2 |
| Jane Doe WHBE 823, et al. v. Uber Technologies, Inc., et al. | CGC-22-598770 | Williams Hart & Boundas, LLP | WHBE 840 | Category 1 |
| Jane Doe WHBE 823, et al. v. Uber Technologies, Inc., et al. | CGC-22-598770 | Williams Hart & Boundas, LLP | WHBE 844 | Category 1 |
| Jane Doe WHBE 823 et al. v. Uber Technologies, Inc. et al. | CGC-22-598770 | Williams Hart & Boundas, LLP | WHBE 846 | Category 2 |
| Jane Doe WHBE 823, et al. v. Uber Technologies, Inc., et al. | CGC-22-598770 | Williams Hart & Boundas, LLP | WHBE 852 | Category 1 |
| Jane Doe WHBE 853, et al. v. Uber Technologies, Inc., et al. | CGC-22-598891 | Williams Hart & Boundas, LLP | WHBE 854 | Category 1 |
| Jane Doe WHBE 853, et al. v. Uber Technologies, Inc., et al. | CGC-22-598891 | Williams Hart & Boundas, LLP | WHBE 855 | Category 1 |
| Jane Doe WHBE 853, et al. v. Uber Technologies, Inc., et al. | CGC-22-598891 | Williams Hart & Boundas, LLP | WHBE 856 | Category 1 |
| Jane Doe WHBE 853, et al. v. Uber Technologies, Inc., et al. | CGC-22-598891 | Williams Hart & Boundas, LLP | WHBE 857 | Category 1 |
| Jane Doe WHBE 853, et al. v. Uber Technologies, Inc., et al. | CGC-22-598891 | Williams Hart & Boundas, LLP | WHBE 858 | Category 1 |
| Jane Doe WHBE 853, et al. v. Uber Technologies, Inc., et al. | CGC-22-598891 | Williams Hart & Boundas, LLP | WHBE 859 | Category 1 |
| Jane Doe WHBE 853, et al. v. Uber Technologies, Inc., et al. | CGC-22-598891 | Williams Hart & Boundas, LLP | WHBE 860 | Category 1 |
| Jane Doe WHBE 853, et al. v. Uber Technologies, Inc., et al. | CGC-22-598891 | Williams Hart & Boundas, LLP | WHBE 862 | Category 1 |
| Jane Doe WHBE 853, et al. v. Uber Technologies, Inc., et al. | CGC-22-598891 | Williams Hart & Boundas, LLP | WHBE 863 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category[3]* |
|---|---|---|---|---|
| Jane Doe WHBE 853 et al. v. Uber Technologies, Inc. et al. | CGC-22-598891 | Williams Hart & Boundas, LLP | WHBE 865 | Category 2 |
| Jane Doe WHBE 853, et al. v. Uber Technologies, Inc., et al. | CGC-22-598891 | Williams Hart & Boundas, LLP | WHBE 867 | Category 1 |
| Jane Doe WHBE 853, et al. v. Uber Technologies, Inc., et al. | CGC-22-598891 | Williams Hart & Boundas, LLP | WHBE 868 | Category 1 |
| Jane Doe WHBE 853, et al. v. Uber Technologies, Inc., et al. | CGC-22-598891 | Williams Hart & Boundas, LLP | WHBE 870 | Category 1 |
| Jane Doe WHBE 853, et al. v. Uber Technologies, Inc., et al. | CGC-22-598891 | Williams Hart & Boundas, LLP | WHBE 871 | Category 1 |
| Jane Doe LSA 219, et al. v. Uber Technologies, Inc., et al. | CGC-22-598907 | Levin Simes Abrams, LLP | LSA 219 | Category 1 |
| Jane Doe LSA 219, et al. v. Uber Technologies, Inc., et al. | CGC-22-598907 | Levin Simes Abrams, LLP | LSA 220 | Category 1 |
| Jane Doe LSA 219, et al. v. Uber Technologies, Inc., et al. | CGC-22-598907 | Levin Simes Abrams, LLP | LSA 221 | Category 1 |
| Jane Doe LSA 219, et al. v. Uber Technologies, Inc., et al. | CGC-22-598907 | Levin Simes Abrams, LLP | LSA 224 | Category 1 |
| Jane Doe LSA 219, et al. v. Uber Technologies, Inc., et al. | CGC-22-598907 | Levin Simes Abrams, LLP | LSA 225 | Category 1 |
| Jane Doe LSA 219, et al. v. Uber Technologies, Inc., et al. | CGC-22-598907 | Levin Simes Abrams, LLP | LSA 226 | Category 1 |
| Jane Doe LSA 219, et al. v. Uber Technologies, Inc., et al. | CGC-22-598907 | Levin Simes Abrams, LLP | LSA 227 | Category 1 |
| Jane Doe LSA 219, et al. v. Uber Technologies, Inc., et al. | CGC-22-598907 | Levin Simes Abrams, LLP | LSA 228 | Category 1 |
| Jane Doe LSA 219, et al. v. Uber Technologies, Inc., et al. | CGC-22-598907 | Levin Simes Abrams, LLP | LSA 230 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe LSA 219, et al. v. Uber Technologies, Inc., et al. | CGC-22-598907 | Levin Simes Abrams, LLP | LSA 231 | Category 1 |
| Jane Doe LSA 219, et al. v. Uber Technologies, Inc., et al. | CGC-22-598907 | Levin Simes Abrams, LLP | LSA 232 | Category 1 |
| Jane Doe LSA 219, et al. v. Uber Technologies, Inc., et al. | CGC-22-598907 | Levin Simes Abrams, LLP | LSA 233 | Category 1 |
| Jane Doe LSA 219, et al. v. Uber Technologies, Inc., et al. | CGC-22-598907 | Levin Simes Abrams, LLP | LSA 234 | Category 1 |
| Jane Doe LSA 219, et al. v. Uber Technologies, Inc., et al. | CGC-22-598907 | Levin Simes Abrams, LLP | LSA 237 | Category 1 |
| Jane Doe LSA 219, et al. v. Uber Technologies, Inc., et al. | CGC-22-598907 | Levin Simes Abrams, LLP | LSA 238 | Category 1 |
| Jane Doe (B.B.) v. Uber Technologies, Inc., et al. | CGC-22-598954 | Simon Greenstone Panatier, PC | Jane Doe B.B. | Category 1 |
| Jane Doe (K.S.) v. Uber Technologies, Inc., et al. | CGC-22-599000 | Simon Greenstone Panatier, PC | Jane Doe K.S. | Category 1 |
| Jane Doe (R.C.) v. Uber Technologies, Inc., et al. | CGC-22-598996 | Simon Greenstone Panatier, PC | Jane Doe R.S. | Category 1 |
| Jane Doe (R.H.) v. Uber Technologies, Inc., et al. | CGC-22-598997 | Simon Greenstone Panatier, PC | Jane Doe R.H. | Category 1 |
| Jane Doe WHBE 873, et al. v. Uber Technologies, Inc., et al. | CGC-22-599117 | Williams Hart & Boundas, LLP | WHBE 873 | Category 1 |
| Jane Doe WHBE 873, et al. v. Uber Technologies, Inc., et al. | CGC-22-599117 | Williams Hart & Boundas, LLP | WHBE 876 | Category 1 |
| Jane Doe WHBE 873, et al. v. Uber Technologies, Inc., et al. | CGC-22-599117 | Williams Hart & Boundas, LLP | WHBE 882 | Category 1 |
| Jane Doe WHBE 873, et al. v. Uber Technologies, Inc., et al. | CGC-22-599117 | Williams Hart & Boundas, LLP | WHBE 884 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe WHBE 873, et al. v. Uber Technologies, Inc., et al. | CGC-22-599117 | Williams Hart & Boundas, LLP | WHBE 885 | Category 1 |
| Jane Doe WHBE 873, et al. v. Uber Technologies, Inc., et al. | CGC-22-599117 | Williams Hart & Boundas, LLP | WHBE 886 | Category 1 |
| Jane Doe WHBE 873, et al. v. Uber Technologies, Inc., et al. | CGC-22-599117 | Williams Hart & Boundas, LLP | WHBE 888 | Category 1 |
| Jane Doe WHBE 873, et al. v. Uber Technologies, Inc., et al. | CGC-22-599117 | Williams Hart & Boundas, LLP | WHBE 890 | Category 1 |
| Jane Doe WHBE 873, et al. v. Uber Technologies, Inc., et al. | CGC-22-599117 | Williams Hart & Boundas, LLP | WHBE 891 | Category 1 |
| Jane Doe WHBE 873, et al. v. Uber Technologies, Inc., et al. | CGC-22-599117 | Williams Hart & Boundas, LLP | WHBE 892 | Category 1 |
| Jane Doe WHBE 923, et al. v. Uber Technologies, Inc., et al. | CGC-22-599275 | Williams Hart & Boundas, LLP | WHBE 923 | Category 1 |
| Jane Doe WHBE 923, et al. v. Uber Technologies, Inc., et al. | CGC-22-599275 | Williams Hart & Boundas, LLP | WHBE 924 | Category 1 |
| Jane Doe WHBE 923, et al. v. Uber Technologies, Inc., et al. | CGC-22-599275 | Williams Hart & Boundas, LLP | WHBE 927 | Category 1 |
| Jane Doe WHBE 923, et al. v. Uber Technologies, Inc., et al. | CGC-22-599275 | Williams Hart & Boundas, LLP | WHBE 928 | Category 1 |
| Jane Doe WHBE 923, et al. v. Uber Technologies, Inc., et al. | CGC-22-599275 | Williams Hart & Boundas, LLP | WHBE 931 | Category 1 |
| Jane Doe WHBE 923, et al. v. Uber Technologies, Inc., et al. | CGC-22-599275 | Williams Hart & Boundas, LLP | WHBE 932 | Category 1 |
| Jane Doe WHBE 923, et al. v. Uber Technologies, Inc., et al. | CGC-22-599275 | Williams Hart & Boundas, LLP | WHBE 934 | Category 1 |
| Jane Doe WHBE 923, et al. v. Uber Technologies, Inc., et al. | CGC-22-599275 | Williams Hart & Boundas, LLP | WHBE 935 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | Forum Non Conveniens Category[3] |
|---|---|---|---|---|
| Jane Doe WHBE 923, et al. v. Uber Technologies, Inc., et al. | CGC-22-599275 | Williams Hart & Boundas, LLP | WHBE 936 | Category 1 |
| Jane Doe WHBE 923, et al. v. Uber Technologies, Inc., et al. | CGC-22-599275 | Williams Hart & Boundas, LLP | WHBE 941 | Category 1 |
| Jane Doe WHBE 923, et al. v. Uber Technologies, Inc., et al. | CGC-22-599275 | Williams Hart & Boundas, LLP | WHBE 942 | Category 1 |
| Jane Doe WHBE 923, et al. v. Uber Technologies, Inc., et al. | CGC-22-599275 | Williams Hart & Boundas, LLP | WHBE 943 | Category 1 |
| Jane Doe WHBE 923, et al. v. Uber Technologies, Inc., et al. | CGC-22-599275 | Williams Hart & Boundas, LLP | WHBE 944 | Category 1 |
| Jane Doe WHBE 923, et al. v. Uber Technologies, Inc., et al. | CGC-22-599275 | Williams Hart & Boundas, LLP | WHBE 946 | Category 1 |
| Jane Doe WHBE 923 et al. v. Uber Technologies, Inc. et al. | CGC-22-599275 | Williams Hart & Boundas, LLP | WHBE 948 | Category 2 |
| Jane Doe WHBE 923, et al. v. Uber Technologies, Inc., et al. | CGC-22-599275 | Williams Hart & Boundas, LLP | WHBE 949 | Category 1 |
| Jane Doe WHBE 923, et al. v. Uber Technologies, Inc., et al. | CGC-22-599275 | Williams Hart & Boundas, LLP | WHBE 950 | Category 1 |
| Jane Doe WHBE 923, et al. v. Uber Technologies, Inc., et al. | CGC-22-599275 | Williams Hart & Boundas, LLP | WHBE 951 | Category 1 |
| Jane Doe WHBE 923, et al. v. Uber Technologies, Inc., et al. | CGC-22-599275 | Williams Hart & Boundas, LLP | WHBE 952 | Category 1 |
| Jane Doe WHBE 973, et al. v. Uber Technologies, Inc., et al. | CGC-22-599364 | Williams Hart & Boundas, LLP | WHBE 973 | Category 1 |
| Jane Doe WHBE 973, et al. v. Uber Technologies, Inc., et al. | CGC-22-599364 | Williams Hart & Boundas, LLP | WHBE 974 | Category 1 |
| Jane Doe WHBE 973, et al. v. Uber Technologies, Inc., et al. | CGC-22-599364 | Williams Hart & Boundas, LLP | WHBE 976 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe WHBE 973, et al. v. Uber Technologies, Inc., et al. | CGC-22-599364 | Williams Hart & Boundas, LLP | WHBE 977 | Category 1 |
| Jane Doe WHBE 973, et al. v. Uber Technologies, Inc., et al. | CGC-22-599364 | Williams Hart & Boundas, LLP | WHBE 978 | Category 1 |
| Jane Doe WHBE 973, et al. v. Uber Technologies, Inc., et al. | CGC-22-599364 | Williams Hart & Boundas, LLP | WHBE 979 | Category 1 |
| Jane Doe WHBE 973, et al. v. Uber Technologies, Inc., et al. | CGC-22-599364 | Williams Hart & Boundas, LLP | WHBE 980 | Category 1 |
| Jane Doe WHBE 973, et al. v. Uber Technologies, Inc., et al. | CGC-22-599364 | Williams Hart & Boundas, LLP | WHBE 981 | Category 1 |
| Jane Doe WHBE 973, et al. v. Uber Technologies, Inc., et al. | CGC-22-599364 | Williams Hart & Boundas, LLP | WHBE 982 | Category 1 |
| Jane Doe WHBE 973, et al. v. Uber Technologies, Inc., et al. | CGC-22-599364 | Williams Hart & Boundas, LLP | WHBE 983 | Category 1 |
| Jane Doe WHBE 973, et al. v. Uber Technologies, Inc., et al. | CGC-22-599364 | Williams Hart & Boundas, LLP | WHBE 984 | Category 1 |
| Jane Doe WHBE 973, et al. v. Uber Technologies, Inc., et al. | CGC-22-599364 | Williams Hart & Boundas, LLP | WHBE 986 | Category 1 |
| Jane Doe WHBE 973, et al. v. Uber Technologies, Inc., et al. | CGC-22-599364 | Williams Hart & Boundas, LLP | WHBE 987 | Category 1 |
| Jane Doe WHBE 973, et al. v. Uber Technologies, Inc., et al. | CGC-22-599364 | Williams Hart & Boundas, LLP | WHBE 988 | Category 1 |
| Jane Doe WHBE 973, et al. v. Uber Technologies, Inc., et al. | CGC-22-599364 | Williams Hart & Boundas, LLP | WHBE 991 | Category 1 |
| Jane Doe WHBE 973, et al. v. Uber Technologies, Inc., et al. | CGC-22-599364 | Williams Hart & Boundas, LLP | WHBE 992 | Category 1 |
| Jane Doe WHBE 973, et al. v. Uber Technologies, Inc., et al. | CGC-22-599364 | Williams Hart & Boundas, LLP | WHBE 994 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe WHBE 973, et al. v. Uber Technologies, Inc., et al. | CGC-22-599364 | Williams Hart & Boundas, LLP | WHBE 995 | Category 1 |
| Jane Doe WHBE 973, et al. v. Uber Technologies, Inc., et al. | CGC-22-599364 | Williams Hart & Boundas, LLP | WHBE 998 | Category 1 |
| Jane Doe WHBE 973, et al. v. Uber Technologies, Inc., et al. | CGC-22-599364 | Williams Hart & Boundas, LLP | WHBE 999 | Category 1 |
| Jane Doe v. Uber Technologies, Inc., et al. | CGC-22-599424 | Peiffer Wolf Carr Kane Conway & Wise, LLP | Jane Doe | Category 1 |
| Jane Doe WHBE 1000, et al. v. Uber Technologies, Inc., et al. | CGC-22-599437 | Williams Hart & Boundas, LLP | WHBE 1001 | Category 1 |
| Jane Doe WHBE 1000, et al. v. Uber Technologies, Inc., et al. | CGC-22-599437 | Williams Hart & Boundas, LLP | WHBE 1002 | Category 1 |
| Jane Doe WHBE 1000, et al. v. Uber Technologies, Inc., et al. | CGC-22-599437 | Williams Hart & Boundas, LLP | WHBE 1003 | Category 1 |
| Jane Doe WHBE 1000, et al. v. Uber Technologies, Inc., et al. | CGC-22-599437 | Williams Hart & Boundas, LLP | WHBE 1004 | Category 1 |
| Jane Doe WHBE 1000, et al. v. Uber Technologies, Inc., et al. | CGC-22-599437 | Williams Hart & Boundas, LLP | WHBE 1006 | Category 1 |
| Jane Doe WHBE 1000, et al. v. Uber Technologies, Inc., et al. | CGC-22-599437 | Williams Hart & Boundas, LLP | WHBE 1007 | Category 1 |
| Jane Doe WHBE 1000, et al. v. Uber Technologies, Inc., et al. | CGC-22-599437 | Williams Hart & Boundas, LLP | WHBE 1009 | Category 1 |
| Jane Doe WHBE 1000, et al. v. Uber Technologies, Inc., et al. | CGC-22-599437 | Williams Hart & Boundas, LLP | WHBE 1010 | Category 1 |
| Jane Doe WHBE 1000, et al. v. Uber Technologies, Inc., et al. | CGC-22-599437 | Williams Hart & Boundas, LLP | WHBE 1011 | Category 1 |
| Jane Doe WHBE 1000, et al. v. Uber Technologies, Inc., et al. | CGC-22-599437 | Williams Hart & Boundas, LLP | WHBE 1013 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe WHBE 1000, et al. v. Uber Technologies, Inc., et al. | CGC-22-599437 | Williams Hart & Boundas, LLP | WHBE 1016 | Category 1 |
| Jane Doe WHBE 1000, et al. v. Uber Technologies, Inc., et al. | CGC-22-599437 | Williams Hart & Boundas, LLP | WHBE 1017 | Category 1 |
| Jane Doe WHBE 1000, et al. v. Uber Technologies, Inc., et al. | CGC-22-599437 | Williams Hart & Boundas, LLP | WHBE 1018 | Category 1 |
| Jane Doe WHBE 1000, et al. v. Uber Technologies, Inc., et al. | CGC-22-599437 | Williams Hart & Boundas, LLP | WHBE 1021 | Category 1 |
| Jane Doe WHBE 1000, et al. v. Uber Technologies, Inc., et al. | CGC-22-599437 | Williams Hart & Boundas, LLP | WHBE 1022 | Category 1 |
| Jane Doe WHBE 1000, et al. v. Uber Technologies, Inc., et al. | CGC-22-599437 | Williams Hart & Boundas, LLP | WHBE 1023 | Category 1 |
| Jane Doe WHBE 1000, et al. v. Uber Technologies, Inc., et al. | CGC-22-599437 | Williams Hart & Boundas, LLP | WHBE 1024 | Category 1 |
| Jane Doe WHBE 1000, et al. v. Uber Technologies, Inc., et al. | CGC-22-599437 | Williams Hart & Boundas, LLP | WHBE 1026 | Category 1 |
| Jane Doe WHBE 1000, et al. v. Uber Technologies, Inc., et al. | CGC-22-599437 | Williams Hart & Boundas, LLP | WHBE 1027 | Category 1 |
| Jane Doe WHBE 1000, et al. v. Uber Technologies, Inc., et al. | CGC-22-599437 | Williams Hart & Boundas, LLP | WHBE 1029 | Category 1 |
| Megan Parish, et al. v. Uber Technologies, Inc., et al. | CGC-22-599623 | Estey & Bomberger, LLP | EB 2 | Category 1 |
| Megan Parish, et al. v. Uber Technologies, Inc., et al. | CGC-22-599623 | Estey & Bomberger, LLP | EB 3 | Category 1 |
| Megan Parish, et al. v. Uber Technologies, Inc., et al. | CGC-22-599623 | Estey & Bomberger, LLP | EB 4 | Category 1 |
| Megan Parish, et al. v. Uber Technologies, Inc., et al. | CGC-22-599623 | Estey & Bomberger, LLP | EB 5 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe EB 6, et al. v. Uber Technologies, Inc., et al. | CGC-22-599620 | Estey & Bomberger, LLP | EB 7 | Category 1 |
| Megan Parish, et al. v. Uber Technologies, Inc., et al. | CGC-22-599623 | Estey & Bomberger, LLP | Megan Parish | Category 1 |
| Megan Parish, et al. v. Uber Technologies, Inc., et al. | CGC-22-599623 | Estey & Bomberger, LLP | Rebecca Rhodes | Category 1 |
| Jane Doe EB 8, et al. v. Uber Technologies, Inc., et al. | CGC-22-599656 | Estey & Bomberger, LLP | EB 8 | Category 1 |
| Jane Doe EB 10, et al. v. Uber Technologies, Inc., et al. | CGC-22-599659 | Estey & Bomberger, LLP | EB 10 | Category 1 |
| Jane Doe SSS 3, et al. v. Uber Technologies, Inc., et al. | CGC-22-599708 | Slater Slater Schulman, LLP | SSS 11 | Category 1 |
| Jane Doe SSS 3, et al. v. Uber Technologies, Inc., et al. | CGC-22-599708 | Slater Slater Schulman, LLP | SSS 5 | Category 1 |
| Jane Doe SSS 3, et al. v. Uber Technologies, Inc., et al. | CGC-22-599708 | Slater Slater Schulman, LLP | SSS 6 | Category 1 |
| Jane Doe SSS 3, et al. v. Uber Technologies, Inc., et al. | CGC-22-599708 | Slater Slater Schulman, LLP | SSS 7 | Category 1 |
| Jane Doe SSS 3, et al. v. Uber Technologies, Inc., et al. | CGC-22-599708 | Slater Slater Schulman, LLP | SSS 8 | Category 1 |
| Jane Doe SSS 3, et al. v. Uber Technologies, Inc., et al. | CGC-22-599708 | Slater Slater Schulman, LLP | SSS 9 | Category 1 |
| Jane Doe SSS 3, et al. v. Uber Technologies, Inc., et al. | CGC-22-599708 | Slater Slater Schulman, LLP | SSS 12 | Category 1 |
| Jane Doe SSS 3, et al. v. Uber Technologies, Inc., et al. | CGC-22-599708 | Slater Slater Schulman, LLP | SSS 13 | Category 1 |
| Cristina Chirino, et al. v. Uber Technologies, Inc., et al. | CGC-22-599756 | Estey & Bomberger, LLP | Cristina Chirino | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Cristina Chirino, et al. v. Uber Technologies, Inc., et al. | CGC-22-599756 | Estey & Bomberger, LLP | EB 12 | Category 1 |
| Cristina Chirino, et al. v. Uber Technologies, Inc., et al. | CGC-22-599756 | Estey & Bomberger, LLP | EB 13 | Category 1 |
| Cristina Chirino, et al. v. Uber Technologies, Inc., et al. | CGC-22-599756 | Estey & Bomberger, LLP | EB 16 | Category 1 |
| Cristina Chirino, et al. v. Uber Technologies, Inc., et al. | CGC-22-599756 | Estey & Bomberger, LLP | EB 17 | Category 1 |
| Cristina Chirino, et al. v. Uber Technologies, Inc., et al. | CGC-22-599756 | Estey & Bomberger, LLP | EB 18 | Category 1 |
| Cristina Chirino, et al. v. Uber Technologies, Inc., et al. | CGC-22-599756 | Estey & Bomberger, LLP | EB 19 | Category 1 |
| Cristina Chirino, et al. v. Uber Technologies, Inc., et al. | CGC-22-599756 | Estey & Bomberger, LLP | EB 20 | Category 1 |
| Jane Doe WHBE 1030, et al. v. Uber Technologies, Inc., et al. | CGC-22-599912 | Williams Hart & Boundas, LLP | WHBE 1030 | Category 1 |
| Jane Doe WHBE 1030, et al. v. Uber Technologies, Inc., et al. | CGC-22-599912 | Williams Hart & Boundas, LLP | WHBE 1031 | Category 1 |
| Jane Doe WHBE 1030, et al. v. Uber Technologies, Inc., et al. | CGC-22-599912 | Williams Hart & Boundas, LLP | WHBE 1032 | Category 1 |
| Jane Doe WHBE 1030, et al. v. Uber Technologies, Inc., et al. | CGC-22-599912 | Williams Hart & Boundas, LLP | WHBE 1033 | Category 1 |
| Jane Doe WHBE 1030, et al. v. Uber Technologies, Inc., et al. | CGC-22-599912 | Williams Hart & Boundas, LLP | WHBE 1036 | Category 1 |
| Jane Doe WHBE 1030, et al. v. Uber Technologies, Inc., et al. | CGC-22-599912 | Williams Hart & Boundas, LLP | WHBE 1037 | Category 1 |
| Jane Doe WHBE 1030, et al. v. Uber Technologies, Inc., et al. | CGC-22-599912 | Williams Hart & Boundas, LLP | WHBE 1038 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | Forum Non Conveniens Category[3] |
|---|---|---|---|---|
| Jane Doe WHBE 1030, et al. v. Uber Technologies, Inc., et al. | CGC-22-599912 | Williams Hart & Boundas, LLP | WHBE 1041 | Category 1 |
| Jane Doe WHBE 1030, et al. v. Uber Technologies, Inc., et al. | CGC-22-599912 | Williams Hart & Boundas, LLP | WHBE 1042 | Category 1 |
| Jane Doe WHBE 1030, et al. v. Uber Technologies, Inc., et al. | CGC-22-599912 | Williams Hart & Boundas, LLP | WHBE 1043 | Category 1 |
| Jane Doe WHBE 1030, et al. v. Uber Technologies, Inc., et al. | CGC-22-599912 | Williams Hart & Boundas, LLP | WHBE 1044 | Category 1 |
| Jane Doe WHBE 1030, et al. v. Uber Technologies, Inc., et al. | CGC-22-599912 | Williams Hart & Boundas, LLP | WHBE 1045 | Category 1 |
| Jane Doe WHBE 1030, et al. v. Uber Technologies, Inc., et al. | CGC-22-599912 | Williams Hart & Boundas, LLP | WHBE 1046 | Category 1 |
| Jane Doe WHBE 1030, et al. v. Uber Technologies, Inc., et al. | CGC-22-599912 | Williams Hart & Boundas, LLP | WHBE 1048 | Category 1 |
| Jane Doe WHBE 1030, et al. v. Uber Technologies, Inc., et al. | CGC-22-599912 | Williams Hart & Boundas, LLP | WHBE 1049 | Category 1 |
| Jane Doe WHBE 1030 et al. v. Uber Technologies, Inc. et al. | CGC-22-599912 | Williams Hart & Boundas, LLP | WHBE 1050 | Category 2 |
| Jane Doe WHBE 1030, et al. v. Uber Technologies, Inc., et al. | CGC-22-599912 | Williams Hart & Boundas, LLP | WHBE 1051 | Category 1 |
| Jane Doe WHBE 1030, et al. v. Uber Technologies, Inc., et al. | CGC-22-599912 | Williams Hart & Boundas, LLP | WHBE 1054 | Category 1 |
| Jane Doe WHBE 1030, et al. v. Uber Technologies, Inc., et al. | CGC-22-599912 | Williams Hart & Boundas, LLP | WHBE 1056 | Category 1 |
| Jane Doe WHBE 1030, et al. v. Uber Technologies, Inc., et al. | CGC-22-599912 | Williams Hart & Boundas, LLP | WHBE 1057 | Category 1 |
| Jane Doe WHBE 1120, et al. v. Uber Technologies, Inc., et al. | CGC-22-599920 | Williams Hart & Boundas, LLP | WHBE 1120 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe WHBE 1120, et al. v. Uber Technologies, Inc., et al. | CGC-22-599920 | Williams Hart & Boundas, LLP | WHBE 1122 | Category 1 |
| Jane Doe WHBE 1120, et al. v. Uber Technologies, Inc., et al. | CGC-22-599920 | Williams Hart & Boundas, LLP | WHBE 1123 | Category 1 |
| Jane Doe WHBE 1120, et al. v. Uber Technologies, Inc., et al. | CGC-22-599920 | Williams Hart & Boundas, LLP | WHBE 1124 | Category 1 |
| Jane Doe WHBE 1120, et al. v. Uber Technologies, Inc., et al. | CGC-22-599920 | Williams Hart & Boundas, LLP | WHBE 1125 | Category 1 |
| Jane Doe WHBE 1120, et al. v. Uber Technologies, Inc., et al. | CGC-22-599920 | Williams Hart & Boundas, LLP | WHBE 1127 | Category 1 |
| Jane Doe WHBE 1120, et al. v. Uber Technologies, Inc., et al. | CGC-22-599920 | Williams Hart & Boundas, LLP | WHBE 1128 | Category 1 |
| Jane Doe WHBE 1120, et al. v. Uber Technologies, Inc., et al. | CGC-22-599920 | Williams Hart & Boundas, LLP | WHBE 1129 | Category 1 |
| Jane Doe WHBE 1120, et al. v. Uber Technologies, Inc., et al. | CGC-22-599920 | Williams Hart & Boundas, LLP | WHBE 1131 | Category 1 |
| Jane Doe WHBE 1120, et al. v. Uber Technologies, Inc., et al. | CGC-22-599920 | Williams Hart & Boundas, LLP | WHBE 1132 | Category 1 |
| Jane Doe WHBE 1120, et al. v. Uber Technologies, Inc., et al. | CGC-22-599920 | Williams Hart & Boundas, LLP | WHBE 1134 | Category 1 |
| Jane Doe WHBE 1120, et al. v. Uber Technologies, Inc., et al. | CGC-22-599920 | Williams Hart & Boundas, LLP | WHBE 1135 | Category 1 |
| Jane Doe WHBE 1120, et al. v. Uber Technologies, Inc., et al. | CGC-22-599920 | Williams Hart & Boundas, LLP | WHBE 1136 | Category 1 |
| Jane Doe WHBE 1120, et al. v. Uber Technologies, Inc., et al. | CGC-22-599920 | Williams Hart & Boundas, LLP | WHBE 1138 | Category 1 |
| Jane Doe WHBE 1120, et al. v. Uber Technologies, Inc., et al. | CGC-22-599920 | Williams Hart & Boundas, LLP | WHBE 1140 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe WHBE 1120, et al. v. Uber Technologies, Inc., et al. | CGC-22-599920 | Williams Hart & Boundas, LLP | WHBE 1141 | Category 1 |
| Jane Doe WHBE 1120, et al. v. Uber Technologies, Inc., et al. | CGC-22-599920 | Williams Hart & Boundas, LLP | WHBE 1142 | Category 1 |
| Jane Doe WHBE 1120, et al. v. Uber Technologies, Inc., et al. | CGC-22-599920 | Williams Hart & Boundas, LLP | WHBE 1143 | Category 1 |
| Jane Doe WHBE 1120, et al. v. Uber Technologies, Inc., et al. | CGC-22-599920 | Williams Hart & Boundas, LLP | WHBE 1144 | Category 1 |
| Jane Doe WHBE 1120, et al. v. Uber Technologies, Inc., et al. | CGC-22-599920 | Williams Hart & Boundas, LLP | WHBE 1147 | Category 1 |
| Jane Doe WHBE 1120, et al. v. Uber Technologies, Inc., et al. | CGC-22-599920 | Williams Hart & Boundas, LLP | WHBE 1148 | Category 1 |
| Jane Doe LSA 239, et al. v. Uber Technologies, Inc., et al. | CGC-22-600037 | Levin Simes Abrams, LLP | LSA 239 | Category 1 |
| Jane Doe LSA 239, et al. v. Uber Technologies, Inc., et al. | CGC-22-600037 | Levin Simes Abrams, LLP | LSA 240 | Category 1 |
| Jane Doe LSA 239, et al. v. Uber Technologies, Inc., et al. | CGC-22-600037 | Levin Simes Abrams, LLP | LSA 241 | Category 1 |
| Jane Doe LSA 239, et al. v. Uber Technologies, Inc., et al. | CGC-22-600037 | Levin Simes Abrams, LLP | LSA 243 | Category 1 |
| Jane Doe LSA 239, et al. v. Uber Technologies, Inc., et al. | CGC-22-600037 | Levin Simes Abrams, LLP | LSA 244 | Category 1 |
| Jane Doe LSA 239, et al. v. Uber Technologies, Inc., et al. | CGC-22-600037 | Levin Simes Abrams, LLP | LSA 245 | Category 1 |
| Jane Doe LSA 239, et al. v. Uber Technologies, Inc., et al. | CGC-22-600037 | Levin Simes Abrams, LLP | LSA 247 | Category 1 |
| Jane Doe LSA 239, et al. v. Uber Technologies, Inc., et al. | CGC-22-600037 | Levin Simes Abrams, LLP | LSA 248 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | Forum Non Conveniens Category[3] |
|---|---|---|---|---|
| Jane Doe LSA 239, et al. v. Uber Technologies, Inc., et al. | CGC-22-600037 | Levin Simes Abrams, LLP | LSA 249 | Category 1 |
| Jane Doe LSA 239, et al. v. Uber Technologies, Inc., et al. | CGC-22-600037 | Levin Simes Abrams, LLP | LSA 250 | Category 1 |
| Jane Doe LSA 239, et al. v. Uber Technologies, Inc., et al. | CGC-22-600037 | Levin Simes Abrams, LLP | LSA 251 | Category 1 |
| Jane Doe LSA 239, et al. v. Uber Technologies, Inc., et al. | CGC-22-600037 | Levin Simes Abrams, LLP | LSA 252 | Category 1 |
| Jane Doe LSA 239, et al. v. Uber Technologies, Inc., et al. | CGC-22-600037 | Levin Simes Abrams, LLP | LSA 253 | Category 1 |
| Jane Doe LSA 239, et al. v. Uber Technologies, Inc., et al. | CGC-22-600037 | Levin Simes Abrams, LLP | LSA 254 | Category 1 |
| Jane Doe LSA 239, et al. v. Uber Technologies, Inc., et al. | CGC-22-600037 | Levin Simes Abrams, LLP | LSA 255 | Category 1 |
| Jane Doe LSA 239, et al. v. Uber Technologies, Inc., et al. | CGC-22-600037 | Levin Simes Abrams, LLP | LSA 256 | Category 1 |
| Jane Doe LSA 239, et al. v. Uber Technologies, Inc., et al. | CGC-22-600037 | Levin Simes Abrams, LLP | LSA 257 | Category 1 |
| Jane Doe LSA 239, et al. v. Uber Technologies, Inc., et al. | CGC-22-600037 | Levin Simes Abrams, LLP | LSA 258 | Category 1 |
| Jane Doe WHBE 1260, et al. v. Uber Technologies, Inc., et al. | CGC-22-600070 | Williams Hart & Boundas, LLP | WHBE 1260 | Category 1 |
| Jane Doe WHBE 1260, et al. v. Uber Technologies, Inc., et al. | CGC-22-600070 | Williams Hart & Boundas, LLP | WHBE 1262 | Category 1 |
| Jane Doe WHBE 1260, et al. v. Uber Technologies, Inc., et al. | CGC-22-600070 | Williams Hart & Boundas, LLP | WHBE 1263 | Category 1 |
| Jane Doe WHBE 1260, et al. v. Uber Technologies, Inc., et al. | CGC-22-600070 | Williams Hart & Boundas, LLP | WHBE 1264 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe WHBE 1260, et al. v. Uber Technologies, Inc., et al. | CGC-22-600070 | Williams Hart & Boundas, LLP | WHBE 1269 | Category 1 |
| Jane Doe WHBE 1260, et al. v. Uber Technologies, Inc., et al. | CGC-22-600070 | Williams Hart & Boundas, LLP | WHBE 1270 | Category 1 |
| Jane Doe WHBE 1260 et al. v. Uber Technologies, Inc. et al. | CGC-22-600070 | Williams Hart & Boundas, LLP | WHBE 1271 | Category 2 |
| Jane Doe WHBE 1260, et al. v. Uber Technologies, Inc., et al. | CGC-22-600070 | Williams Hart & Boundas, LLP | WHBE 1272 | Category 1 |
| Jane Doe WHBE 1260, et al. v. Uber Technologies, Inc., et al. | CGC-22-600070 | Williams Hart & Boundas, LLP | WHBE 1273 | Category 1 |
| Jane Doe WHBE 1260, et al. v. Uber Technologies, Inc., et al. | CGC-22-600070 | Williams Hart & Boundas, LLP | WHBE 1274 | Category 1 |
| Jane Doe WHBE 1260, et al. v. Uber Technologies, Inc., et al. | CGC-22-600070 | Williams Hart & Boundas, LLP | WHBE 1275 | Category 1 |
| Jane Doe WHBE 1260, et al. v. Uber Technologies, Inc., et al. | CGC-22-600070 | Williams Hart & Boundas, LLP | WHBE 1277 | Category 1 |
| Jane Doe WHBE 1260, et al. v. Uber Technologies, Inc., et al. | CGC-22-600070 | Williams Hart & Boundas, LLP | WHBE 1278 | Category 1 |
| Jane Doe WHBE 1260, et al. v. Uber Technologies, Inc., et al. | CGC-22-600070 | Williams Hart & Boundas, LLP | WHBE 1279 | Category 1 |
| Jane Doe WHBE 1260, et al. v. Uber Technologies, Inc., et al. | CGC-22-600070 | Williams Hart & Boundas, LLP | WHBE 1280 | Category 1 |
| Jane Doe WHBE 1260, et al. v. Uber Technologies, Inc., et al. | CGC-22-600070 | Williams Hart & Boundas, LLP | WHBE 1285 | Category 1 |
| Jane Doe WHBE 1260, et al. v. Uber Technologies, Inc., et al. | CGC-22-600070 | Williams Hart & Boundas, LLP | WHBE 1286 | Category 1 |
| Jane Doe WHBE 1260, et al. v. Uber Technologies, Inc., et al. | CGC-22-600070 | Williams Hart & Boundas, LLP | WHBE 1287 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe WHBE 1260, et al. v. Uber Technologies, Inc., et al. | CGC-22-600070 | Williams Hart & Boundas, LLP | WHBE 1288 | Category 1 |
| Jane Doe v. Uber Technologies, Inc. et al. | CGC-22-600079 | Downtown LA Law Group | Jane Doe | Category 2 |
| Jane Doe WHBE 1290, et al. v. Uber Technologies, Inc., et al. | CGC-22-600121 | Williams Hart & Boundas, LLP | WHBE 1290 | Category 1 |
| Jane Doe WHBE 1290, et al. v. Uber Technologies, Inc., et al. | CGC-22-600121 | Williams Hart & Boundas, LLP | WHBE 1291 | Category 1 |
| Jane Doe WHBE 1290, et al. v. Uber Technologies, Inc., et al. | CGC-22-600121 | Williams Hart & Boundas, LLP | WHBE 1292 | Category 1 |
| Jane Doe WHBE 1290, et al. v. Uber Technologies, Inc., et al. | CGC-22-600121 | Williams Hart & Boundas, LLP | WHBE 1293 | Category 1 |
| Jane Doe WHBE 1290 et al. v. Uber Technologies, Inc. et al. | CGC-22-600121 | Williams Hart & Boundas, LLP | WHBE 1294 | Category 2 |
| Jane Doe WHBE 1290, et al. v. Uber Technologies, Inc., et al. | CGC-22-600121 | Williams Hart & Boundas, LLP | WHBE 1295 | Category 1 |
| Jane Doe WHBE 1290, et al. v. Uber Technologies, Inc., et al. | CGC-22-600121 | Williams Hart & Boundas, LLP | WHBE 1298 | Category 1 |
| Jane Doe WHBE 1290, et al. v. Uber Technologies, Inc., et al. | CGC-22-600121 | Williams Hart & Boundas, LLP | WHBE 1299 | Category 1 |
| Jane Doe WHBE 1290, et al. v. Uber Technologies, Inc., et al. | CGC-22-600121 | Williams Hart & Boundas, LLP | WHBE 1300 | Category 1 |
| Jane Doe WHBE 1290, et al. v. Uber Technologies, Inc., et al. | CGC-22-600121 | Williams Hart & Boundas, LLP | WHBE 1301 | Category 1 |
| Jane Doe WHBE 1290 et al. v. Uber Technologies, Inc. et al. | CGC-22-600121 | Williams Hart & Boundas, LLP | WHBE 1304 | Category 2 |
| Jane Doe WHBE 1290 et al. v. Uber Technologies, Inc. et al. | CGC-22-600121 | Williams Hart & Boundas, LLP | WHBE 1306 | Category 2 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe WHBE 1290, et al. v. Uber Technologies, Inc., et al. | CGC-22-600121 | Williams Hart & Boundas, LLP | WHBE 1307 | Category 1 |
| Jane Doe WHBE 1290, et al. v. Uber Technologies, Inc., et al. | CGC-22-600121 | Williams Hart & Boundas, LLP | WHBE 1308 | Category 1 |
| Jane Doe WHBE 1290, et al. v. Uber Technologies, Inc., et al. | CGC-22-600121 | Williams Hart & Boundas, LLP | WHBE 1309 | Category 1 |
| Jane Doe WHBE 1290, et al. v. Uber Technologies, Inc., et al. | CGC-22-600121 | Williams Hart & Boundas, LLP | WHBE 1310 | Category 1 |
| Jane Doe WHBE 1290, et al. v. Uber Technologies, Inc., et al. | CGC-22-600121 | Williams Hart & Boundas, LLP | WHBE 1311 | Category 1 |
| Jane Doe WHBE 1290, et al. v. Uber Technologies, Inc., et al. | CGC-22-600121 | Williams Hart & Boundas, LLP | WHBE 1312 | Category 1 |
| Jane Doe WHBE 1290, et al. v. Uber Technologies, Inc., et al. | CGC-22-600121 | Williams Hart & Boundas, LLP | WHBE 1313 | Category 1 |
| Jane Doe WHBE 1290, et al. v. Uber Technologies, Inc., et al. | CGC-22-600121 | Williams Hart & Boundas, LLP | WHBE 1314 | Category 1 |
| Jane Doe WHBE 1290, et al. v. Uber Technologies, Inc., et al. | CGC-22-600121 | Williams Hart & Boundas, LLP | WHBE 1317 | Category 1 |
| Jane Doe WHBE 1290, et al. v. Uber Technologies, Inc., et al. | CGC-22-600121 | Williams Hart & Boundas, LLP | WHBE 1318 | Category 1 |
| Jane Doe WHBE 1290, et al. v. Uber Technologies, Inc., et al. | CGC-22-600121 | Williams Hart & Boundas, LLP | WHBE 1319 | Category 1 |
| Jane Doe WHBE 1320, et al. v. Uber Technologies, Inc., et al. | CGC-22-600139 | Williams Hart & Boundas, LLP | WHBE 1322 | Category 1 |
| Jane Doe WHBE 1320, et al. v. Uber Technologies, Inc., et al. | CGC-22-600139 | Williams Hart & Boundas, LLP | WHBE 1324 | Category 1 |
| Jane Doe WHBE 1320, et al. v. Uber Technologies, Inc., et al. | CGC-22-600139 | Williams Hart & Boundas, LLP | WHBE 1325 | Category 1 |

48

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe WHBE 1320, et al. v. Uber Technologies, Inc., et al. | CGC-22-600139 | Williams Hart & Boundas, LLP | WHBE 1329 | Category 1 |
| Jane Doe WHBE 1320, et al. v. Uber Technologies, Inc., et al. | CGC-22-600139 | Williams Hart & Boundas, LLP | WHBE 1330 | Category 1 |
| Jane Doe WHBE 1320 et al. v. Uber Technologies, Inc. et al. | CGC-22-600139 | Williams Hart & Boundas, LLP | WHBE 1331 | Category 2 |
| Jane Doe WHBE 1320, et al. v. Uber Technologies, Inc., et al. | CGC-22-600139 | Williams Hart & Boundas, LLP | WHBE 1332 | Category 1 |
| Jane Doe WHBE 1320, et al. v. Uber Technologies, Inc., et al. | CGC-22-600139 | Williams Hart & Boundas, LLP | WHBE 1333 | Category 1 |
| Jane Doe WHBE 1320, et al. v. Uber Technologies, Inc., et al. | CGC-22-600139 | Williams Hart & Boundas, LLP | WHBE 1334 | Category 1 |
| Jane Doe WHBE 1320, et al. v. Uber Technologies, Inc., et al. | CGC-22-600139 | Williams Hart & Boundas, LLP | WHBE 1335 | Category 1 |
| Jane Doe WHBE 1320, et al. v. Uber Technologies, Inc., et al. | CGC-22-600139 | Williams Hart & Boundas, LLP | WHBE 1336 | Category 1 |
| Jane Doe WHBE 1320, et al. v. Uber Technologies, Inc., et al. | CGC-22-600139 | Williams Hart & Boundas, LLP | WHBE 1338 | Category 1 |
| Jane Doe WHBE 1320, et al. v. Uber Technologies, Inc., et al. | CGC-22-600139 | Williams Hart & Boundas, LLP | WHBE 1339 | Category 1 |
| Jane Doe WHBE 1320, et al. v. Uber Technologies, Inc., et al. | CGC-22-600139 | Williams Hart & Boundas, LLP | WHBE 1341 | Category 1 |
| Jane Doe WHBE 1320, et al. v. Uber Technologies, Inc., et al. | CGC-22-600139 | Williams Hart & Boundas, LLP | WHBE 1342 | Category 1 |
| Jane Doe WHBE 1320, et al. v. Uber Technologies, Inc., et al. | CGC-22-600139 | Williams Hart & Boundas, LLP | WHBE 1344 | Category 1 |
| Jane Doe WHBE 1320, et al. v. Uber Technologies, Inc., et al. | CGC-22-600139 | Williams Hart & Boundas, LLP | WHBE 1345 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe WHBE 1320, et al. v. Uber Technologies, Inc., et al. | CGC-22-600139 | Williams Hart & Boundas, LLP | WHBE 1346 | Category 1 |
| Jane Doe WHBE 1320, et al. v. Uber Technologies, Inc., et al. | CGC-22-600139 | Williams Hart & Boundas, LLP | WHBE 1347 | Category 1 |
| Jane Doe WHBE 1320, et al. v. Uber Technologies, Inc., et al. | CGC-22-600139 | Williams Hart & Boundas, LLP | WHBE 1348 | Category 1 |
| Jane Doe WHBE 1320, et al. v. Uber Technologies, Inc., et al. | CGC-22-600139 | Williams Hart & Boundas, LLP | WHBE 1349 | Category 1 |
| Jane Doe WHBE 1380, et al. v. Uber Technologies, Inc., et al. | CGC-22-600178 | Williams Hart & Boundas, LLP | WHBE 1380 | Category 1 |
| Jane Doe WHBE 1380, et al. v. Uber Technologies, Inc., et al. | CGC-22-600178 | Williams Hart & Boundas, LLP | WHBE 1381 | Category 1 |
| Jane Doe WHBE 1380, et al. v. Uber Technologies, Inc., et al. | CGC-22-600178 | Williams Hart & Boundas, LLP | WHBE 1382 | Category 1 |
| Jane Doe WHBE 1380, et al. v. Uber Technologies, Inc., et al. | CGC-22-600178 | Williams Hart & Boundas, LLP | WHBE 1384 | Category 1 |
| Jane Doe WHBE 1380, et al. v. Uber Technologies, Inc., et al. | CGC-22-600178 | Williams Hart & Boundas, LLP | WHBE 1386 | Category 1 |
| Jane Doe WHBE 1380, et al. v. Uber Technologies, Inc., et al. | CGC-22-600178 | Williams Hart & Boundas, LLP | WHBE 1387 | Category 1 |
| Jane Doe WHBE 1380, et al. v. Uber Technologies, Inc., et al. | CGC-22-600178 | Williams Hart & Boundas, LLP | WHBE 1388 | Category 1 |
| Jane Doe WHBE 1380, et al. v. Uber Technologies, Inc., et al. | CGC-22-600178 | Williams Hart & Boundas, LLP | WHBE 1389 | Category 1 |
| Jane Doe WHBE 1380, et al. v. Uber Technologies, Inc., et al. | CGC-22-600178 | Williams Hart & Boundas, LLP | WHBE 1392 | Category 1 |
| Jane Doe WHBE 1380, et al. v. Uber Technologies, Inc., et al. | CGC-22-600178 | Williams Hart & Boundas, LLP | WHBE 1394 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe WHBE 1380, et al. v. Uber Technologies, Inc., et al. | CGC-22-600178 | Williams Hart & Boundas, LLP | WHBE 1395 | Category 1 |
| Jane Doe WHBE 1380, et al. v. Uber Technologies, Inc., et al. | CGC-22-600178 | Williams Hart & Boundas, LLP | WHBE 1396 | Category 1 |
| Jane Doe WHBE 1380, et al. v. Uber Technologies, Inc., et al. | CGC-22-600178 | Williams Hart & Boundas, LLP | WHBE 1398 | Category 1 |
| Jane Doe WHBE 1380, et al. v. Uber Technologies, Inc., et al. | CGC-22-600178 | Williams Hart & Boundas, LLP | WHBE 1399 | Category 1 |
| Jane Doe WHBE 1380, et al. v. Uber Technologies, Inc., et al. | CGC-22-600178 | Williams Hart & Boundas, LLP | WHBE 1400 | Category 1 |
| Jane Doe WHBE 1380, et al. v. Uber Technologies, Inc., et al. | CGC-22-600178 | Williams Hart & Boundas, LLP | WHBE 1401 | Category 1 |
| Jane Doe WHBE 1380, et al. v. Uber Technologies, Inc., et al. | CGC-22-600178 | Williams Hart & Boundas, LLP | WHBE 1402 | Category 1 |
| Jane Doe WHBE 1380, et al. v. Uber Technologies, Inc., et al. | CGC-22-600178 | Williams Hart & Boundas, LLP | WHBE 1405 | Category 1 |
| Jane Doe WHBE 1380, et al. v. Uber Technologies, Inc., et al. | CGC-22-600178 | Williams Hart & Boundas, LLP | WHBE 1406 | Category 1 |
| Jane Doe WHBE 1380, et al. v. Uber Technologies, Inc., et al. | CGC-22-600178 | Williams Hart & Boundas, LLP | WHBE 1407 | Category 1 |
| Jane Doe WHBE 1380, et al. v. Uber Technologies, Inc., et al. | CGC-22-600178 | Williams Hart & Boundas, LLP | WHBE 1408 | Category 1 |
| Jane Doe WHBE 1380, et al. v. Uber Technologies, Inc., et al. | CGC-22-600178 | Williams Hart & Boundas, LLP | WHBE 1409 | Category 1 |
| Jane Doe WHBE 1380, et al. v. Uber Technologies, Inc., et al. | CGC-22-600178 | Williams Hart & Boundas, LLP | WHBE 1393 | Category 1 |
| Jane Doe WHBE 1380, et al. v. Uber Technologies, Inc., et al. | CGC-22-600178 | Williams Hart & Boundas, LLP | WHBE 1397 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Rebekah Sprous, et al. v. Uber Technologies, Inc., et al. | CGC-22-600226 | Estey & Bomberger, LLP | EB 22 | Category 1 |
| Rebekah Sprous, et al. v. Uber Technologies, Inc., et al. | CGC-22-600226 | Estey & Bomberger, LLP | EB 24 | Category 1 |
| Rebekah Sprous, et al. v. Uber Technologies, Inc., et al. | CGC-22-600226 | Estey & Bomberger, LLP | Rebekah Sprous | Category 1 |
| Jane Doe WHBE 1410, et al. v. Uber Technologies, Inc., et al. | CGC-22-600282 | Williams Hart & Boundas, LLP | WHBE 1411 | Category 1 |
| Jane Doe WHBE 1410, et al. v. Uber Technologies, Inc., et al. | CGC-22-600282 | Williams Hart & Boundas, LLP | WHBE 1412 | Category 1 |
| Jane Doe WHBE 1410, et al. v. Uber Technologies, Inc., et al. | CGC-22-600282 | Williams Hart & Boundas, LLP | WHBE 1413 | Category 1 |
| Jane Doe WHBE 1410, et al. v. Uber Technologies, Inc., et al. | CGC-22-600282 | Williams Hart & Boundas, LLP | WHBE 1414 | Category 1 |
| Jane Doe WHBE 1410, et al. v. Uber Technologies, Inc., et al. | CGC-22-600282 | Williams Hart & Boundas, LLP | WHBE 1416 | Category 1 |
| Jane Doe WHBE 1410, et al. v. Uber Technologies, Inc., et al. | CGC-22-600282 | Williams Hart & Boundas, LLP | WHBE 1420 | Category 1 |
| Jane Doe WHBE 1410, et al. v. Uber Technologies, Inc., et al. | CGC-22-600282 | Williams Hart & Boundas, LLP | WHBE 1421 | Category 1 |
| Jane Doe WHBE 1410, et al. v. Uber Technologies, Inc., et al. | CGC-22-600282 | Williams Hart & Boundas, LLP | WHBE 1422 | Category 1 |
| Jane Doe WHBE 1410, et al. v. Uber Technologies, Inc., et al. | CGC-22-600282 | Williams Hart & Boundas, LLP | WHBE 1423 | Category 1 |
| Jane Doe WHBE 1410, et al. v. Uber Technologies, Inc., et al. | CGC-22-600282 | Williams Hart & Boundas, LLP | WHBE 1424 | Category 1 |
| Jane Doe WHBE 1410, et al. v. Uber Technologies, Inc., et al. | CGC-22-600282 | Williams Hart & Boundas, LLP | WHBE 1425 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category[3]* |
|---|---|---|---|---|
| Jane Doe WHBE 1410, et al. v. Uber Technologies, Inc., et al. | CGC-22-600282 | Williams Hart & Boundas, LLP | WHBE 1426 | Category 1 |
| Jane Doe WHBE 1410, et al. v. Uber Technologies, Inc., et al. | CGC-22-600282 | Williams Hart & Boundas, LLP | WHBE 1427 | Category 1 |
| Jane Doe WHBE 1410, et al. v. Uber Technologies, Inc., et al. | CGC-22-600282 | Williams Hart & Boundas, LLP | WHBE 1428 | Category 1 |
| Jane Doe WHBE 1410, et al. v. Uber Technologies, Inc., et al. | CGC-22-600282 | Williams Hart & Boundas, LLP | WHBE 1429 | Category 1 |
| Jane Doe WHBE 1410, et al. v. Uber Technologies, Inc., et al. | CGC-22-600282 | Williams Hart & Boundas, LLP | WHBE 1431 | Category 1 |
| Jane Doe WHBE 1410, et al. v. Uber Technologies, Inc., et al. | CGC-22-600282 | Williams Hart & Boundas, LLP | WHBE 1432 | Category 1 |
| Jane Doe WHBE 1410, et al. v. Uber Technologies, Inc., et al. | CGC-22-600282 | Williams Hart & Boundas, LLP | WHBE 1433 | Category 1 |
| Jane Doe WHBE 1410, et al. v. Uber Technologies, Inc., et al. | CGC-22-600282 | Williams Hart & Boundas, LLP | WHBE 1435 | Category 1 |
| Jane Doe WHBE 1410, et al. v. Uber Technologies, Inc., et al. | CGC-22-600282 | Williams Hart & Boundas, LLP | WHBE 1436 | Category 1 |
| Jane Doe WHBE 1410, et al. v. Uber Technologies, Inc., et al. | CGC-22-600282 | Williams Hart & Boundas, LLP | WHBE 1437 | Category 1 |
| Jane Doe WHBE 1410, et al. v. Uber Technologies, Inc., et al. | CGC-22-600282 | Williams Hart & Boundas, LLP | WHBE 1438 | Category 1 |
| Jane Doe WHBE 1410, et al. v. Uber Technologies, Inc., et al. | CGC-22-600282 | Williams Hart & Boundas, LLP | WHBE 1439 | Category 1 |
| Jane Doe WHBE 1440, et al. v. Uber Technologies, Inc., et al. | CGC-22-600283 | Williams Hart & Boundas, LLP | WHBE 1440 | Category 1 |
| Jane Doe WHBE 1440, et al. v. Uber Technologies, Inc., et al. | CGC-22-600283 | Williams Hart & Boundas, LLP | WHBE 1443 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe WHBE 1440, et al. v. Uber Technologies, Inc., et al. | CGC-22-600283 | Williams Hart & Boundas, LLP | WHBE 1444 | Category 1 |
| Jane Doe WHBE 1440, et al. v. Uber Technologies, Inc., et al. | CGC-22-600283 | Williams Hart & Boundas, LLP | WHBE 1445 | Category 1 |
| Jane Doe WHBE 1440, et al. v. Uber Technologies, Inc., et al. | CGC-22-600283 | Williams Hart & Boundas, LLP | WHBE 1446 | Category 1 |
| Jane Doe WHBE 1440, et al. v. Uber Technologies, Inc., et al. | CGC-22-600283 | Williams Hart & Boundas, LLP | WHBE 1447 | Category 1 |
| Jane Doe WHBE 1440, et al. v. Uber Technologies, Inc., et al. | CGC-22-600283 | Williams Hart & Boundas, LLP | WHBE 1448 | Category 1 |
| Jane Doe WHBE 1440, et al. v. Uber Technologies, Inc., et al. | CGC-22-600283 | Williams Hart & Boundas, LLP | WHBE 1449 | Category 1 |
| Jane Doe WHBE 1440, et al. v. Uber Technologies, Inc., et al. | CGC-22-600283 | Williams Hart & Boundas, LLP | WHBE 1450 | Category 1 |
| Jane Doe WHBE 1440, et al. v. Uber Technologies, Inc., et al. | CGC-22-600283 | Williams Hart & Boundas, LLP | WHBE 1452 | Category 1 |
| Jane Doe WHBE 1440, et al. v. Uber Technologies, Inc., et al. | CGC-22-600283 | Williams Hart & Boundas, LLP | WHBE 1453 | Category 1 |
| Jane Doe WHBE 1440, et al. v. Uber Technologies, Inc., et al. | CGC-22-600283 | Williams Hart & Boundas, LLP | WHBE 1454 | Category 1 |
| Jane Doe WHBE 1440 et al. v. Uber Technologies, Inc. et al. | CGC-22-600283 | Williams Hart & Boundas, LLP | WHBE 1455 | Category 2 |
| Jane Doe WHBE 1440, et al. v. Uber Technologies, Inc., et al. | CGC-22-600283 | Williams Hart & Boundas, LLP | WHBE 1457 | Category 1 |
| Jane Doe WHBE 1440, et al. v. Uber Technologies, Inc., et al. | CGC-22-600283 | Williams Hart & Boundas, LLP | WHBE 1458 | Category 1 |
| Jane Doe WHBE 1440, et al. v. Uber Technologies, Inc., et al. | CGC-22-600283 | Williams Hart & Boundas, LLP | WHBE 1460 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe WHBE 1440, et al. v. Uber Technologies, Inc., et al. | CGC-22-600283 | Williams Hart & Boundas, LLP | WHBE 1461 | Category 1 |
| Jane Doe WHBE 1440, et al. v. Uber Technologies, Inc., et al. | CGC-22-600283 | Williams Hart & Boundas, LLP | WHBE 1462 | Category 1 |
| Jane Doe WHBE 1440, et al. v. Uber Technologies, Inc., et al. | CGC-22-600283 | Williams Hart & Boundas, LLP | WHBE 1463 | Category 1 |
| Jane Doe WHBE 1440, et al. v. Uber Technologies, Inc., et al. | CGC-22-600283 | Williams Hart & Boundas, LLP | WHBE 1464 | Category 1 |
| Jane Doe WHBE 1440, et al. v. Uber Technologies, Inc., et al. | CGC-22-600283 | Williams Hart & Boundas, LLP | WHBE 1467 | Category 1 |
| Jane Doe WHBE 1440, et al. v. Uber Technologies, Inc., et al. | CGC-22-600283 | Williams Hart & Boundas, LLP | WHBE 1468 | Category 1 |
| Jane Doe WHBE 1440, et al. v. Uber Technologies, Inc., et al. | CGC-22-600283 | Williams Hart & Boundas, LLP | WHBE 1469 | Category 1 |
| Jane Doe WHBE 1470, et al. v. Uber Technologies, Inc., et al. | CGC-22-600286 | Williams Hart & Boundas, LLP | WHBE 1470 | Category 1 |
| Jane Doe WHBE 1470, et al. v. Uber Technologies, Inc., et al. | CGC-22-600286 | Williams Hart & Boundas, LLP | WHBE 1471 | Category 1 |
| Jane Doe WHBE 1470, et al. v. Uber Technologies, Inc., et al. | CGC-22-600286 | Williams Hart & Boundas, LLP | WHBE 1472 | Category 1 |
| Jane Doe WHBE 1470, et al. v. Uber Technologies, Inc., et al. | CGC-22-600286 | Williams Hart & Boundas, LLP | WHBE 1473 | Category 1 |
| Jane Doe WHBE 1470, et al. v. Uber Technologies, Inc., et al. | CGC-22-600286 | Williams Hart & Boundas, LLP | WHBE 1474 | Category 1 |
| Jane Doe WHBE 1470, et al. v. Uber Technologies, Inc., et al. | CGC-22-600286 | Williams Hart & Boundas, LLP | WHBE 1475 | Category 1 |
| Jane Doe WHBE 1470, et al. v. Uber Technologies, Inc., et al. | CGC-22-600286 | Williams Hart & Boundas, LLP | WHBE 1476 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | Forum Non Conveniens Category[3] |
|---|---|---|---|---|
| Jane Doe WHBE 1470 et al. v. Uber Technologies, Inc. et al. | CGC-22-600286 | Williams Hart & Boundas, LLP | WHBE 1477 | Category 2 |
| Jane Doe WHBE 1470, et al. v. Uber Technologies, Inc., et al. | CGC-22-600286 | Williams Hart & Boundas, LLP | WHBE 1478 | Category 1 |
| Jane Doe WHBE 1470, et al. v. Uber Technologies, Inc., et al. | CGC-22-600286 | Williams Hart & Boundas, LLP | WHBE 1479 | Category 1 |
| Jane Doe WHBE 1470, et al. v. Uber Technologies, Inc., et al. | CGC-22-600286 | Williams Hart & Boundas, LLP | WHBE 1480 | Category 1 |
| Jane Doe WHBE 1470, et al. v. Uber Technologies, Inc., et al. | CGC-22-600286 | Williams Hart & Boundas, LLP | WHBE 1481 | Category 1 |
| Jane Doe WHBE 1470, et al. v. Uber Technologies, Inc., et al. | CGC-22-600286 | Williams Hart & Boundas, LLP | WHBE 1483 | Category 1 |
| Jane Doe WHBE 1470, et al. v. Uber Technologies, Inc., et al. | CGC-22-600286 | Williams Hart & Boundas, LLP | WHBE 1484 | Category 1 |
| Jane Doe WHBE 1470, et al. v. Uber Technologies, Inc., et al. | CGC-22-600286 | Williams Hart & Boundas, LLP | WHBE 1485 | Category 1 |
| Jane Doe WHBE 1470, et al. v. Uber Technologies, Inc., et al. | CGC-22-600286 | Williams Hart & Boundas, LLP | WHBE 1486 | Category 1 |
| Jane Doe WHBE 1470, et al. v. Uber Technologies, Inc., et al. | CGC-22-600286 | Williams Hart & Boundas, LLP | WHBE 1487 | Category 1 |
| Jane Doe WHBE 1470, et al. v. Uber Technologies, Inc., et al. | CGC-22-600286 | Williams Hart & Boundas, LLP | WHBE 1488 | Category 1 |
| Jane Doe WHBE 1470, et al. v. Uber Technologies, Inc., et al. | CGC-22-600286 | Williams Hart & Boundas, LLP | WHBE 1489 | Category 1 |
| Jane Doe WHBE 1470, et al. v. Uber Technologies, Inc., et al. | CGC-22-600286 | Williams Hart & Boundas, LLP | WHBE 1490 | Category 1 |
| Jane Doe WHBE 1470, et al. v. Uber Technologies, Inc., et al. | CGC-22-600286 | Williams Hart & Boundas, LLP | WHBE 1491 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe WHBE 1470, et al. v. Uber Technologies, Inc., et al. | CGC-22-600286 | Williams Hart & Boundas, LLP | WHBE 1492 | Category 1 |
| Jane Doe WHBE 1470, et al. v. Uber Technologies, Inc., et al. | CGC-22-600286 | Williams Hart & Boundas, LLP | WHBE 1495 | Category 1 |
| Jane Doe WHBE 1470, et al. v. Uber Technologies, Inc., et al. | CGC-22-600286 | Williams Hart & Boundas, LLP | WHBE 1496 | Category 1 |
| Jane Doe WHBE 1470, et al. v. Uber Technologies, Inc., et al. | CGC-22-600286 | Williams Hart & Boundas, LLP | WHBE 1497 | Category 1 |
| Jane Doe WHBE 1470, et al. v. Uber Technologies, Inc., et al. | CGC-22-600286 | Williams Hart & Boundas, LLP | WHBE 1499 | Category 1 |
| Angela Malato, et al. v. Uber Technologies, Inc., et al. | CGC-22-600524 | Estey & Bomberger, LLP | EB 27 | Category 1 |
| Angela Malato, et al. v. Uber Technologies, Inc., et al. | CGC-22-600524 | Estey & Bomberger, LLP | EB 28 | Category 1 |
| Angela Malato, et al. v. Uber Technologies, Inc., et al. | CGC-22-600524 | Estey & Bomberger, LLP | EB 29 | Category 1 |
| Angela Malato, et al. v. Uber Technologies, Inc., et al. | CGC-22-600524 | Estey & Bomberger, LLP | EB 30 | Category 1 |
| Angela Malato, et al. v. Uber Technologies, Inc., et al. | CGC-22-600524 | Estey & Bomberger, LLP | EB 33 | Category 1 |
| Angela Malato, et al. v. Uber Technologies, Inc., et al. | CGC-22-600524 | Estey & Bomberger, LLP | EB 34 | Category 1 |
| Angela Malato, et al. v. Uber Technologies, Inc., et al. | CGC-22-600524 | Estey & Bomberger, LLP | EB 35 | Category 1 |
| Angela Malato, et al. v. Uber Technologies, Inc., et al. | CGC-22-600524 | Estey & Bomberger, LLP | Aaliyah Seifullah | Category 1 |
| Jane Doe LSA 259, et al. v. Uber Technologies, Inc., et al. | CGC-22-600576 | Levin Simes Abrams, LLP | LSA 259 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe LSA 259, et al. v. Uber Technologies, Inc., et al. | CGC-22-600576 | Levin Simes Abrams, LLP | LSA 260 | Category 1 |
| Jane Doe LSA 259, et al. v. Uber Technologies, Inc., et al. | CGC-22-600576 | Levin Simes Abrams, LLP | LSA 264 | Category 1 |
| Jane Doe LSA 259, et al. v. Uber Technologies, Inc., et al. | CGC-22-600576 | Levin Simes Abrams, LLP | LSA 265 | Category 1 |
| Jane Doe LSA 259, et al. v. Uber Technologies, Inc., et al. | CGC-22-600576 | Levin Simes Abrams, LLP | LSA 266 | Category 1 |
| Jane Doe LSA 259, et al. v. Uber Technologies, Inc., et al. | CGC-22-600576 | Levin Simes Abrams, LLP | LSA 267 | Category 1 |
| Jane Doe LSA 259, et al. v. Uber Technologies, Inc., et al. | CGC-22-600576 | Levin Simes Abrams, LLP | LSA 268 | Category 1 |
| Jane Doe LSA 259, et al. v. Uber Technologies, Inc., et al. | CGC-22-600576 | Levin Simes Abrams, LLP | LSA 269 | Category 1 |
| Jane Doe LSA 259, et al. v. Uber Technologies, Inc., et al. | CGC-22-600576 | Levin Simes Abrams, LLP | LSA 270 | Category 1 |
| Jane Doe LSA 259, et al. v. Uber Technologies, Inc., et al. | CGC-22-600576 | Levin Simes Abrams, LLP | LSA 271 | Category 1 |
| Jane Doe LSA 259, et al. v. Uber Technologies, Inc., et al. | CGC-22-600576 | Levin Simes Abrams, LLP | LSA 272 | Category 1 |
| Jane Doe LSA 259, et al. v. Uber Technologies, Inc., et al. | CGC-22-600576 | Levin Simes Abrams, LLP | LSA 273 | Category 1 |
| Jane Doe LSA 259, et al. v. Uber Technologies, Inc., et al. | CGC-22-600576 | Levin Simes Abrams, LLP | LSA 274 | Category 1 |
| Jane Doe LSA 259, et al. v. Uber Technologies, Inc., et al. | CGC-22-600576 | Levin Simes Abrams, LLP | LSA 275 | Category 1 |
| Jane Doe LSA 259, et al. v. Uber Technologies, Inc., et al. | CGC-22-600576 | Levin Simes Abrams, LLP | LSA 276 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category[3]* |
|---|---|---|---|---|
| Jane Doe LSA 259, et al. v. Uber Technologies, Inc., et al. | CGC-22-600576 | Levin Simes Abrams, LLP | LSA 277 | Category 1 |
| Jane Doe LSA 259, et al. v. Uber Technologies, Inc., et al. | CGC-22-600576 | Levin Simes Abrams, LLP | LSA 278 | Category 1 |
| Jane Doe SSS 14, et al. v. Uber Technologies, Inc., et al. | CGC-22-600694 | Slater Slater Schulman, LLP | SSS 16 | Category 1 |
| Jane Doe SSS 14, et al. v. Uber Technologies, Inc., et al. | CGC-22-600694 | Slater Slater Schulman, LLP | SSS 17 | Category 1 |
| Jane Doe SSS 14, et al. v. Uber Technologies, Inc., et al. | CGC-22-600694 | Slater Slater Schulman, LLP | SSS 18 | Category 1 |
| Jane Doe SSS 19, et al. v. Uber Technologies, Inc., et al. | CGC-22-600697 | Slater Slater Schulman, LLP | SSS 20 | Category 1 |
| Jane Doe SSS 19, et al. v. Uber Technologies, Inc., et al. | CGC-22-600697 | Slater Slater Schulman, LLP | SSS 21 | Category 1 |
| Jane Doe SSS 19, et al. v. Uber Technologies, Inc., et al. | CGC-22-600697 | Slater Slater Schulman, LLP | SSS 22 | Category 1 |
| Jane Doe SSS 19, et al. v. Uber Technologies, Inc., et al. | CGC-22-600697 | Slater Slater Schulman, LLP | SSS 23 | Category 1 |
| Jane Doe SSS 24, et al. v. Uber Technologies, Inc., et al. | CGC-22-601017 | Slater Slater Schulman, LLP | SSS 25 | Category 1 |
| Jane Doe SSS 24, et al. v. Uber Technologies, Inc., et al. | CGC-22-601017 | Slater Slater Schulman, LLP | SSS 26 | Category 1 |
| Jane Doe SSS 24, et al. v. Uber Technologies, Inc., et al. | CGC-22-601017 | Slater Slater Schulman, LLP | SSS 28 | Category 1 |
| Jane Doe LSA 279, et al. v. Uber Technologies, Inc., et al. | CGC-22-601616 | Levin Simes Abrams, LLP | LSA 279 | Category 1 |
| Jane Doe LSA 279, et al. v. Uber Technologies, Inc., et al. | CGC-22-601616 | Levin Simes Abrams, LLP | LSA 281 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe LSA 279, et al. v. Uber Technologies, Inc., et al. | CGC-22-601616 | Levin Simes Abrams, LLP | LSA 282 | Category 1 |
| Jane Doe LSA 279, et al. v. Uber Technologies, Inc., et al. | CGC-22-601616 | Levin Simes Abrams, LLP | LSA 283 | Category 1 |
| Jane Doe LSA 279, et al. v. Uber Technologies, Inc., et al. | CGC-22-601616 | Levin Simes Abrams, LLP | LSA 284 | Category 1 |
| Jane Doe LSA 279, et al. v. Uber Technologies, Inc., et al. | CGC-22-601616 | Levin Simes Abrams, LLP | LSA 285 | Category 1 |
| Jane Doe LSA 279, et al. v. Uber Technologies, Inc., et al. | CGC-22-601616 | Levin Simes Abrams, LLP | LSA 286 | Category 1 |
| Jane Doe LSA 279, et al. v. Uber Technologies, Inc., et al. | CGC-22-601616 | Levin Simes Abrams, LLP | LSA 287 | Category 1 |
| Jane Doe LSA 279, et al. v. Uber Technologies, Inc., et al. | CGC-22-601616 | Levin Simes Abrams, LLP | LSA 288 | Category 1 |
| Jane Doe LSA 279, et al. v. Uber Technologies, Inc., et al. | CGC-22-601616 | Levin Simes Abrams, LLP | LSA 289 | Category 1 |
| Jane Doe LSA 279, et al. v. Uber Technologies, Inc., et al. | CGC-22-601616 | Levin Simes Abrams, LLP | LSA 290 | Category 1 |
| Jane Doe LSA 279, et al. v. Uber Technologies, Inc., et al. | CGC-22-601616 | Levin Simes Abrams, LLP | LSA 291 | Category 1 |
| Jane Doe LSA 279, et al. v. Uber Technologies, Inc., et al. | CGC-22-601616 | Levin Simes Abrams, LLP | LSA 293 | Category 1 |
| Jane Doe LSA 279, et al. v. Uber Technologies, Inc., et al. | CGC-22-601616 | Levin Simes Abrams, LLP | LSA 295 | Category 1 |
| Jane Doe LSA 279, et al. v. Uber Technologies, Inc., et al. | CGC-22-601616 | Levin Simes Abrams, LLP | LSA 296 | Category 1 |
| Jane Doe LSA 279, et al. v. Uber Technologies, Inc., et al. | CGC-22-601616 | Levin Simes Abrams, LLP | LSA 297 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe LSA 279, et al. v. Uber Technologies, Inc., et al. | CGC-22-601616 | Levin Simes Abrams, LLP | LSA 298 | Category 1 |
| Jane Doe SSS 29, et al. v. Uber Technologies, Inc., et al. | CGC-22-601570 | Slater Slater Schulman, LLP | SSS 31 | Category 1 |
| Jane Doe SSS 29, et al. v. Uber Technologies, Inc., et al. | CGC-22-601570 | Slater Slater Schulman, LLP | SSS 32 | Category 1 |
| Jane Doe SSS 29, et al. v. Uber Technologies, Inc., et al. | CGC-22-601570 | Slater Slater Schulman, LLP | SSS 33 | Category 1 |
| Jane Doe WHBE 1590, et al. v. Uber Technologies, Inc., et al. | CGC-22-601660 | Williams Hart & Boundas, LLP | WHBE 1590 | Category 1 |
| Jane Doe WHBE 1590, et al. v. Uber Technologies, Inc., et al. | CGC-22-601660 | Williams Hart & Boundas, LLP | WHBE 1591 | Category 1 |
| Jane Doe SSS 34, et al. v. Uber Technologies, Inc., et al. | CGC-22-601781 | Slater Slater Schulman, LLP | SSS 35 | Category 1 |
| Jane Doe SSS 34, et al. v. Uber Technologies, Inc., et al. | CGC-22-601781 | Slater Slater Schulman, LLP | SSS 36 | Category 1 |
| Jane Doe SSS 34, et al. v. Uber Technologies, Inc., et al. | CGC-22-601781 | Slater Slater Schulman, LLP | SSS 37 | Category 1 |
| Jane Doe SSS 34, et al. v. Uber Technologies, Inc., et al. | CGC-22-601781 | Slater Slater Schulman, LLP | SSS 38 | Category 1 |
| Jane Doe LSA 299, et al. v. Uber Technologies, Inc., et al. | CGC-22-602103 | Levin Simes Abrams, LLP | John Doe LSA 1 | Category 1 |
| Jane Doe LSA 299, et al. v. Uber Technologies, Inc., et al. | CGC-22-602103 | Levin Simes Abrams, LLP | LSA 300 | Category 1 |
| Jane Doe LSA 299, et al. v. Uber Technologies, Inc., et al. | CGC-22-602103 | Levin Simes Abrams, LLP | LSA 301 | Category 1 |
| Jane Doe LSA 299, et al. v. Uber Technologies, Inc., et al. | CGC-22-602103 | Levin Simes Abrams, LLP | LSA 302 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe LSA 299, et al. v. Uber Technologies, Inc., et al. | CGC-22-602103 | Levin Simes Abrams, LLP | LSA 303 | Category 1 |
| Jane Doe LSA 299, et al. v. Uber Technologies, Inc., et al. | CGC-22-602103 | Levin Simes Abrams, LLP | LSA 304 | Category 1 |
| Jane Doe LSA 299, et al. v. Uber Technologies, Inc., et al. | CGC-22-602103 | Levin Simes Abrams, LLP | LSA 305 | Category 1 |
| Jane Doe LSA 299, et al. v. Uber Technologies, Inc., et al. | CGC-22-602103 | Levin Simes Abrams, LLP | LSA 306 | Category 1 |
| Jane Doe LSA 299, et al. v. Uber Technologies, Inc., et al. | CGC-22-602103 | Levin Simes Abrams, LLP | LSA 307 | Category 1 |
| Jane Doe LSA 299, et al. v. Uber Technologies, Inc., et al. | CGC-22-602103 | Levin Simes Abrams, LLP | LSA 308 | Category 1 |
| Jane Doe LSA 299, et al. v. Uber Technologies, Inc., et al. | CGC-22-602103 | Levin Simes Abrams, LLP | LSA 311 | Category 1 |
| Jane Doe LSA 299, et al. v. Uber Technologies, Inc., et al. | CGC-22-602103 | Levin Simes Abrams, LLP | LSA 312 | Category 1 |
| Jane Doe LSA 299, et al. v. Uber Technologies, Inc., et al. | CGC-22-602103 | Levin Simes Abrams, LLP | LSA 314 | Category 1 |
| Jane Doe LSA 299, et al. v. Uber Technologies, Inc., et al. | CGC-22-602103 | Levin Simes Abrams, LLP | LSA 315 | Category 1 |
| Jane Doe LSA 299, et al. v. Uber Technologies, Inc., et al. | CGC-22-602103 | Levin Simes Abrams, LLP | LSA 317 | Category 1 |
| Jane Doe LSA 299, et al. v. Uber Technologies, Inc., et al. | CGC-22-602103 | Levin Simes Abrams, LLP | LSA 318 | Category 1 |
| Jane Does CL 2 through 6, et al. v. Uber Technologies, Inc., et al. | CGC-22-602147 | Cutter Law, PC | CL 3 | Category 1 |
| Jane Does CL 2 through 6, et al. v. Uber Technologies, Inc., et al. | CGC-22-602147 | Cutter Law, PC | CL 4 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | Forum Non Conveniens Category[3] |
|---|---|---|---|---|
| Jane Does CL 2 through 6, et al. v. Uber Technologies, Inc., et al. | CGC-22-602147 | Cutter Law, PC | CL 5 | Category 1 |
| Jane Does CL 2 through 6, et al. v. Uber Technologies, Inc., et al. | CGC-22-602147 | Cutter Law, PC | CL 6 | Category 1 |
| Jane Does CL 2 through 6, et al. v. Uber Technologies, Inc., et al. | CGC-22-602147 | Cutter Law, PC | John Doe CL 1 | Category 1 |
| Jane Doe WHBE 1530, et al. v. Uber Technologies, Inc., et al. | CGC-22-602405 | Williams Hart & Boundas, LLP | WHBE 1531 | Category 1 |
| Jane Doe WHBE 1530, et al. v. Uber Technologies, Inc., et al. | CGC-22-602405 | Williams Hart & Boundas, LLP | WHBE 1532 | Category 1 |
| Jane Doe WHBE 1530, et al. v. Uber Technologies, Inc., et al. | CGC-22-602405 | Williams Hart & Boundas, LLP | WHBE 1535 | Category 1 |
| Jane Doe WHBE 1530, et al. v. Uber Technologies, Inc., et al. | CGC-22-602405 | Williams Hart & Boundas, LLP | WHBE 1538 | Category 1 |
| Jane Doe WHBE 1530, et al. v. Uber Technologies, Inc., et al. | CGC-22-602405 | Williams Hart & Boundas, LLP | WHBE 1539 | Category 1 |
| Jane Doe WHBE 1530, et al. v. Uber Technologies, Inc., et al. | CGC-22-602405 | Williams Hart & Boundas, LLP | WHBE 1540 | Category 1 |
| Jane Doe WHBE 1530, et al. v. Uber Technologies, Inc., et al. | CGC-22-602405 | Williams Hart & Boundas, LLP | WHBE 1542 | Category 1 |
| Jane Doe WHBE 1530, et al. v. Uber Technologies, Inc., et al. | CGC-22-602405 | Williams Hart & Boundas, LLP | WHBE 1543 | Category 1 |
| Jane Doe WHBE 1530, et al. v. Uber Technologies, Inc., et al. | CGC-22-602405 | Williams Hart & Boundas, LLP | WHBE 1544 | Category 1 |
| Jane Doe WHBE 1530, et al. v. Uber Technologies, Inc., et al. | CGC-22-602405 | Williams Hart & Boundas, LLP | WHBE 1545 | Category 1 |
| Jane Doe WHBE 1530, et al. v. Uber Technologies, Inc., et al. | CGC-22-602405 | Williams Hart & Boundas, LLP | WHBE 1546 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe WHBE 1530, et al. v. Uber Technologies, Inc., et al. | CGC-22-602405 | Williams Hart & Boundas, LLP | WHBE 1548 | Category 1 |
| Jane Doe WHBE 1530, et al. v. Uber Technologies, Inc., et al. | CGC-22-602405 | Williams Hart & Boundas, LLP | WHBE 1549 | Category 1 |
| Jane Doe WHBE 1530, et al. v. Uber Technologies, Inc., et al. | CGC-22-602405 | Williams Hart & Boundas, LLP | WHBE 1550 | Category 1 |
| Jane Doe WHBE 1530, et al. v. Uber Technologies, Inc., et al. | CGC-22-602405 | Williams Hart & Boundas, LLP | WHBE 1551 | Category 1 |
| Jane Doe WHBE 1530, et al. v. Uber Technologies, Inc., et al. | CGC-22-602405 | Williams Hart & Boundas, LLP | WHBE 1552 | Category 1 |
| Jane Doe WHBE 1530, et al. v. Uber Technologies, Inc., et al. | CGC-22-602405 | Williams Hart & Boundas, LLP | WHBE 1553 | Category 1 |
| Jane Doe WHBE 1530, et al. v. Uber Technologies, Inc., et al. | CGC-22-602405 | Williams Hart & Boundas, LLP | WHBE 1554 | Category 1 |
| Jane Doe WHBE 1530, et al. v. Uber Technologies, Inc., et al. | CGC-22-602405 | Williams Hart & Boundas, LLP | WHBE 1555 | Category 1 |
| Jane Doe WHBE 1530, et al. v. Uber Technologies, Inc., et al. | CGC-22-602405 | Williams Hart & Boundas, LLP | WHBE 1556 | Category 1 |
| Jane Doe WHBE 1530, et al. v. Uber Technologies, Inc., et al. | CGC-22-602405 | Williams Hart & Boundas, LLP | WHBE 1557 | Category 1 |
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1593 | Category 1 |
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1594 | Category 1 |
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1595 | Category 1 |
| Jane Doe WHBE 1596 et al. v. Uber Technologies, Inc. et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1596 | Category 2 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | Forum Non Conveniens Category[3] |
|---|---|---|---|---|
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1597 | Category 1 |
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1598 | Category 1 |
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1600 | Category 1 |
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1601 | Category 1 |
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1602 | Category 1 |
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1603 | Category 1 |
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1604 | Category 1 |
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1605 | Category 1 |
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1606 | Category 1 |
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1607 | Category 1 |
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1608 | Category 1 |
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1609 | Category 1 |
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1610 | Category 1 |
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1611 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category[3]* |
|---|---|---|---|---|
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1613 | Category 1 |
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1614 | Category 1 |
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1615 | Category 1 |
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1616 | Category 1 |
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1617 | Category 1 |
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1618 | Category 1 |
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1619 | Category 1 |
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1620 | Category 1 |
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1621 | Category 1 |
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1622 | Category 1 |
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1623 | Category 1 |
| Jane Doe WHBE 1593, et al. v. Uber Technologies, Inc., et al. | CGC-22-602663 | Williams Hart & Boundas, LLP | WHBE 1624 | Category 1 |
| Jane Doe SSS 39, et al. v. Uber Technologies, Inc., et al. | CGC-22-602746 | Slater Slater Schulman, LLP | SSS 40 | Category 1 |
| Jane Doe SSS 39, et al. v. Uber Technologies, Inc., et al. | CGC-22-602746 | Slater Slater Schulman, LLP | SSS 41 | Category 1 |

66

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe SSS 39, et al. v. Uber Technologies, Inc., et al. | CGC-22-602746 | Slater Slater Schulman, LLP | SSS 42 | Category 1 |
| Jane Doe SSS 39, et al. v. Uber Technologies, Inc., et al. | CGC-22-602746 | Slater Slater Schulman, LLP | SSS 43 | Category 1 |
| Jane Doe WHBE 1655 v. Uber Technologies, Inc., et al. | CGC-22-603187 | Williams Hart & Boundas, LLP | WHBE 1655 | Category 1 |
| Jane Doe LSA 319, et al. v. Uber Technologies, Inc., et al. | CGC-22-603392 | Levin Simes Abrams, LLP | LSA 319 | Category 1 |
| Jane Doe LSA 319, et al. v. Uber Technologies, Inc., et al. | CGC-22-603392 | Levin Simes Abrams, LLP | LSA 320 | Category 1 |
| Jane Doe LSA 319, et al. v. Uber Technologies, Inc., et al. | CGC-22-603392 | Levin Simes Abrams, LLP | LSA 321 | Category 1 |
| Jane Doe LSA 319, et al. v. Uber Technologies, Inc., et al. | CGC-22-603392 | Levin Simes Abrams, LLP | LSA 322 | Category 1 |
| Jane Doe LSA 319, et al. v. Uber Technologies, Inc., et al. | CGC-22-603392 | Levin Simes Abrams, LLP | LSA 324 | Category 1 |
| Jane Doe LSA 319, et al. v. Uber Technologies, Inc., et al. | CGC-22-603392 | Levin Simes Abrams, LLP | LSA 325 | Category 1 |
| Jane Doe LSA 319, et al. v. Uber Technologies, Inc., et al. | CGC-22-603392 | Levin Simes Abrams, LLP | LSA 326 | Category 1 |
| Jane Doe LSA 319, et al. v. Uber Technologies, Inc., et al. | CGC-22-603392 | Levin Simes Abrams, LLP | LSA 327 | Category 1 |
| Jane Doe LSA 319, et al. v. Uber Technologies, Inc., et al. | CGC-22-603392 | Levin Simes Abrams, LLP | LSA 329 | Category 1 |
| Jane Doe LSA 319, et al. v. Uber Technologies, Inc., et al. | CGC-22-603392 | Levin Simes Abrams, LLP | LSA 330 | Category 1 |
| Jane Doe LSA 319, et al. v. Uber Technologies, Inc., et al. | CGC-22-603392 | Levin Simes Abrams, LLP | LSA 331 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category[3]* |
|---|---|---|---|---|
| Jane Doe LSA 319, et al. v. Uber Technologies, Inc., et al. | CGC-22-603392 | Levin Simes Abrams, LLP | LSA 332 | Category 1 |
| Jane Doe LSA 319, et al. v. Uber Technologies, Inc., et al. | CGC-22-603392 | Levin Simes Abrams, LLP | LSA 333 | Category 1 |
| Jane Doe LSA 319, et al. v. Uber Technologies, Inc., et al. | CGC-22-603392 | Levin Simes Abrams, LLP | LSA 334 | Category 1 |
| Jane Doe LSA 319, et al. v. Uber Technologies, Inc., et al. | CGC-22-603392 | Levin Simes Abrams, LLP | LSA 335 | Category 1 |
| Jane Doe LSA 319, et al. v. Uber Technologies, Inc., et al. | CGC-22-603392 | Levin Simes Abrams, LLP | LSA 336 | Category 1 |
| Jane Doe LSA 319, et al. v. Uber Technologies, Inc., et al. | CGC-22-603392 | Levin Simes Abrams, LLP | LSA 337 | Category 1 |
| Jane Doe LSA 319 et al. v. Uber Technologies, Inc. et al. | CGC-22-603392 | Levin Simes Abrams, LLP | LSA 338 | Category 2 |
| Jane Doe SSS 44, et al. v. Uber Technologies, Inc., et al. | CGC-22-603373 | Slater Slater Schulman, LLP | SSS 45 | Category 1 |
| Jane Doe SSS 44, et al. v. Uber Technologies, Inc., et al. | CGC-22-603373 | Slater Slater Schulman, LLP | SSS 46 | Category 1 |
| Jane Doe SSS 44, et al. v. Uber Technologies, Inc., et al. | CGC-22-603373 | Slater Slater Schulman, LLP | SSS 47 | Category 1 |
| Jane Doe SSS 44, et al. v. Uber Technologies, Inc., et al. | CGC-22-603373 | Slater Slater Schulman, LLP | SSS 48 | Category 1 |
| Jane Does CL 7 through 17 v. Uber Technologies, Inc., et al. | CGC-22-603650* | Cutter Law, PC | CL 9 | Category 1 |
| Jane Does CL 7 through 17 v. Uber Technologies, Inc., et al. | CGC-22-603650* | Cutter Law, PC | CL 10 | Category 1 |
| Jane Does CL 7 through 17 v. Uber Technologies, Inc., et al. | CGC-22-603650* | Cutter Law, PC | CL 11 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | Forum Non Conveniens Category[3] |
|---|---|---|---|---|
| Jane Does CL 7 through 17 v. Uber Technologies, Inc., et al. | CGC-22-603650* | Cutter Law, PC | CL 12 | Category 1 |
| Jane Does CL 7 through 17 v. Uber Technologies, Inc., et al. | CGC-22-603650* | Cutter Law, PC | CL 13 | Category 1 |
| Jane Does CL 7 through 17 v. Uber Technologies, Inc., et al. | CGC-22-603650* | Cutter Law, PC | CL 14 | Category 1 |
| Jane Does CL 7 through 17 v. Uber Technologies, Inc., et al. | CGC-22-603650* | Cutter Law, PC | CL 15 | Category 1 |
| Jane Does CL 7 through 17 v. Uber Technologies, Inc., et al. | CGC-22-603650* | Cutter Law, PC | CL 16 | Category 1 |
| Jane Does CL 7 through 17 v. Uber Technologies, Inc., et al. | CGC-22-603650* | Cutter Law, PC | CL 17 | Category 1 |
| Jane Doe SSS 49, et al. v. Uber Technologies, Inc., et al. | CGC-22-603716 | Slater Slater Schulman, LLP | SSS 52 | Category 1 |
| Jane Doe SSS 49, et al. v. Uber Technologies, Inc., et al. | CGC-22-603716 | Slater Slater Schulman, LLP | SSS 53 | Category 1 |
| Jane Doe SSS 49, et al. v. Uber Technologies, Inc., et al. | CGC-22-603716 | Slater Slater Schulman, LLP | SSS 54 | Category 1 |
| Jane Doe SSS 49, et al. v. Uber Technologies, Inc., et al. | CGC-22-603716 | Slater Slater Schulman, LLP | SSS 55 | Category 1 |
| Jane Doe SSS 49, et al. v. Uber Technologies, Inc., et al. | CGC-22-603716 | Slater Slater Schulman, LLP | SSS 56 | Category 1 |
| Jane Doe SSS 49, et al. v. Uber Technologies, Inc., et al. | CGC-22-603716 | Slater Slater Schulman, LLP | SSS 57 | Category 1 |
| Jane Doe SSS 49, et al. v. Uber Technologies, Inc., et al. | CGC-22-603716 | Slater Slater Schulman, LLP | SSS 58 | Category 1 |
| Jane Doe SSS 49, et al. v. Uber Technologies, Inc., et al. | CGC-22-603716 | Slater Slater Schulman, LLP | SSS 59 | Category 1 |

| Case Title | Case Number[1] | Law Firm(s) | Plaintiff Name/ Pseudonym[2] | *Forum Non Conveniens Category*[3] |
|---|---|---|---|---|
| Jane Doe SSS 49, et al. v. Uber Technologies, Inc., et al. | CGC-22-603716 | Slater Slater Schulman, LLP | SSS 60 | Category 1 |
| Jane Doe PW002 v. Uber Technologies, Inc., et al. | CGC-22-604119* | Peiffer Wolf Carr Kane Conway & Wise, LLP | PW002 | Category 1 |
| Jane Doe PW004 v. Uber Technologies, Inc., et al. | CGC-22-604040* | Peiffer Wolf Carr Kane Conway & Wise, LLP | PW004 | Category 2 |
| Jane Doe PW003 v. Uber Technologies, Inc., et al. | CGC-23-604222* | Peiffer Wolf Carr Kane Conway & Wise, LLP | PW003 | Category 1 |
| Jane Doe PW005 v. Uber Technologies, Inc., et al. | CGC-23-604282* | Peiffer Wolf Carr Kane Conway & Wise, LLP | PW005 | Category 1 |
| Jane Doe v. Uber Technologies, Inc., et al. | CGC-23-603835* | Downtown LA Law Group | Jane Doe | Category 1 |
| Jane Does CL 18 through 21 v. Uber Technologies, Inc., et al. | CGC-23-604296* | Cutter Law, PC | CL 19 | Category 1^ |
| Jane Does CL 18 through 21 v. Uber Technologies, Inc., et al. | CGC-23-604296* | Cutter Law, PC | CL 20 | Category 1^ |
| Jane Does CL 18 through 21 v. Uber Technologies, Inc., et al. | CGC-23-604296* | Cutter Law, PC | CL 21 | Category 1^ |
| Jane Doe LSA 176, et al. v. Uber Technologies, Inc., et al. | CGC-21-597216 | Levin Simes Abrams, LLP | LSA 182 | Category 2^ |
| Jane Doe WHBE 385, et al. v. Uber Technologies, Inc., et al. | CGC-22-597631 | Williams Hart & Boundas, LLP | WHBE 408 | Category 1^ |
| Jane Doe WHBE 415, et al. v. Uber Technologies, Inc., et al. | CGC-22-597637 | Williams Hart & Boundas, LLP | WHBE 430 | Category 1^ |
| Jane Doe WHBE 1030, et al. v. Uber Technologies, Inc., et al. | CGC-22-599912 | Williams Hart & Boundas, LLP | WHBE 1053 | Category 1^ |

**CERTIFICATE OF ELECTRONIC SERVICE**
(CCP 1010.6(6) & CRC 2.260(g))

I, Felicia Green, a Deputy Clerk of the Superior Court of the County of San Francisco, certify that I am not a party to the within action.

On February 28, 2023, I electronically served ORDER RE: APPLICATION OF JANUARY 23, 2023 ORDER TO ALL CASES IN THIS PROCEEDING via File & ServeXpress on the recipients designated on the Transaction Receipt located on the File & ServeXpress website.

Dated:   FEB 28 2023

Mark Culkins, Interim Chief Executive Officer of the Court

By: _____
Felicia Green, Deputy Clerk

# EXHIBIT 4

1    RANDALL S. LUSKEY (SBN: 240915)
2      rluskey@paulweiss.com
     **PAUL, WEISS, RIFKIND, WHARTON**
3    **& GARRISON LLP**
     535 Mission Street, 24th Floor
4    San Francisco, CA 94105
     Telephone: (628) 432-5100
5    Facsimile: (628) 232-3101

6    ROBERT ATKINS (*Admitted Pro Hac Vice*)
       ratkins@paulweiss.com
7    **PAUL, WEISS, RIFKIND, WHARTON**
     **& GARRISON LLP**
8    1285 Avenue of the Americas
     New York, NY 10019
9    Telephone: (212) 373-3183
     Facsimile: (212) 492-0183
10
     *Attorneys for Defendants/Cross-Complainants,*
11   UBER TECHNOLOGIES, INC.,
     RASIER, LLC and RASIER-CA, LLC
12



F I L E D
San Francisco County Superior Court
AUG 1 0 2022
CLERK OF THE COURT
BY: _____
                    Deputy Clerk

13                SUPERIOR COURT OF THE STATE OF CALIFORNIA

14           COUNTY OF SAN FRANCISCO – UNLIMITED CIVIL JURISDICTION

15

16   Coordination Proceeding

17   *In Re: Uber Rideshare Cases*

18   This Document Relates to:
     ALL ACTIONS
19

20

21

22

23

24

25

26

27

28

|   |   |
|---|---|
| Coordination Proceeding<br><br>*In Re: Uber Rideshare Cases*<br><br>This Document Relates to:<br>ALL ACTIONS | JUDICIAL COUNCIL COORDINATION<br>PROCEEDING CASE NO. 5188<br><br>Case No. CJC-21-005188<br><br>*(Assigned to Hon. Ethan P. Schulman<br>Dept. 304)*<br><br>**STIPULATION RE: FORUM NON<br>CONVENIENS DISCOVERY AND<br>MOTIONS PRACTICE; [~~PROPOSED~~]<br>ORDER** |

1                          Case No. CJC-21-005188

STIPULATION RE: FORUM NON CONVENIENS DISCOVERY AND MOTIONS PRACTICE

## STIPULATION

This Stipulation is entered by and among Plaintiffs and Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, the "Parties"), through their respective undersigned counsel of record and appointed interim liaison counsel.

**WHEREAS**, the Parties have reached an agreement regarding the form of the fact sheet ("Forum Fact Sheet") to be filled out by each Plaintiff relating to forthcoming motions to stay or dismiss based on forum non conveniens and/or the absence of indispensable parties (the "Forum Motions"), a copy of which is attached hereto as **Exhibit A**;

**WHEREAS**, the Parties further have reached an agreement regarding the scope and nature of special interrogatories ("Forum Special Interrogatories") to be responded to by Defendant Uber Technologies, Inc. ("Uber") that Plaintiffs contend are related to forthcoming Forum Motions;

**WHEREAS**, the form of Forum Special Interrogatories propounded by Plaintiffs is attached hereto as **Exhibit B**;

**WHEREAS**, the Parties have agreed that Uber's responses to the Forum Special Interrogatories may come in the form of production of data reflecting the information sought in the Forum Special Interrogatories;

**WHEREAS**, interim liaison counsel for Plaintiffs represent and affirm that they have the authority, and have obtained the consent of Plaintiffs, to enter into this Stipulation on behalf of Plaintiffs and that the terms of this Stipulation shall be binding on Plaintiffs;

**NOW, THEREFORE, IT IS AGREED AND STIPULATED BY THE PARTIES THAT:**

1.      Each Plaintiff who has not previously provided a copy of the trip receipt for the ride out of which that Plaintiff's claims arise shall serve on counsel for Uber a copy of such trip receipt or furnish the information requested in Questions III.1.–7. of the Forum Fact Sheet by **July 6, 2022 (to be extended by up to 30 days as needed by Plaintiffs)**. If a Plaintiff has previously provided a copy of the trip receipt for the ride out of which that Plaintiff's claims arise, but the receipt does not contain all of the information requested in Questions III.1.–III.7.

of the Forum Fact Sheet, the Plaintiff shall furnish the remaining information requested in Questions III.1.–III.7. of the Forum Fact Sheet by **July 6, 2022 (to be extended by up to 30 days as needed by Plaintiffs)**. For any Plaintiff added to the coordinated proceeding after the date of entry of this Stipulated Order, such Plaintiff shall serve on counsel for Uber a copy of the trip receipt or furnish the information requested in Questions III.1–7 of the Forum Fact Sheet within 30 days of that Plaintiff's action being added to this coordinated proceeding.[1]

2.      Each Plaintiff shall e-serve his or her completed Forum Fact Sheet on counsel for Uber by **September 6, 2022**. For any Plaintiff added to the coordinated proceeding after the date of entry of this Stipulated Order, such Plaintiff shall e-serve his or her completed Forum Fact Sheet on counsel for Uber within 60 days of that Plaintiff's action being added to this coordinated proceeding.

3.      Counsel for Plaintiffs may complete the Forum Fact Sheet on behalf of each Plaintiff based on the information available to counsel. A Plaintiff's completed Forum Fact Sheet shall be binding on that Plaintiff for the purposes of the forthcoming Forum Motions. Uber reserves the right to raise challenges to the sufficiency of any of the Plaintiffs' responses to questions, except that Uber will not challenge the sufficiency of responses to Questions II.2., II.6., II.7., III.8., III.9., III.10.a,, IV.1.a., IV.3.c., IV.4., IV.5.a., IV.7., V.1., and V.2., which Plaintiffs have represented request information that generally will not be known by counsel at this time. However, the parties agree that Uber may request further information regarding all questions contained in the Forum Fact Sheet, including Questions II.2., II.6., II.7., III.8., III.9., III.10.a,, IV.1.a., IV.3.c., IV.4., IV.5.a., IV.7., V.1., and V.2., with respect to a subset of Plaintiffs to be subsequently determined and Uber reserves the right to challenge the sufficiency of these subsets of responses if necessary.

4.      Uber shall e-serve responses and/or production of data to the Forum Special Interrogatories in Exhibit B by **September 6, 2022 (to be extended by the number of days**

---

[1] Because this stipulated order governs case management of the coordinated proceeding, the parties request that the Court's order entering this stipulation (should it be approved) be binding on all Plaintiffs whose claims are hereafter coordinated into the coordinated proceeding.

1  **required by Plaintiffs to provide the documents and information identified in Paragraph**

2  **1)**. Plaintiffs reserve their right to raise challenges to the adequacy of Uber's responses.

3      5.     The Parties jointly request that the schedule for the forthcoming Forum Motions

4  be set as follows:

5          a)     Uber shall file and e-serve Forum Motions by **October 7, 2022**.

6          b)     Plaintiffs shall file and e-serve their oppositions to Uber's Forum

7  Motions by **November 14, 2022**.

8          c)     Uber shall file and e-serve its replies in support of Forum Motions by

9  **December 9, 2022**.

10         d)     Uber's Forum Motions shall be set for hearing between **December 16**

11 **and December 21, 2022**, or on a date thereafter that is convenient for the Court.

12     6.     Any of the above deadlines and dates may be extended by mutual agreement.

13     7.     Following resolution of the Forum Motions, which will cover only a number of

14 particular cases (consistent with the Parties' case management statement submissions and the

15 colloquy with the Court at the conferences on March 4, 2022 and April 21, 2022), the parties

16 shall meet and confer to discuss a process stipulating to or contesting the applicability of the

17 Court's ruling on the Forum Motions to the remainder of the cases within this coordinated

18 proceeding.

19     **IT IS SO STIPULATED.**[2]

21 DATED: August 9, 2022         **PAUL, WEISS, RIFKIND, WHARTON & GARRISON**

23         By: _____

24         RANDALL S. LUSKEY
        ROBERT ATKINS

25         *Attorneys for Defendant*
        UBER TECHNOLOGIES, INC.,
26         RASIER, LLC and RASIER-CA, LLC

[2] Counsel for the Parties are prepared to address any questions or concerns the Court may have regarding this Stipulation.

1   DATED:  August 9, 2022          **LEVIN SIMES ABRAMS, LLP**

2

3

4                                   By: _____
                                    WILLIAM A. LEVIN
5                                   LAUREL L. SIMES
                                    RACHEL ABRAMS
6                                   SAMIRA J. BOKAIE

7                                   *Attorneys for Plaintiffs*

8

9   DATED:  August 9, 2022          **WILLIAMS HART BOUNDAS EASTERBY,**
                                    **LLP**
10

11

12                                  By: _____
                                    WALT CUBBERLY
13                                  BRIAN ABRAMSON

14                                  *Attorneys for Plaintiffs*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# ~~[PROPOSED]~~ CASE MANAGEMENT ORDER

The Court, having reviewed the foregoing Stipulation and for good cause appearing:

**IT IS HEREBY ORDERED:**

1.      This Case Management Order shall be binding on all Plaintiffs whose claims are currently coordinated into this coordinated proceeding as well as Plaintiffs whose claims are hereafter coordinated into this coordinated proceeding.

2.      Each Plaintiff who has not previously provided a copy of the trip receipt for the ride out of which that Plaintiff's claims arise shall serve on counsel for Uber a copy of such trip receipt or furnish the information requested in Questions III.1.–III.7. of the Forum Fact Sheet appended to the Parties' stipulation as Exhibit A by **July 6, 2022 (to be extended by up to 30 days as needed by Plaintiffs)**. If a Plaintiff has previously provided a copy of the trip receipt for the ride out of which that Plaintiff's claims arise, but the receipt does not contain all of the information requested in Questions III.1.–III.7. of the Forum Fact Sheet, the Plaintiff shall furnish the remaining information requested in Questions III.1.–III.7. of the Forum Fact Sheet by **July 6, 2022 (to be extended by up to 30 days as needed by Plaintiffs)**. For any Plaintiff added to the coordinated proceeding after the date of entry of this Stipulated Order, such Plaintiff shall serve on counsel for Uber a copy of the trip receipt or furnish the information requested in Questions III.1.–III.7. of the Forum Fact Sheet within 30 days of that Plaintiff's action being added to this coordinated proceeding.

3.      Each Plaintiff shall e-serve his or her completed Forum Fact Sheet, consistent with the terms of the Parties' stipulation, on counsel for Uber by **September 6, 2022**. For any Plaintiff added to the coordinated proceeding after the date of entry of this Stipulated Order, such Plaintiff shall e-serve his or her completed Forum Fact Sheet on counsel for Uber within 60 days of that Plaintiff's action being added to this coordinated proceeding. Counsel for Plaintiffs may complete the Forum Fact Sheet on behalf of each Plaintiff based on the information available to counsel. A Plaintiff's completed Forum Fact Sheet shall be binding on that Plaintiff for the purposes of the forthcoming motions to stay or dismiss based on forum non conveniens and the absence of indispensable parties.

4.      Uber shall e-serve responses to the Forum Special Interrogatories, consistent with the terms of the Parties' stipulation and limitations, by **September 6, 2022 (to be extended by the number of days required by Plaintiffs to provide the documents and information identified in Paragraph 2)**.

5.      The schedule for the forthcoming motions to stay or dismiss based on forum non conveniens and/or the absence of indispensable parties ("Forum Motions") is set as follows:

a)      Uber shall file and e-serve its Forum Motions by **October 7, 2022**.

b)      Plaintiffs shall file and e-serve their oppositions to the Forum Motions by **November 14, 2022**.

c)      Uber shall file and e-serve its replies in support of the Forum Motions by **December 9, 2022**.

d)      The Forum Motions are hereby set for hearing on *December 20* at *9:00* a.m. in Department 304 of the above-referenced court.

6.      The parties may extend any of the above deadlines and dates by mutual agreement, *subject to Court approval.*

7.      The Forum Motions will be filed only in particular cases (consistent with the Parties' case management statement submissions and the colloquy with the Court at the conferences on March 4, 2022 and April 21, 2022). Following resolution of the Forum Motions, the parties shall meet and confer to discuss a process for stipulating to or contesting the applicability of the Court's ruling on the Forum Motions to the remainder of the cases within this coordinated proceeding.

**IT IS SO ORDERED.**

DATED: *Aug. 10, 2022*

THE HONORABLE ETHAN P. SCHULMAN
JUDGE OF THE SUPERIOR COURT FOR
THE COUNTY OF SAN FRANCISCO

# Exhibit A

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO – UNLIMITED CIVIL JURISDICTION

| | |
|---|---|
| Coordination Proceeding<br><br>*In Re: Uber Rideshare Cases*<br><br>This Document Relates to:<br>ALL ACTIONS | JUDICIAL   COUNCIL   COORDINATION PROCEEDING CASE NO. 5188<br><br>CASE NO. CJC-21-005188<br>Assigned to Hon. Ethan P. Schulman, Dept. 304<br><br>**[PROPOSED] PLAINTIFF FORUM NON CONVENIENS FACT SHEET** |

## PLAINTIFF FACT SHEET

**CASE NUMBER:** _____

**PLAINTIFF NAME:** _____

*on behalf of (if applicable):* _____

*relationship (if applicable):* _____

**COMPLETED BY:** _____

## GENERAL INSTRUCTIONS

Pursuant to the Order Regarding Fact Sheet Implementation entered in the above-captioned litigation, a completed Plaintiff Fact Sheet ("PFS") shall be provided for each individual asserting legal claims in the above captioned lawsuit. Each question must be answered in full. If counsel does not have access to the information needed to answer a question, please explain that in the response to the question. **Please do not leave any questions unanswered or blank.**

Additional Space for Completeness

In filling out any section or sub-section of this form, additional sheets of paper should be used and submitted as necessary to provide complete and accurate information.

## DEFINITIONS

The following definitions shall apply to this PFS:

"You" and "Your" means the attorney or attorneys, or any agent thereof, responsible for completing the PFS.

"Plaintiff" refers to the Plaintiff, listed above, who is completing this fact sheet, as well as her/his/their agents, representatives, and all other natural persons or entities acting on her/his behalf; provided that if the Plaintiff has filed this lawsuit on behalf of another (*e.g.*, a decedent or a minor), then "Plaintiff" refers to the person on whose behalf this lawsuit was filed. In such a case, Counsel should identify at the top of this page the person on whose behalf the case was filed and the Plaintiff's relationship to that person (*e.g.*, guardian, administrator of estate, etc.).

"Driver" refers to the person who Plaintiff alleges, in the complaint filed in this action, committed sexual misconduct or assault against Plaintiff.

"Alleged Incident" refers to all events that Plaintiff alleges, in the complaint filed in this action, constituted sexual misconduct or assault against Plaintiff.

"Trip" refers to any ride that Plaintiff, or another person on Plaintiff's behalf or for Plaintiff's benefit, requested through the rider version of the Uber Application around the time of the Alleged Incident.

"Health Care Provider" means any facility or person involved in the evaluation, diagnosis, care, or treatment of Plaintiff, including without limitation any such hospital; clinic; medical center; physician's office; infirmary; medical or diagnostic laboratory; pharmacy; counselor; x-ray department; physical therapy department;, rehabilitation specialist; physician; psychiatrist; physical therapist; osteopath; homeopath; chiropractor; psychologist; occupational therapist; nurse; herbalist; emergency responder including EMT, paramedic, or firefighter; social worker; or other facility or person that provides medical, dietary, psychiatric, mental, emotional, or psychological evaluation, diagnosis, care, treatment, or advice.

"Communication" means any and all forms of oral, written, and electronic transmission and includes, without limitation, written contact by such means as letters, memoranda, computer communication, text messages, electronic mail, and social media postings as well as oral contact by such means as meetings and telephone conversation.

"Document" means any writing or record of any type, however produced and whatever the medium on which it was produced, and includes, without limitation; the original and non-identical copy (whether different from the original because of handwritten notes or underlining on the copy or otherwise) and all drafts of papers, letters, notes, notations, memoranda of conversations or meetings, calendars, diaries or journals, minutes of meetings, interoffice communications, electronic mail and other forms of electronic communication (including but not limited to postings on websites, blogs and/or social media), message slips, notebooks, agreements, reports, articles, books, tables, charts, schedules, memoranda, medical records, X-rays, explants, devices, advertisements, pictures, photographs, films, accounting books or records, billings, credit card records, electrical or magnetic recordings or tapes, or any other writings, recordings or pictures of any kind or description.

When this fact sheet calls for Documents and/or Communications, Plaintiff's response need not reference any privileged communications Plaintiff has had with Plaintiff's counsel.

-2-

## I.   CASE INFORMATION

    1.  Please state the following for the civil action that Plaintiff filed:

        a.  Case caption:_____

        b.  Pseudonym used in the Complaint:_____

        c.  Name of principal attorney representing Plaintiff:

            1.  Name:_____

            2.  Law Firm:_____

## II.   PLAINTIFF'S PERSONAL INFORMATION

    1.  Name (Last, First, Middle):_____

    2.  Maiden name (if applicable) or other names used and dates Plaintiff used those names:

        _____

    3.  Current address: _____

    4.  City and state of residence at time of Alleged Incident: _____

    5.  Date of birth:_____

    6.  From two years prior to the Alleged Incident through the present, please identify the employers for whom you worked, as well as the city, state, and dates of employment for each employer. _____

        _____

        _____

    7.  From two years prior to the Alleged Incident through the present, please identify the educational institutions you attended, as well as the city, state, and dates of attendance for each institution. _____

        _____

        _____

## III.   INFORMATION AS TO THE ALLEGED INCIDENT

**Counsel will provide the ride receipt and phone number associated with the account to the extent it is available. To the extent the ride receipt and account information is not available, or to the extent the ride receipt does not contain the information contained in the following questions, counsel shall respond to the following questions:**

    1.  Was the Trip requested through the Uber Application under Plaintiff's account? Yes:_____ No:_____

        a.  *If yes*, state the name, phone number and email address associated with Plaintiff's account: _____

        _____

        b.  *If no*, state the name, current address, telephone number and email address of the person whose account was used to request the Trip: _____

2. Did Plaintiff intend the Trip to be a shared ride (*i.e.*, UberPool) in which Plaintiff requested and/or expected that there would be other passengers in addition to him/her/them?

Yes:_____ No:_____

3. State the location (including, city, state, zip, and nearest street address or, if unknown, the closest intersection) where Plaintiff's Trip originated: _____
_____

4. State the location (including, city, state, zip, and nearest street address or, if unknown, the closest intersection) of Plaintiff's requested destination:_____
_____

5. Date of the Alleged Incident:_____

6. If You know the first or last name of the driver (or both), please state them:
_____

7. State the time and location (including, city, state, zip, and nearest street address or, if unknown, the closest intersection) of the Alleged Incident:_____
_____

8. **Note: If counsel provided the ride receipt, the ride receipt includes a map, which depicts the route taken by the driver, and the Alleged Incident occurred at some location on that depicted route, then counsel need not answer #7; otherwise, please answer #7.**

**Please answer the following questions regardless of whether You provide a ride receipt:**

9. If You know the Driver's state of residence at the time of the Alleged Incident to have been a state other than the state in which the Alleged Incident occurred, please identify that state: _____

10. If You know the Driver's current state of residence to be a state other than the state in which the Alleged Incident occurred, please identify that state:_____

11. Was Plaintiff the only passenger in the vehicle during the Trip? Yes:_____ No:_____

    a. *If no*, provide the name, address, and telephone number of other passenger(s), if known: _____
    _____

12. Does the Plaintiff allege that any of the following acts occurred during the Alleged Incident? Please select all that apply, and where relevant, select whether contact was made over or under the clothes:

    ___ Lewd and/or Inappropriate Comments or Questions or Gestures[1]

---

[1] This category is defined to include, but is not limited to, the following: asking specific, probing, and personal questions of the user; making uncomfortable comments on the user's appearance; making sexually suggestive gestures at the user; and asking for a kiss, displays of nudity, sex, or contact with a sexual body part.

-4-

__ Verbal Threat of Sexual Assault[2]

__ Masturbation and/or Indecent Exposure[3]

__ Touching of a Non-Sexual Body Part[4]

    __ Over the Clothes[5]

    __ Under the Clothes[6]

__ Touching of a Sexual Body Part Not Involving Penetration[7]

    __ Over the Clothes

    __ Under the Clothes

__ Kissing of a Non-Sexual Body Part[8]

__ Kissing of a Sexual Body Part[9]

__ Sexual Penetration Including Oral Copulation[10]

__ Kidnapping[11]

13. Briefly describe the nature of the alleged assault or sexual misconduct:

_____

_____

## IV.  WITNESSES

1. Did Plaintiff or someone on Plaintiff's behalf notify Uber of the Alleged Incident?

---

[2] This category is defined to include directing verbal explicit/direct threats of sexual violence at a user.

[3] This category is defined to include exposing genitalia and/or engaging in sexual acts in presence of a user.

[4] This category is defined to include, without explicit consent from the user, touching or forcing a touch on any non-sexual body part (e.g., hand, leg, thigh) of the user.

[5] This category is defined to include any touch over any piece of clothing on the user (e.g., pants, shirt, bra, underwear) as well as any touch on an area that in no way has clothing covering it (e.g., parts of the thigh when wearing shorts).

[6] This category is defined to include any touch under clothing which causes contact with the user's skin. It does not include a touch on an area that does not have clothing covering it in the first instance (e.g., parts of the thigh when wearing shorts).

[7] This category is defined to include, without explicit consent from the user, touching or forcing a touch on any sexual body part (i.e., breast, genitalia, mouth, buttocks) of the user. It does not include penetration.

[8] This category is defined to include, without consent from the user, any kiss, lick, or bite, or forced kiss, lick, or bite on any non-sexual body part (e.g., hand, leg, thigh) of the user.

[9] This category is defined to include, without consent from the user, any kiss, lick, or bite, or forced kiss, lick, or bite on either the breast or buttocks of the user. This also includes kissing on the lips and kissing while using tongue.

[10] This category is defined to include, without explicit consent from a user, penetration, no matter how slight, of the vagina or anus of a user with any body part or object. This includes penetration of the user's mouth with a sexual organ or sexual body part. This excludes kissing with tongue.

[11] This category is defined to include abduction, child abduction, false imprisonment, human trafficking, unlawful restraint, and unlawful/forcible detention.

Yes:_____ No:_____

    a.  *If yes and someone notified Uber on Plaintiff's behalf*, state that person's name, current address, phone number and email address, if known: _____ _____

2.  Did Plaintiff or someone on Plaintiff's behalf notify law enforcement of the Alleged Incident? Yes:_____ No:_____

3.  *If Your answer to the prior question is Yes*, please answer the following questions:

    a.  What is the name and location (city, state) of the law enforcement agency Plaintiff notified?_____

    b.  Identify the officer(s) with whom Plaintiff spoke regarding the incident: _____

    c.  *If someone notified law enforcement on Plaintiff's behalf*, state that person's name, current address, phone number and email address, if known: _____ _____

4.  To Your knowledge, were criminal charges filed? Yes:___ No:___ Unknown: ___

5.  After the Alleged Incident, did Plaintiff undergo a medical exam to determine any physical injuries or the presence of any evidence (*e.g.*, a Sexual Assault Response Team "SART" exam, a Sexual Assault Forensic Exam ("SAFE"), or a Sexual Assault Nurse Exam ("SANE"))? Yes:_____ No:_____

    a.  *If yes*, what is the name of the Health Care Provider that performed the exam, if known? Please provide both the name of the facility where the exam was performed and the name of the person(s) who performed the exam, if known._____ _____

    b.  *If yes*, in what city and state was the exam performed?_____

6.  Was Plaintiff treated by emergency responders, including police officers, EMT, fire fighters, or paramedics, as a result of the Alleged Incident? Yes:_____ No:_____

7.  If Plaintiff received any medical treatment or therapy as a result of the Alleged Incident, including treatment provided by emergency responders, please identify the people who provided medical treatment or therapy and their location (city and state) at the time Plaintiff received medical treatment or therapy. Please provide both the name of the facility where the medical treatment or therapy was provided and the name of the person(s) who provided the medical treatment or therapy, if known.

| Name of Health Care Provider | Location (City, State) |
| --- | --- |
| | |
| | |
| | |

## V.    CLAIMED INJURIES

1.  Lost Earnings – Does Plaintiff claim that Plaintiff lost earnings or suffered impairment of earning capacity as a result of any physical, mental, or emotional injury Plaintiff alleges? Yes____ No____ Unknown at this time____

2.  Medical Expenses – Does Plaintiff seek to recover medical expenses that Plaintiff incurred as a result of the Alleged Incident?  Yes___ No___ Unknown at this time___

## VI.    PERSONS LIKELY TO HAVE DISCOVERABLE INFORMATION

1.  To the extent that anyone not already listed above is known by You to likely have discoverable information, please state the name and, if known, current location (city, state) of each individual—along with the general subject(s) of that information, excluding the Plaintiff, the Driver, and any past or present employees of Uber.  Please include, without limitation, all witnesses to the Alleged Incident and all persons with whom Plaintiff has spoken about the Alleged Incident, excluding Plaintiff's attorneys.  To the extent that You do not know the name of any of the witnesses, for such witnesses, please provide any identifying information that You are aware of (e.g., neighbor, coworker, bystander).

| Name, Location (City, State) | Subjects |
| --- | --- |
|  |  |
|  |  |
|  |  |
|  |  |

# Exhibit B

William A. Levin (SBN 98592)
Laurel L. Simes (SBN 134637)
Rachel B. Abrams (SBN 209316)
Samira J. Bokaie (SBN 332782)
**LEVIN SIMES ABRAMS LLP**
1700 Montgomery Street, Suite 250
San Francisco, California 94111
Telephone: (415) 426-3000
Facsimile: (415) 426-3001
Email: wlevin@levinsimes.com
Email: llsimes@levinsimes.com
Email: rabrams@levinsimes.com
Email: sbokaie@levinsimes.com
*Attorneys for Plaintiffs*

John Eddie Williams (*pro hac vice*)
John Boundas (*pro hac vice*)
Walt Cubberly (325163)
Margret Lecocke (*pro hac vice*)
Brian Abramson (*pro hac vice*)
**WILLIAMS HART BOUNDAS EASTERBY, LLP**
8441 Gulf Freeway, Suite 600
Houston, Texas 77017-5051
Telephone: (703) 230-2200
Facsimile: (713) 643-6226
Email: jwilliams@whlaw.com
Email: jboundas@whlaw.com
Email: wcubberly@whlaw.com
Email: mlecocke@whlaw.com
Email: babramson@whlaw.com
*Attorneys for Plaintiffs*

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**COUNTY OF SAN FRANCISCO**

| | |
|---|---|
| COORDINATION PROCEEDING SPECIAL TITLE (Rule 3.550)<br><br>**IN RE: UBER SEXUAL ASSAULTS**<br><br><br>THIS DOCUMENT RELATES TO:<br><br>*ALL CASES* | **JUDICIAL COUNCIL COORDINATED PROCEEDING NO. 5188**<br><br>Case No. CJC-21-005188<br><br>**PLAINTIFFS' SPECIAL INTERROGATORIES TO DEFENDANT UBER TECHNOLOGIES, INC., SET ONE**<br><br>*Assigned for All Purposes to the Honorable Ethan P. Schulman, Dept. 304* |

**PROPOUNDING PARTY**:    Plaintiffs

**RESPONDING PARTY**:    Uber Technologies, Inc.

**SET NO.**:    ONE (1)

The Court has ordered that the parties engage in forum related discovery.  These interrogatories propounded upon Uber are designed to discover the identity and state of residence of witnesses who may possess relevant evidence or whose testimony is likely to lead to the discovery of admissible evidence in the overall liability case against Uber.  Pertinent subject areas are defined in the definition section below.  Broadly speaking, these subject areas include those aspects of Uber's operations which are relevant to the causes of action asserted in the complaints that are part of JCCP 5188.  Witnesses include current and former employees and, third party vendors, who have performed services relating to the pertinent subject areas.  Uber has taken the position that deposition testimony is unnecessary because it will provide the information which we are seeking in order to respond to any forum motions.  In that vein, and unlike interrogatories propounded in the ordinary course of litigation, plaintiffs request that Uber provide complete responses and approach its responses against the backdrop of the broad purposes of the discovery.  Given the deadlines involved, Plaintiffs' expectations are that we will not be faced with objections or narrow readings of the interrogatories propounded.

## PERTINENT SUBJECT AREAS

### 1. EVALUATION OF PASSENGER SAFETY ISSUES AT INCEPTION

Uber was formed as a rideshare company in 2011.  At inception and immediately thereafter, its business model included strangers picking up strangers and transporting them.  We assume that there were transportation experts, consultants and people both inside and outside of Uber who evaluated, discussed and wrote about the inherent safety risks to both drivers and passengers arising from the misconduct of either. Presumably, the subject of driver background checks, finger printing, driver onboarded processes and procedure, standards for driver onboarding, driver training and education as well as safety features designed to minimize the risk to passengers including but not limited to cameras,

2

1   GPS tacking of rides, zero tolerance policies, handling complaints about problem drivers, the design of

2   the Uber app.

3   ///

4   ///

5   2.   **DRIVER BACKGROUND CHECKS, FINGERPRINTING, ONBOARDING PROCESSES AND**

6   **PROCEDURES, STANDARDS FOR ONBOARDING 2011- PRESENT**

7   This subject area includes identification of the people and entities who were involved in the creation,

8   implementation, and execution of driver screening, standards for drivers, and the driver onboarding

    process overtime. This includes individuals and entities that were involved in the initial processes

9   applied at the time Uber began in 2011 and any changes that were discussed, made, and/or implemented

10   at Uber.

11

12   **HANDLING OF COMPLAINTS ABOUT DRIVER MISCONDUCT, DRIVER DISCIPLINE**

13   **(TEMPORARY OR PERMANENT DEACTIVATIONS, WARNINGS, RE-TRAINING OR RE-**

14   **EDUCATION) DRIVER RATING SYSTEM AND THE MECHANISMS AND PROCEDURES**

15   **FOR ADDRESSING DRIVER MISCONDUCT REPORTED TO UBER 2011-PRESENT**

16   This subject includes the handling of complaints and reports of driver misconduct through all of the

17   feedback mechanisms that Uber put in place whether through the app, help lines, written communication

18   or any other method.  This subject includes the identification of the people involved in this subject area

19   whether at the level of policy formation, design or implementation.

20   4.   **APP DESIGN, APP CHANGES OVER TIME, SAFETY FEATURES CONSIDERED BUT NOT**

21   **ADOPTED, SAFETY FEATURES ADOPTED**

22   This subject concerns the extent to which the App itself was designed or changed over time to

23   include safety features and mechanisms to protect passengers.  It includes consideration of features

24   which were not adopted.  Examples include but are no means limited to GPS tracking of rides that go off

25

PLAINTIFFS' SPECIAL INTERROGATORIES TO DEFENDANT UBER
TECHNOLOGIES, INC., SET ONE

course, surveillance through the App, 911 and emergency features, safety flags and safety feedback features within the App, warnings and instructions, safety guidelines and protocols communicated within the App or to passengers in the Terms of Service.

This subject includes witnesses at the design and engineering level, decision-making and policy levels, implementation level and participants in the discussions about changes that should be made as time went on. It includes outside consultants and well as current and former employees.

///

5. **WARNINGS TO PASSENGERS AND DRIVERS 2011-PRESENT**

This subject includes communications to drivers and passengers concerning safety problems and risks and changes to such communications over time.

6. **RESPONSE TO SEXUAL ASSAULT AND SEXUAL MISCONDUCT PROBLEM 2011-PRESENT**

This subject includes how and when Uber became aware of the problem, actions it considered taking in response, actions it actually took in response, changes over time, tracking of the effectiveness of its response. It includes decision-makers, executives, teams and team members and consultants who were involved in discussions, problem solving efforts, ideas for addressing the problem, evaluation of the scope of the problem, data and analytics and any efforts made to study the problem in the transportation industry generally.

7. **COMPILATION OF THE DATA AND PREPARATION OF THE COMMUNITY SAFETY REPORT**

This subject area includes the first discussions of the idea of publicly disclosing the scope of the sexual assault problem, the method of compiling the data, sources of the data, people and outside consultants involved, purpose of the disclosure, reasons why it wasn't done earlier, status of the scope of the problem in terms of numbers and data subsequent to the release of the report.

PLAINTIFFS' SPECIAL INTERROGATORIES TO DEFENDANT UBER TECHNOLOGIES, INC., SET ONE

8. **MARKETING THE SAFETY OF THE PLATFORM SAFE RIDE HOME, MARKETING TO WOMEN AND TO PEOPLE WHO HAVE BEEN DRINKING 2011-PRESENT**

This subject area includes all of the people who have been involved with Uber's marketing to passengers, women passengers, passengers who have been drinking, marketing re the safety of Uber vis a vis other rideshare companies or forms of transportation.

9. **DRIVER DISCIPLINE**

This subject area includes the internal procedures, protocols, and mechanisms whereby drivers who engage in sexual or other unsafe behavior are identified and subject to consequences ranging from warnings, suspension, temporary or permanent deactivation and any other corrective steps, re-training or re-education.

10. **LOBBYING EFFORTS TO RESIST SAFETY REGULATIONS, TNC REGULATIONS AND COMMON CARRIER STATUS**

This subject area includes Ubers internal discussions, decision-making and interactions with governmental agencies, including politicians on subjects having to do with fingerprinting, cameras, classification as a common carrier or transportation company.

## DEFINITIONS

Throughout the following words and terms shall bear the meanings as identified below.  For any undefined term, the standard, dictionary definition of the term applies.

1.   **"DOCUMENTS"** shall mean "writing" as defined in California Evidence Code 250, which includes without limitation all handwriting, typewriting, printing, photostating, photographing, and every other means of recording upon any tangible thing any form of communication or representation, including letters, words, pictures, sounds or symbols, or combinations thereof.  This term shall also include e-mail transmissions and writings stored on all computer-related medium, including hard disk drives, floppy disk

5

1 | drives, CD-ROMs and DVDs, and will be referred to below as "documents."  This term shall include all

2 | papers, books, letters, correspondence, telegrams, cables, telex messages, memoranda, typed or

3 | handwritten notes, notations, work papers, transcripts, minutes, audio, visual or audio-visual recordings,

4 | reports and records of telephone or other conversations, or of interviews, conferences or other meetings,

5 | maps, charts, plans, specifications, diagrams, photographs, affidavits, statements, statistical records, lists,

6 | tabulations, summaries, sound recordings, computer print-outs, data processing input and output,

7 | microfilms, microfiche, all other records kept by computer, or on computer programs, electronic,

8 | photographic, or mechanical means, and items similar to the foregoing and/or items from which

9 | information can be obtained, translated if necessary, through the use of detection devices into reasonably

10 | usable form. If any tape, disc, card, wire, or other electronic or mechanical recording or transcript or any

11 | computer program is produced, you shall also produce such documents as are necessary for decoding,

12 | track, printing out and/or interpretation thereof, and any other documents which are necessary to

13 | convert such information into a usable and useful format.

14 | 2.   The term **"DOCUMENT RETENTION POLICY"** shall refer to all guidelines,

15 | procedures and policies YOU employ for maintaining and/or destroying DOCUMENTS.

16 | 3.   The term **"YOU," "YOUR,"** and **"UBER"** shall mean UBER TECHNOLOGIES, INC.

17 | and any of its agents, employees, contractors, officers, shareholders, directors, owners, attorneys,

18 | representatives and all others acting for it and/or on its behalf.

19 | 4.   **"IDENTIFY"** when used in reference to a person means to state the full name, home

20 | address, home phone number, employer, job title, work address and work phone number of that person. If

21 | the person identified is not a natural person (e.g., a corporation), give its full name, address, nature of

22 | organization, principal place of business activity, principal business activity and state under which it was

23 | organized

24 |

25 |

5.    **"IDENTIFY"** when used in reference to a document or report means to state as to each document or report the date, the general subject matter, the type of document (e.g., letter, memorandum, receipt, invoice, schedule, contract, bill of sale, etc.) the name and address of the author, the name and address of the addressee, the name and location of the files where the original and each copy is normally or presently kept, and the name and address of the present custodian thereof.

6.    **"RELATING TO"** means concerned with, showing or indicating knowledge of, mentioning, or in any manner referring to, either directly or indirectly.

7.    **"PERSONS"** means an individual, corporation, partnership, trust, associations, company, organization, or any form of a business or commercial entity.

8.    **"DRIVER"** means anyone utilizing the Uber application to be connected with passengers for rides.

**"IDENTIFY"** with respect to a PERSON or ENTITY, means to state the name, last known address and last known telephone number of the PERSON or ENTITY.

10.    **"PASSENGER"** means anyone taking an Uber ride coordinated through the Uber application, regardless of whether the passenger was the individual who ordered the ride.

11.    **"UBER APPLICATION"** or any derivative thereof means the Uber application used by drivers and passengers to order and provide Uber rides.

## SPECIAL INTERROGATORIES

**SPECIAL INTERROGATORY NO. 1:**

With respect to pertinent subject area (1), please identify the witnesses, whether current employees, former employees or third-party witnesses who were involved in the pertinent subject area and for each person provide their current state of residence.

**SPECIAL INTERROGATORY NO. 2:**

With respect to pertinent subject area (1), identify the name of the team or teams (departments)

1  within Uber who had responsibility for the subject area and the location of the office, or offices, where

2  the people on the team, teams, department or departments.

3  **SPECIAL INTERROGATORY NO. 3:**

4          With respect to pertinent subject area (2), please identify the witnesses, whether current

5  employees, former employees or third-party witnesses who were involved in the pertinent subject area

6  and for each person provide their current state of residence.

7  **SPECIAL INTERROGATORY NO. 4:**

8          With respect to pertinent subject area (2), identify the name of the team or teams (departments)

9  within Uber who had responsibility for the subject area and the location of the office, or offices, where

10  the people on the team, teams, department or departments.

11  **SPECIAL INTERROGATORY NO. 5 :**

12          With respect to pertinent subject area (3), please identify the witnesses, whether current

13  employees, former employees or third-party witnesses who were involved in the pertinent subject area
   and for each person provide their current state of residence.

14  **SPECIAL INTERROGATORY NO. 6:**

15          With respect to pertinent subject area (3), identify the name of the team or teams (departments)

16  within Uber who had responsibility for the subject area and the location of the office, or offices, where

17  the people on the team, teams, department or departments.

18  **SPECIAL INTERROGATORY NO. 7:**

19          With respect to pertinent subject area (4), please identify the witnesses, whether current

20  employees, former employees or third-party witnesses who were involved in the pertinent subject area

21  and for each person provide their current state of residence.

22  **SPECIAL INTERROGATORY NO. 8:**

23          With respect to pertinent subject area (4), identify the name of the team or teams (departments)

24  within Uber who had responsibility for the subject area and the location of the office, or offices, where

25  the people on the team, teams, department or departments.

8

**SPECIAL INTERROGATORY NO. 9:**

With respect to pertinent subject area (5), please identify the witnesses, whether current employees, former employees or third-party witnesses who were involved in the pertinent subject area and for each person provide their current state of residence.

**SPECIAL INTERROGATORY NO. 10:**

With respect to pertinent subject area (5), identify the name of the team or teams (departments) within Uber who had responsibility for the subject area and the location of the office, or offices, where the people on the team, teams, department or departments.

**SPECIAL INTERROGATORY NO. 11:**

With respect to pertinent subject area (6), please identify the witnesses, whether current employees, former employees or third-party witnesses who were involved in the pertinent subject area and for each person provide their current state of residence.

**SPECIAL INTERROGATORY NO. 12:**

With respect to pertinent subject area (6), identify the name of the team or teams (departments) within Uber who had responsibility for the subject area and the location of the office, or offices, where the people on the team, teams, department or departments.

**SPECIAL INTERROGATORY NO. 13:**

With respect to pertinent subject area (7), please identify the witnesses, whether current employees, former employees or third-party witnesses who were involved in the pertinent subject area and for each person provide their current state of residence.

**SPECIAL INTERROGATORY NO. 14:**

With respect to pertinent subject area (7), identify the name of the team or teams (departments) within Uber who had responsibility for the subject area and the location of the office, or offices, where the people on the team, teams, department or departments.

**SPECIAL INTERROGATORY NO. 15:**

With respect to pertinent subject area (8), please identify the witnesses, whether current

9

1  employees, former employees or third-party witnesses who were involved in the pertinent subject area

2  and for each person provide their current state of residence.

3  **SPECIAL INTERROGATORY NO. 16:**

4      With respect to pertinent subject area (8), identify the name of the team or teams (departments)

5  within Uber who had responsibility for the subject area and the location of the office, or offices, where

6  the people on the team, teams, department or departments.

7  **SPECIAL INTERROGATORY NO. 17:**

8      With respect to pertinent subject area (9), please identify the witnesses, whether current

   employees, former employees or third-party witnesses who were involved in the pertinent subject area

9

10  and for each person provide their current state of residence.

11  **SPECIAL INTERROGATORY NO. 18:**

12      With respect to pertinent subject area (9), identify the name of the team or teams (departments)

13  within Uber who had responsibility for the subject area and the location of the office, or offices, where

    the people on the team, teams, department or departments.

14  **SPECIAL INTERROGATORY NO. 19:**

15      With respect to pertinent subject area (10), please identify the witnesses, whether current

16  employees, former employees or third-party witnesses who were involved in the pertinent subject area

17  and for each person provide their current state of residence.

18  **SPECIAL INTERROGATORY NO. 20:**

19      With respect to pertinent subject area (10), identify the name of the team or teams (departments)

20  within Uber who had responsibility for the subject area and the location of the office, or offices, where

21  the people on the team, teams, department or departments.

22  **SPECIAL INTERROGATORY NO. 21:**

23      Please IDENTIFY whether current or former employees, who are or were involved in the

24  SCREENING OF UBER DRIVERS for the years 2011 to present.

25  ///

Case No. CJC-21-005188 | PLAINTIFFS' SPECIAL INTERROGATORIES TO DEFENDANT UBER TECHNOLOGIES, INC., SET ONE

**SPECIAL INTERROGATORY NO. 22:**

Please IDENTIFY PERSONS, whether current or former employees, who were involved in the development of UBER's DRIVER screening process for the years 2011 to present.

**SPECIAL INTERROGATORY NO. 23:**

Please IDENTIFY of all PERSONS, whether current or former employees, who are or were involved in DRIVER training for the years 2011 to present.

**SPECIAL INTERROGATORY NO. 24:**

Please IDENTIFY of all PERSONS, whether current or former employees, who are or were involved in fielding, reviewing, and responding to PASSENGER complaints of DRIVER misconduct for the years 2011 to present.

**SPECIAL INTERROGATORY NO. 25:**

Please IDENTIFY all PERSONS, whether current or former employees, who are or were involved in the DRIVER discipline, including but not limited to the decision-making process of removing DRIVERS from the UBER platform after receipt of complaints of DRIVER misconduct for the years 2011 to present.

**SPECIAL INTERROGATORY NO. 26:**

Please IDENTIFY of all PERSONS, whether current or former employees, who are or were involved in drafting UBER's community guidelines for the years 2011 to present.

**SPECIAL INTERROGATORY NO. 27:**

Please IDENTIFY all PERSONS, whether current or former employees, who are or were involved in conceptualizing Uber' marketing campaigns, including but not limited to Uber's marketing efforts toward female PASSENGERS, for the years 2011 to present.

**SPECIAL INTERROGATORY NO. 28:**

Please IDENTIFY all PERSONS, whether current or former employees, who are or were involved in designing, Uber' marketing campaigns, including but not limited to Uber's marketing efforts toward female PASSENGERS, for the years 2011 to present.

11

**SPECIAL INTERROGATORY NO. 29:**

For the years 2011 to present, please IDENTIFY all PERSONS, whether current or former employees involved in discussing or making changes to UBER's marketing with respect to advertisements containing young females drinking.

**SPECIAL INTERROGATORY NO. 30:**

Please IDENTIFY all PERSONS, whether current or former employees, who are or were involved in researching possible safety features, regardless of if those features were ultimately implemented, for the UBER APPLICATION from the for the years 2011 to present.

**SPECIAL INTERROGATORY NO. 31:**

Please IDENTIFY all PERSONS, whether current or former employees, who are or were involved in the decision-making process for the safety features that would be implemented on the UBER APPLICATION from the for the years 2011 to present.

**SPECIAL INTERROGATORY NO. 32:**

Please IDENTIFY any third-party company, law enforcement agency, or advocacy organization with whom UBER consulted regarding PASSENGER safety for the years 2011 to present.

**SPECIAL INTERROGATORY NO. 33:**

Please IDENTIFY all PERSONS, whether current or former employees, who are or were, UBER agents trained to handle sensitive report from PASSENGERS for the years 2011 to present.

**SPECIAL INTERROGATORY NO. 34:**

For the years 2017 to 2021, please provide the percentage of trips completed in California in relation to trips completed in the United States.

**SPECIAL INTERROGATORY NO. 35:**

For the years 2017 to 2021, please provide the percentage of complaints received by Uber concerning alleged sexual assaults committed in California in relation to complaints received by Uber concerning alleged sexual assaults committed in the United States.

**SPECIAL INTERROGATORY NO. 36:**

1    Please IDENTIFY all PERSONS, whether current or former employees, involved in UBER's

2    "Don't Stand By" initiative.

3    **SPECIAL INTERROGATORY NO. 37:**

4    For the years 2011 to present, please IDENTIFY the person or PERSONS involved, whether

5    current or former employees, tasked with addressing reports of sexual assault by DRIVERS on

6    PASSENGERS.

7    ///

8    **SPECIAL INTERROGATORY NO. 38:**

9    For the years 2011 to present, please IDENTIFY all of Uber's C-LEVEL EXECUTIVES (for the

10   purposes of these interrogatories, "C-LEVEL EXECUTIVES" shall mean PERSONS with senior

11   managerial responsibility in a business organization including but not limited to Chief executive officer

12   (CEO), chief financial officer (CFO), chief operating officer (COO), and chief information officer

13   **SPECIAL INTERROGATORY NO. 39:**

14   Please IDENTIFY all PERSONS, whether current or former employees, who were involved in

15   UBER's Safety Report released in 2019.

16   **SPECIAL INTERROGATORY NO. 40:**

17   Please IDENTIFY all PERSONS, whether current or former employees, who are or were

18   involved in mandatory reporting of PASSENGER safety to the California Public Utilities Commission

19   ("CPUC") from the years 2011 to the present.

20   **SPECIAL INTERROGATORY NO. 41:**

21   For the years 2011 to present, please describe the business conducted at UBER's corporate office

22   in San Francisco, California.

23   **SPECIAL INTERROGATORY NO. 42:**

24   For the years 2011 to present, please provide the number of employees working out of UBER's

25   corporate office in San Francisco, California.

13

**SPECIAL INTERROGATORY NO. 43:**

For the years 2011 to present, please provide the percentage of employee turnover in UBER's corporate office in San Francisco, California.

**SPECIAL INTERROGATORY NO. 44:**

For the years 2011 to present, please describe the business conducted at UBER's corporate office in Palo Alto, California.

**SPECIAL INTERROGATORY NO. 45:**

For the years 2011 to present, please provide the number of employees working out of UBER's corporate office in Palo Alto, California.

///

**SPECIAL INTERROGATORY NO. 46:**

For the years 2011 to present, please provide the percentage employee turnover at UBER's corporate office in Palo Alto, California.

**SPECIAL INTERROGATORY NO. 47:**

For the years 2011 to present, please describe the business conducted at UBER's corporate office in New York City, New York.

**SPECIAL INTERROGATORY NO. 48:**

For the years 2011 to present, please provide the number of employees working out of UBER's corporate office in New York City, New York.

**SPECIAL INTERROGATORY NO. 49:**

For the years 2011 to present, please provide the percentage employee turnover at UBER's corporate office in New York City, New York.

**SPECIAL INTERROGATORY NO. 50:**

For the years 2011 to present, please describe the business conducted UBER's corporate office in Dallas, Texas.

**SPECIAL INTERROGATORY NO. 51:**

14

1    For the years 2011 to present, please provide the number of employees working out of UBER's

2    corporate office in Dallas, Texas.

3    **SPECIAL INTERROGATORY NO. 52:**

4    For the years 2011 to present, please provide the percentage employee turnover at UBER's

5    corporate office in Dallas, Texas.

6    **SPECIAL INTERROGATORY NO. 53:**

7    For the years 2011 to present, please describe the business conducted at UBER's corporate office

8    in Denver, Colorado.

9    **SPECIAL INTERROGATORY NO. 54:**

10    For the years 2011 to present, please provide the number of employees working out of UBER's

10    corporate office in Denver, Colorado.

11

12    **SPECIAL INTERROGATORY NO. 55:**

13    For the years 2011 to present, please provide the percentage employee turnover at UBER's
corporate office in Denver, Colorado.

14    **SPECIAL INTERROGATORY NO. 56:**

15    For the years 2011 to present, please describe the business conducted at UBER's corporate office

16    in Seattle, Washington.

17    **SPECIAL INTERROGATORY NO. 57:**

18    For the years 2011 to present, please provide the number of employees working out of UBER's

19    corporate office in Seattle, Washington.

20    **SPECIAL INTERROGATORY NO. 58:**

21    For the years 2011 to present, please provide percentage employee turnover at UBER's corporate

22    office in Seattle, Washington.

23    **SPECIAL INTERROGATORY NO. 59:**

24    For the years 2011 to present, please describe the business conducted at UBER's corporate office

25    in Chicago, Illinois.

PLAINTIFFS' SPECIAL INTERROGATORIES TO DEFENDANT UBER
TECHNOLOGIES, INC., SET ONE

1  **SPECIAL INTERROGATORY NO. 60:**

2       For the years 2011 to present, please provide the number of employees working out of UBER's

3  corporate office in Chicago, Illinois.

4  **SPECIAL INTERROGATORY NO. 61:**

5       For the years 2011 to present, please provide the percentage employee turnover at UBER's

6  corporate office in Chicago, Illinois.

7  **SPECIAL INTERROGATORY NO. 62:**

8       For all cases listed in response to Special Interrogatory Number 1, please IDENTIFY the

   DRIVER involved in the disputed assault.

9  Dated: ___, 2022                     **LEVIN SIMES ABRAMS LLP**

10

11

12

13                                                 William A. Levin
                                                   Laurel L. Simes

14                                                 Rachel B. Abrams
                                                   Samira J. Bokaie
                                                   *Attorneys for Plaintiffs*

15

16

17

18

19

20

21

22

23

24

25

Case No. CJC-21-005188                       PLAINTIFFS' SPECIAL INTERROGATORIES TO DEFENDANT UBER TECHNOLOGIES, INC., SET ONE

*SIMES ABRAMS LLP*
Montgomery
Street, Suite 250
San Francisco,
California 94111
415.426.3000
phone •
415.426.3001 fax

# EXHIBIT 5

**SANJAY S. SCHMIDT (SBN 247475)**
**LAW OFFICE OF SANJAY S. SCHMIDT**
1388 Sutter Street, Suite 810
San Francisco, CA 94109
Telephone:    (415) 563-8583
Facsimile:     (415) 223-9717
e-mail:         ss@sanjayschmidtlaw.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JEREMY LAPACHET**, <br><br> Plaintiff, <br> vs. <br><br> **CALIFORNIA FORENSIC MEDICAL GROUP, INC., TAYLOR FITHIAN, M.D., LANI ANTONIO, P.A., VERONICA BERGHORST, R.N., JESSAMAE TRINIDAD, R.N., GRASHIKA DEVENDRA**, Psychiatric **R.N., TABITHA KING, L.V.N., AMARDEEP TAWANA, L.V.N., JUDITH ALEJANDRE, L.V.N., COUNTY OF STANISLAUS**, a municipal corporation, Stanislaus County Sheriff **ADAM CHRISTIANSON, and DOES 1 THROUGH 50**, Jointly and Severally, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL** <br><br> 1. 42 U.S.C. § 1983 – Civil Rights Violations <br> 2. 42 U.S.C. § 1983 – Civil Rights Violations <br> 3. 42 U.S.C. § 1983 – Municipal and Supervisory Liability <br> 4. California Civil Code § 52.1 (b) – State Civil Rights Violations <br> 5. 42 U.S.C. §12132, 28 C.F.R. §35, et seq., and 29 U.S.C. § 794, et seq. – A.D.A. and Rehabilitation Act Violations <br> 6. California Government Code § 845.6 – Failure to Summon Medical Care <br> 7. Negligence <br> 8. Medical Negligence |

Plaintiff, by and through his undersigned attorney, the LAW OFFICE OF SANJAY S. SCHMIDT, for his Complaint against Defendants, states the following:

//

//

Complaint for Damages, Declaratory & Injunctive Relief, and Demand for Jury Trial: *Lapachet v. California Forensic Medical Group, et al.*

1

### JURISDICTION

1.      This is a civil rights action, arising from the assault of – and/or use of unreasonable force – on Plaintiff by COUNTY OF STANISLAUS Correctional Officers and/or, in addition to or in the alternative, the COUNTY OF STANISLAUS and CALIFORNIA FORENSIC MEDICAL GROUP, INC., Defendants' failure to provide for the serious medical needs of the Plaintiff, a pretrial detainee, as well as the failure to provide treatment and self-harm and/or suicide attempt precautions, and other legal obligations concerning Plaintiff's serious medical needs, including medical negligence, which occurred in Monterey County and Stanislaus County, California, resulting in the paralysis of Plaintiff – as well as other serious and permanent bodily injuries, on or about October 25, 2015 - October 26, 2015.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because it is being brought to obtain compensatory and punitive damages for the deprivation, under color of state law, of the rights of citizens of the United States that are secured by the United States Constitution, pursuant to 42 U.S.C. §§ 1983 and 1988.  This action is brought pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, the Americans with Disabilities Act ("ADA") – 42 U.S.C. § 12132 and 28 C.F.R. §35, et seq., the Rehabilitation Act ("RA") – 29 U.S.C. § 794, et seq., and the laws and Constitution of the State of California.  Plaintiff invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367 (a), to hear and decide claims arising under state law.

2.      Venue is proper, pursuant to 28 U.S.C. § 1391(b)(1)-(2), because Defendant CALIFORNIA FORENSIC MEDICAL GROUP, INC. ("CFMG") and Defendant TAYLOR FITHIAN, M.D. ("FITHIAN") both reside in this district, and a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in this judicial district.  The causes of action set forth herein include decisions made in the Northern District of California to violate California law, regulations, and state and national standards governing the provision of health, mental health, and nursing care, as well as the institution and execution of policies, practices, and procedures carried out with deliberate indifference to the serious medical needs of patients

Complaint for Damages, Declaratory & Injunctive Relief, and Demand for Jury Trial: *Lapachet v. California Forensic Medical Group, et al.*

2

that included Plaintiff and other patients, including patients (and the family members of patients) who are citizens and taxpayers residing in the Northern District of California. CFMG currently has contracts to provide health care services – and, thus, operates in, does business in, makes and executes policies and procedures in, and is paid by taxpayer money – in numerous counties in the Northern District of California, including Monterey County, Lake County, Mendocino County, Humboldt County, Sonoma County, Napa County, San Benito County, and Santa Cruz County.

## PARTIES AND PROCEDURE

3.      Plaintiff JEREMY LAPACHET (hereafter "Mr. Lapachet," "Lapachet," or "LAPACHET) is a citizen of the United States and a competent adult.

4.      Defendant COUNTY OF STANISLAUS ("COUNTY") is a municipal corporation, duly organized and existing under the laws of the State of California, and is the employer of the individual COUNTY defendants, as well as certain DOE DEFENDANTS. Under its authority, the COUNTY operates the Stanislaus County Sheriff's Department ("SCSD").

5.      Defendant, Sheriff ADAM CHRISTIANSON ("CHRISTIANSON"), at all times mentioned herein, was employed by Defendant COUNTY as Sheriff for the COUNTY, and was acting within the course and scope of that employment at such times. He is being sued in his individual capacity as Sheriff for the COUNTY. At all material times, SHERIFF CHRISTIANSON was the final policy making official for the COUNTY OF STANISLAUS Sheriff's Department and Jail, ultimately responsible for all policies, procedures, supervision, and training for the SCSD and at the jail.

6.      To-be-identified SCSD supervisors, including Sergeants, Lieutenants, and other commanders, were responsible for supervising correctional officers and other employees, and were responsible for classification, housing, and supervision of inmates, including preventing the use of excessive force by their officers and placement of inmates into proper safety cells and properly monitoring them therein.

7.      Defendant CALIFORNIA FORENSIC MEDICAL GROUP, INC. ("CFMG") was at all times herein mentioned a California Corporation, licensed to do business in California, with its corporate headquarters located in Monterey, California.  At all material times, Defendant CFMG provided medical, mental health, and nursing care to pretrial and post-conviction detainees and prisoners in COUNTY Jails, pursuant to a contract with the COUNTY OF STANISLAUS.  On information and belief, CFMG and its employees and agents are and were at all material times responsible for making and executing policies, procedures, and training related to the medical care and/or mental health care of detainees and prisoners in the COUNTY OF STANISLAUS jails, including, but not limited to, properly assessing and classifying inmates, properly assessing and addressing the general mental health and general medical needs of inmates, and properly assessing and treating the serious medical and mental health needs of inmates, including, but not limited to, prevention of self-harm, suicide attempt prevention, suicide prevention, and observation and treatment of: suicidal and potentially suicidal inmates, inmates suffering from drug induced psychosis, inmates suffering from drug overdoses, and inmates suffering adverse effects from drug ingestion, and/or mental illness, and/or emotional disturbance.  Defendants TAYLOR FITHIAN, M.D. ("FITHIAN"), LANI ANTONIO, P.A., VERONICA BERGHORST, R.N., JESSAMAE TRINIDAD, R.N., GRASHIKA DEVENDRA, Psychiatric R.N., TABITHA KING, L.V.N., AMARDEEP TAWANA, L.V.N., JUDITH ALEJANDRE, L.V.N., the to-be-identified CFMG Stanislaus County Program Manager, any other, to-be-identified CFMG Psychiatric Nurse or Nurses responsible for the COUNTY OF STANISLAUS jails, all other to-be-identified (currently named as "DOEs") CFMG nurses, LVNs, or other staff, as well as certain other DOE Defendants including, but not limited to, CFMG employees and agents, were acting within the course and scope of their employment with CFMG (and within the course and scope of their employment by COUNTY by virtue of CFMG's contract with COUNTY) and were responsible for properly assessing and classifying inmates, properly assessing and addressing the general mental health and general medical needs of inmates, and properly assessing and treating the

Complaint for Damages, Declaratory & Injunctive Relief, and Demand for Jury Trial: *Lapachet v. California Forensic Medical Group, et al.*

4

serious medical and mental health needs of inmates, including, but not limited to, prevention of self-harm, suicide attempt prevention, suicide prevention, and observation and treatment of: suicidal and potentially suicidal inmates, inmates suffering from drug induced psychosis, inmates suffering from drug overdoses, and inmates suffering adverse effects from drug ingestion, and/or mental illness, and/or emotional disturbance, as well as providing appropriate observation and a treatment plan for serious medical needs, prevention and addressing the risk of self-harm by inmates, suicide attempt prevention, suicide prevention, appropriate observation of suicidal or otherwise emotionally disturbed inmates, providing appropriate observation and a treatment plan for inmates suffering the effects of controlled substances, drug-induced states of psychosis, and/or overdoses, and/or inmates who are a danger to themselves by virtue of being under the influence of drugs, and/or mental illness, and/or emotional disturbance, as well as care and treatment for mental illness and emotional disturbance, monitoring the mental health and vital signs of inmates, and promptly rendering and/or summoning medical care when it was needed, including, but not limited to, transferring inmates/patients to inpatient emergency medical or psychiatric facilities.

8.     Plaintiff is informed, believes, and thereon alleges that Defendants FITHIAN and other CFMG employees, agents, and to-be-identified Defendants, at all material times, lived and worked in Monterey County, and performed, directed, oversaw, or supervised telepsychiatry and other medical services at COUNTY OF STANISLAUS's jails remotely, from Monterey, California.  In addition, Defendant FITHIAN oversees all statewide jail operations for CFMG, and sets policies and procedures for all operations, from Monterey County, California, including, but not limited to, perpetuating and approving all policies and procedures that led to Plaintiff's injuries – as well as perpetuating and approving the lack of necessary policies and procedures, as more fully alleged *infra* – and approving or perpetuating policies, or the lack thereof, relating to effectuating, ordering, or otherwise ensuring the transfer of county jail inmates to hospitals for emergency medical and mental health care.

9.      On information and belief, CFMG and Defendant TAYLOR FITHIAN, M.D. are responsible for making and enforcing policies, procedures, and training related to the medical and mental health care of prisoners and detainees in Defendant COUNTY OF STANISLAUS's jail, including: assessing inmates for self-harm risk, prevention of self-harm, suicide attempt prevention, suicide prevention, and observation and treatment of: suicidal, emotionally disturbed, potentially suicidal, inmates suffering from drug induced psychosis, inmates suffering from drug overdoses, and inmates suffering adverse effects from drug ingestion, and/or mental illness, and/or emotional disturbance; instituting appropriate precautions and measures to address these conditions; approving housing classification that takes into account these conditions; instituting appropriate observation to prevent self-harm or attempted suicide; instituting appropriate treatment plans for the serious mental health needs of inmates; communicating about an inmate's self-harm, suicide attempt, or suicide risk with custodial staff, health care professionals, and outside facilities; and, where indicated, effectuating, ordering, or otherwise ensuring the transfer of county jail inmates to hospitals for emergency medical and mental health care.

10.     Defendant TAYLOR FITHIAN, M.D., ("FITHIAN") was at all times herein mentioned a physician licensed to practice medicine in the State of California, a Board certified psychiatrist, and a director, managing agent, employee, and/or agent of Defendant CALIFORNIA FORENSIC MEDICAL GROUP, INCORPORATED, overseeing the provision of medical and psychiatric care at Defendant COUNTY OF STANISLAUS's jail.  Defendant FITHIAN was responsible for overseeing and providing medical and mental health care to prisoners and detainees, and for instituting appropriate policies, procedures, and training concerning prevention of self-harm, suicide attempt prevention, suicide prevention, and observation and treatment of: suicidal and potentially suicidal inmates, inmates suffering from drug induced psychosis, inmates suffering from drug overdoses, and inmates suffering adverse effects from drug ingestion, and/or mental illness, and/or emotional disturbance, as well as providing appropriate observation and a treatment plan for serious medical needs, prevention

Complaint for Damages, Declaratory & Injunctive Relief, and Demand for Jury Trial: *Lapachet v. California Forensic Medical Group, et al.*

6

and addressing the risk of self-harm by inmates, suicide attempt prevention, suicide prevention, appropriate observation of suicidal or otherwise emotionally disturbed inmates, providing appropriate observation and a treatment plan for inmates suffering the effects of drug-induced states of psychosis and/or overdoses and/or inmates who are a danger to themselves by virtue of being under the influence of drugs and/or mental illness and/or emotional disturbance, as well as care and treatment for mental illness and emotional disturbance, monitoring the mental health and vital signs of inmates, promptly rendering and/or summoning medical care when it is needed and, where indicated, effectuating, ordering, or otherwise ensuring the transfer of county jail inmates to hospitals for emergency medical and/or mental health care, which responsibilities and oversight on the part of FITHIAN included risk assessment and prevention protocols for all of these issues, and was acting within the course and scope of that employment at all material times. On information and belief, Defendant FITHIAN was ultimately responsible for CFMG's provision of medical and mental health care to inmates at the COUNTY jail, including prevention of self-harm, suicide attempt prevention, suicide prevention, and observation and treatment of: suicidal and potentially suicidal inmates, inmates suffering from drug induced psychosis, inmates suffering from drug overdoses, and inmates suffering adverse effects from drug ingestion, and/or mental illness, and/or emotional disturbance, as well as providing appropriate observation and a treatment plan for serious medical needs, prevention and addressing the risk of self-harm by inmates, suicide attempt prevention, suicide prevention, appropriate observation of suicidal or otherwise emotionally disturbed inmates, providing appropriate observation and a treatment plan for inmates suffering the effects of drug-induced states of psychosis and/or overdoses and/or inmates who are a danger to themselves by virtue of being under the influence of drugs and/or mental illness and/or emotional disturbance, as well as care and treatment for mental illness and emotional disturbance, monitoring the mental health and vital signs of inmates, promptly rendering and/or summoning medical care when it is needed, and, where indicated, effectuating, ordering, or otherwise ensuring the transfer of county jail inmates to hospitals for emergency medical

Complaint for Damages, Declaratory & Injunctive Relief, and Demand for Jury Trial: *Lapachet v. California Forensic Medical Group, et al.*

7

and/or mental health care or transferring inmates to inpatient psychiatric facilities where their medical needs require such a transfer. At all material times, Defendant FITHIAN was the highest policy-making official for Defendant CFMG.

11.  Furthermore, Defendant FITHIAN was at all times responsible for the medical and psychiatric care provided to JEREMY LAPACHET at COUNTY's jail, and for making sure that LAPACHET was placed on appropriate drug use or drug withdrawal monitoring, that he received a toxicology screening to ascertain any substance he was under the influence of, that he received drug-induced psychosis monitoring and care, self-harm precautions, suicide attempt precautions, and FITHIAN was responsible for effectuating, ordering, or otherwise ensuring the transfer of JEREMY LAPACHET to a hospital for emergency medical and/or mental health care, and was responsible for ensuring that, in general, Plaintiff was timely provided all necessary and appropriate medical and mental health care for all of his medical and mental health needs.

12.  In addition, Defendant FITHIAN was at all times responsible for staffing the CFMG medical and psychiatric services at the COUNTY jail, including, but not limited to, making sure that only properly licensed and credentialed health care providers provide care, and that no provider work outside his or her scope of practice or licensure.

13.  Certain DOE Defendants, at all material times, were employees and agents of Defendant COUNTY OF STANISLAUS, who were responsible for assigning Mr. Lapachet to appropriate housing and housing classification, with appropriate observation and care rendered to him, given his risk of self-harm, his risk of suicide-attempt, his ingestion of a controlled substance, the possibility he was suffering from a drug-induced state of psychosis, the possibility he was suffering from grave, life-threatening, and acute effects from the ingestion of a substance, his medical needs, his excessively elevated vital signs, and other indicators. These to-be-identified DOE Defendants were also responsible for protecting Plaintiff – and had state and federal duties to protect Plaintiff – from harm inflicted by other COUNTY employees and jail staff, other inmates, and any third parties. In doing the acts or omissions hereinafter

Complaint for Damages, Declaratory & Injunctive Relief, and Demand for Jury Trial: *Lapachet v. California Forensic Medical Group, et al.*

8

described, certain DOE Defendants acted within the course and scope of their employment with

Defendant COUNTY OF STANISLAUS and acted under color of state law. The individually

named Defendants and certain DOE Defendants were either Correctional Officers, Sheriff's

Deputies, Sergeants, Captains, Lieutenants, or other Peace Officers, Doctors, Nurses, Social

Workers, and/or civilian employees and/or agents who were responsible for the care, housing,

observation, and safety of inmates, including JEREMY LAPACHET, and/or the transfer of

JEREMY LAPACHET to an inpatient facility for inpatient medical and/or psychiatric care.

14. Despite Plaintiff's repeated and lawful requests to Defendant COUNTY OF

STANISLAUS for all records related to or in any way concerning JEREMY LAPACHET,

which requests clearly included, but were not limited to, all custody, housing, use of force, and

safety cell records and logs, Defendant COUNTY has persistently refused to provide any such

records or information to Plaintiff. Plaintiff reserves the right to add allegations and/or

Defendants after receiving the withheld information from Defendant COUNTY.

15. Certain DOE Defendants, at all material times, were employees and agents of

Defendant COUNTY OF STANISLAUS; pursuant to Rule 8(d)(2) of the Federal Rules of Civil

Procedure, Plaintiff alleges in the alternative that these to-be-identified DOE Defendants

viciously attacked Mr. Lapachet and/or dragged Mr. Lapachet in a violent fashion by his head

and/or or neck or otherwise in such a fashion so as to injure his head and/or neck and/or failed

to protect Mr. Lapachet and/or otherwise used excessive and unreasonable force on Plaintiff,

including, but not limited to, stomping on, and/or kicking, and/or punching, and/or dragging

him by his head, neck, or elsewhere, and/or torquing his arms in such a fashion so as to

proximately inflict the injuries described in this Complaint. In doing the acts or omissions

hereinafter described, these certain DOE Defendants acted within the course and scope of their

employment with Defendant COUNTY OF STANISLAUS and acted under color of state law.

The individually named Defendants and certain DOE Defendants were Correctional Officers,

Sheriff's Deputies, Sergeants, Captains, Lieutenants, or other Peace Officers and/or civilian

employees and/or other agents of COUNTY.

Complaint for Damages, Declaratory & Injunctive Relief, and Demand for Jury Trial: *Lapachet v. California Forensic Medical Group, et al.*

9

16.     The Defendants named above and certain DOE DEFENDANTS are sued in their individual capacities.

17.     The true names or capacities, whether individual, corporate, associate, or otherwise, of Defendants named herein as DOES 1 through 50 are unknown to Plaintiff, who therefore sues said Defendants by said fictitious names.  Plaintiff will amend this Complaint to show said Defendants' true names and capacities when the same have been ascertained. Plaintiff is informed, believes, and thereon alleges that all Defendants sued herein as DOES are in some manner responsible for the acts, omissions, and injuries alleged herein.

18.     Plaintiff alleges, on information and belief, that each of the Defendants sued herein was wrongfully, deliberately indifferently, negligently, and/or otherwise responsible in some manner for the events and happenings as hereinafter described, and proximately caused injuries and damages to Plaintiff.  Further, one or more DOE Defendants was at all material times responsible for the hiring, training, supervision, and discipline of other defendants, including both individually named and to-be-identified DOE Defendants.

19.     Plaintiff is informed, believes, and thereon alleges that each of the Defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things hereinafter alleged, was acting within the course and scope of that relationship.  Plaintiff is further informed, believes, and thereon alleges that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may hereinafter be otherwise, specifically alleged.  At all material times, each Defendant was an integral participant, jointly and fundamentally engaged in constitutionally violative, unlawful, and/or tortious activity, resulting in the deprivation of Plaintiff's constitutional rights and other actionable harm.

20.     The acts and omissions of all Defendants were at all material times pursuant to the actual customs, policies, practices, and/or procedures of the COUNTY OF STANISLAUS and/or CFMG.

Complaint for Damages, Declaratory & Injunctive Relief, and Demand for Jury Trial: *Lapachet v. California Forensic Medical Group, et al.*

10

21.   At all material times, each Defendant acted under color of the laws, statutes, ordinances, and regulations of the State of California.

22.   A proper and timely tort claim was presented to the COUNTY OF STANISLAUS on behalf of Plaintiff, pursuant to Government Code § 910 et seq., and this action was thereafter timely filed within all applicable statutes of limitation.

23.   Proper and timely notice of Plaintiff's intent to file suit for medical negligence was served on CFMG, pursuant to Code of Civil Procedure § 364, and this action was thereafter timely filed within the applicable statute of limitations.

24.   This complaint is pleaded in the alternative, pursuant to Rule 8(d)(2) of the Federal Rules of Civil Procedure.

## GENERAL ALLEGATIONS

25.   JEREMY LAPACHET is a 41-year old man; he entered the COUNTY OF STANISLAUS jail with the ability to walk, run, jog, and use all of his extremities freely; he left the jail in a stretcher, on or about October 26, 2015, a quadriplegic with grievous, life-altering injuries, including, but not limited to, severe spinal cord injuries, a skull fracture and subdural hematomas, a traumatic brain injury, and a torn rotator cuff, inter alia.

26.   On December 9, 2014, Plaintiff was booked into the COUNTY jail. Sheriff ADAM CHRISTIANSON took custody of Mr. LAPACHET and he was held in the Stanislaus County Jail thereafter; he was housed at the Public Safety Center ("PSC") at the time he sustained grievous injuries, from which he was eventually transported to Doctors Medical Center hospital, in Modesto, on October 26, 2015.

27.   On October 24, 2015, at or around 5:50 p.m., Mr. Lapachet was placed in the "Sobering Cell" because COUNTY staff and CFMG staff became aware that he had been injected with and was under the influence of an unknown controlled substance. Mr. Lapachet was **not** placed in a safety smock; he remained in regular clothing. It was reported to CFMG Defendant JESSAMAE TRINIDAD, R.N. ("TRINIDAD"), that another inmate had injected Mr. Lapachet, the CFMG patient, with an unknown substance in his right "AC" (presumably

Complaint for Damages, Declaratory & Injunctive Relief, and Demand for Jury Trial: *Lapachet v. California Forensic Medical Group, et al.*

11

the acromioclavicular joint); TRINIDAD noted three red marks in his right AC, with bruising present.  Mr. Lapachet reported that he had experience with the effects of various drugs when he was not in custody ("on the outside"), and that the substance he had been injected with did not feel like any he had ever ingested in the past.

28.     Prior to Mr. Lapachet's placement into the Sobering Cell, he also had been observed engaging in self-harming, suicidal behaviors, including assaulting himself by punching himself multiple times.  COUNTY jail staff reported this to CFMG staff.

29.     Less than an hour later, on October 24, 2015, at around 6:46 p.m., CFMG Defendant TABITHA KING ("KING"), a Licensed Vocational Nurse, documented an "Emergency Response," indicating she responded to a call for possible drug use.  Her report indicates COUNTY jail staff notified her that Mr. Lapachet had or had possibly ingested drugs while in the jail.  KING responded to the call by the correctional officers; CFMG Defendant LANI ANTONIO ("ANTONIO"), a Physician's Assistant, was also notified of this, either by KING or by COUNTY jail staff.  When KING arrived, she saw Mr. Lapachet sitting on a chair, with handcuffs on; his hands were trembling and he was restless.  His vital signs were taken at 6:46 p.m., on 10/24/15, and they indicated excessive elevation: 140/100 – blood pressure, heart rate – 138 bpm.  Mr. Lapachet's pupils were dilated and non reactive to light, a clear indicator of stimulant ingestion, such as methamphetamine, which should have been apparent to Defendants and which inferably could have a component of the substance with which Mr. Lapachet had been injected.  Mr. Lapachet was placed in the "Sobering Cell" and was placed on "drug withdrawal monitoring." At about 6:53 p.m., Defendant ANTONIO directed merely that Mr. Lapachet's vital signs were to be monitored "Q6 hrs until stable[,]" i.e., every six hours.  Given these circumstances and the risk of unknown, escalating effects from an unknown substance, and Plaintiff's elevated vital signs, both Defendants KING and ANTONIO should have ordered a toxicology screening test to determine what substance or substances Plaintiff had been injected with, and should have promptly requested and/or dispatched emergency

Complaint for Damages, Declaratory & Injunctive Relief, and Demand for Jury Trial: *Lapachet v. California Forensic Medical Group, et al.*

12

medical care for Mr. Lapachet at this time, but failed to do so, with deliberate indifference to his serious medical needs.

30.     On October 24, 2015, at about 8:02 p.m., a Sobering Cell check was performed by CFMG Defendant JESSAMAE TRINIDAD, R.N. ("TRINIDAD").  TRINIDAD noted that Mr. Lapachet was touching his chest multiple times, pacing in his cell, and appeared very anxious and restless; he was complaining that his chest was "bigger than ever," and that his lungs and chest were retaining fluid.  Redness was noted on Mr. Lapachet's chest.  Yet, instead of immediately summoning emergency medical care, Mr. Lapachet was merely told by TRINIDAD and/or others to "relax." TRINIDAD did not order a drug screening test, did not summon an ambulance, nor did she request or institute any increased supervision or treatment plan for him, all with deliberate indifference to his serious medical needs.

31.     On October 24, 2015, at 11:46 p.m., the next Sobering Cell check was performed by CFMG Defendant JUDITH ALEJANDRE, L.V.N. ("ALEJANDRE"), which indicated that Mr. Lapachet's vital signs were still elevated: his blood pressure was 150/100 and his heart rate was 140 bpm.  Despite these elevated vital signs, which had been elevated for at least 5+ hours at this point, in the context of a report that Mr. Lapachet had been injected with an unknown drug, ALEJANDRE still did not order or request permission to order a toxicology screening test, summon an ambulance or have Mr. Lapachet transported for emergency medical care, nor did she request or institute any increased supervision or treatment plan for him, all with deliberate indifference to his serious medical needs.

32.     Apparently, Mr. Lapachet was deemed "stable" a little over five hours after being placed in a Sobering Cell, on October 25, 2015, at approximately 00:00 hours, even though his vital signs were still "**elevated**" at this time.  He was moved to what was characterized as a "Safety Cell," from a Sobering Cell.  However, on information and belief, this cell was merely a single cell, which lacked the precautions "safety cells" generally have; it still had all the furniture and access to items that normal cells have – it was not a single cell that lacked any furniture (i.e., no sink, no bunk, no toilet) and had only a hole in the ground.

Complaint for Damages, Declaratory & Injunctive Relief, and Demand for Jury Trial: *Lapachet v. California Forensic Medical Group, et al.*

13

Additionally, Mr. Lapachet was not placed into a safety smock or other safety garment.  CFMG Defendant VERONICA BERGHORST, R.N. ("BERGHORST"), noted, at 12:15 a.m., on 10/25/15, that Mr. Lapachet was "cleared from sobering cell by custody staff at 2351.  Placed on VS q6 hrs until stable." Despite having elevated vital signs, in the context of a report that Mr. Lapachet had been injected with an unknown drug, and in the context of posing a danger to himself, BERGHORST did not order a toxicology screening test, did not summon an ambulance or have Mr. Lapachet transported for emergency medical care, nor did she request or institute any increased supervision or treatment plan for him, all with deliberate indifference to his serious medical needs.

33.     CFMG personnel and COUNTY personnel knew and/or should have known Mr. Lapachet presented a serious danger to his own safety – in addition to being under the influence of an unknown substance, and in the context of a report by Mr. Lapachet that the substance was making him feel strange effects he had never experienced before, which effects were manifesting through elevated vital signs, inter alia – because, prior to being allegedly placed in a "Safety Cell,"[1] he was **found to be hitting his head and face with his own fists**, as observed by both COUNTY jail personnel and as reported to – or observed by – CFMG personnel.

34.     On October 25, 2015, at 12:15 a.m., Mr. Lapachet was in a "Safety Cell" (which was a single cell) and was or was supposed to be being monitored for "Drug Withdrawal" or the effects of the substance; CFMG staff knew and COUNTY jail staff knew Mr. Lapachet was under the influence of an unknown substance.  He had been cleared from the Sobering Cell and apparently moved to the "Safety Cell," despite the fact that his vital signs were elevated.  Mr. Lapachet had been placed in a Safety Cell due to signs of **suicide** and **depression** because he had been engaging in self-harming behaviors, including, but not limited to, self-mutilating injuries on his body that had been observed by both COUNTY and CFMG staff.

---

[1] Where the term "Safety Cell" is used in certain places in this Complaint, it refers in such places merely to the term employed by CFMG staff, but does not necessarily connote a cell with the same attributes and precautions as the term is generally understood to connote.

35.     At 5:01 a.m., on October 25, 2015, Mr. Lapachet's vital signs were checked again, which indicated the elevated levels of: a blood pressure of 162/98 and a heart rate of 140 bpm; it is not clear whether his pupils were re-checked at this time, despite the fact they previously were non-reactive to light and were dilated.  CFMG Defendant BERGHORST's 5:45 a.m. note states that Mr. Lapachet related to the CFMG medical staff at this time that "people were going to get him in his cell." No further treatment was rendered, other than to "encourage fluids." BERGHORST's notes indicate that Mr. Lapachet was "under the influence of unknown substance" and that his vital signs were **elevated** when he was cleared from the sobering cell.  Despite Mr. Lapachet's excessively elevated vital signs, which had been elevated for at least nearly 10+ hours at this point, in the context of a report that Mr. Lapachet had been injected with an unknown drug, and in the context of Mr. Lapachet engaging in self-mutilating/self-harming behavior, BERGHORST still did not order a toxicology screening test, did not summon an ambulance or have Mr. Lapachet transported for emergency medical care, nor did she request or institute any increased supervision or treatment plan for him, all with deliberate indifference to his serious medical needs.

36.     At 9:08 a.m., on October 25, 2015, CFMG R.N. Varinder Sablok apparently tried to perform a "Drug Withdrawal" monitoring evaluation (which apparently consists only of a vital signs check), but the note indicates that it was not performed because the "patient was not in unit." On information and belief, COUNTY staff had removed Mr. Lapachet or otherwise had negligently or wrongfully prevented this monitoring from occurring and should have enabled it by cooperating with or assisting CFMG staff.  CFMG R.N. Sablok inferably did not look for Mr. Lapachet or inquire with COUNTY staff to enable the evaluation; he abandoned this check without any follow-up.  Sablok did not request or institute any increased supervision or treatment plan for him, with deliberate indifference to his serious medical needs.

37.     At about 4:00 p.m., on October 25, 2015, CFMG Defendant AMARDEEP TAWANA, L.V.N. ("TAWANA"), conducted a check on Mr. Lapachet, in order to monitor the effects of the substance both CFMG and COUNTY knew he had ingested, and TAWANA and

Complaint for Damages, Declaratory & Injunctive Relief, and Demand for Jury Trial: *Lapachet v. California Forensic Medical Group, et al.*

15

other CFMG and COUNTY staff observed him standing beside the wall in his cell, with a towel tightly tied around his left wrist. TAWANA asked the COUNTY custody staff to open up the door to Plaintiff's cell for a vital signs check, but the COUNTY custody staff refused to do so. TAWANA and possibly other CFMG medical staff told the COUNTY custody staff that Mr. Lapachet, their patient, "doesn't look right," and again requested access to Mr. Lapachet to check his vital signs, but the COUNTY custody staff allegedly refused, again. CFMG staff, including TAWANA, related their concern to COUNTY staff about the towel that was tightly tied around Mr. Lapachet's left wrist, but this concern was disregarded and downplayed by the COUNTY custody staff. CFMG staff and COUNTY jail staff observed Mr. Lapachet standing on the door, talking to himself, and smiling. CFMG staff, including TAWANA, and COUNTY staff, with deliberate indifference, failed to order a toxicology screening test, failed to immediately summon medical care or to have him admitted for psychiatric observation, failed to have him transported to the emergency room, and did not request or institute any increased supervision or treatment plan for him, all with deliberate indifference to his serious medical needs.

38.     At about 5:30 p.m., on October 25, 2015, CFMG staff, including Defendant TAWANA, was summoned for a "man down" because Mr. Lapachet was bleeding from his nose and the right, upper side of his head; this was the next time that a Drug Withdrawal Monitoring evaluation, or any checkup for that matter, was performed. Both CFMG and COUNTY staff were present. Although Mr. Lapachet was bleeding from his nose and the upper side of his head, Defendant TAWANA minimized the gravity of his condition and failed to conduct a complete evaluation or summon medical care, noting that there were "no visible injuries." This indicates TAWANA, an L.V.N., obviously was not qualified to render any care. Her conduct clearly fell below the applicable standard of care for this and numerous other reasons. And, instead of immediately summoning medical care and further evaluating Mr. Lapachet's condition, or transporting him to the emergency room to be seen by trauma doctors, given that he was bleeding from his nose and head, CFMG staff simply noted that, since he was

Complaint for Damages, Declaratory & Injunctive Relief, and Demand for Jury Trial: *Lapachet v. California Forensic Medical Group, et al.*

16

currently being "monitored due to unknown substance abuse," they would "continue to monitor" him, which apparently consisted merely of attempting to check his vital signs every four or six or so hours. CFMG and COUNTY staff knew that Mr. Lapachet had been placed in the so-called "Safety Cell" due to signs of suicide and depression, including his infliction of self mutilating injuries on his body, and that he posed a risk to his own safety and was under the influence of an unknown substance, but did not order a toxicology screening test, and did not summon medical care or transfer his care to the emergency room, nor did the Defendants request or institute any increased supervision or treatment plan for him, all with deliberate indifference to his serious medical needs.

39. The CFMG employees and Defendants who responded did not transfer Plaintiff to a hospital or call an ambulance, but rather conducted an on-site response. Plaintiff is informed, believes, and thereon alleges that the contract between CFMG and Defendant COUNTY created a financial incentive for CFMG to refrain from sending Mr. Lapachet and other inmates in need of inpatient hospitalization or other intensive care off-site for their needed care.

40. At about 5:55 pm, on October 25, 2015, CFMG Defendant TAWANA observed Mr. Lapachet in the Safety Cell, and noted that he was without a safety garment. TAWANA noted Mr. Lapachet was resistant to following directions. Also, self-mutilating injuries were observed, and **Mr. Lapachet had wrapped towels around his body again,** this time wrapping towels **around his neck and both hands**. The mental health RN for CFMG, Defendant GRASHIKA DEVENDRA, a Psychiatric R.N. ("DEVENDRA"), was notified at 6:10 on October 25, 2015, but, on information and belief, no follow-up by Defendant DEVENDRA was ever done, and no further rounds were performed by DEVENDRA in order to evaluate and monitor Mr. Lapachet. CFMG Defendants TAWANA and DEVENDRA failed to provide a safety garment – or ensure one was provided, failed to order a toxicology screening test, failed to immediately summon medical care or to have him admitted for psychiatric observation, failed to have him transported to the emergency room, and did not request or institute any

Complaint for Damages, Declaratory & Injunctive Relief, and Demand for Jury Trial: *Lapachet v. California Forensic Medical Group, et al.*

17

1    increased supervision or treatment plan for him, all with deliberate indifference to his serious

2    medical needs.

3            41.     At about 5:58 p.m., on October 25, 2015, Defendant TAWANA noted that she

4    responded with other medical staff and found Mr. Lapachet laying on the floor, bleeding "from

5    an unknown place," and surrounded by COUNTY jail custody staff.  Mr. Lapachet had blood

6    on his mouth, forehead, and both hands.  Mr. Lapachet was apparently using "filthy language to

7    medical and custody staff" while he was suicidal, depressed, and had self-mutilating injuries

8    that precipitated the placement of him in a "Safety Cell." Despite his clear injuries, COUNTY

9    jail correctional officers violently dragged Mr. Lapachet out of his cell by his head and neck,

10   after he had allegedly used filthy language with the medical and custody staff, which was, in

11   part, in response and retaliation to the use of such language.  When COUNTY correctional

12   officers had dragged Mr. Lapachet, he told them they were hurting him.  CFMG personnel,

13   including TAWANA, noted blood on Mr. Lapachet's mouth, his hands, and blood smeared on

14   his forehead.  Mr. Lapachet had a towel tied around his left wrist and a towel under his neck.

15   The COUNTY correctional officers had also observed Plaintiff with a towel tied around his

16   neck.  The COUNTY staff and Defendant TAWANA all disregarded the need to summon

17   emergency medical care and disregarded the need to have Mr. Lapachet admitted for inpatient

18   psychiatric and medical care.  The to-be-identified COUNTY Shift Sergeant had directed that

19   Mr. Lapachet be placed in a "safety cell" due to the risk of Mr. Lapachet inflicting injuries to

20   himself.  Despite his clear injuries, including both those that were visible and those that he had

21   reported, COUNTY staff **dragged** Mr. Lapachet violently, by his head and neck, to a "Safety

22   Cell," which, on information and belief, was merely a single cell.  Despite the fact he had been

23   apparently self-inflicting injuries, too, CFMG Defendant TAWANA failed to provide a safety

24   garment and did not request or institute any increased supervision or treatment plan for him,

25   with deliberate indifference to his serious medical needs.  The only action TAWANA

     apparently might have taken was to schedule a mental health "evaluation" to be conducted the

     **next morning**, but there is no indication that this ever even took place, despite its gross

Complaint for Damages, Declaratory & Injunctive Relief, and Demand for Jury Trial: *Lapachet v. California Forensic Medical Group, et al.*

18

1   inadequacy in the first place. CFMG staff, including TAWANA, DEVENDRA, and others,

2   and COUNTY staff, with deliberate indifference, failed to order a toxicology screening test,

3   failed to immediately summon medical care or to have him admitted for psychiatric

4   observation, failed to have him transported to the emergency room, and did not request or

5   institute any increased supervision or treatment plan for him, all with deliberate indifference to

6   his serious medical needs.

7       42.   On October 25, 2015, at about 6:58 p.m., during a second "Suicide Watch" of

8   Mr. Lapachet in the "Safety Cell," Defendant TAWANA observed that Mr. Lapachet was still

9   without a safety garment, was "still laying on the floor," and had dried blood on his face and

10  nose. At this time, TAWANA still did not request or institute any increased supervision or

11  treatment plan for him, with deliberate indifference to his serious medical needs. Again, the

12  CFMG employees who responded did not order a toxicology screening test, and did not transfer

13  him to a hospital or call an ambulance, but rather conducted an on-site response; on information

14  and belief, this was due, at least in part, to the contractual incentive for CFMG to refrain from

15  sending Mr. Lapachet off-site for inpatient hospitalization because that would cost more

16  money, as well as the policies, procedures, habits, and customs of CFMG and COUNTY, as

    well as the lack or inadequacy thereof.

17      43.   On October 25, 2015, at 11:02 p.m., Defendant TAWANA conducted a check,

18  and noted that Mr. Lapachet was still laying flat. TAWANA apparently scheduled a mental

19  health evaluation for the next morning (the notation indicates "MH eval sche'd next morning"),

20  but, with deliberate indifference to Mr. Lapachet's serious medical needs, there is no indication

21  that this was ever scheduled and, apparently, this appointment or mental health evaluation was

22  never conducted. Furthermore, TAWANA did not request or institute any increased

23  supervision or treatment plan for Mr. Lapachet, with deliberate indifference to his serious

    medical needs, and, if she did, she failed to follow-through and execute any such plan.

24      44.   At 11:24 p.m., on October 25, 2015, CFMG Defendant Veronica BERGHORST,

25  R.N., conducted a check that inferably consisted of no more than observing that Mr. Lapachet,

Complaint for Damages, Declaratory & Injunctive Relief, and Demand for Jury Trial: *Lapachet v. California Forensic Medical Group, et al.*

19

the "[p]atient is currently in [a] safety cell." Despite the preceding events and Mr. Lapachet's status, BERGHORST did not order a toxicology screening test, did not summon emergency care, did not send Mr. Lapachet to the emergency room or request he be transported there, nor did she even request or institute any increased supervision or treatment plan for him, with deliberate indifference to his serious medical needs.

45. On October 26, 2015, a cryptic Suicide Watch Report monitoring note by BERGHORST, ostensibly reported at about **12:40 a.m.**, states that Mr. Lapachet was "found laying" in the "prone position" and that, per the COUNTY custody staff, the patient (Mr. Lapachet) had "not moved since he was placed in [the] safety cell." It was not until this time that any of the CFMG staff or COUNTY staff had attempted to provide Mr. Lapachet with a safety garment. Mr. Lapachet was noted to be "cooperative" at this time, but his respirations were labored. Defendant BERGHORST responded to Mr. Lapachet's cell, along with other CFMG personnel, when, during a safety cell "assessment," Mr. Lapachet was **found *laying prone with liquid pooled around his face and upper body***. The liquid was **yellow with spots of dark brown coffee ground appearance in the center**.

46. Defendant BERGHORST indicated that Mr. Lapachet was laying flat and was heard talking; his airway and respirations **were irregular** and **shallow**. An examination of his mouth and throat revealed the presence of blood, and dried blood was observed around his nose and mouth. Mr. Lapachet was removed from his cell by COUNTY correctional officers and placed in a sitting position against the cell door. Mr. Lapachet reported that his neck was hurting. He was placed in a C-collar. It is unclear how long CFMG staff, including RN BERGHORST, continued to try to treat and examine Plaintiff before calling for an ambulance, but it appears that about forty seven (47) minutes passed before CFMG Defendant BERGHORST requested that the COUNTY Sergeant on duty call for American Medical Response ("AMR"), at 12:49. BERGHORST characterized Mr. Lapachet as being "alert" the entire time and "oriented to name," but Mr. Lapachet stated he was in the San Joaquin County

Complaint for Damages, Declaratory & Injunctive Relief, and Demand for Jury Trial: *Lapachet v. California Forensic Medical Group, et al.*

20

Jail when asked where he was, and he did not remember being placed in the "Safety Cell," which, on information and belief, was merely a single cell.

47. Defendant BERGHORST characterized Mr. Lapachet as "alert," but "not moving." CFMG Defendants BERGHORST, ALEJANDRE, and Robin Mehring, LVN, were present; RN BERGHORST misleadingly characterized the history that led up to this emergency response as being that Mr. Lapachet had been placed in the "sobering cell" on 10/24/15 and then was placed on "drug W/D monitoring" until stable, on 10/25/15, at approximately 0000, completely omitting mention of his previous placement in the "Safety Cell" (i.e., the single cell) for being a danger to himself for engaging in self-mutilating and self-harming behaviors.

48. AMR was called at 12:52 and the EMS personnel arrived at Mr. Lapachet's side at about 12:59 a.m. AMR was informed that Mr. Lapachet had been "brought over" to the observation cell after he was found "hitting himself," which occurred after he had possibly ingested 2-3 dime bags of "dope." AMR was told that, during "rounds," the COUNTY staff had found Mr. Lapachet lying face down in a pool of blood and other bodily fluids. Mr. Lapachet at that time was able to state that he "hurt all over," but he had mumbled speech and was slow to respond. Nonetheless, the COUNTY staff had then dragged Mr. Lapachet out of his cell, and then CFMG medical staff was called "for evaluation." Mr. Lapachet was placed in a C-collar and then EMS (AMR) was called.

49. Mr. Lapachet was placed into full spine precautions and was taken to the emergency room from the COUNTY jail (PSC), at about 1:23 a.m., by AMR, and arrived at the Doctors Medical Center hospital at 1:39 a.m.

50. Prior to being placed in a "Safety Cell," LAPACHET was found to be hitting his head and face with his own fists, as observed by both COUNTY jail personnel and as reported to – and/or observed by – CFMG personnel; after being placed in the Safety Cell without a safety garment, such as a safety smock, he continued to assault himself, as observed by the COUNTY jail personnel and observed by – or inferably reported to – CFMG personnel. There was a bunk in the cell, but no other inmates. In violation of generally accepted jail standards

Complaint for Damages, Declaratory & Injunctive Relief, and Demand for Jury Trial: *Lapachet v. California Forensic Medical Group, et al.*

21

that have been in place for several years and which were in place prior to the events described herein, COUNTY placed Plaintiff in a cell with bunk beds – a height from which a disturbed individual that posed a danger to themselves could jump – and Plaintiff was provided regular clothing, linen, bed, a table, sink, and toilet.  It was not a padded cell, nor was it an empty cell with nothing more than a toilet hole in the floor, but Plaintiff was alone inside of it.  On information and belief, this "Safety Cell" was merely a single cell.

51.    COUNTY jail staff had allegedly found Mr. Lapachet punching himself in the head repeatedly, both before and after he was placed in a "Safety Cell," but he was permitted to keep doing so by the COUNTY jail staff and CFMG staff, since they had not placed him in a safety garment, nor had they otherwise restricted his ability to inflict harm to himself by, for e.g., placing him in a real safety cell that had no furniture or heights.  COUNTY staff allegedly found Mr. Lapachet down on the ground, near the sink, in his cell.  This is when CFMG was summoned and then, about 47+ minutes later, AMR was summoned.

52.    After being admitted to the hospital and undergoing various diagnostic testing, it was learned that Mr. Lapachet had sustained grievous and permanent injuries, including, but not limited to, the following:

    a. He was unable to feel or move his legs: he had no purposeful movements or sensation in his lower extremities;
    b. Cervical Spine fracture at C5 with a variety of severe spinal cord injuries;
    c. Right-sided epidural hematoma with 3 mm midline shift;
    d. Subdural hematomas;
    e. Bilateral subdural hematoma;
    f. Nondepressed skull fracture;
    g. Right sphenoid wing fracture; fracture along coronal suture;
    h. Various fractures in the skull and surrounding areas, and epidural hematoma with mass effects of the adjacent brain and 3-mm midline shift;
    i. Displaced right frontotemporal skull fracture with associated epidural hematoma;
    j. Nondisplaced fracture along left side of coronal suture;
    k. Extra-axial hematoma along the left frontoparietal lobe;
    l. Left sided facial hematoma;
    m. The procedures his injuries required included, but were not limited to: right frontotemporal craniotomy and evacuation of right frontotemporal extradural hematoma and repair of simple cranial fracture;
        i. Right frontotemporal craniotomy;

           ii.   Evacuation of epidural hematoma;

          iii.   Repair of right frontotemporal nondepressed skull fracture;

  n.   Torn rotator cuff on his Right shoulder;

  o.   In Summary:

           i.   Quadriplegia; traumatic cervical spinal cord injury;

          ii.   Skull fractures;

          iii.   Torn rotator cuff;

          iv.   Traumatic brain injury;

  p.   Permanent Paralysis; Mr. Lapachet is now a Quadriplegic.

53.     As set forth above, Defendant COUNTY contracts with Defendants CFMG and FITHIAN to provide medical and mental health care for all inmates in COUNTY jails. Defendant FITHIAN is a Board Certified psychiatrist, and oversees the delivery of all medical, dental, and psychiatric care in all facilities CFMG serves. He also provides telepsychiatry services for Defendant COUNTY, as an employee, director, and managing agent of Defendant CFMG.

54.     On information and belief, the amount of medical care CFMG is contracted to provide to COUNTY is grossly inadequate for the medical needs of the number of jail inmates in COUNTY's facilities, and constitutes a policy of the COUNTY and CFMG of deliberate indifference to the serious medical/psychiatric needs of inmates at COUNTY OF STANISLAUS facilities. Policymaking officials and other officials for COUNTY knew at all relevant times prior to the events giving rise to this suit that the number of individuals housed in COUNTY jails who were in need of mental health services overwhelmed the services that COUNTY and CFMG was capable of providing, and that the COUNTY and CFMG staff was grossly insufficient to provide the proper level of care for the population of inmates that had mental illnesses or who were suffering from mental illnesses.

55.     The United States Department of Justice has found that approximately 64% of jail inmates suffer from mental health problems. The COUNTY and CFMG knowingly, and with deliberate indifference to the serious medical/psychiatric needs of inmates, contracted to provide inadequate psychiatric care to inmates within the COUNTY'S jails.

56.     On information and belief, the COUNTY knew or should have known that the medical and mental health staffing that CFMG provided and provides was inadequate for the

Complaint for Damages, Declaratory & Injunctive Relief, and Demand for Jury Trial: *Lapachet v. California Forensic Medical Group, et al.*

23

COUNTY's corrections program operations. Yet, Plaintiff is informed, believes, and thereon alleges that neither the COUNTY nor CFMG took appropriate steps to rectify their inadequate medical and mental health staffing.

57. CFMG is the largest private provider of correctional healthcare in the State of California, stating on its website that it currently has contracts covering 67 facilities with an average daily population of 16,000 inmates. CFMG currently has contracts to provide health care services in numerous counties in the Northern District of California, including Monterey County, Lake County, Mendocino County, Humboldt County, Sonoma County, Napa County, San Benito County, and Santa Cruz County.

58. CFMG has been widely criticized for its inadequate health care provided to inmates throughout the State of California. CFMG holds itself and its officers, directors, and managing agents out as experts in the field of correctional health care. Yet, jail facilities served by CFMG have a 50% higher rate of death by suicide or drug overdose than non-CFMG facilities. Plaintiff is informed and believes that, throughout California, CFMG and FITHIAN have a policy and/or practice of providing unqualified, incompetent, and insufficiently licensed medical staff. Plaintiff is informed and believes that in this case, CFMG and FITHIAN knew generally accepted standards required that their mental health services in the COUNTY jail facilities be staffed with psychiatrists, psychologists, licensed clinical social workers and other licensed therapists, and that if they staffed their mental health services with registered nurses, those registered nurses were required to have advanced postgraduate mental health education and work under the supervision of a higher level caregiver, such as a physician, at all times. With deliberate indifference to the serious medical needs of patients, Defendants staffed their mental health services at COUNTY jail with insufficiently credentialed, unqualified caregivers.

59. While in the custody of COUNTY and Sheriff CHRISTIANSON in their Jail, and under the care of COUNTY and CFMG, Mr. LAPACHET began suffering from a serious, but treatable, reaction to a controlled substance and/or a mental illness and manifesting such reaction/illness with his words and conduct; his condition worsened, he began to engage in self-

Complaint for Damages, Declaratory & Injunctive Relief, and Demand for Jury Trial: *Lapachet v. California Forensic Medical Group, et al.*

24

harming behaviors, and due to the negligence or deliberate indifference of COUNTY jail staff, his condition and the effects escalated, leading to Mr. Lapachet's grievous and life-altering injuries. Mr. Lapachet was allowed access to and ingested drugs of an unknown origin and type, he suffered ill effects from these drugs, including, but not limited to, a severe reaction or mental illness, he potentially suffered from a drug-induced state of psychosis, he suffered from a mental health illness, he possibly became suicidal, and clearly became a danger to himself.

60. However, neither DR. FITHIAN nor any CFMG Defendant, nor any other CFMG nurse or employee, nor any COUNTY employee, at any point ever ordered a toxicology screening test, had Mr. Lapachet admitted to the hospital or to an inpatient mental health facility, and none of the above-referenced individuals ever created, requested, or instituted an appropriate or adequate treatment plan for Mr. Lapachet, as required by generally accepted standards for care of individuals in Mr. Lapachet's circumstances and, in general, the mentally ill in jails.

61. At no time during Mr. Lapachet's entire incarceration did Defendant FITHIAN, or any other CFMG Defendant, or any other CFMG employee or COUNTY employee, ever create an appropriate treatment plan for MR. LAPACHET, or provide appropriate care, observation and housing for Mr. Lapachet, all with deliberate indifference to Plaintiff's serious medical needs.

62. During the entire time that Plaintiff was under observation for possible drug overdose and was under suicide watch – or under watch for otherwise posing a danger to himself – in COUNTY's jail, neither the COUNTY nor CFMG, nor their employees or agents, ever ordered a toxicology screening test, provided the required treatment plan, or ordered/directed/effected even a single in-person examination by a licensed physician, psychiatrist, or psychologist, despite Mr. Lapachet's obvious and serious medical and mental health needs.

Complaint for Damages, Declaratory & Injunctive Relief, and Demand for Jury Trial: *Lapachet v. California Forensic Medical Group, et al.*

25

63.     On information and belief, Mr. Lapachet's grievous injuries were caused by one or both of the following alternative reasons, which are pleaded in the alternative per Rule 8(d)(2) of the Federal Rules of Civil Procedure:

a.  Per Defendant TAWANA, Mr. Lapachet was using filthy language to medical and custody staff while he was suicidal, depressed, and had self-mutilating injuries that precipitated the placement of him in the "Safety Cell" or single cell.

b.  Prior to the placement of Mr. Lapachet inside of the "Safety Cell" or single cell in B-Max, one of the Stanislaus County guards remarked to the other that what they were about to see would be a spectacle worthy of observation.

c.  The COUNTY custody staff violently dragged Mr. Lapachet by his neck and/or head and/or elsewhere to the "Safety Cell" or a single cell, inflicting severe and permanent injuries, and he did not move again after they put him into this cell.

d.  In order to conceal the conduct of the COUNTY custody staff, all of the inmates that were across from Mr. Lapachet's single cell were moved, as were any other inmates that would have a vantage point of, near, or into his cell.

e.  Mr. Lapachet was viciously attacked while he was in a single cell by COUNTY Correctional Officers/Deputies and/or other county employees or other individuals;

f.  He was stomped and/or kicked and assaulted by guards and/or others in the single cell; and/or,

g.  When Mr. Lapachet was violently dragged by correctional officers, this proximately inflicted some or all of the injuries he suffered;

h.  At some point, Mr. Lapachet was handcuffed and these handcuffs were torqued; he was grabbed by his upper arm areas and wrenched with a high degree of force on his wrists and was flung about.  This and other assaultive conduct by COUNTY staff proximately caused a torn rotator cuff on his right shoulder, among other injuries.

Complaint for Damages, Declaratory & Injunctive Relief, and Demand for Jury Trial: *Lapachet v. California Forensic Medical Group, et al.*

26

i.  Mr. Lapachet was dragged, pulled, kicked, and his arms were wrenched, all by COUNTY jail staff.

j.  When Mr. Lapachet was found lying facedown in his cell, there was a sizeable boot mark and deep tissue injury on his rear end.

k.  Both the COUNTY and CFMG failed to protect Mr. Lapachet from suffering the grievous injuries that he suffered at the hands of correctional officers or other individuals.

l.  In the alternative: while incarcerated by the COUNTY during all material times, currently unidentified deputies/Correctional Officers ("COs"), jail administrators, medical personnel, and/or other law enforcement officers and/or other COUNTY employees – as well as the named and to-be identified Defendants and the named and to-be-identified CFMG employees – knew and/or had reason to know that Mr. Lapachet was a depressed, mentally ill, emotionally disturbed, or otherwise ill person undergoing a mental health crisis or was suffering from a drug-induced state of psychosis, or was suffering the ill effects from the ingestion of an unknown substance, with immediate and serious medical needs.  On information and belief, COUNTY personnel and CFMG personnel further knew and/or had reason to know that Mr. Lapachet was suffering adverse effects from the ingestion of an unknown controlled substance and/or undergoing a mental health crisis and/or was a danger to himself and/or was suicidal and/or at serious risk for committing or attempting to commit suicide and/or seriously injuring himself.  COUNTY personnel and CFMG personnel also knew or should have known that Mr. Lapachet needed to be properly treated, monitored, properly observed – and needed to be kept away from heights, bunks, and any objects that could be used to harm himself or which would assist in suicide or suicide attempts – or serious harm to the physical or mental health to Mr. Lapachet would result.  COUNTY personnel

Complaint for Damages, Declaratory & Injunctive Relief, and Demand for Jury Trial: *Lapachet v. California Forensic Medical Group, et al.*

27

and CFMG personnel were negligent and/or deliberately indifferent to Mr. Lapachet's immediate and serious medical needs, including, but limited to, the need to conduct a toxicology screening test, the need for immediate medical care regarding the elevated vital signs he was exhibiting and the unknown, toxic effects from a controlled substance, substance abuse, substance induced psychosis, suicidality, self-harming behaviors, mental illness, and/or emotional disturbance.  Further, jail and medical personnel and other COUNTY and CFMG personnel failed to properly and appropriately assess Mr. Lapachet and his serious medical needs, failed to appropriately classify Mr. Lapachet, failed to appropriately treat him, and failed to appropriately summon emergency medical and/or psychiatric care or have him admitted for inpatient treatment.  Further, COUNTY and CFMG failed to properly house and monitor Mr. Lapachet. Additionally, on information and belief, COUNTY and CFMG personnel failed to provide safe and adequate housing for Mr. Lapachet, including placing him on suicide watch in a safe room, without heights, furniture, towels, clothing, horizontal bars, or other items, furniture, defects, and/or flaws that would render the cell unsafe for a suicidal or mentally unstable person that sought to harm themselves.  Additionally, COUNTY and CFMG permitted Mr. Lapachet to have towels and other items that enabled him to continue to engage in self-harming behaviors and/or suicide attempts.  On information and belief, COUNTY and CFMG permitted Mr. Lapachet to be alone in a cell and provided or permitted him access to materials he could use to assist in harming himself or attempting to commit suicide, and they left him with direct access to a bunk of a sufficient height from which he could jump or fall.  The jail and cells in which COUNTY and CFMG placed Jeremy Lapachet also constituted unreasonably dangerous conditions.  Further, when he was supposed to be monitored, COUNTY and CFMG failed to properly and adequately monitor and care for

Complaint for Damages, Declaratory & Injunctive Relief, and Demand for Jury Trial: *Lapachet v. California Forensic Medical Group, et al.*

28

Mr. Lapachet. Further, COUNTY and CFMG failed to accommodate Jeremy
Lapachet's mental illness and disability(ies) as required by law.

m. On or about October 25 or October 26, 2015, the negligence and/or deliberate
indifference by the individually named Defendants, the COUNTY, CFMG, and
the to-be-identified DOE Defendants to Plaintiff's serious medical needs, mental
health needs, or other needs and other tortious, negligent, constitutionally
violative, and/or otherwise wrongful conduct led to the injuries Mr. Lapachet
suffered in the COUNTY jail, either through the assaultive conduct referenced
above, through self-inflicted harm by Jeremy Lapachet, through accidental
causes, or through all of the above.

64.     Between October 24, 2015 and the time he was taken out on a stretcher by AMR
personnel from the COUNTY's jail to the emergency room, Mr. LAPACHET's condition
progressively worsened while he remained in COUNTY's jail, being subjected to deliberately
indifferent and/or negligent care in COUNTY's jail, with no examination by a physician or
substance abuse specialist, no chemical evaluation concerning the substance he had ingested,
no psychiatric treatment, no mental health treatment or evaluation, no treatment plan, and no
appropriate observation, as required by generally accepted standards for health care in jails, in
blatant violation of applicable standards of care. At no time did Defendants, their agents, or
employees ever request a blood test or other test to determine what substance Plaintiff had been
injected with in order to conduct a proper assessment, nor did they obtain a consultation by any
licensed mental health care provider, nor did they require that he be under constant observation
or provided twice every thirty minute checks – as state and national standards require, nor did
they make sure he had a safety smock while in the safety cell, nor did they arrange for his
transfer to the hospital for emergency medical and mental health care.

65.     Plaintiff is informed, believes, and thereon alleges that at no time when Mr.
Lapachet was in a lockdown or segregated cell did any Defendant COUNTY or CFMG
employee or agent ever provide him with the constant observation required by generally

Complaint for Damages, Declaratory & Injunctive Relief, and Demand for Jury Trial: *Lapachet v. California Forensic Medical Group, et al.*

29

accepted procedures for the housing of a potentially suicidal inmate, or an inmate that otherwise poses a danger to themselves.

66.     Defendants' deliberate indifference to Mr. Lapachet's serious medical needs and Defendants' other tortious, unconstitutional, and/or otherwise wrongful conduct caused Mr. Lapachet's injuries.

67.     While Mr. Lapachet was incarcerated in COUNTY's jail, the individually named Defendants and DOES 1-50, including, but not limited to, Defendant Sheriff CHRISTIANSON, deputies/Correctional Officers ("COs"), jail administrators, medical personnel, and/or other law enforcement officers, TAYLOR FITHIAN, M.D., LANI ANTONIO, P.A., VERONICA BERGHORST, R.N., JESSAMAE TRINIDAD, R.N., GRASHIKA DEVENDRA, Psychiatric R.N., TABITHA KING, L.V.N., AMARDEEP TAWANA, L.V.N., JUDITH ALEJANDRE, L.V.N., and/or other COUNTY, and/or CFMG employees knew and/or had reason to know that Mr. Lapachet had ingested a controlled substance, was having a reaction to this unknown substance, had unstable and elevated vital signs, was acting strange, and had repeatedly engaged in self-mutilation and self-harming behaviors in the days and hours prior to him being found face down in his cell and, as such, knew Mr. LAPACHET was at a serious risk; they knew and/or had reason to know that Mr. Lapachet was an ill and/or mentally ill and/or emotionally disturbed person, with immediate and serious medical needs. Despite knowing all of the foregoing, Defendants were deliberately indifferent to Mr. LAPACHET's immediate and serious medical needs.

68.     The individually named Defendants, other COUNTY jail and medical personnel, and DOES 1-50 failed to properly and appropriately assess and classify Mr. Lapachet and failed to properly assess and classify his serious medical needs.

69.     Additionally, the COUNTY Defendants failed to provide safe and adequate housing for Mr. Lapachet, with deliberate indifference to his rights and serious medical needs, by housing him in an environment that was unsafe for a person under the influence of drugs, and/or was engaging self-harming, and/or was suicidal person, failing to provide him with a

Complaint for Damages, Declaratory & Injunctive Relief, and Demand for Jury Trial: *Lapachet v. California Forensic Medical Group, et al.*

30

safety smock and safety bedding, as well as providing or failing to remove the items or furntiture Mr. Lapachet possibly used to harm himself, and failing to observe and check on Mr. Lapachet's welfare as required by law and regulations.

70.    The Defendants' actions and omissions and the manner and duration in which Mr. Lapachet was incarcerated without adequate medical care was contrary to generally accepted practices and jail procedures, causing the injuries of Mr. Lapachet.

71.    At all material times and, alternatively, the actions and omissions of each Defendant were intentional, and/or wanton and/or willful, and/or conscious shocking, and/or reckless, and/or callous, and/or malicious, and/or deliberately indifferent to Plaintiff's rights, and/or grossly negligent, and/or negligent.

72.    As a direct and proximate result of each Defendant's acts and/or omissions as set forth above, Plaintiff, JEREMY LAPACHET, sustained the following injuries and damages, past and future, including, but not limited to:

  a.  Economic damages, including, but not limited to, out of pocket expenses, and ambulance, hospital, and medical expenses – past and future;
  b.  Extreme physical pain and suffering;
  c.  Permanent disabilities, including quadriplegia, requiring extensive lifetime medical care, rehabilitation, and assistance with all activities of daily living, inter alia;
  d.  Emotional distress, fear, anxiety, sleeplessness, humiliation, indignity, and loss of liberty;
  e.  Loss of enjoyment of life and pain and suffering;
  f.  All other legally cognizable special and general damages;
  g.  Violations of state and federal constitutional rights; and,
  h.  All damages and penalties recoverable under 42 U.S.C. §§ 1983 and 1988, California Civil Code § 52, California Code of Civil Procedure §1021.5, the ADA, the RA, and as otherwise allowed under California and United States statutes, codes, and common law.

//
//
//
//
//
//
//

Complaint for Damages, Declaratory & Injunctive Relief, and Demand for Jury Trial: *Lapachet v. California Forensic Medical Group, et al.*

31

# CAUSES OF ACTION

## FIRST CAUSE OF ACTION
### (42 U.S.C. § 1983)
### PLAINTIFF AGAINST DEFENDANTS CHRISTIANSON, FITHIAN, ANTONIO, BERGHORST, TRINIDAD, DEVENDRA, KING, TAWANA, ALEJANDRE, AND DOES 1-20

73.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in this complaint, as though fully set forth here.

74.    By the actions and omissions described above, the Defendants named above in this cause of action and DOES 1-20, acting under the color of state law in their individual capacities, deprived Plaintiff of the rights, privileges, and immunities secured by the Eighth and Fourteenth Amendments by subjecting him, or through their deliberate indifference, allowing others to subject him, to delay and denial of access to medical or mental health care for a serious, but treatable, medical and/or or mental health condition.

75.    The listed Defendants knew that Mr. LAPACHET's medical condition was serious, but treatable, and knew or must have known that he required access and delivery to urgently needed medical/mental health care; Defendants further had a duty to provide LAPACHET reasonable security and safe, appropriate housing and monitoring to protect him from harm and to accommodate his mental health and medical conditions.

76.    The listed Defendants knew or must have known that he was suffering from serious, but treatable, medical and mental health conditions, which Defendants knew or must have known that, if not treated, would worsen and cause LAPACHET serious harm, permanent injuries, or death.

77.    The listed Defendants ignored, delayed, or denied to LAPACHET urgently needed medical and psychiatric care and treatment. As a result of the Defendants' deliberate indifference to both LAPACHET's need for medical care and treatment and his mental condition, Plaintiff suffered damages and deprivation of constitutional rights, as described herein.

78.     By the actions and omissions described above, the individually named Defendants violated 42 U.S.C. § 1983, depriving Plaintiff of the following well-settled constitutional rights that are protected by the Eighth and Fourteenth Amendments to the U.S. Constitution:

       a.     The right to be free from deliberate indifference to LAPACHET's serious medical needs while in custody and confined in jail, as secured by the Eighth and Fourteenth Amendments;

79.     The listed Defendants' failure to intervene, prevent, or stop the constitutional violations by others, when Defendants were in a position to so intervene when such violations were occurring, also renders such Defendant(s) liable for these violations.

80.     Defendants subjected Plaintiff to their wrongful conduct, depriving Plaintiff of the rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiff would be violated by their acts and/or omissions.

81.     As a proximate result of the foregoing wrongful acts and/or omissions, Plaintiff sustained injuries and damages, as set forth above, in ¶ 72.  Plaintiff is therefore entitled to general and compensatory damages in an amount to be proven at trial.

82.     In committing the acts alleged above, the individually named Defendants and DOE Defendants acted maliciously and/or were guilty of a wanton and reckless disregard for the rights, safety, and emotional well being of Plaintiff, and by reason thereof, Plaintiff is entitled to punitive damages and penalties allowable under 42 U.S.C. § 1983 and other state and federal law against these individual Defendants and Defendant CFMG; no punitive damages are sought directly against the COUNTY.

83.     Plaintiff is also entitled to reasonable costs and attorney's fees under 42 U.S.C. § 1988 and other applicable California codes and laws.

//

//

//

Complaint for Damages, Declaratory & Injunctive Relief, and Demand for Jury Trial: *Lapachet v. California Forensic Medical Group, et al.*

33

**SECOND CAUSE OF ACTION**
**(42 U.S.C. § 1983)**
**PLAINTIFF AGAINST COUNTY OF STANISLAUS DEFENDANTS DOES 30-50**

84.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in this complaint, as though fully set forth here.

85.     By the actions and omissions described above, the to-be-identified COUNTY OF STANISLAUS deputies/Correctional Officers, Sergeants, jail administrators, and/or other law enforcement officers, currently identified as DOES 30-50, violated 42 U.S.C. § 1983, depriving Plaintiff of the following well-settled constitutional rights that are protected by the First, Fourth, and Fourteenth Amendments to the U.S. Constitution:

b.  The right to be free from government conduct and/or the exercise of discretion by a government official that is in retaliation and response to the exercise of free speech, as secured by the First and Fourteenth Amendments;

c.  The right to be free from the use of unlawful and/or unreasonable force, as secured by the Fourth and Fourteenth Amendments; and,

d.  The right to be free from outrageous government conduct, as secured by the Fourteenth Amendment.

86.     The failure to intervene, prevent, or stop the First, Fourth, and Fourteenth Amendment violations on the part of the currently named DOE Defendants and/or supervisors, who were in a position to do so when such violations occurred, renders such Defendant(s) liable for these violations.

87.     Any supervisors that failed to prevent the unconstitutional acts of said Defendants and failed to properly supervise them are liable directly and in their capacity as a supervisor.

88.     As a proximate result of the foregoing wrongful acts and/or omissions, Plaintiff sustained injuries and damages, as set forth above, in ¶ 72.  Plaintiff is therefore entitled to general and compensatory damages in an amount to be proven at trial.

89.     In committing the acts alleged above, the individually named Defendants and DOE Defendants acted maliciously and/or were guilty of a wanton and reckless disregard for the rights, safety, and emotional well being of Plaintiff, and by reason thereof, Plaintiff is

entitled to punitive damages and penalties allowable under 42 U.S.C. § 1983 and other state and federal law against the to-be-identified individual Defendants; no punitive damages are sought directly against the COUNTY.

90.     Plaintiff is also entitled to reasonable costs and attorney's fees under 42 U.S.C. § 1988 and other applicable California codes and laws.

## THIRD CAUSE OF ACTION
### (42 U.S.C. § 1983 – *Monell* and Supervisory Liability)
### AGAINST DEFENDANTS COUNTY OF STANISLAUS, SHERIFF ADAM CHRISTIANSON, CFMG, MEDICAL DIRECTOR TAYLOR FITHIAN, M.D., and DOES 21-30

91.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in this complaint, as though fully set forth herein.

92.     As supervisors, the Defendants named in this cause of action and DOES 21-30 each permitted and failed to prevent the unconstitutional acts of other Defendants and individuals under their supervision and control, and failed to properly supervise such individuals, with deliberate indifference to the rights and serious medical needs of Plaintiff. Each of these supervising Defendants either directed his or her subordinates in conduct that violated Plaintiff's rights, OR set in motion a series of acts and omissions by his or her subordinates that the supervisor knew or reasonably should have known would deprive Plaintiff of rights, OR knew his or her subordinates were engaging in acts likely to deprive Plaintiff of rights and failed to act to prevent his or her subordinate from engaging in such conduct, OR disregarded the consequence of a known or obvious training deficiency that he or she must have known would cause subordinates to violate Plaintiff's rights, and in fact did cause the violation of Plaintiff's rights.  (See, Ninth Circuit Model Civil Jury Instruction 9.4). Furthermore, each of these supervising Defendants is liable in their failures to intervene in their subordinates' apparent violations of Plaintiff's rights.

93.     Plaintiff alleges, upon information and belief, the unconstitutional actions and/or omissions of the individually named and to-be-identified COUNTY OF STANISLAUS

Complaint for Damages, Declaratory & Injunctive Relief, and Demand for Jury Trial: *Lapachet v. California Forensic Medical Group, et al.*

35

Defendants, the individually named and to-be-identified CFMG Defendants, and the personnel acting on behalf of Defendant CFMG were pursuant to the following customs, policies, practices and/or procedures of the COUNTY OF STANISLAUS and/or CFMG, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policy making officials for the COUNTY and its Sheriff's Department, and/or CFMG, including, but not limited to, the Defendants named in this cause of action and DOES 21-30:

a. As to the COUNTY OF STANISLAUS and ADAM CHRISTIANSON:

    i. Failure to supervise and/or discipline correctional officers and/or deputies for misconduct that results in the violation of citizens' civil rights; and/or,

    ii. Failing to institute, maintain, or effectively administer an appropriate training regimen on subjects such as free speech, and use of force; and/or,

    iii. Using or tolerating excessive and/or unjustified force; and/or,

    iv. Using or tolerating inadequate, deficient, and/or improper procedures for handling, investigating, and reviewing complaints of excessive force or officer misconduct, including, but not limited to, claims made under California Government Code section 910 et seq.

As to COUNTY OF STANISLAUS, ADAM CHRISTIANSON, CFMG, and TAYLOR FITHIAN, M.D.:

b. To deny inmates at the COUNTY'S jail access to appropriate, competent, and necessary care for serious medical and psychiatric needs, including, as described herein, by contracting to provide inadequate medical/psychiatric care for jail inmates (see ¶ 39, *supra*), by contracting to create financial and other incentives for CFMG to deprive inmates of necessary emergency and hospital care (see ¶ 39), and by failing to require that all medical/psychiatric staff and supervisors at the jail be properly trained, supervised, credentialed, and licensed as required by law (see ¶¶ 12, 58);

c. To fail to properly classify, house, and/or monitor inmates suffering from: negative or unpredictable reactions to the ingestion of a controlled substance, mental health crises or who are at risk of self-harm and/or who pose a danger to the their own safety, including placement on self-harm watch or suicide watch with proper suicide precautions, including failing to consider in any way the clear and obvious danger of placing inmates at risk of suicide in cells with means to injure themselves (including bunk beds, horizontal bars, clothing, and ligature materials) and without the frequent, logged observation required by law;

Complaint for Damages, Declaratory & Injunctive Relief, and Demand for Jury Trial: *Lapachet v. California Forensic Medical Group, et al.*

36

d. To fail to properly classify, house, and/or monitor inmates suffering from unknown reaction to the ingestion of an unknown substance, drug induced psychosis, inmates suffering from drug overdoses, and inmates suffering adverse effects from drug ingestion, and/or mental illness, and/or emotional disturbance, as well as failing to ensure that a toxicology screen test is performed to determine the nature of a substance an inmate has ingested, provide appropriate observation and a treatment plan for serious medical needs, prevention and addressing the risk of self-harm by inmates, suicide attempt prevention, appropriate observation of suicidal or otherwise emotionally disturbed inmates, providing appropriate observation and a treatment plan for inmates suffering the effects of drug-induced states of psychosis and/or overdoses and/or inmates who are a danger to themselves by virtue of being under the influence of drugs and/or mental illness and/or emotional disturbance, as well as care and treatment for mental illness and emotional disturbance, monitoring the mental health and vital signs of inmates, promptly rendering and/or summoning medical care when it is needed, and transferring inmates to inpatient medical or psychiatric facilities where their medical needs require such a transfer;

e. To allow, encourage, and require unlicensed, inadequately trained, and inadequately supervised CFMG staff to attempt to render treatment, when a physician is needed, as well as to allow, encourage, and require inadequately trained, supervised, and credentialed CFMG staff to make or be involved with decisions to place jail inmates on, and remove inmates from, safety cell/suicide watch in direct violation of applicable law and standards, including permitting and incentivizing unlicensed and untrained CFMG staff to remove inmates with urgent medical conditions or who might be suffering from drug induced psychosis or severely mentally ill inmates from safety cell/suicide watch without a reasonable, appropriate, and lawful basis for doing so;

f. To fail to institute proper procedures and training to coordinate inmate assessment, placement, safety cell/suicide watch decisions, transfers to psychiatric facilities, transfers to emergency, acute care medical facilities, and failing to coordinate or provide appropriate care with the CFMG staff, a jail physician, jail psychiatrist, and/or jail corrections staff where there was an obvious need for such to prevent the harm that occurred here to Mr. Lapachet;

g. To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures for handling, housing, and caring for individuals suffering unknown and toxic reactions to the ingestion of a controlled substance, as well as inmates that are altered, mentally ill, and/or emotionally disturbed inmates at the COUNTY Jail, including alternatives to placing such ill and disturbed inmates in need of treatment in solitary confinement segregation cells that are intended and used to punish inmates, with the obvious consequence that the mental health needs of such inmates remain unaddressed and are in fact aggravated and increased by such punitive treatment;

Complaint for Damages, Declaratory & Injunctive Relief, and Demand for Jury Trial: *Lapachet v. California Forensic Medical Group, et al.*

37

As to COUNTY OF STANISLAUS, ADAM CHRISTIANSON, CFMG, and TAYLOR FITHIAN, M.D.:

h.  To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in this Complaint and in subparagraphs (a)-(g) above, when the need for such was obvious, with deliberate indifference to the rights and safety of Plaintiff and the public, and in the face of an obvious need for such policies, procedures, and training programs.

94.  In the alternative, upon information and belief, Defendant COUNTY OF STANISLAUS and/or CFMG may have instituted policies or training addressing some or all the topics listed above, but with deliberate indifference to citizens' rights, failed to properly oversee, enforce, and/or properly carry out such policies and/or training.

95.  The above-described customs, policies, practices, and/or procedures of the COUNTY and CFMG were a moving force and/or a proximate cause of the deprivations of Plaintiff's constitutional rights, in violation of 42 U.S.C. § 1983, as more fully set forth above in the First and Second Causes of Action.

96.  Defendants COUNTY and CFMG are also liable for the violations of Plaintiff's rights by their final policy makers, including SHERIFF CHRISTIANSON and CFMG MEDICAL DIRECTOR FITHIAN, as described above.  (See, Ninth Circuit Model Civil Jury Instruction 9.6).

97.  On information and belief, both the COUNTY and CFMG conducted investigations and reviews of this matter leading to the serious and permanent injuries suffered by Plaintiff, and Defendants CHRISTIANSON and FITHIAN directly and personally participated in such investigations and reviews.  The unconstitutional actions and/or omissions of the individually named Defendants, DOES 21-30, other Sheriff's Department and COUNTY personnel, and CFMG personnel as described above, were approved, tolerated, and/or ratified by policy making officers for the COUNTY OF STANISLAUS, including, but not limited to, Sheriff CHRISTIANSON, and by CFMG, by TAYLOR FITHIAN, M.D.  Plaintiff is informed and believes, and thereupon alleges, the details of this incident have been revealed to the

Complaint for Damages, Declaratory & Injunctive Relief, and Demand for Jury Trial: *Lapachet v. California Forensic Medical Group, et al.*

38

authorized policy makers within the COUNTY OF STANISLAUS, the STANISLAUS County Sheriff's Department, and CFMG, and that, with respect to ¶ 93(a)(i)-(iv), *supra*, the policymakers for the COUNTY have direct knowledge of the fact that JEREMY LAPACHET subjected to the excessive force and other violations described in the Second Cause of Action, *supra*, due to their and their subordinates' misconduct and violations of Plaintiff's rights, and with respect to ¶ 93(b)-(h), policymakers for the COUNTY OF STANISLAUS, the STANISLAUS County Sheriff's Department, and CFMG have direct knowledge of the fact that JEREMY LAPACHET was unlawfully denied necessary care for his serious medical needs due to their and their subordinates' misconduct and violations of Plaintiff's rights. Notwithstanding this knowledge, the authorized policymakers within the COUNTY, its Sheriff's Department, and CFMG, have approved of the individually named Defendants' and DOES 21-50s' conduct and decisions in this matter to the extent such individuals were under their supervision and oversight, and have made a deliberate, conscious and affirmative choice to endorse and ratify such conduct and decisions, and the basis for them, which resulted in the grievous and permanent injuries suffered by JEREMY LAPACHET. By so doing, the authorized policymakers within the COUNTY and its Sheriff's Department, as well as those within CFMG, have shown affirmative agreement with the conduct of individual Defendants and other employees/agents under their supervision, and have ratified the unconstitutional acts of these individual Defendants, employees, and agents.

98.     The aforementioned customs, policies, practices, and procedures; the failure to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and, the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants COUNTY OF STANISLAUS, CHRISTIANSON, CFMG, FITHIAN, and DOES 21-30 were a moving force and/or a proximate cause of the deprivations of Plaintiff's clearly established and well-settled constitutional rights, in violation of 42 U.S.C. § 1983, as more fully set forth above.

99.     As a direct and proximate result of the foregoing unconstitutional actions,

omissions, customs, polices, practices, and/or procedures of the Defendants named in this cause of action and DOES 21-30, or the lack or inadequacy thereof, Plaintiff sustained serious and permanent injuries and damages and is entitled to damages, penalties, costs, and attorneys' fees, as set forth above, in ¶ 72, and punitive damages against Defendants CHRISTIANSON, CFMG, FITHIAN, and DOES 21-30, in their individual capacities.

<div align="center">

**FOURTH CAUSE OF ACTION**
**(VIOLATION OF CIVIL CODE § 52.1 (b))**
**AGAINST DEFENDANTS COUNTY, CHRISTIANSON, CFMG, FITHIAN, ANTONIO,**
**BERGHORST, TRINIDAD, DEVENDRA, KING, TAWANA, ALEJANDRE,**
**and DOES 1-20**

</div>

100.    Plaintiff re-alleges and incorporates by reference the allegations contained in this complaint, as though fully set forth herein.

101.    By their acts, omissions, customs, and policies, the Defendants named in this cause of action and DOES 1-20 acting in concert/conspiracy, as described above, and with threat, intimidation, and/or coercion, violated Plaintiff's rights under California Civil Code § 52.1 and the following clearly established rights under the United States Constitution, under the California Constitution, and under California law:

As to the COUNTY OF STANISLAUS Defendants and ADAM CHRISTIANSON:

a.    Plaintiff's right to be free from government conduct and/or the exercise of discretion by a government official that is in retaliation and response to the exercise of free speech, as secured by the First and Fourteenth Amendments;

b.    Plaintiff's right to be free from the use of unlawful and/or unreasonable force, as secured by the Fourth and Fourteenth Amendments;

c.    Plaintiff's right to be free from outrageous government conduct, as secured by the Fourteenth Amendment;

d.    Plaintiff's right to be free from unreasonable seizures, as secured by the California Constitution, Article I, section 13;

//
//
//

As to all Defendants Named in this Cause of Action:

    e.    Plaintiff's right to be free from deliberate indifference to his serious medical needs while in custody as a pretrial detainee, as secured by the Eighth and Fourteenth Amendments to the United States Constitution and the California Constitution, Article 1, Section 7;

    f.    The right to enjoy and defend life and liberty; acquire, possess, and protect property; and pursue and obtain safety, happiness, and privacy, as secured by the California Constitution, Article 1, Section 1;

    g.    The right to protection from bodily restraint, harm, or personal insult, as secured by California Civil Code § 43; and

    h.    Plaintiff's right to medical care, as required by California Government Code § 845.6.

102.    Separate from, and above and beyond, Defendants' attempted interference, interference with, and violation of Plaintiff's rights, Defendants violated Plaintiff's rights by the following conduct, among other conduct, constituting threat, intimidation, or coercion:

    a.    Intentionally and with deliberate indifference, depriving and/or preventing Mr. Lapachet from receiving necessary, life-saving, and/or preventative medical and/or psychiatric care and treatment;

    b.    Intentionally and with deliberate indifference, ordering and/or continuing Mr. Lapachet's punitive housing in a segregated and/or disciplinary cell, under conditions of solitary confinement for long stretches of time, without necessary, life-saving medical and/or psychiatric care and treatment;

    c.    Continuing Mr. Lapachet's incarceration instead of summoning medical care and transferring him to an appropriate medical/psychiatric facility, with deliberate indifference to his serious psychiatric and medical needs, and while Mr. Lapachet was powerless to provide for such needs himself;

    d.    Intentionally and with deliberate indifference, causing Mr. Lapachet to languish in jail without necessary medical/psychiatric/pharmacological care, or even the required treatment plan, when he was obviously unable to care for his own needs and was a serious threat to himself;

    e.    Intentionally and with deliberate indifference, doing and/or permitting subparagraphs (a) – (d) when it was also obvious that in doing so, Plaintiff could suffer permanent injuries or death.

Complaint for Damages, Declaratory & Injunctive Relief, and Demand for Jury Trial: *Lapachet v. California Forensic Medical Group, et al.*

41

103.     Defendant COUNTY is vicariously liable under California Government Code § 815.2.

104.     As a direct and proximate result of Defendants' violation of California Civil Code § 52.1 and of Plaintiff's rights under the United States and California Constitutions and law, Plaintiff sustained injuries and damages, and against each Defendant named in this Cause of Action, is entitled to relief as set forth above, in ¶ 72, and punitive damages against all individual Defendants, including all damages and penalties allowed by California Civil Code §§ 52 and 52.1 and California law, three times actual damages, and attorneys' fees.

<div align="center">

**FIFTH CAUSE OF ACTION**
**(VIOLATION OF ADA (Title II and III) and REHABILITATION ACT)**
**(42 U.S.C. § 12132 & 29 U.S.C. § 794)**
**<u>PLAINTIFF AGAINST DEFENDANTS COUNTY OF STANISLAUS and CFMG</u>**

</div>

105.     Plaintiff re-alleges and incorporates by reference the allegations contained in this complaint, as though fully set forth herein.

106.     At all material times, including, but not limited to, between October 24, 2015 and October 26, 2015, Mr. Lapachet was a "qualified individual" with a mental illness and disability and medical impairments that limited and/or substantially limited his ability to care for himself and control his mental, medical, or physical health condition as defined under the ADA, 42 U.S.C. § 12131 (2), and under Section 504 of the Rehabilitation Act ("RA") of 1973, 29 U.S.C. § 794, 28 C.F.R. 42.540 (k); as such, Mr. Lapachet qualified as an individual with a mental and physical disability under California law and Mr. Lapachet met the essential eligibility requirements of COUNTY programs to provide access to medical and mental health care services for its detainee/inmate patients in COUNTY's jails while they are in custody.

107.     Defendants COUNTY and CFMG's jail and mental health services are places of public accommodation and are covered entities for purposes of enforcement of the ADA, 42 U.S.C. §12181 (7)(F), and the Rehabilitation Act, 29 U.S.C. § 794, as explicated by the regulations promulgated under each of these laws.  Further, on information and belief,

Defendant COUNTY and its jail receive federal assistance and funds.

108.     Defendant COUNTY's Jail, as a state, local government, and/or department or agency thereof falls within the definition of "program or activity" covered by the Rehabilitation Act, 29 U.S.C. Section 794(b). COUNTY is also within the mandate of the RA that no person with a disability may be "excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity." 29 U.S.C. § 794.

109.     Under the ADA, Defendants STATE and CFMG are mandated to "develop an effective, integrated, comprehensive system for the delivery of all services to persons with mental disabilities and developmental disabilities . . . " and to ensure "that the personal and civil rights" of persons who are receiving services under its aegis are protected.

110.     Congress enacted the ADA upon a finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms of discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101 (a)(2).

111.     Defendants COUNTY and CFMG are mandated under the ADA not to discriminate against any qualified individual "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182 (a).

112.     The ADA, 42 U.S.C. § 12182(b)(1)(A)(iii), provides in pertinent part that: "[i]t shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual licensing, or other arrangements, with a good, service, facility, privilege, advantage, or accommodation *that is different or separate* from that provided to other individuals." *Id*. (emphasis added).

113.     Defendants COUNTY and CFMG violated the ADA, RA, and discriminated against Plaintiff, violating his ADA, RA, and state protected rights by: (a) creating and maintaining a number of programs and services to protect the mentally disabled; (b) failing to provide services or to accommodate Mr. Lapachet with access to the programs and services of

Complaint for Damages, Declaratory & Injunctive Relief, and Demand for Jury Trial: *Lapachet v. California Forensic Medical Group, et al.*

43

mental health hospitals and/or facilities for persons who qualify for access and services under Welfare and Institutions Code 5150; (c) failing to provide services or accommodate Mr. Lapachet in the fashion that was indicated and with appropriate classification, housing, and monitoring for a person in their sole and exclusive custody who they knew was altered, mentally disabled, at risk for suicide, and who posed a risk to their own safety; (d) failing to provide reasonable accommodations to people in custody with mental disabilities at their hospitals, clinics, and jails and, instead, providing a quality of care and service that is different, separate, inferior, and worse than the service provided to other individuals with the same disabilities; (e) denying Mr. Lapachet, a qualified individual with a disability, the opportunity to participate in or benefit from the aid, benefit, or services of the COUNTY, in violation of 28 C.F.R. § 35.130(b)(1)(i); (f) by reason of Plaintiff's mental disabilities, Defendants did not afford Plaintiff an opportunity to participate in or benefit from the aid, benefits, and services that are equal to those afforded to other, non-disabled individuals by Defendants, in violation of 28 C.F.R. § 35.130(b)(1)(ii); (g) on the basis of Plaintiff's disability, the named Defendants failed to provide Plaintiff an aid, benefit, or service that was as effective in affording equal opportunity to obtain the same result, to gain the same benefit, and to reach the same level of achievement as provided to other individuals in the same situation, in violation of 28 C.F.R. §35.130(b)(1)(iii); (g) limited Mr. Lapachet, a qualified individual with a disability, in the enjoyment of rights, privileges, advantages, or opportunities enjoyed by others receiving the aid, benefit, or service of which Mr. Lapachet was denied, in violation of 28 C.F.R. §35.130(b)(1)(vii).

114.    Mr. Lapachet was denied the benefits of the services, programs, and activities of the COUNTY, and was denied accommodation for his disabilities, which deprived him of safety, necessary care, and mental health and medical health programs and services, which would have provided planning and delivery of treatment, follow-up, and supervision. This denial of accommodation, programs, and services was the result of his disability in that he was discriminated against because he was mentally ill, at risk for suicide, posed a threat to his own

Complaint for Damages, Declaratory & Injunctive Relief, and Demand for Jury Trial: *Lapachet v. California Forensic Medical Group, et al.*

44

safety, and was gravely disabled, in that he suffered from conditions in which a person, as a result of a mental disorder, is unable to provide for his basic personal needs for food, clothing, or shelter and is unable to advocate for himself; and, Mr. Lapachet had mental impairments that substantially limited one or more of his major life activities.

115.     As a result of the acts and misconduct of the Defendants COUNTY and CFMG complained of herein, Plaintiff suffered grievous and permanent, life-altering injuries, and Plaintiff has suffered, is now suffering, and will continue to suffer damages and injuries as alleged above.  Plaintiff sustained serious and permanent injuries and is entitled to damages, penalties, costs, and attorneys' fees as set forth in the ADA and RA and above, in ¶¶ 72 and 83.

<div align="center">

**SIXTH CAUSE OF ACTION**
**(VIOLATION OF CALIFORNIA GOVERNMENT CODE § 845.6)**
**<u>AGAINST DEFENDANTS COUNTY and DOES 1-20</u>**

</div>

116.     Plaintiff re-alleges and incorporates by reference the allegations contained in this complaint, as though fully set forth herein.

117.     DEFENDANTS COUNTY and DOES 1-20 knew or had reason to know that Plaintiff was in need of immediate and a higher level of medical, mental health, and/or psychiatric care, treatment, and observation and monitoring, that he required special housing and security – including being transported to an inpatient medical care facility or an inpatient psychiatric facility and/or being placed in a proper safety cell and being placed on proper suicide watch and on suicide precautions – for his own safety and well-being, and each Defendant failed to take reasonable action to summon and/or to provide him access to such medical care and treatment and/or provide him housing accommodations necessary for him under such circumstances.  Each such individual Defendant, employed by and acting within the course and scope of his or her employment with Defendant COUNTY, knowing and/or having reasons to know this, failed to take reasonable action to summon and/or provide Mr. Lapachet access to such care, treatment, and medically appropriate housing in violation of California Government Code § 845.6.

Complaint for Damages, Declaratory & Injunctive Relief, and Demand for Jury Trial: *Lapachet v. California Forensic Medical Group, et al.*

45

118.    As a proximate cause of the aforementioned acts and omissions of – and attributable under Government Code sections 845.6 and 815.2 to – all named Defendants, Plaintiff was injured as set forth above and is entitled to all damages allowable under California law.  Plaintiff sustained serious and permanent injuries and is entitled to damages, penalties, costs, and attorneys' fees as set forth above, in ¶¶ 72 and 83.

<div align="center">

**SEVENTH CAUSE OF ACTION**
**(NEGLIGENCE)**
**PLAINTIFF AGAINST DEFENDANTS COUNTY, CHRISTIANSON, CFMG, FITHIAN, ANTONIO, BERGHORST, TRINIDAD, DEVENDRA, KING, TAWANA, ALEJANDRE, and DOES 1-50**

</div>

119.    Plaintiff re-alleges and incorporates by reference the allegations contained in this complaint, as though fully set forth herein.

120.    At all material times, the Defendants named in this Cause of Action and DOES 1-50 owed Mr. Lapachet the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

121.    At all material times, each Defendant owed Mr. Lapachet the duty to act with reasonable care.

122.    These general duties of reasonable care and due care owed to MR. LAPACHET by all Defendants included, but are not limited, to the following specific obligations:

    a.   To provide safe and appropriate jail custody for RICHARD LAPACHET, including reasonable classification, monitoring, and housing, including placing him on suicide watch with proper suicide precautions, and preventing access to physical conditions and items that could foreseeably be used for self-harm, attempted suicide, or suicide;

    b.   To properly classify, house, and/or monitor inmates suffering from: negative or unpredictable reactions to the ingestion of a controlled substance, mental health crises or who are at risk of self-harm and/or who pose a danger to the their own safety, including placement on self-harm watch or suicide watch with proper suicide precautions, and including consideration of the clear and obvious danger of placing inmates at risk of self-harm or suicide attempts in cells with means to injure themselves (including, but not limited to, bunk beds, horizontal bars, clothing, and ligature materials) without the frequent, logged observation required by law;

Complaint for Damages, Declaratory & Injunctive Relief, and Demand for Jury Trial: *Lapachet v. California Forensic Medical Group, et al.*

46

c. To properly classify, house, and/or monitor inmates suffering from unknown reaction to the ingestion of an unknown substance, drug induced psychosis, inmates suffering from drug overdoses, and inmates suffering adverse effects from drug ingestion, and/or mental illness, and/or emotional disturbance, as well to ensure that a toxicology screen test is performed to determine the nature of a substance an inmate has ingested, provide appropriate observation and a treatment plan for serious medical needs, prevention and addressing the risk of self-harm by inmates, suicide attempt prevention, appropriate observation of suicidal or otherwise emotionally disturbed inmates, providing appropriate observation and a treatment plan for inmates suffering the effects of drug-induced states of psychosis and/or overdoses and/or inmates who are a danger to themselves by virtue of being under the influence of drugs and/or mental illness and/or emotional disturbance, as well as care and treatment for mental illness and emotional disturbance, monitoring the mental health and vital signs of inmates, promptly rendering and/or summoning medical care when it is needed, and transferring inmates to inpatient medical or psychiatric facilities where their medical needs require such a transfer;

d. To obey all applicable policies, procedures, previous court orders, and all regulations for the care and safety of inmates, such as Plaintiff;

e. To summon necessary and appropriate medical care for Mr. Lapachet, or to transfer the care of Mr. Lapachet to an inpatient facility;

f. To use generally accepted medical procedures and generally accepted law enforcement and jail procedures that are reasonable and appropriate for the circumstances that were at issue, including the ingestion of an unknown substance, consistently and excessively elevated vital signs, self-harming behaviors, and, in general, Plaintiff's status as an altered and/or mentally ill and/or emotionally disturbed person;

g. To refrain from abusing their authority granted to them by law; and,

h. To refrain from violating Plaintiffs' rights guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law.

123. By the acts and omissions set forth more fully in all of the paragraphs above, Defendants acted negligently and breached their duty of due care owed to Mr. Lapachet, which foreseeably resulted in the suffering of damages by Plaintiff.

124. Defendants, through their acts and omissions, breached the aforementioned duties owed to Plaintiff.

125. Defendant COUNTY is vicariously liable pursuant to California Government

Complaint for Damages, Declaratory & Injunctive Relief, and Demand for Jury Trial: *Lapachet v. California Forensic Medical Group, et al.*

47

Code section 815.2.

126. As a proximate result of Defendants' negligence, Plaintiff sustained injuries and damages, and against each listed Defendant in this Count is entitled to the relief described above, in ¶ 72. Plaintiff also seeks punitive damages against the individual Defendants in their individual capacities, as well as CFMG. Plaintiff does not seek punitive damages against the COUNTY.

<div align="center">

**EIGHTH CAUSE OF ACTION**
**(MEDICAL NEGLIGENCE)**
**PLAINTIFF AGAINST DEFENDANTS CFMG, FITHIAN, ANTONIO, BERGHORST, TRINIDAD, DEVENDRA, KING, TAWANA, ALEJANDRE, and DOES 1-20**

</div>

127. Plaintiff re-alleges and incorporates by reference the allegations contained in this complaint, as though fully set forth herein.

128. At all material times, the Defendants named in this cause of action and DOES 1-20 owed Mr. Lapachet, as health care professionals and medical practitioners, the duty to act with due care and to use the level of skill, knowledge, and care in diagnosis and treatment that other reasonably careful medical practitioners would use in the same or similar circumstances.

129. As set forth more specifically in the paragraphs above, including, but not limited to, ¶¶ 1-71, the named and to-be-identified DOE Defendants were negligent because they failed to use the level of skill, knowledge, and care in diagnosis and treatment that other reasonably careful doctors, P.A.s, R.N.s, Psychiatric R.N.'s, and/or L.V.N.'s, and/or other health care professionals, and/or other medical practitioners would use in the same or similar circumstances; their conduct fell below the applicable standard of care.

130. By the acts and omissions set forth more fully in all of the paragraphs above, the named and to-be-identified Defendants acted negligently and breached their duty of due care owed to Mr. Lapachet as medical professionals, which foreseeably resulted in the suffering of damages by Plaintiff.

131. As a proximate result of Defendants' negligence, Plaintiff sustained injuries and damages, and against each listed Defendant in this Count is entitled to the relief described

Complaint for Damages, Declaratory & Injunctive Relief, and Demand for Jury Trial: *Lapachet v. California Forensic Medical Group, et al.*

48

above, in ¶ 72. Plaintiff also seeks punitive damages against the individual Defendants, as well as CFMG.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief against each and every Defendant herein, jointly and severally:

1. Compensatory damages in an amount according to proof, which is fair, just, and reasonable;

2. Punitive damages under 42 U.S.C. § 1983, federal law, and California law, in an amount according to proof and which is fair, just, and reasonable against all Defendants except the municipal Defendants;

3. All other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 U.S.C. §§ 1983 and 1988; California Code of Civil Procedure §1021.5; the ADA; the RA; California Civil Code §§ 52 et seq. and 52.1; and as otherwise may be allowed by California and/or federal law; and,

4. For such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby respectfully demands a jury trial in this action, pursuant to Rule 38 of the Federal Rules of Civil Procedure.


Dated: December 2, 2016          **LAW OFFICE OF SANJAY S. SCHMIDT**


                                 */s/ Sanjay S. Schmidt*
                                 SANJAY S. SCHMIDT
                                 Attorneys for Plaintiff

# EXHIBIT 6

West's Smith-Hurd Illinois Compiled Statutes Annotated
  Chapter 625. Vehicles
    Act 57. Transportation Network Providers Act

625 ILCS 57/15

57/15. Driver requirements

Effective: April 2, 2021
Currentness

§ 15. Driver requirements.

(a) Prior to permitting an individual to act as a TNC driver on its digital platform, the TNC shall:

(1) require the individual to submit an application to the TNC or a third party on behalf of the TNC, which includes information regarding his or her full legal name, social security number, address, age, date of birth, driver's license, driving history, motor vehicle registration, automobile liability insurance, and other information required by the TNC;

(2) conduct, or have a third party conduct, a local and national criminal history background check for each individual applicant that shall include:

(A) Multi-State or Multi-Jurisdictional Criminal Records Locator or other similar commercial nationwide database with validation (primary source search); and

(B) National Sex Offenders Registry database; and

(3) obtain and review a driving history research report for the individual.

(b) The TNC shall not permit an individual to act as a TNC driver on its digital platform who:

(1) has made more than 3 moving violations in the prior three-year period, or one major violation in the prior three-year period including, but not limited to, attempting to evade the police, reckless driving, or driving on a suspended or revoked license;

(2) has been convicted, within the past 7 years, of driving under the influence of drugs or alcohol, fraud, sexual offenses, use of a motor vehicle to commit a felony, a crime involving property damage, or theft, acts of violence, or acts of terror;

(3) is a match in the National Sex Offenders Registry database;

(4) does not possess a valid driver's license;

(5) does not possess proof of registration for the motor vehicle used to provide TNC services;

(6) does not possess proof of automobile liability insurance for the motor vehicle used to provide TNC services; or

(7) is under 19 years of age.

(c) An individual who submits an application under paragraph (1) of subsection (a) that contains false or incomplete information shall be guilty of a petty offense.

**Credits**

P.A. 98-1173, § 15, eff. June 1, 2015. Amended by P.A. 100-738, § 5, eff. Aug. 7, 2018. Reenacted by P.A. 101-660, § 15, eff. April 2, 2021.

625 I.L.C.S. 57/15, IL ST CH 625 § 57/15
Current through P.A. 103-490 of the 2023 Reg. Sess. Some statute sections may be more current, see credits for details.

**End of Document** © 2023 Thomson Reuters. No claim to original U.S. Government Works.

West's Smith-Hurd Illinois Compiled Statutes Annotated
    Chapter 625. Vehicles
        Act 57. Transportation Network Providers Act

625 ILCS 57/25

57/25. Safety

Effective: August 11, 2023

Currentness

§ 25. Safety.

(a) The TNC shall implement a zero tolerance policy on the use of drugs or alcohol while a TNC driver is providing TNC services or is logged into the TNC's digital network but is not providing TNC services.

(b) The TNC shall provide notice of the zero tolerance policy on its website, as well as procedures to report a complaint about a driver with whom a passenger was matched and whom the passenger reasonably suspects was under the influence of drugs or alcohol during the course of the trip.

(c) Upon receipt of a passenger's complaint alleging a violation of the zero tolerance policy, the TNC shall immediately suspend the TNC driver's access to the TNC's digital platform, and shall conduct an investigation into the reported incident. The suspension shall last the duration of the investigation.

(d) The TNC shall require that any motor vehicle that a TNC driver will use to provide TNC services meets vehicle safety and emissions requirements for a private motor vehicle in this State.

(e) TNCs or TNC drivers are not common carriers, contract carriers or motor carriers, as defined by applicable State law, nor do they provide taxicab or for-hire vehicle service. This subsection (e) is inoperative on and after January 1, 2024.

**Credits**

P.A. 98-1173, § 25, eff. June 1, 2015. Reenacted by P.A. 101-660, § 15, eff. April 2, 2021. Amended by P.A. 103-527, § 5, eff. Aug. 11, 2023.

625 I.L.C.S. 57/25, IL ST CH 625 § 57/25
Current through P.A. 103-490 of the 2023 Reg. Sess. Some statute sections may be more current, see credits for details.

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT 7

**NOTICE**
The text of this opinion may
be changed or corrected
prior to the time for filing of
a Petition for Rehearing or
the disposition of the same.

2020 IL App (1st) 191328

No. 1-19-1328

Opinion filed September 30, 2020

Fourth Division

---

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

---

| | | |
|---|---|---|
| JANE DOE, | ) | Appeal from the Circuit |
| | ) | Court of Cook County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 17 L 11355 |
| LYFT, INC.; ANGELO McCOY; and STERLING | ) | |
| INFOSYSTEMS, INC., d/b/a Sterling Talent | ) | |
| Solutions, | ) | |
| | ) | |
| Defendants | ) | Honorable |
| | ) | Patricia O'Brien Sheahan, |
| (Lyft, Inc., Defendant-Appellee). | ) | Judge, presiding. |

---

JUSTICE LAMPKIN delivered the judgment of the court, with opinion.
Justice Burke concurred in the judgment and opinion.
Presiding Justice Gordon concurred in part and dissented in part.

## OPINION

¶ 1    This appeal presents two questions certified by the trial court under Illinois Supreme Court

Rule 308 (eff. July 1, 2017) regarding the scope and constitutionality of section 25(e) of the

Transportation Network Providers Act (or Act) (625 ILCS 57/25(e) (West 2018)), which declares

that ridesharing companies like Uber and Lyft (called transportation network companies or TNCs

under the statute) "are not common carriers, *** as defined by applicable State law." Under the

No. 1-19-1328

common law, a common carrier owes its passengers the highest duty of care and is subject to vicarious liability if its agent commits an intentional tort against a passenger, even if the agent's conduct falls outside the scope of the agency relationship. The questions we address here are (1) whether section 25(e) exempts ridesharing companies from the heightened duty of care and standard of vicarious liability that apply to common carriers and (2) if so, whether section 25(e) violates the Illinois Constitution's ban on special legislation (Ill. Const. 1970, art. IV, § 13) or whether the Act itself was passed in violation of the Illinois Constitution's three-readings rule (Ill. Const. 1970, art. IV, § 8(d)). For the following reasons, we answer the first question in the affirmative and the second question in the negative.

¶ 2                          I. BACKGROUND

¶ 3      Lyft, Inc. (Lyft) is a ridesharing company that provides an alternative to traditional taxicab service. It operates an on-demand transportation network that uses a smartphone application (or "app") to connect individuals in search of rides with drivers willing to provide them using their personal vehicles. In July 2017, after an evening out with friends, plaintiff Jane Doe used the Lyft app on her smartphone to hail a ride home.[1] The app matched Doe with Angelo McCoy, a driver in the Lyft network. A short time later, McCoy arrived at Doe's location, and Doe got in the back seat of McCoy's vehicle. At some point during the ride, Doe fell asleep. McCoy then drove to a secluded alley, where he brandished a knife, zip-tied Doe's hands, and repeatedly sexually assaulted her. After the attack, McCoy drove away with Doe still in the back seat of his vehicle. Doe eventually escaped when McCoy stopped briefly for a traffic light.

---

[1]Because Doe's claims were dismissed on the pleadings, we accept all well-pleaded allegations in her complaint as true for purposes of this appeal. *Doe v. Coe*, 2019 IL 123521, ¶ 20.

No. 1-19-1328

¶ 4    Doe sued McCoy, Lyft, and Sterling Infosystems, Inc. (Sterling), the company Lyft uses

to conduct background checks of its drivers. Doe's complaint included claims of assault and

battery and false imprisonment against McCoy and a claim of negligence against Sterling. As to

Lyft, Doe alleged that it was directly liable for negligently hiring, retaining, and supervising

McCoy and for fraudulently representing itself as a safe transportation option. (Those claims are

not at issue in this appeal.) Doe also alleged that, as McCoy's principal or employer, Lyft was

vicariously liable for his intentional torts against her.

¶ 5    Lyft moved to dismiss the vicarious liability claims as legally insufficient under section

2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2018)). It acknowledged that a

principal or employer may be held vicariously liable for its agent's or employee's conduct if the

conduct fell within the scope of the agency or employment relationship.[2] See *Wilson v. Edward

Hospital*, 2012 IL 112898, ¶ 18. But Lyft argued that it cannot be held vicariously liable for

McCoy's attack on Doe because acts of sexual assault, as a matter of law, fall outside the scope of

an agency or employment relationship. See *Doe v. Lawrence Hall Youth Services*, 2012 IL App

(1st) 103758, ¶ 30.

¶ 6    In response, Doe argued that Lyft can be held vicariously liable for its agent's or

employee's intentional tort against a passenger, even if the relevant conduct fell outside the scope

of the agency or employment relationship, because Lyft is a common carrier that owes its

passengers a heightened and nondelegable duty of care. See *Dennis v. Pace Suburban Bus Service*,

2014 IL App (1st) 132397, ¶¶ 13-16. Doe argued that, like a traditional taxicab company, Lyft is

---

[2]In its motion to dismiss, Lyft assumed that McCoy was its agent or employee but reserved the
right to contest the issue later. For purposes of this appeal, we likewise assume that McCoy was an agent
or employee of Lyft.

a common carrier because it provides transportation services to the general public. See *Browne v. SCR Medical Transportation Services, Inc.*, 356 Ill. App. 3d 642, 646 (2005) ("A common carrier is one who undertakes for hire to carry all persons indifferently who may apply for passage, so long as there is room and there is no legal excuse for refusal." (Internal quotation marks omitted.)); *Anderson v. Yellow Cab Co.*, 28 Ill. App. 3d 656, 657 (1975) ("A taxicab is a common carrier.").

¶ 7    Even if Lyft is not a common carrier, Doe argued, it should nonetheless be held to the same standard of care as a common carrier. Doe noted that the heightened duty of care and principles of vicarious liability applicable to common carriers have been extended to non-common carrier school bus operators on the ground that they perform the same basic function and exercise the same control over their passengers' safety as common carriers. See *Green v. Carlinville Community Unit School District No. 1*, 381 Ill. App. 3d 207, 214 (2008); *Doe v. Sanchez*, 2016 IL App (2d) 150554, ¶¶ 27-35. The same considerations, Doe argued, support the extension of common carrier liability to ridesharing companies, such as Lyft, even if they are not otherwise deemed common carriers.

¶ 8    In reply, Lyft invoked section 25(e) of the Transportation Network Providers Act, which declares that transportation network companies (or TNCs) and their drivers "are not common carriers, contract carriers or motor carriers, as defined by applicable State law, nor do they provide taxicab or for-hire vehicle service." 625 ILCS 57/25(e) (West 2018). (Doe does not dispute that Lyft is a TNC, which is defined as "an entity *** that uses a digital network or software application service to connect passengers to transportation network company services provided by transportation network company drivers." *Id.* § 5.) In light of section 25(e), Lyft argued, it is not a common carrier as a matter of law and thus not subject to the standards of liability applicable to

common carriers, including vicarious liability for the torts of its agents, such as sexual assault, that fall outside the scope of the agency relationship.

¶ 9    Lyft argued that section 25(e) would be rendered meaningless if ridesharing companies could be treated as though they were common carriers for liability purposes despite that section's declaration that they are not common carriers. Regardless, Lyft argued, the decisions in *Green* and *Sanchez* extending common carrier standards of liability to non-common carrier school bus operators rest on the unique safety concerns presented by the transportation of school children and do not support the extension of common carrier liability to other non-common carriers.

¶ 10    In a surreply, Doe argued that section 25(e) is unconstitutional for two reasons. First, she argued that section 25(e) violates the Illinois Constitution's ban on special legislation because it arbitrarily treats ridesharing companies more favorably than similarly situated entities such as taxicab companies. Second, Doe argued that in passing the Transportation Network Providers Act, including section 25(e), the General Assembly did not adhere to the Illinois Constitution's three-readings rule, which mandates that "[a] bill shall be read by title on three different days in each house" before passage. Ill. Const. 1970, art. IV, § 8(d).

¶ 11    After hearing oral argument, the circuit court issued a written opinion dismissing Doe's vicarious liability claims without prejudice. The court recognized that a common carrier may be held vicariously liable for an intentional tort committed by its agent against a passenger even if the agent's conduct fell outside the scope of the agency relationship. And the court noted that, absent section 25(e), ridesharing companies would likely be deemed common carriers. But the court concluded that section 25(e) plainly exempts ridesharing companies from common carrier status, meaning that Lyft may not be deemed a common carrier as a matter of law. And treating Lyft as

No. 1-19-1328

though it were a common carrier, the court explained, would undermine the legislative intent of section 25(e).

¶ 12    The circuit court next addressed Doe's constitutional challenges. In rejecting her special legislation challenge, the court held that section 25(e) does not arbitrarily discriminate between ridesharing companies and their competitors. Although the court recognized that one purpose of the Transportation Network Providers Act is to ensure the safety of ridesharing passengers, the court found that section 25(e)'s exemption of ridesharing companies from common carrier status is rationally related to the Act's additional goal of "promot[ing] and enabl[ing] the growth of TNCs in the state of Illinois." Quoting *Illinois Transportation Trade Ass'n v. City of Chicago*, 839 F.3d 594, 599 (7th Cir. 2016), the court explained that it is "permissible for a government to choose 'the side of deregulation, and thus of competition[,]' when it decides how to regulate various entities and activities." The court also rejected Doe's challenge under the three-readings rule, finding that the manner in which the Act was passed was "uncommon" but not "disallowed."

¶ 13    In light of its determination that section 25(e) is a valid exercise of legislative authority, the court held that Doe was barred from recovering against Lyft under a common carrier theory of vicarious liability. However, while the court had earlier stated that it would be inconsistent with the intent of section 25(e) to treat ridesharing companies as though they were common carriers, the court left open the possibility that a different theory of vicarious liability premised on the extension of common carrier standards of liability to non-common carriers, as in *Green* and *Sanchez*, may be valid. The court accordingly dismissed Doe's vicarious liability claims without prejudice.

- 6 -

No. 1-19-1328

¶ 14    The court then certified two questions of law for immediate appeal under Rule 308:[3]

(1) whether section 25(e) of the Transportation Network Providers Act "preclude[s] TNCs, such

as Lyft, from otherwise being subject to the highest duty of care under common law, like that of a

common carrier's elevated duty to its passengers," and (2) if so, whether the Act is constitutional.

We allowed Doe's timely application for leave to appeal.

¶ 15                                    II. ANALYSIS

¶ 16    Because an appeal under Rule 308 is limited to questions of law, our standard of review is

necessarily *de novo. Rozsavolgyi v. City of Aurora*, 2017 IL 121048, ¶ 21. In particular, we review

questions involving the scope and interpretation of a statute and its constitutionality *de novo.* See

*Raab v. Frank*, 2019 IL 124641, ¶ 18 (questions of statutory construction); *People v. Swenson*,

2020 IL 124688, ¶ 19 (constitutional questions). We also review a circuit court's order granting a

section 2-615 motion to dismiss *de novo. Doe v. Coe*, 2019 IL 123521, ¶ 20.

¶ 17            A. Section 25(e) Exempts TNCs From Common Carrier Standards of Liability

¶ 18    Section 25(e) of the Transportation Network Providers Act declares that TNCs "are not

common carriers, contract carriers or motor carriers, as defined by applicable State law, nor do

they provide taxicab or for-hire vehicle service." 625 ILCS 57/25(e) (West 2018). The first

certified question asks whether this provision precludes TNCs from being subject to the same

---

[3]Rule 308 provides: "When the trial court, in making an interlocutory order not otherwise
appealable, finds that the order involves a question of law as to which there is substantial ground for
difference of opinion and that an immediate appeal from the order may materially advance the ultimate
termination of the litigation, the court shall so state in writing, identifying the question of law involved. ***
The Appellate Court may thereupon in its discretion allow an appeal from the order." Ill. S. Ct. R. 308(a)
(eff. July 1, 2017).

- 7 -

No. 1-19-1328

heightened duty of care and principles of vicarious liability applicable to common carriers. We hold that it does.[4]

¶ 19     Under the doctrine of *respondeat superior*, a principal or employer is generally subject to vicarious liability for the tortious conduct of its agent or employee only if the conduct "fell within the scope of the agency or employment." *Wilson*, 2012 IL 112898, ¶ 18. An agent or employee's conduct "is not within the scope of [the agency or] employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the [principal or employer]." (Internal quotation marks omitted.) *Pyne v. Witmer*, 129 Ill. 2d 351, 360 (1989). Applying this standard, we have held that an act of sexual assault, "by its very nature, precludes the conclusion that it was committed within the scope of employment." *Lawrence Hall Youth Services*, 2012 IL App (1st) 103758, ¶ 28; see also *Stern v. Ritz Carlton Chicago*, 299 Ill. App. 3d 674, 677-81 (1998); *Deloney v. Board of Education of Thornton Township*, 281 Ill. App. 3d 775, 784-88 (1996). Doe does not dispute (at least for purposes of this appeal) that McCoy's alleged conduct fell outside the scope of his agency or employment with Lyft.

¶ 20     As Doe notes, however, the presence of one of several special relationships—that of common carrier and passenger, innkeeper and guest, custodian and ward, and business invitor and invitee—gives rise to a heightened duty of care that includes an affirmative duty to aid or protect

_____

[4]The Transportation Network Providers Act was repealed by its own terms on June 1, 2020. See 625 ILCS 57/34 (West 2018). The General Assembly purported to revive the Act on June 12, 2020, by amending the repeal date to June 1, 2021. See Public Act 101-639, § 40 (eff. June 12, 2020) (amending 625 ILCS 57/34). It is unclear whether this action was effective in reviving the statute. See 5 ILCS 70/3 (West 2018) ("No act or part of an act repealed by the General Assembly shall be deemed to be revived by the repeal of the repealing act."). But we need not resolve that issue here. Even if the Act is no longer in effect, its repeal does not retroactively alter the parties' rights or render this appeal moot. See *Perry v. Department of Financial & Professional Regulation*, 2018 IL 122349, ¶ 43 ("if a statutory change is substantive, then the change is not to be applied retroactively").

against an unreasonable risk of physical harm from third parties, including one's agents or employees. See *Simpkins v. CSX Transportation, Inc.*, 2012 IL 110662, ¶ 20; *Gress v. Lakhani Hospitality, Inc.*, 2018 IL App (1st) 170380, ¶ 15. As relevant here, "the high duty of care a common carrier owes its passengers is premised on the carrier's unique control over its passengers' safety." *Sanchez*, 2016 IL App (2d) 150554, ¶ 39. Because this heightened duty of care is nondelegable, a common carrier may be held vicariously liable for its agent's intentional tort against a passenger even if the agent's conduct, such as sexual assault, falls outside the scope of the agency or employment relationship. *Id.* ¶ 52; *Dennis*, 2014 IL App (1st) 132397, ¶¶ 13-16; *Green*, 381 Ill. App. 3d at 212-13.

¶ 21   We may assume (without deciding) that, in the absence of section 25(e), Lyft and other TNCs, like traditional taxicabs, would be deemed common carriers. See *Anderson*, 28 Ill. App. 3d at 657 (recognizing taxicab as common carrier). "A common carrier is one who undertakes for hire to carry all persons indifferently who may apply for passage, so long as there is room and there is no legal excuse for refusal." (Internal quotation marks omitted.) *Browne*, 356 Ill. App. 3d at 646. "The definitive test to be employed to determine if a carrier is a common carrier is whether the carrier serves all of the public alike." *Doe v. Rockdale School District No. 84*, 287 Ill. App. 3d 791, 794 (1997). Doe's complaint alleges that Lyft markets itself as a transportation company providing rides to the general public, that it offers its services to the general public through a freely available smartphone app, and that it charges its passengers standardized fares. Doe further alleges that Lyft prohibits its drivers from refusing to provide service based on race, national origin, religion, sexual orientation, gender or gender identity, physical or mental disability, medical condition, marital

No. 1-19-1328

status, or age.[5] Accepting these well-pleaded allegations as true, we cannot say that Lyft and other TNCs would not be deemed common carriers under the traditional definition of that term.

¶ 22    The problem for Doe, of course, is that section 25(e) declares that TNCs are *not* common carriers. Doe does not contest that Lyft is a TNC, and it clearly is. See 625 ILCS 57/5 (West 2018) (defining a TNC as "an entity *** that uses a digital network or software application service to connect passengers to transportation network company services provided by transportation network company drivers"). Doe argues, however, that Lyft should be held to the same heightened and nondelegable duty of care to its passengers that would apply if it were a common carrier, section 25(e) notwithstanding. Doe's argument rests primarily on the decisions in *Green* and *Sanchez*, which extended principles of common carrier liability, including vicarious liability for a driver's sexual assault of a passenger, to non-common carrier school bus operators. Doe reads those decisions as standing for the proposition that any provider of transportation services that exercises a high degree of control over its passengers' safety must be held to the same duty of care that applies to common carriers. We do not read either decision so broadly.

¶ 23    *Green* held that, although a school district that operates buses to transport its students is not a common carrier, it owes the students it transports the same duty of care that a common carrier owes its passengers. 381 Ill. App. 3d at 213. The court reasoned that, when busing students, a school district "is performing the same basic function [as a common carrier], transporting individuals." *Id.* And "[l]ike a passenger on a common carrier," the court explained, "a student on

---

[5]Indeed, the Transportation Network Providers Act requires all TNCs to "adopt and notify [their] drivers of a policy of non-discrimination on the basis of destination, race, color, national origin, religious belief or affiliation, sex, disability, age, sexual orientation, or gender identity with respect to passengers and potential passengers." 625 ILCS 57/20(a) (West 2018).

a school bus cannot ensure his or her own personal safety but must rely on the school district to provide fit employees to do so." *Id.*

¶ 24    *Sanchez* similarly held that a private school bus operator "owes the students it transports the same duty of care imposed on a common carrier." 2016 IL App (2d) 150554, ¶ 27. There, the court noted that "the high duty of care a common carrier owes its passengers is premised on the carrier's unique control over its passengers' safety." *Id.* ¶ 39. It is thus appropriate to hold a private school bus operator to a common carrier's duty of care, the court explained, because "a school bus driver is in unique control over the safety of students because he or she is often the only adult present during the commute." *Id.*

¶ 25    Doe contends that it is equally appropriate to hold Lyft and other TNCs to a common carrier's duty of care because TNCs also perform the same basic function as a common carrier and exercise significant control over the safety of their passengers. But we cannot ignore the context in which *Green* and *Sanchez* arose, namely, the transportation of school children. In *Green*, the court emphasized that its holding was "limited to the common-law duty school districts owe student passengers while the students are being transported on a school bus." 381 Ill. App. 3d at 214. The court stressed that because "children on a school bus" are "the most vulnerable members of our society," it would be "ludicrous" to afford them less protection than "adults on public transportation buses." *Id.* at 213. Indeed, *Sanchez* recognized that "*Green*'s core rationale [was] that school children require the highest standard of care in their transport." *Sanchez*, 2016 IL App (2d) 150554, ¶ 30. And *Sanchez* itself relied on the same rationale, invoking "the strong public policy to ensure the safe transportation of students" (*id.* ¶ 27) and "the importance [that] Illinois rightly places on the safety of school children" (*id.* ¶ 39). Read in this context, we do not think

No. 1-19-1328

*Green* and *Sanchez* support the broad proposition that any non-common carrier that performs the same basic function as a common carrier and exercises a similar degree of control over its passengers' safety must be held to the same duty of care that applies to common carriers.

¶ 26    Doe suggests that "in addition to the four [special relationships] that have been recognized, there may be other special relationships that give rise to a [heightened] duty." *Stearns v. Ridge Ambulance Service, Inc.*, 2015 IL App (2d) 140908, ¶ 18; see also Restatement (Second) of Torts § 314A cmt. b (1965) (four recognized relationships "are not intended to be exclusive, and are not necessarily the only ones in which a duty of affirmative action for the aid or protection of another may be found"). But Doe cites no Illinois decision recognizing an additional special relationship. The only example the Restatement provides is "that of husband and wife," and it ultimately "expresses no opinion as to whether there may not be other relations which impose a similar duty." Restatement (Second) of Torts § 314A cmt. b & caveat (1965). In any event, Doe's reply brief makes clear that she is not asking us to recognize a new special relationship between ridesharing companies and their passengers. Instead, she seeks to extend the common carrier's duty of care to non-common carrier ridesharing companies under the reasoning of *Green* and *Sanchez*. As explained above, however, we do not think *Green* or *Sanchez* support her argument.

¶ 27    Even if there were support for the general proposition that common carrier liability may be extended to non-common carriers other than school bus operators, it would be inappropriate for us to extend such liability to transportation providers that the legislature has specifically declared are not common carriers, as the General Assembly did with respect to TNCs in section 25(e) of the Transportation Network Providers Act. "The fundamental rule of statutory interpretation is to ascertain and give effect to the legislature's intent, and the best indicator of that intent is the

No. 1-19-1328

statutory language, given its plain and ordinary meaning." *Dew-Becker v. Wu*, 2020 IL 124472, ¶ 12. Section 25(e) states that TNCs "are not common carriers, *** as defined by applicable State law." 625 ILCS 57/25(e) (West 2018). Doe, in essence, would have us read section 25(e) as saying that TNCs are not common carriers *but are subject to the same duty of care applicable to common carriers*. But courts "are not free to read into a statute exceptions, limitations, or conditions the legislature did not express." *Dew-Becker*, 2020 IL 124472, ¶ 14. "No rule of construction authorizes this court to declare that the legislature did not mean what the plain language of the statute imports, nor may we rewrite a statute to add provisions or limitations the legislature did not include." *People v. Smith*, 2016 IL 119659, ¶ 28.

¶ 28    Were we to hold that TNCs are subject to the same liability standards as common carriers, it would strip the relevant language of section 25(e) of all meaning, contravening another rule of statutory construction that statutes "should be interpreted so that no part is rendered meaningless or superfluous." *People v. Simpson*, 2015 IL 116512, ¶ 29. If TNCs may be held to the same standards of liability as common carriers due to their similarity to common carriers, what does the legislative declaration that TNCs "are not common carriers" accomplish? The only suggestion Doe offers is that it frees TNCs from the common carrier's duty to serve the public indiscriminately. See *Rockdale School District*, 287 Ill. App. 3d at 794 ("A common carrier undertakes for hire to carry all persons indifferently, who may apply for passage so long as there is room and there is no legal excuse for refusal.").

¶ 29    But a separate section of the Transportation Network Providers Act requires TNCs to "adopt and notify [their] drivers of a policy of non-discrimination on the basis of destination, race, color, national origin, religious belief or affiliation, sex, disability, age, sexual orientation, or

- 13 -

No. 1-19-1328

gender identity with respect to passengers and potential passengers." 625 ILCS 57/20(a) (West 2018). The Act also requires TNC drivers to "comply with all applicable laws relating to accommodation of service animals" (*id.* § 20(c)) and forbids TNCs from "impos[ing] additional charges for providing services to persons with physical disabilities because of those disabilities" (*id.* § 20(d)). In addition, the Act provides that "[i]f a unit of local government has requirements for licensed chauffeurs not to discriminate in providing service in under-served areas, TNC drivers participating in TNC services within that unit of local government shall be subject to the same non-discrimination requirements for providing service in under-served areas." *Id.* § 20(f).

¶ 30    Construing section 25(e) in conjunction with these additional provisions, as we must (see *People v. Jackson*, 2011 IL 110615, ¶ 12 ("A court must view [a] statute as a whole, construing words and phrases in light of other relevant statutory provisions and not in isolation."), we think the Act does the opposite of what Doe suggests: it exempts TNCs from common carrier standards of liability but requires them to adhere to the common carrier's duty to serve all members of the public alike.

¶ 31    Finally, Doe correctly notes that "[c]ommon-law rights and remedies remain in full force in this state unless expressly repealed by the legislature or modified by court decision" and that "[a] legislative intent to alter or abrogate the common law must be plainly and clearly stated." *McIntosh v. Walgreens Boots Alliance, Inc.*, 2019 IL 123626, ¶ 30. She contends that section 25(e) does not clearly and expressly abrogate the common law rule that non-common carriers with sufficient similarities to common carriers are subject to the same standards of liability as common carriers. But as we explained above, there is no such general common law rule. By declaring that

- 14 -

No. 1-19-1328

TNCs are not common carriers, section 25(e) clearly and expressly exempts TNCs from the standards of liability that apply to common carriers under the common law.

¶ 32          B. Section 25(e) Does Not Violate the Special Legislation Clause

¶ 33    We now turn to the second certified question: Is the Transportation Network Providers Act constitutional? Because all statutes are presumed constitutional, the party challenging a statute's validity bears the burden of establishing a clear constitutional infirmity. *McElwain v. Office of the Illinois Secretary of State*, 2015 IL 117170, ¶ 14. The presumption of constitutionality also means that we must affirm the constitutionality of a statute whenever it is reasonably possible to do so. *Id.*

¶ 34    Doe contends that section 25(e) of the Act, as interpreted above to exempt ridesharing companies from common carrier liability, violates our state constitution's special legislation clause. That provision states: "The General Assembly shall pass no special or local law when a general law is or can be made applicable. Whether a general law is or can be made applicable shall be a matter for judicial determination." Ill. Const. 1970, art. IV, § 13. "The special legislation clause prohibits the General Assembly from conferring a special benefit or privilege upon one person or group and excluding others that are similarly situated." *Crusius v. Illinois Gaming Board*, 216 Ill. 2d 315, 325 (2005). "While the legislature has broad discretion to make statutory classifications, the special legislation clause prevents it from making classifications that arbitrarily discriminate in favor of a select group." *Id.* A special legislation clause challenge is thus judged under a two-part test: we first assess whether the statutory classification at issue discriminates in favor of a select group, and if we find that it does, we then determine whether the classification is arbitrary. *Id.*

- 15 -

No. 1-19-1328

¶ 35    We need not dwell on the first aspect of this inquiry. There is no question (and Lyft does not argue otherwise) that section 25(e) discriminates in favor of ridesharing companies *vis-à-vis* traditional taxicabs by exempting the former from the common carrier status that applies to the latter.

¶ 36    The operative question, then, is whether that legislative classification is arbitrary. This aspect of a special legislation clause challenge is judged under the same standards that apply to equal protection clause challenges under the federal or state constitution. *Id.* Where, as here, the challenged statute does not involve a suspect classification or affect fundamental rights, we apply rational basis review. *Id.* Under that deferential review, we must uphold the constitutionality of a statute if the classification it draws is rationally related to a legitimate state interest. *Id.* Put differently, "we must determine whether the classifications created by [the statute] are based upon reasonable differences in kind or situation, and whether the basis for the classifications is sufficiently related to the evil to be obviated by the statute." *Best v. Taylor Machine Works*, 179 Ill. 2d 367, 394 (1997). "In performing our analysis, we 'may hypothesize reasons for the legislation, even if the reasoning advanced did not motivate the legislative action.' " *Dotty's Cafe v. Illinois Gaming Board*, 2019 IL App (1st) 173207, ¶ 34 (quoting *People ex rel. Lumpkin v. Cassidy*, 184 Ill. 2d 117, 124 (1998)). Thus, if we "can reasonably conceive of any set of facts that justifies distinguishing the class the statute benefits from the class outside its scope, [we] will uphold the statute." *Crusius*, 216 Ill. 2d at 325.

¶ 37    Doe contends that there is no real and substantial difference between ridesharing companies and their traditional taxicab competitors that justifies treating only the latter as common carriers. In Doe's view, both are simply transportation companies in the business of selling rides

- 16 -

No. 1-19-1328

to the public. But we think the General Assembly could rationally find that the different business model and technology employed by the ridesharing industry in delivering its services warrants the differing regulatory treatment.

¶ 38    Unlike traditional taxicabs, TNCs "use part-time drivers extensively." *Illinois Transportation Trade Ass'n*, 839 F.3d at 598. As Doe alleges in her complaint, Lyft's "business model depends on having a large pool of non-professional drivers to transport the general public." This model allows TNCs to dramatically expand the availability of on-demand transportation services to the public, particularly in areas that are not well served by traditional taxicabs. It also creates a "business relationship between TN[C]s and their drivers [that] differ[s] substantially from the one between [taxicab] medallion holders and taxicab chauffeurs." *Checker Cab Operators, Inc. v. Miami-Dade County*, 899 F.3d 908, 923 (11th Cir. 2018). One significant difference is that, as a matter of law, TNCs are "not deemed to own, control, operate, or manage the vehicles used by TNC drivers." 625 ILCS 57/5 (West 2018).

¶ 39    The technological platform that TNCs use to deliver their services also distinguishes them from their traditional taxicab competitors. Unlike taxis, TNC drivers may not accept passengers via street hail. See *id.* ("TNC service is not *** street hail service."). Instead, TNC service must be "prearranged [by a passenger] with a TNC driver through the use of a TNC digital network or software application," namely, a smartphone app. *Id.* This system allows TNCs, in comparison to taxicabs, to provide passengers with "more information in advance about their prospective rides— information that includes not only the driver's name but also pictures of him (or her) and of the car." *Illinois Transportation Trade Ass'n*, 839 F.3d at 598; see 625 ILCS 57/30(c) (West 2018) ("The TNC's software application or website shall display a picture of the TNC driver, and the

- 17 -

No. 1-19-1328

license plate number of the motor vehicle utilized for providing the TNC service before the passenger enters the TNC driver's vehicle."). "In contrast, a customer who hails a taxi on the street may be able to observe the make and model of the vehicle, but does not know the driver's identity before he or she enters the vehicle." *Newark Cab Ass'n v. City of Newark*, 901 F.3d 146, 157 (3d Cir. 2018).

¶ 40   Doe contends that any distinction between TNCs and taxicabs based on the use of a smartphone app to prearrange rides is illusory because many taxicab companies have similar apps. But the critical distinction is that TNC service *must* be prearranged through a smartphone app. Unlike taxis, TNC drivers are prohibited from accepting passengers via street hail. Doe also asserts that the distinction between arranging a ride via street hail and doing so via smartphone app is of no practical import because taxicab passengers receive similar information about their driver upon entering the cab. See 625 ILCS 55/5(a) (West 2018) ("The taxi driver's picture, the taxi driver's license or registration number, and the taxicab medallion number or an exterior identification number must be posted in a visible location in each cab."). But we cannot overlook the significance of TNC passengers receiving relevant information *before* they enter the vehicle, even if that amounts to a relatively short period of time in practice. "These few minutes give the [TNC] customer time to consider the available information before entering a vehicle, which is time that a taxi customer might not have." *Newark Cab Ass'n*, 901 F.3d at 158.

¶ 41   We think the General Assembly could reasonably conclude that TNCs' business model and technological platforms justify exempting them, but not traditional taxicabs, from common carrier status. In light of TNCs' extensive reliance on large networks of non-professional, part-time drivers, the General Assembly could reasonably conclude that holding those companies to

- 18 -

No. 1-19-1328

principles of common carrier liability—including vicarious liability for intentional torts its drivers commit against passengers even if the drivers' conduct was outside the scope of their agency or employment—would be prohibitively burdensome for the industry. At the same time, the General Assembly could reasonably determine that the unique safety features enabled by TNCs' software technology and method of service make the imposition of such liability unnecessary for the protection of passengers.

¶ 42     Doe contends that section 25(e) is not rationally related to ensuring passenger safety, which she considers to have been the sole legislative purpose of the Transportation Network Providers Act. She asserts that section 25(e) is at odds with the remaining provisions of the Act, which promote the goal of passenger safety by (among other things) requiring TNCs and TNC drivers to maintain certain levels of automobile liability insurance coverage (625 ILCS 57/10 (West 2018)), setting minimal driver qualification requirements and mandating that drivers undergo criminal background checks (*id.* § 15), and requiring TNCs to implement zero-tolerance policies concerning the use of drugs or alcohol by drivers while logged in to the TNC network or providing TNC service (*id.* § 25(a)).

¶ 43     But a law need not be confined to a single purpose. "Legislation often has multiple purposes whose furtherance involves balancing and compromise by the legislature." *Crusius*, 216 Ill. 2d at 329. The Transportation Network Providers Act, "like most laws, might predominantly serve one general objective, *** while containing subsidiary provisions that seek to achieve other desirable (perhaps even contrary) ends as well, thereby producing a law that balances objectives but still serves the general objective when seen as a whole." *Fitzgerald v. Racing Ass'n of Central Iowa*, 539 U.S. 103, 108 (2003). We think that is precisely what the Transportation Network Providers

No. 1-19-1328

Act did: it balanced the competing aims of ensuring the safety of TNC passengers and creating a regulatory environment that would allow the then-nascent ridesharing industry to flourish in Illinois, bringing added competition and innovation to the transportation services market. Section 25(e) will thus survive rational basis review so long as it rationally furthers at least one of these goals. See *Crusius*, 216 Ill. 2d at 329 ("For a provision in a law to pass the rational basis test, it does not have to promote all of the law's disparate and potentially conflicting objectives.").[6]

¶ 44    The parties devote considerable attention to debating whether we may consider the legislative history of an earlier bill to regulate the ridesharing industry that the General Assembly passed (but the Governor vetoed) when determining the legislative purpose of the Transportation Network Providers Act. We need not resolve that question here, as its answer would be of academic interest only. When reviewing a statute under the rational basis test, a "court may hypothesize reasons for the legislation, even if the reasoning advanced did not motivate the legislative action." *Lumpkin*, 184 Ill. 2d at 124; see also *Federal Communications Comm'n v. Beach Communications, Inc.*, 508 U.S. 307, 315 (1993) (stating, in context of federal equal protection clause challenge, that "it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature"). We may uphold section 25(e) if it is rationally related to the purpose of encouraging the growth of the ridesharing industry in order to foster

---

[6]Doe questions whether the now well-established ridesharing industry continues to need the particular regulatory rules established in the Transportation Network Providers Act. But under the rational basis test, we must judge the constitutionality of a statutory classification in light of the facts existing at the time of the statute's enactment. See *Chicago National League Ball Club, Inc. v. Thompson*, 108 Ill. 2d 357, 368-69 (1985) ("When a classification under a statute is called into question, if any state of facts can reasonably be conceived to sustain the classification, the existence of that state of facts at the time the statute was enacted must be assumed.").

No. 1-19-1328

competition in the transportation services market regardless of whether any legislator openly expressed that purpose at a committee hearing or in floor debate.

¶ 45    Recognizing the dual goals of the Transportation Network Providers Act, we have little difficulty in concluding that section 25(e)'s exemption of TNCs from common carrier status is rationally related to a legitimate state interest. Fostering competition in the transportation services market and increasing transportation options for consumers is undoubtedly a legitimate state interest. See *Moline School District No. 40 Board of Education v. Quinn*, 2016 IL 119704, ¶ 27 ("Encouraging Illinois businesses to expand in Illinois and facilitating economic growth of our communities are unquestionably legitimate functions of state government."). And the General Assembly could reasonably conclude that exempting TNCs from common carrier liability would facilitate their growth in the State. As explained above, the General Assembly could rationally conclude that holding TNCs to the common carrier standard of vicarious liability for their drivers' intentional torts against passengers, even if the driver's conduct fell outside the scope of the agency relationship, would unduly burden an emerging industry that relies to a large extent on non-professional and part-time drivers to increase the supply of on-demand transportation services available to the public. And as further explained, the General Assembly could rationally conclude that the safety features inherent in the technology that TNCs use to deliver their services provide additional protection for passenger safety and thus lessen the need to impose on TNCs the same degree of vicarious liability applicable to common carriers such as taxicabs. In our dissenting colleague's view, "the fact that the drivers are not professionals and are driving passengers part-time in their own vehicles would suggest that TNCs should be required to assume even *more* responsibility for them, not less, to ensure passenger safety in the hands of such drivers."

- 21 -

No. 1-19-1328

(Emphasis in original.) *Infra* ¶ 69. But it is not for us to say whether section 25(e) is good policy or whether the Transportation Network Providers Act strikes the right balance between its competing goals of increased competition and passenger safety. "Our task is not to determine whether the statutory [provisions] are wise; our task is to determine whether they are constitutional." *Allen v. Woodfield Chevrolet, Inc.*, 208 Ill. 2d 12, 28 (2003).

¶ 46    In rejecting an equal protection clause challenge to a Chicago ordinance regulating TNCs and taxicabs differently—on matters of driver and vehicle qualifications, licensing, fares, and insurance—the Seventh Circuit concluded that "[t]here are enough differences between taxi service and TN[C] service to justify different regulatory schemes." *Illinois Transportation Trade Ass'n*, 839 F.3d at 598. Other federal courts have followed suit in rejecting equal protection challenges to similar ordinances. See *Newark Cab Ass'n*, 901 F.3d at 156-160; *Checker Cab Operators*, 899 F.3d at 921-24; *Progressive Credit Union v. City of New York*, 889 F.3d 40, 48-51 (2d Cir. 2018). Although these decisions do not address laws holding TNCs to a different standard of vicarious liability than taxicabs, their reasoning is equally applicable here. As the Seventh Circuit explained, "[d]ifferent products or services do not as a matter of constitutional law, and indeed of common sense, always require identical regulatory rules." *Illinois Transportation Trade Ass'n*, 839 F.3d at 598. For the reasons discussed above, we think the General Assembly could reasonably conclude that the differences between TNCs and taxicabs justify treating the two entities differently for purposes of imposing vicarious liability for the actions of their drivers and that the classification drawn by section 25(e) is rationally related to a legitimate state interest.

¶ 47    Finally, Doe argues that by exempting ridesharing companies but not traditional taxicab operators from common carrier status, section 25(e) arbitrarily distinguishes between victims of

- 22 -

No. 1-19-1328

sexual assault by ridesharing drivers (who may not hold the driver's principal vicariously liable for the attack) and victims of sexual assault by taxicab drivers (who may). She asserts that this consequence of section 25(e) renders it unconstitutional under the special legislation clause. See *Best*, 179 Ill. 2d at 394 ("[I]n evaluating a challenged provision [under the special legislation clause] the court must consider the natural and reasonable effect of the legislation on the rights affected by the provision.").

¶ 48    In support of this argument, Doe compares section 25(e) to a statutory provision that our supreme court struck down in *Grasse v. Dealer's Transport Co.*, 412 Ill. 179 (1952). The provision at issue there transferred an injured employee's right to recover damages from his tortfeasor to the injured employee's employer if both the employer and the tortfeasor were covered by the Worker's Compensation Act. See *id.* at 181-82. As the court explained, the provision thus "modifie[d], and even eliminate[d] under some circumstances, the tort liability of third parties who negligently injure employees engaged in another enterprise." *Id.* at 191. The court held that the provision was unconstitutional special legislation in part because there was "no rational difference between an employee injured in the course of his employment by a [tortfeasor covered by the Act], and one injured by a [tortfeasor not covered by the Act]." *Id.* at 196. Rather, "[t]he sole basis for differentiation, as far as the injured employee [was] concerned[,] [was] a fortuitous circumstance—whether the third party tort-feasor happen[ed] to be [covered] under the [A]ct." *Id.*

¶ 49    The classification drawn by section 25(e) is not comparable to the one invalidated in *Grasse*. Whether a passenger is injured or attacked by a ridesharing driver rather than a taxicab driver does not result from happenstance but from the passenger's voluntary decision to use a ridesharing service rather than a taxi service. As our supreme court has explained, "relevant

No. 1-19-1328

differences in the circumstances under which *** various voluntary relationships [are] created" may "justif[y] the imposition of differing standards of care." *Grace v. Howlett*, 51 Ill. 2d 478, 488 (1972).

¶ 50    Contrary to the position of our dissenting colleague (see *infra* ¶ 67), we think the General Assembly could rationally conclude that differences in the manner in which TNCs and taxicabs form relationships with prospective passengers justify holding the respective entities to differing standards of care to their passengers. As discussed above, while a taxicab may respond to a prospective passenger's request for service via street hail, TNC service may only be prearranged between a passenger and driver using a TNC's smartphone app. See 625 ILCS 57/5 (West 2018). That technological innovation allows (and the Transportation Network Providers Act requires) TNCs to provide a prospective passenger with "a picture of the TNC driver[ ] and the license plate number of the motor vehicle utilized for providing the TNC service before the passenger enters the TNC driver's vehicle." *Id.* § 30(c). Thus, while a passenger who hails a taxi on the street "immediately is matched with a taxi when that taxi pulls over," a TNC passenger "is matched with [and provided information about] a driver a few minutes before the vehicle arrives," giving the TNC passenger "time to consider the available information before entering a vehicle." *Newark Cab Ass'n*, 901 F.3d at 158. As explained above, we think the General Assembly could rationally conclude that these features of TNC service (but not generally of taxicab service) create added protection for the safety of TNC passengers that justifies holding TNCs and taxicab operators to

No. 1-19-1328

differing standards of care and, in particular, to differing degrees of vicarious liability for the intentional torts of their drivers against passengers.[7]

¶ 51        C. The Enrolled-Bill Doctrine Forecloses Doe's Three-Readings Rule Challenge

¶ 52        Doe's final contention is that the entire Transportation Network Providers Act is invalid under the Illinois Constitution's three-readings rule, which requires that "[a] bill shall be read by title on three different days in each house" before passage. Ill. Const. 1970, art. IV, § 8(d). As Doe explains, the Transportation Network Providers Act originated as House Amendment No. 1 to Senate Bill 2774 (SB 2774). See 98th Ill. Gen. Assem., Senate Bill 2774, 2013 Sess. SB 2774 initially passed the Senate and was read twice in the House as an unrelated bill to amend the Illinois Public Accounting Act (see 225 ILCS 450/0.01 *et seq.* (West 2018)). After its second reading in the House, SB 2774 was amended by removing everything after the enacting clause and substituting the text of what eventually became the Transportation Network Providers Act. The newly reconstituted SB 2774 was read once more before being passed by the House and then returned to the Senate where it was debated and passed the same day.

¶ 53        Doe argues that the House improperly circumvented the three-readings rule by replacing the entirety of the then-twice read SB 2774 with a wholly unrelated amendment and reading the reconstituted bill just once before passage. In *Giebelhausen v. Daley*, 407 Ill. 25, 48 (1950), our supreme court held that the "complete substitution of a new bill under the original number, dealing

---

[7]Although section 25(e) exempts Lyft and other ridesharing companies from vicarious liability for their drivers' intentional torts that (like sexual assault) fall outside the scope of any agency relationship between the ridesharing company and its drivers, it does not similarly preclude Doe (and other ridesharing passengers) from recovering against a ridesharing company under theories of direct liability. In this case, Doe has also pleaded causes of action against Lyft for negligently hiring, retaining, and supervising McCoy and for fraudulently marketing itself as a safe transportation option. Those counts remain pending in the circuit court, and we express no opinion as to their merits.

- 25 -

No. 1-19-1328

with a subject which was not akin or closely allied to the original bill, and which was not read three times in each House, after it has been so altered, [was a] clear violation of" a similar three-readings rule in the 1870 Constitution. See Ill. Const. 1870, art. IV, § 13 ("Every bill shall be read at large on three different days, in each house ***.").

¶ 54    Doe contends that the procedure employed by the legislature here likewise violated the three-readings rule of our current constitution. But our supreme court has held that judicial challenges to legislation under the 1970 Constitution's three-readings rule are foreclosed by the enrolled-bill doctrine. See *Geja's Cafe v. Metropolitan Pier & Exposition Authority*, 153 Ill. 2d 239, 258-60 (1992). "That doctrine flows out of the language in article IV, section 8(d), which says '[t]he Speaker of the House of Representatives and the President of the Senate shall sign each bill that passes both houses to certify that the procedural requirements for passage have been met.' " *Id.* at 258-59 (quoting Ill. Const. 1970, art. IV, § 8(d)). Under the enrolled-bill doctrine, "once the Speaker of the House of Representatives and the President of the Senate certify that the procedural requirements for passing a bill have been met, a bill is conclusively presumed to have met all procedural requirements for passage." *Friends of the Parks v. Chicago Park District*, 203 Ill. 2d 312, 328-29 (2003). The doctrine thus "precludes [courts] from inquiring into the legislature's compliance with the procedural requirements for passage of bills." *People v. Dunigan*, 165 Ill. 2d 235, 253 (1995).

¶ 55    Doe recognizes that we are bound to reject her three-readings rule challenge under the enrolled-bill doctrine. But she argues that it is time to abandon the doctrine and presents the issue to preserve it for further review by the supreme court. As Doe notes, the supreme court has lamented the General Assembly's "remarkably poor self-discipline in policing itself in regard to

- 26 -

No. 1-19-1328

the three-readings requirement" (*Friends of the Parks*, 203 Ill. 2d at 329) and has "reserve[d] the right to revisit" the enrolled-bill doctrine if the legislature's noncompliance persists (*Geja's Cafe*, 153 Ill. 2d at 260). Whether that time has come is a question only the supreme court can answer. Doe has appropriately preserved the issue for that court's review. But until the supreme court instructs otherwise, we must reject her three-readings rule challenge.

¶ 56                                III. CONCLUSION

¶ 57     For the reasons discussed, we answer the circuit court's certified questions as follows: (1) section 25(e) of the Transportation Network Providers Act precludes TNCs from being subject to the heightened duty of care and special standards of vicarious liability that apply to common carriers and (2) neither the Act as a whole nor section 25(e), as interpreted, is unconstitutional. Accordingly, we affirm the circuit court's order dismissing Doe's vicarious liability claims and remand for further proceedings consistent with this opinion.

¶ 58     Affirmed and remanded; certified questions answered.

¶ 59     PRESIDING JUSTICE GORDON, concurring in part and dissenting in part:

¶ 60     I agree with the majority's answer to the first certified question, concerning whether section 25(e) of the Transportation Network Providers Act (Act) (625 ILCS 57/25(e) (West 2018)) exempts ridesharing companies from the heightened duty of care and standard of vicarious liability that apply to common carriers. However, I cannot agree with the majority's conclusion that section 25(e) is constitutional, and consequently, I respectfully dissent from the majority's answer to the second certified question.

¶ 61     Under our state's constitution, "[t]he General Assembly shall pass no special or local law when a general law is or can be made applicable. Whether a general law is or can be made

- 27 -

applicable shall be a matter for judicial determination." Ill. Const. 1970, art. IV, § 13. This provision is commonly known as the special legislation clause, and it prohibits the legislature from conferring a special benefit or privilege upon one person or group and excluding others that are similarly situated. *Moline School District No. 40 Board of Education v. Quinn*, 2016 IL 119704, ¶ 18. "Its purpose, as [the supreme court has] consistently held, is to prevent arbitrary legislative classifications that discriminate in favor of a select group without a sound, reasonable basis." *Moline School District No. 40*, 2016 IL 119704, ¶ 18 (citing *Best v. Taylor Machine Works*, 179 Ill. 2d 367, 391 (1997)).

¶ 62    In assessing whether a statute violates the special legislation clause, courts apply a two-part analysis: "First, they must determine whether the statutory classification at issue discriminates in favor of a select group. If it does, then they must go on to consider whether the classification is arbitrary." *Moline School District No. 40*, 2016 IL 119704, ¶ 23 (citing *Big Sky Excavating, Inc. v. Illinois Bell Telephone Co.*, 217 Ill. 2d 221, 235 (2005)). As the majority notes, there is no dispute that section 25(e) discriminates in favor of ridesharing companies by exempting them from common-carrier liability. Accordingly, the only question is whether the classification is arbitrary. It is here that the majority and I part ways.

¶ 63    A special legislation challenge is generally judged under the same standards applicable to an equal protection challenge. *Moline School District No. 40*, 2016 IL 119704, ¶ 24. If a law does not affect fundamental rights or make a suspect classification, "the appropriate measure of its constitutionality is the rational basis test, which asks whether the statutory classification is rationally related to a legitimate state interest." *Moline School District No. 40*, 2016 IL 119704, ¶ 24 (citing *Crusius v. Illinois Gaming Board*, 216 Ill. 2d 315, 325 (2005)). In applying such a test,

No. 1-19-1328

"we must determine whether the classifications created by [the statute] are based upon reasonable differences in kind or situation, and whether the basis for the classifications is sufficiently related to the evil to be obviated by the statute." *Best*, 179 Ill. 2d at 394 (citing *Grasse v. Dealer's Transport Co.*, 412 Ill. 179, 195 (1952)). "[I]n evaluating a challenged provision the court must consider the natural and reasonable effect of the legislation on the rights affected by the provision." *Best*, 179 Ill. 2d at 394 (citing *Grasse*, 412 Ill. at 193).

¶ 64    As an initial matter, it is important to note that Doe is challenging only one section of a larger statute; she is not contending that the Act as a whole constitutes special legislation but only that section 25(e) does. To be clear: while courts in other jurisdictions have considered equal protection challenges to statutes regulating TNCs, this is the first case addressing a special legislation challenge, as well as the first case considering the provision exempting TNCs from common-carrier liability. This distinguishes the case at bar from the cases in other jurisdictions, on which Lyft and the majority rely. It also focuses the inquiry before this court to one question: does exempting TNCs from common-carrier liability violate the special legislation clause? I would find that it does because there is no rational basis for treating a TNC differently than a taxicab with respect to the duty owed to its passengers. In fact, not only does section 25(e) treat TNCs differently than taxicabs, but it treats TNCs differently than *any* other entity that would fall within the definition of a common carrier.

¶ 65    Under Illinois law, "a common carrier is 'one who undertakes for the public to transport from place to place such persons or the goods of such persons as choose to employ him for hire.' " *Browne v. SCR Medical Transportation Services, Inc.*, 356 Ill. App. 3d 642, 646 (2005) (quoting *Illinois Highway Transportation Co. v. Hantel*, 323 Ill. App. 364, 374 (1944)).

No. 1-19-1328

Additionally, a common carrier must hold itself out to provide its services to the general public. *Ally Financial Inc. v. Pira*, 2017 IL App (2d) 170213, ¶ 46. A common carrier " 'undertakes for hire to carry all persons indifferently who may apply for passage so long as there is room and there is no legal excuse for refusal.' " *Browne*, 356 Ill. App. 3d at 646 (quoting *Hantel*, 323 Ill. App. at 376).

¶ 66    The heightened duty of care owed by a common carrier existed at common law and is not a creation of statute, a factor that our supreme court has found relevant in determining whether the legislature could impose limits on liability. See, *e.g.*, *Wright v. Central Du Page Hospital Ass'n*, 63 Ill. 2d 313, 329 (1976) ("Although we do not hold or even imply that under no circumstances may the General Assembly abolish a common law cause of action without a concomitant *quid pro quo*, we have consistently held that to the extent that recovery is permitted or denied on an arbitrary basis a special privilege is granted in violation of the Illinois Constitution."). Thus, the fact that the legislature has chosen to regulate TNCs and taxicabs differently in certain respects is not the relevant issue. Instead, the issue is that the legislature has chosen to exempt TNCs from a common-law duty that applies to taxicabs and other common carriers.

¶ 67    While the majority focuses on the differences between TNCs and taxicabs, the real difference that section 25(e) makes is in the relief available to the victims of crimes such as the sexual assault at issue here. Under section 25(e), victims of crimes that were committed by drivers of TNCs are basically prohibited from obtaining relief for acts of sexual predators, unlike victims of crimes that were committed by drivers of common carriers, such as taxicabs. The majority finds this distinction immaterial, concluding that "[w]hether a passenger is injured or attacked by a ridesharing driver rather than a taxicab driver does not result from happenstance but from the

- 30 -

No. 1-19-1328

passenger's voluntary decision to use a ridesharing service rather than a taxi service. As our supreme court has explained, 'relevant differences in the circumstances under which *** various voluntary relationships [are] created' may 'justif[y] the imposition of differing standards of care.' " *Supra* ¶ 49 (quoting *Grace v. Howlett*, 51 Ill. 2d 478, 488 (1972)). However, unlike the majority, I find no relevant differences in the circumstances under which a passenger takes a rideshare as opposed to taking a taxicab, so the mere fact that a passenger chose one form of transportation over the other should have no effect on the relief she is entitled to seek in court.

¶ 68    Additionally, the case that our supreme court was discussing in *Grace, Delany v. Badame*, 49 Ill. 2d 168 (1971), is a case in which the court upheld the constitutionality of a "guest statute," which increased the degree of fault required for a plaintiff to recover against the driver of a motor vehicle in which he was a passenger. The Delany court noted that the purpose of the statute was to "protect the interest of those who gratuitously extend the hospitality of their motor vehicles," and found unpersuasive the plaintiff's attempt to analogize the driver to the owner of a motorboat or home. *Delany*, 49 Ill. 2d at 171-72. The court, however, expressly noted that "the guest statute does not preclude a cause of action to the injured party but changes the degree of fault necessary for a recovery from that of the common law." *Delany*, 49 Ill. 2d at 174. In the case at bar, by contrast, section 25(e) operates to preclude a cause of action to the injured party by exempting TNCs from the duty they would otherwise owe their passengers.

¶ 69    The majority finds that "[i]n light of TNCs' extensive reliance on large networks of non-professional, part-time drivers, the General Assembly could reasonably conclude that holding those companies to principles of common carrier liability *** would be prohibitively burdensome for the industry." *Supra* ¶ 41. I find the opposite—the fact that TNCs rely on non-professional,

- 31 -

No. 1-19-1328

part-time drivers demonstrates that it is *unreasonable* for the General Assembly to weaken the protections given to the passengers of the TNCs. If anything, the fact that the drivers are not professionals and are driving passengers part-time in their own vehicles would suggest that TNCs should be required to assume even *more* responsibility for them, not less, to ensure passenger safety in the hands of such drivers. There is simply no rational reason to permit a company to be shielded from liability that it would otherwise be required to assume where that company is providing common-carrier services to passengers but is doing so through the use of individuals who are not full-time employees, who are not professionals, and who are largely using their own vehicles.

¶ 70   Most importantly, the constitution of the State of Illinois was adopted for a number of reasons, including "to provide for the health, safety and welfare of the people" and to "assure legal, social and economic justice." Ill. Const. 1970 pmbl. Section 25(e) violates both of these reasons. By exempting ridesharing companies from the heightened duty of care and the standard of vicarious liability that apply to common carriers, the legislature has totally disregarded the health, safety, and welfare of the people who would utilize the services of the ridesharing companies. Since the ridesharing companies would basically be immune from suit from the physical and mental injuries that stem from the evil deeds of sexual predators, the background checks that the companies are required to make would not be of the magnitude that they would be if liability would attach as a result of their negligence.

¶ 71   The largest expense for a common carrier is usually what they pay for liability insurance. Taxi companies pay large rates for their drivers, or over and above what the drivers pay, because of the taxicab companies' exposure to liability for their drivers' wrongful acts. As a result of

- 32 -

No. 1-19-1328

section 25(e), the ridesharing companies would have little or no liability due to the common-carrier exclusion given to them, and their insurance rates would reflect that advantage, causing the taxicab charges to be substantially greater than those of the ridesharing companies.

¶ 72    In addition, section 25(e) not only fails to assure legal, social, and economic justice, it creates an unjust result to the victims of sexually predatory drivers who use the services of ridesharing companies relying on their advertisements that they will have a safe ride. For all of the reasons stated herein, I find that the statutory exclusion at issue in section 25(e) discriminates in favor of ridesharing companies to the detriment of the taxicab companies and the people of the State of Illinois, and that the classification is arbitrary and thus violates the special legislation clause of the Illinois Constitution. Accordingly, for all of the reasons stated in this dissent, I would find that section 25(e) is unconstitutional and would answer the second certified question in the affirmative.

No. 1-19-1328

---

### No. 1-19-1328

---

| | |
|---|---|
| **Cite as:** | *Doe v. Lyft, Inc.*, 2020 IL App (1st) 191328 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 17-L-11355; the Hon. Patricia O'Brien Sheahan, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | J. Timothy Eaton, Jonathan B. Amarilio, Allison E. Czerniak, and Ioana M. Guset, of Taft Stettinius & Hollister LLP, and Timothy S. Tomasik, Patrick J. Giese, and Patrick M. Grim, of Tomasik Kotin Kasserman, LLC, both of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Anthony J. Carballo and Martin Syvertsen, of Freeborn & Peters, LLP, of Chicago, and Beth A. Stewart (*pro hac vice*), of Williams & Connolly LLP, Washington, D.C., for appellee. |

---

| | |
|---|---|
| ***Amicus Curiae:*** | Leslie J. Rosen, of Leslie J. Rosen Attorney at Law, PC, of Chicago, for *amicus curiae* Illinois Trial Lawyers Association. |
| | Joshua D. Yount, of Mayer Brown LLP, of Chicago, for *amicus curiae* Chamber of Commerce of the United States of America. |

---

# EXHIBIT 8

Case 4:23-cv-03811-JSW   Document 23-1   Filed 09/29/23   Page 324 of 351

IL LEGIS 103-527 (2023), 2023 Ill. Legis. Serv. P.A. 103-527 (H.B. 2231) (WEST)

2023 Ill. Legis. Serv. P.A. 103-527 (H.B. 2231) (WEST)

ILLINOIS 2023 LEGISLATIVE SERVICE

One-Hundred-and-Third General Assembly, 2023

Additions are indicated by **Text**; deletions by
~~Text~~ .
Vetoes are indicated by ~~Text~~ ;
stricken material by ~~Text~~ .

PUBLIC ACT 103–527

H.B. 2231

AN ACT concerning transportation.

Be it enacted by the People of the State of Illinois, represented in the General Assembly:

Section 5. The Transportation Network Providers Act is amended by changing Sections 25 and 34 as follows:

<< IL ST CH 625 § 57/25 >>

**[S.H.A. 625 ILCS 57/25]** (625 ILCS 57/25)

(Section scheduled to be repealed on September 1, 2023)

§ 25. Safety.

(a) The TNC shall implement a zero tolerance policy on the use of drugs or alcohol while a TNC driver is providing TNC services or is logged into the TNC's digital network but is not providing TNC services.

(b) The TNC shall provide notice of the zero tolerance policy on its website, as well as procedures to report a complaint about a driver with whom a passenger was matched and whom the passenger reasonably suspects was under the influence of drugs or alcohol during the course of the trip.

(c) Upon receipt of a passenger's complaint alleging a violation of the zero tolerance policy, the TNC shall immediately suspend the TNC driver's access to the TNC's digital platform, and shall conduct an investigation into the reported incident. The suspension shall last the duration of the investigation.

  (d) The TNC shall require that any motor vehicle that a TNC driver will use to provide TNC services meets vehicle safety and emissions requirements for a private motor vehicle in this State.

(e) TNCs or TNC drivers are not common carriers, contract carriers or motor carriers, as defined by applicable State law, nor do they provide taxicab or for-hire vehicle service. **This subsection (e) is inoperative on and after January 1, 2024.**

(Source: Reenacted by P.A. 101–660, eff. 4–2–21.)

<< IL ST CH 625 § 57/34 >>

**[S.H.A. 625 ILCS 57/34]** (625 ILCS 57/34)

---

(Section scheduled to be repealed on September 1, 2023)

§ 34. Repeal. This Act is repealed on September 1, **2028** ~~2023~~ .


(Source: P.A. 101–639, eff. 6–12–20. Reenacted by P.A. 101–660, eff. 4–2–21. P.A. 102–7, eff. 5–28–21; 102–1109, eff. 12–21–22.)

Section 99. Effective date. This Act takes effect upon becoming law.

Approved: August 11, 2023
Effective: August 11, 2023

**End of Document**                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT 9

Case 4:23-cv-03811-JSW   Document 23-1   Filed 09/29/23   Page 327 of 351
**Perry v. Department of Financial and Professional Regulation, 2018 IL 122349 (2018)**
106 N.E.3d 1016, 423 Ill.Dec. 848

 Original Image of 106 N.E.3d 1016 (PDF)

2018 IL 122349

Supreme Court of Illinois.

Christopher J. PERRY et al., Appellants,

v.

The DEPARTMENT OF FINANCIAL AND PROFESSIONAL REGULATION, Appellee.

Institute for Justice, Appellant,

v.

The Department of Financial and Professional Regulation, Appellee.

(Docket Nos. 122349, 122411 cons.)

|

Opinion filed May 24, 2018

**Synopsis**

**Background:** Records requester, who was a structural engineer, sought review of Department of Financial and Professional Regulation's denial of his request under the state Freedom of Information Act (FOIA) for disclosure, in redacted form, of a complaint filed against his structural engineer's license. In a separate case that would later be consolidated on appeal with structural engineer's case, a different records requester, which was a research organization, sought review of Department's denial of its request for all complaints regarding licensed cosmetologists and hair braiders that had been received by the Barber, Cosmetology, Esthetics, Hair Braiding, and Nail Technology Board during a particular time period. In structural engineer's case, after both parties moved for reconsideration following the granting of partial summary judgment for structural engineer, the Circuit Court, Cook County, Rita M. Novak, J., applied a recently enacted change to the Department of Professional Regulation Law and granted summary judgment for Department. Structural engineer appealed. The Appellate Court, 🚩 413 Ill.Dec. 329, 77 N.E.3d 1136, affirmed. Structural engineer appealed. In research organization's case, the Circuit Court, Cook County, Rodolfo Garcia, J., granted research organization's motion for summary judgment, determined that a recently enacted change to the Barber Act did not retroactively apply to the records request, ordered production of the requested records, and awarded research organization attorney fees and costs. Department appealed. The Appellate Court, 🚩 2017 WL 1386827, reversed. Research organization appealed.

**Holdings:** After consolidation of the two cases, the Supreme Court, Garman, J., held that:

[1] in determining whether to apply a change in law to a pending cause of action, courts consider the legislature's intent, moving on to constitutional prohibitions only if the legislature evinces an intent for retroactive operation; overruling 🚩 *Kalven v. City of Chicago*, 379 Ill.Dec. 903, 7 N.E.3d 741;

[2] amendment to Department of Professional Regulation Law that would have exempted from disclosure the complaint that structural engineer had requested did not apply retroactively to structural engineer's records request; and

[3] amendment to the Barber Act that provided that complaints against licensees on file with the Department were for the confidential use of the Department did not apply retroactively to research organization's request.

122349—Reversed.

106 N.E.3d 1016, 423 Ill.Dec. 848

122411—Reversed and remanded with instructions.

**Procedural Posture(s):** On Appeal; Motion for Summary Judgment; Motion for Reconsideration.

West Headnotes (10)

**[1]**   **Records** 🔑 On judicial review of administrative decisions

Standard of review would be de novo in consolidated appeal regarding two separate records requests in cases that concerned the application of recently enacted changes in law to the requests, where the consolidated appeal presented an issue of statutory construction and the appeal arose from summary judgment orders.

4 Cases that cite this headnote

**[2]**   **Summary Judgment** 🔑 In conjunction with right to judgment as matter of law
    **Summary Judgment** 🔑 Favoring nonmovant; disfavoring movant

Summary judgment is proper if, when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, admissions, and affidavits on file demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

9 Cases that cite this headnote

**[3]**   **Records** 🔑 Rules of construction

Under the Illinois Freedom of Information Act (FOIA), statutory exemptions are to be construed narrowly. 5 Ill. Comp. Stat. Ann. 140/1 et seq.

3 Cases that cite this headnote

**[4]**   **Records** 🔑 Presumption of disclosure

Public records are presumed to be open and accessible. 5 Ill. Comp. Stat. Ann. 140/1 et seq.

**[5]**   **Records** 🔑 General disclosure requirements; freedom of information

The Illinois Freedom of Information Act (FOIA) is to be given a broad construction. 5 Ill. Comp. Stat. Ann. 140/1 et seq.

**[6]**   **Statutes** 🔑 Effect on substantive rights
    **Statutes** 🔑 Procedural Statutes
    **Statutes** 🔑 Application to pending actions and proceedings

If a statutory change is procedural, then the change will apply retroactively, i.e., to pending cases in the absence of a constitutional impediment to such retroactive application; conversely, if a statutory change is substantive, then the change is not to be applied retroactively. 5 Ill. Comp. Stat. Ann. 70/4.

9 Cases that cite this headnote

**[7]**     **Statutes**   👉   Application to pending actions and proceedings

In determining whether to apply a change in law to a pending cause of action, courts consider the legislature's intent, moving on to constitutional prohibitions only if the legislature evinces an intent for retroactive operation; overruling

🚩 *Kalven v. City of Chicago*, 379 Ill.Dec. 903, 7 N.E.3d 741.

5 Cases that cite this headnote

**[8]**     **Statutes**   👉   Amendatory statutes

In the context of the rule that a statutory change will apply retroactively if it is procedural, procedural ramifications of a substantive amendment do not make the amendment procedural. 5 Ill. Comp. Stat. Ann. 70/4.

9 Cases that cite this headnote

**[9]**     **Records**   👉   General disclosure requirements; freedom of information
           **Records**   👉   Matters Exempted or Prohibited from Disclosure Under Other Laws

Amendment to Department of Professional Regulation Law that would have exempted from disclosure a complaint that had been filed against structural engineer's license and that structural engineer had requested in redacted form under the state Freedom of Information Act (FOIA) prior to the amendment did not apply retroactively to structural engineer's records request. 5 Ill. Comp. Stat. Ann. 140/11; 🚩 20 Ill. Comp. Stat. Ann. 2105/2105-117.

**[10]**    **Records**   👉   General disclosure requirements; freedom of information
           **Records**   👉   Matters Exempted or Prohibited from Disclosure Under Other Laws

Amendment to the Barber Act that provided that complaints against licensees on file with the Department of Financial and Professional Regulation were for the confidential use of the Department did not apply retroactively to research organization's request under the state Freedom of Information Act (FOIA), which was the subject of a pending court action as of the effective date of the amendment, for all complaints regarding licensed cosmetologists and hair braiders that had been received by the Barber, Cosmetology, Esthetics, Hair Braiding, and Nail Technology Board during a particular time period. 5 Ill. Comp. Stat. Ann. 140/11; 🚩 225 Ill. Comp. Stat. Ann. 410/4-24.

**West Codenotes**

**Limitation Recognized**

🚩 20 Ill. Comp. Stat. Ann. 2105/2105-117; 🚩 225 Ill. Comp. Stat. Ann. 410/4-24.

**Attorneys and Law Firms**

**\*1018** Jeffery J. Lula, Haris Hadzimuratovic, Kyle L. Voils, and Brendan E. Ryan, of Kirkland & Ellis LLP, of Chicago, for appellant Institute for Justice.

Gregory F. Ladle, of John L. Ladle, P.C., of Chicago, for appellants Christopher J. Perry and Perry & Associates, LLC.

Lisa Madigan, Attorney General, of Springfield (David L. Franklin, Solicitor General, and Aaron T. Dozeman, Assistant Attorney General, of Chicago, of counsel), for appellee.

Jeffrey M. Schwab, Jacob H. Huebert, and James J. McQuaid, of Liberty Justice Center, of Chicago, for amici curiae Illinois Policy Institute et al.

Andrew D. Prins (pro hac vice), Elana Nightingale Dawson, and Genevieve P. Hoffman (pro hac vice), of Latham & Watkins LLP, of Washington, D.C., for amicus curiae Reporters Committee for Freedom of the Press.

Isaac Rabicoff and Kenneth Matuszewski, of Rabicoff Law LLC, of Chicago, for amici curiae American Civil Liberties Union of Illinois et al.

## OPINION

JUSTICE GARMAN delivered the judgment of the court, with opinion.

**\*\*850** ¶ 1 In separate cases, both plaintiff-appellants, (1) Christopher J. Perry and Perry **\*1019** **\*\*851** & Associates, LLC (collectively, Perry), and (2) the Institute for Justice (Institute), filed causes of action under section 11 of the Illinois Freedom of Information Act (FOIA) (5 ILCS 140/11 (West 2012)) seeking the disclosure of certain information from the Department of Financial and Professional Regulation (Department). After the circuit court denied in part and granted in part Perry's motion for summary judgment, section 2105–117 of the Department of Professional Regulation Law took effect, which, if applicable, would exempt the type of information sought by Perry from disclosure. Pub. Act 99–227 (eff. Aug. 3, 2015) (adding 20 ILCS 2105/2105–117). Both Perry and the Department moved for reconsideration, and the circuit court applied section 2105–117 to the action, concluding that the information Perry sought was exempt from disclosure. The circuit court denied Perry's motion to reconsider, and the appellate court affirmed. *Perry v. Department of Financial & Professional Regulation*, 2017 IL App (1st) 161780, ¶ 48, 413 Ill.Dec. 329, 77 N.E.3d 1136.

¶ 2 During the pendency of the Institute's lawsuit in the circuit court, Public Act 98–911 became effective on January 1, 2015, adding section 4–24 to the Barber, Cosmetology, Esthetics, Hair Braiding, and Nail Technology Act of 1985 (Barber Act), which, if applicable, would exempt the type of information sought by the Institute from disclosure. Pub Act. 98–911 (eff. Jan. 1, 2015) (adding 225 ILCS 410/4–24). After the circuit court granted the Institute's motion for summary judgment and denied the Department's motion for summary judgment, concluding in part that section 4–24 could not be applied to the Institute's action, the Department appealed. The appellate court reversed. *Institute for Justice v. Department of Financial & Professional Regulation*, 2017 IL App (1st) 162141–U, ¶ 29, 2017 WL 1386827.

¶ 3 We allowed Perry's and the Institute's petitions for leave to appeal (Ill. S. Ct. R. 315 (eff. Nov. 1, 2017)), which have been consolidated to determine whether section 2105–117 and section 4–24 are to apply to Perry's and the Institute's pending causes of actions, respectively. We allowed the following parties to file *amicus curiae* briefs: the American Civil Liberties Union of Illinois, the Better Government Association, the Chicago Appleseed Fund for Justice, the Chicago Council of Lawyers, the Citizen Advocacy Center, and the Illinois Press Association; the Reporters Committee for Freedom of the Press; and the Illinois Policy Institute and Edgar County Watchdogs.

¶ 4 BACKGROUND

106 N.E.3d 1016, 423 Ill.Dec. 848

¶ 5 Perry's Request for Review and Circuit Court Proceedings

¶ 6 On January 21, 2013, Perry filed a FOIA request with the Department seeking disclosure of a complaint that had been made against his structural engineer's license. The Department denied his request on January 23, 2013. Perry sought review of the Department's denial by the Public Access Counselor (PAC). See 5 ILCS 140/9.5(a) (West 2012) ("A person whose request to inspect or copy a public record is denied by a public body, except the General Assembly and committees, commissions, and agencies thereof, may file a request for review with the Public Access Counselor established in the Office of the Attorney General."). In a nonbinding opinion letter, the PAC concluded that Perry's request was properly denied under section 7(1)(d)(iv) of the Illinois FOIA because disclosure of the complaint would "unavoidably disclose the identity of a confidential source, confidential information furnished only by the confidential source, or **\*1020  \*\*852**  persons who file complaints with or provide information to administrative, investigative, law enforcement, or penal agencies." 5 ILCS 140/7(1)(d)(iv) (West 2014).

¶ 7 Perry amended the FOIA request on August 26, 2013, requesting that the Department disclose the complaint "redacted to exclude proper names and 'confidential information' " pursuant to section 7(1) of the FOIA. See 5 ILCS 140/7 (West 2012) ("When a request is made to inspect or copy a public record that contains information that is exempt from disclosure under this Section, but also contains information that is not exempt from disclosure, the public body may elect to redact the information that is exempt."). The Department denied the amended request.

¶ 8 On November 6, 2014, Perry filed an action against the Department in the Cook County circuit court. Pursuant to section 11(d), Perry requested the circuit court to order the Department to produce the redacted complaint. 5 ILCS 140/11(d) (West 2014) ("The circuit court shall have the jurisdiction to enjoin the public body from withholding public records and to order the production of any public records improperly withheld from the person seeking access."). Pursuant to sections 11(i) and (j), respectively, Perry also sought an award of attorney fees and the imposition of a civil penalty for the Department's willful and bad-faith failure to comply with the Illinois FOIA. See 5 ILCS 140/11(i), (j) (West 2014).

¶ 9 Perry moved for summary judgment. Alternatively, Perry sought an *in camera* inspection of the complaint by the circuit court. 5 ILCS 140/11(f) (West 2014). A hearing was held on July 27, 2015. After an *in camera* inspection, the circuit court concluded that, pursuant to section 7(1)(d)(iv), the complaint was exempt from disclosure but that two of the complaint's exhibits could be disclosed, as they had already been made available to third parties. Thus, Perry's motion for summary judgment was granted in part and denied in part. Both Perry and the Department moved for reconsideration, with Perry arguing that the court should have ordered the disclosure of the complaint with redaction of any names that would have revealed the complainant's identity and the Department contesting the disclosure of the exhibits because they would necessarily reveal the complainant's identity.

¶ 10 As another basis for exempting disclosure of the complaint and exhibits, regardless of redaction, the Department cited section 2105–117 of the Department of Professional Regulation Law. 20 ILCS 2105/2105–117 (West Supp. 2015). Section 2105–117 took effect on August 3, 2015, as a statutory amendment to the Department of Professional Regulation Law. Pub. Act 99–227 (eff. Aug. 3, 2015) (adding 20 ILCS 2105/2105–117). Perry asserted that section 2105–117 was inapplicable to the case, as it was not yet in effect at the time Perry made the FOIA request or at the time of the circuit court's ruling on Perry's summary judgment motion.

¶ 11 On January 7, 2016, at a hearing on the motions to reconsider, the circuit court observed that section 2105–117 had become effective about one week after its initial ruling on Perry's summary judgment motion and that it therefore could not have applied section 2105–117 when ruling on the motion. The circuit court also noted, however, that due to the parties' motions for reconsideration, it had retained jurisdiction over the case. As such, the circuit court determined that, per *Kalven v. City of Chicago*, 2014 IL App (1st) 121846, 379 Ill.Dec. 903, 7 N.E.3d 741, it was required to apply section 2105–117, the current law

in effect, when ruling on the motions for reconsideration. Because under section 2105–117 Perry would not be  **\*1021**  **\*\*853** entitled to disclosure of the redacted complaint or exhibits, the circuit court granted the Department's motion for reconsideration and dismissed Perry's cause of action.

¶ 12 Perry filed a motion to reconsider, arguing that the circuit court erred in applying section 2105–117 and failing to specifically address Perry's claims for attorney fees and a civil penalty against the Department. The circuit court denied Perry's motion to reconsider, reaffirmed its dismissal of Perry's FOIA action, dismissed Perry's claim for attorney fees under section 11(i) because Perry was not the prevailing party, and dismissed Perry's claim for a civil penalty.

¶ 13 The Institute's Request for Review and Circuit Court Proceedings

¶ 14 On September 12, 2013, the Institute filed a request pursuant to the Illinois FOIA (5 ILCS 140/1 *et seq.* (West 2012) ) seeking the disclosure of "[a]ll complaints regarding licensed cosmetologists and hair braiders received by the [Barber, Cosmetology, Esthetics, Hair Braiding, and Nail Technology Board] from 2011 to present." The Department denied the request on September 30, 2013, asserting that six separate FOIA exceptions exempted the requested records from disclosure. On November 22, 2013, the Institute filed a request for review of the denial with the PAC. See 🚩 5 ILCS 140/9.5(a) (West 2012) ("A person whose request to inspect or copy a public record is denied by a public body, except the General Assembly and committees, commissions, and agencies thereof, may file a request for review with the Public Access Counselor established in the Office of the Attorney General."). For over a year, the Institute's request remained pending with the PAC without resolution. Pursuant to section 11, the Institute filed a complaint in the Cook County circuit court. See 5 ILCS 140/11 (West 2012).

¶ 15 During the pendency of the lawsuit in the circuit court, Public Act 98–911 became effective on January 1, 2015. Pub. Act 98–911 (eff. Jan. 1, 2015) (adding 🚩 225 ILCS 410/4–24). Relevant here, the law added section 4–24 to the Barber Act, providing that complaints against licensees on file with the Department are "for the confidential use of the Department and shall not be disclosed" except to law enforcement officials, other regulatory agencies, or pursuant to subpoena. *Id.* The Department answered the Institute's complaint on March 23, 2015, and, among other asserted reasons, added as an affirmative defense that the recent enactment of section 4–24 exempted the requested documents from disclosure.

¶ 16 The Institute and the Department filed cross-motions for summary judgment. The circuit court granted the Institute's motion for summary judgment on November 12, 2015, denied the Department's cross-motion for summary judgment, and continued the matter for presentation of a formal order and to resolve miscellaneous issues.

¶ 17 On December 16, 2015, the circuit court issued an order, explaining that it found inapplicable the six FOIA exemptions claimed by the Department, that section 4–24 did not apply to the Institute's request because section 4–24 was enacted after the Institute's FOIA request, and that section 4–24 did not apply retroactively. On June 30, 2016, the court ordered the Department to produce the requested records by December 23, 2016, and awarded the Institute $35,000 in attorney fees and costs as the prevailing party. See 5 ILCS 140/11(i) (West 2012) ("If a person seeking the right to inspect or receive a copy of a public record prevails in a proceeding under this Section, the court shall award such person reasonable attorneys' fees and costs."). In a separate order, the court  **\*1022**  **\*\*854** denied the Department's motion for a stay of the production order. The Department appealed the orders separately, which were consolidated on appeal by the appellate court.

¶ 18 The appellate court granted the Department's motion for a stay of the production order pending appeal.

¶ 19 Appellate Court Analysis

¶ 20 In his appeal, Perry argued that the circuit court erred in applying section 2105–117 of the Department of Professional Regulation Law retroactively to his FOIA action. Citing *Landgraf v. USI Film Products*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), and section 4 of the Statute on Statutes (5 ILCS 70/4 (West 2014) ), Perry asserted that, because it is a substantive amendment and its application would have a retroactive impact on him by impairing his rights to examine the complaint and exhibits, section 2105–117 may not be retroactively applied.

¶ 21 In its appeal, the Department argued only that section 4–24 of the Barber Act applied to the Institute's request. The Institute asserted that, because section 4–24 contained no express provision regarding its temporal reach and because it is a substantive amendment that "redefines confidentiality protections and information availability," its application would have a retroactive impact upon the Institute.

¶ 22 The appellate court majority's analysis and reasoning was similar for both cases. See *Perry*, 2017 IL App (1st) 161780, 413 Ill.Dec. 329, 77 N.E.3d 1136 (Delort, J., dissenting); *Institute for Justice*, 2017 IL App (1st) 162141 (Delort, J. dissenting). The appellate majority explained, in both decisions:

"*Kalven*, [2014 IL App (1st) 121846, 379 Ill.Dec. 903, 7 N.E.3d 741,] *Center for Biological Diversity* [v. *United States Department of Agriculture*, 626 F.3d 1113 (9th Cir. 2010)], and *Wisniewski* [v. *Kownacki*, 221 Ill. 2d 453, 303 Ill.Dec. 818, 851 N.E.2d 1243 (2006),] compel the conclusion that when a statutory amendment only affects the present or future disclosure of information (either by allowing for its disclosure or exempting it from disclosure) and does not otherwise impair anyone's rights with respect to completed transactions made in reliance on the prior law, the application of the amendment has no impermissible retroactive effect and, therefore, the amendment must be applied by the court if it is in effect at the time of the court's decision." *Perry*, 2017 IL App (1st) 161780, ¶ 40, 413 Ill.Dec. 329, 77 N.E.3d 1136.

See also *Institute for Justice*, 2017 IL App (1st) 162141–U, ¶ 22.

¶ 23 Regarding Perry's case, the appellate majority stated that:

"as section 2105–117 of the [Department of Professional Regulation Law] only exempts the complaint and exhibits requested by the plaintiffs from present or future disclosure, and does not otherwise impair plaintiffs' rights with respect to any completed transactions made in reliance on any prior law, its application has no impermissible retroactive effect. Therefore, the court properly applied section 2105–117 when ruling on the reconsideration motions and dismissing plaintiffs' FOIA request." *Perry*, 2017 IL App (1st) 161780, ¶ 41, 413 Ill.Dec. 329, 77 N.E.3d 1136.

¶ 24 The appellate majority rejected Perry's claim that the circuit court erred in dismissing Perry's claim for attorney fees under section 11(i) because section 11(i) only allows recovery of attorney fees when " 'a person seeking the right to inspect or receive a copy of a public record prevails in a proceeding' " under section 11. (Emphasis omitted.) *Id.* ¶ 46 (quoting **\*1023  \*\*855** 5 ILCS 140/11(i) (West 2014) ). Because Perry did not prevail in the FOIA proceeding, the appellate majority held that the circuit court did not err in dismissing the claim for attorney fees. *Id.* The appellate majority also rejected Perry's assertion that the matter should be remanded for a hearing on the application of civil penalties against the Department under section 11(j). The appellate majority determined that Perry had forfeited review of this issue by failing to make an adequate argument regarding the imposition of civil penalties under section 11(j).

¶ 25 As to the Institute's case, the appellate majority stated:

"[a]s section 4–24 of the Barber Act only exempts the requested records from disclosure, and does not otherwise impair the Institute's rights with respect to any completed transaction made in reliance on any prior law, its application has no

impermissible retroactive effect. Therefore, the circuit court should have applied section 4–24, which was in effect at the time of its ruling, and exempted the requested records from disclosure. Accordingly, we reverse the November 12, 2015, order granting the Institute's motion for summary judgment, and the June 30, 2016, order requiring the Department to produce the subject records and awarding the Institute $35,000 in attorney fees as a prevailing requestor." 🚩 *Institute for Justice*, 2017 IL App (1st) 162141–U, ¶ 23.

¶ 26 Citing 🚩 *Kalven*, 2014 IL App (1st) 121846, ¶ 10, 379 Ill.Dec. 903, 7 N.E.3d 741, the appellate majority explained that, as to both cases, its holding was bolstered since Perry and the Institute had sought "injunctive relief, which is a prospective form of relief for which the circuit court must apply the law in effect at the time of its decision." 🚩 *Perry*, 2017 IL App (1st) 161780, ¶ 42, 413 Ill.Dec. 329, 77 N.E.3d 1136; 🚩 *Institute for Justice*, 2017 IL App (1st) 162141–U, ¶ 24.

¶ 27 The appellate majority also rejected both Perry's and the Institute's arguments that this court's decision in 🚩 *People ex rel. Madigan v. J.T. Einoder, Inc.*, 2015 IL 117193, 390 Ill.Dec. 105, 28 N.E.3d 758, compelled a different result. Further, unlike in 🚩 *J.T. Einoder, Inc.*, the application of section 2105–117 in Perry's case and the application of section 4–24 in the Institute's case "affect[ ] present or future disclosure of information and which do[ ] *not* impose any new liability on past conduct" and thus have "no impermissible retroactive effect." (Emphasis in original.) 🚩 *Perry*, 2017 IL App (1st) 161780, ¶ 45, 413 Ill.Dec. 329, 77 N.E.3d 1136; 🚩 *Institute for Justice*, 2017 IL App (1st) 162141–U, ¶ 28.

¶ 28 Separately, Perry and the Institute petitioned for leave to appeal to this court. Ill. S. Ct. R. 315 (eff. Mar. 15, 2016). We granted leave to appeal and consolidated the matters for review.

## ¶ 29 ANALYSIS

**[1]** **[2]** ¶ 30 We must decide whether section 2105–117 of the Department of Professional Regulation Law and section 4–24 of the Barber Act apply to Perry's and the Institute's requests for information, respectively. 🏳️ 20 ILCS 2105/2105–117 (West Supp. 2015); 🏳️ 225 ILCS 410/4–24 (West 2016). First, however, we must determine the proper governing analysis. The standard of review is *de novo*, as this appeal presents an issue of statutory construction and also because it arises from a summary judgment order. See *Stern v. Wheaton–Warrenville Community Unit School District 200*, 233 Ill. 2d 396, 404, 331 Ill.Dec. 12, 910 N.E.2d 85 (2009). "Summary judgment is proper if, when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, admissions, and affidavits on file **\*1024 \*\*856** demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." 🏳️ *Lazenby v. Mark's Construction, Inc.*, 236 Ill. 2d 83, 93, 337 Ill.Dec. 884, 923 N.E.2d 735 (2010).

¶ 31 Section 2105–117 provides:

"Confidentiality. All information collected by the Department in the course of an examination or investigation of a licensee, registrant, or applicant, including, but not limited to, any complaint against a licensee or registrant filed with the Department and information collected to investigate any such complaint, shall be maintained for the confidential use of the Department and shall not be disclosed. The Department may not disclose the information to anyone other than law enforcement officials, other regulatory agencies that have an appropriate regulatory interest as determined by the Director, or a party presenting a lawful subpoena to the Department. Information and documents disclosed to a federal, State, county, or local law enforcement agency shall not be disclosed by the agency for any purpose to any other agency or person. A formal complaint filed against

a licensee or registrant by the Department or any order issued by the Department against a licensee, registrant, or applicant shall be a public record, except as otherwise prohibited by law." 🚩 20 ILCS 2105/2105–117 (West Supp. 2015).

¶ 32 Section 4–24 provides:

"Confidentiality. All information collected by the Department in the course of an examination or investigation of a licensee or applicant, including, but not limited to, any complaint against a licensee filed with the Department and information collected to investigate any such complaint, shall be maintained for the confidential use of the Department and shall not be disclosed. The Department may not disclose the information to anyone other than law enforcement officials, other regulatory agencies that have an appropriate regulatory interest as determined by the Secretary, or a party presenting a lawful subpoena to the Department. Information and documents disclosed to a federal, State, county, or local law enforcement agency shall not be disclosed by the agency for any purpose to any other agency or person. A formal complaint filed against a licensee by the Department or any order issued by the Department against a licensee or applicant shall be a public record, except as otherwise prohibited by law." 🚩 225 ILCS 410/4–24 (West 2016).

¶ 33 Prior to the effective dates of both sections 2105–117 and 4–24, certain information collected by the Department could properly be sought and disclosed. No one contends otherwise. Both Perry and the Institute filed their respective Illinois FOIA causes of action prior to the effective dates of both sections. Thus, both Perry's and the Institute's cases were pending at the time sections 2105–117 and 4–24 went into effect. If sections 2105–117 and 4–24 are held to apply to Perry's and the Institute's pending causes of actions, then under section 7(1)(a) of the Illinois FOIA, the information sought would be exempt. See 🚩 5 ILCS 140/7(1)(a) (West 2016) ("Information specifically prohibited from disclosure by federal or State law or rules and regulations implementing federal or State law."). By way of background, section 1 of the Illinois FOIA provides, in part:

"The General Assembly hereby declares that it is the public policy of the State of Illinois that access by all persons to public records promotes the transparency and accountability of public bodies at all levels of government. It **1025 **857 is a fundamental obligation of government to operate openly and provide public records as expediently and efficiently as possible in compliance with this Act.

* * *

* * * This Act shall be construed to require disclosure of requested information as expediently and efficiently as possible and adherence to the deadlines established in this Act." 5 ILCS 140/1 (West 2016).

[3]  [4]  [5]  ¶ 34 Under the Illinois FOIA, statutory exemptions are to be construed narrowly. 🚩 *Lieber v. Board of Trustees of Southern Illinois University*, 176 Ill. 2d 401, 407, 223 Ill.Dec. 641, 680 N.E.2d 374 (1997). Additionally, "public records are presumed to be open and accessible." 🚩 *Id.* "FOIA is to be given a broad construction." 🚩 *Bowie v. Evanston Community Consolidated School District No. 65*, 128 Ill. 2d 373, 378, 131 Ill.Dec. 182, 538 N.E.2d 557 (1989).

¶ 35 Accordingly, we must decide whether sections 2105–117 and 4–24 apply to causes of action pending at the time of both sections' effective dates. We now turn to the parties' arguments regarding the proper analysis to employ to determine whether sections 2105–117 and 4–24 are to apply to Perry's and the Institute's causes of actions. Perry and the Institute assert that this court should simply apply its retroactivity analysis, which is summarized below. Were section 2105–117 and section 4–24 to be applied to Perry's and the Institute's cases, respectively, Perry and the Institute contend that application thereof would have a retroactive impact, which would result in inequitable consequences in contravention of 🚩 *J.T. Einoder, Inc.* and strip them of their accrued causes of actions under Illinois FOIA, which they contend became vested rights, their entitlement to the requested documents and attorney fees, and their settled expectations regarding the law at the time of the requests.

¶ 36 The Department maintains that this court need not utilize a retroactivity analysis because Perry and the Institute seek declaratory and injunctive relief. According to the Department, because declaratory relief allows a court to announce the scope of a person's present right to information and injunctive relief allows it to order the public body to disclose information in the future based on present rights, the application of a statute that becomes effective during a pending FOIA action is not retroactive. A law applies if it is effective at the time the court determines, under current law, whether a public body can be ordered to disclose information in the future. Because FOIA determines present rights, not past rights, the Department maintains that there can be no vested right at issue, as prospective relief merely allows a court to declare present rights and order future compliance with those rights. Therefore, because "prospective relief is the only relief available here, the court need not engage in Illinois's modified *Landgraf* retroactivity analysis."

¶ 37 The Department explains that, "[u]nlike in the typical *Landgraf* analysis, the court is not looking back at an event and applying present law to a past moment to determine whether a right that vested should remain free from interference ... [a]nd because it is not retrospectively assessing the legality of a past event involving a vested right, no present laws are being applied retroactively." In response to the Department's prospective relief argument, Perry and the Institute claim that they are both actually seeking retrospective relief in the form of a mandatory injunction to remedy the Department's past misconduct.

¶ 38 We begin by detailing Illinois's retroactivity jurisprudence, which parties **\*1026   \*\*858** still appear to be confused by, understandably, given its convoluted and muddled evolution. See *Commonwealth Edison Co. v. Will County Collector*, 196 Ill. 2d 27, 33, 255 Ill.Dec. 482, 749 N.E.2d 964 (2001) (describing *First of America Trust Co. v. Armstead*, 171 Ill. 2d 282, 287–88, 215 Ill.Dec. 639, 664 N.E.2d 36 (1996), as "[r]ecognizing that the principles for determining whether a statutory amendment applies to an existing controversy on appeal ha[s] 'not been consistently stated' "); *Kopec v. City of Elmhurst*, 193 F.3d 894, 906 (7th Cir. 1999) (Posner, C.J., dissenting) ("Illinois law on retroactivity is in a state of some muddle"); *Orlicki v. McCarthy*, 4 Ill. 2d 342, 346, 122 N.E.2d 513 (1954) (acknowledging that various Illinois decisions considered the issue of retrospectivity in the context of vested or nonvested rights, jurisdiction, whether a provision is substantive or procedural, legislative intent, by statutes of construction, or by a combination thereof).

¶ 39 In *Commonwealth Edison Co.*, this court adopted the United States Supreme Court's retroactivity analysis as set forth in *Landgraf*, 511 U.S. 244, 114 S.Ct. 1483. *Commonwealth Edison Co.*, 196 Ill. 2d at 39, 255 Ill.Dec. 482, 749 N.E.2d 964. We adopted the *Landgraf* analysis "with its focus on legislative intent, because we believed it provided the appropriate framework for evaluating whether a new law should apply to existing controversies." *Doe A. v. Diocese of Dallas*, 234 Ill. 2d 393, 411, 334 Ill.Dec. 649, 917 N.E.2d 475 (2009). Thus, with our adoption of the *Landgraf* approach, we "switched the focus of the first step of the retroactivity analysis from 'vested rights' to legislative intent." *Id.*

¶ 40 Under step one of *Landgraf*, a court first determines whether the legislature has " 'expressly prescribed' " the temporal reach of the new law. See *Commonwealth Edison Co.*, 196 Ill. 2d at 39–40, 255 Ill.Dec. 482, 749 N.E.2d 964 (quoting *Landgraf*, 511 U.S at 280, 114 S.Ct. 1483). If the legislature has clearly indicated the temporal reach, then such temporal reach must be given effect unless to do so would be constitutionally prohibited. *Id.* at 42–43, 255 Ill.Dec. 482, 749 N.E.2d 964.

¶ 41 However, in *Caveney v. Bower*, this court subsequently explained that, in light of section 4 of the Statute on Statutes, Illinois courts need not go beyond step one of the *Landgraf* approach. *207 Ill. 2d 82, 94, 278 Ill.Dec. 1, 797 N.E.2d 596 (2003).* Step two of *Landgraf* is triggered where the legislature's intent as to temporal reach is not clear. But, as has repeatedly

been explained, if the temporal reach has not been clearly indicated within the text of the new law, then the legislature's intent as to temporal reach is provided by default in section 4. 🚩*People v. Hunter*, 2017 IL 121306, ¶¶ 21–22, 422 Ill.Dec. 791, 104 N.E.3d 358; 🚩*People ex rel. Alvarez v. Howard*, 2016 IL 120729, ¶ 20, 410 Ill.Dec. 960, 72 N.E.3d 346; 🚩*Caveney*, 207 Ill. 2d at 100, 278 Ill.Dec. 1, 797 N.E.2d 596 (Freeman, J., specially concurring, joined by McMorrow, C.J., and Kilbride, J.) ("the court errs when it holds that section 4 serves as the clear expression of legislative intent that is contemplated in the first step of the 🚩*Landgraf* analysis").

¶ 42 Moreover, where the legislature has not expressly indicated its intent as to temporal reach, "a presumption arises that the amended statute is not to be applied retroactively." 🚩*J.T. Einoder, Inc.*, 2015 IL 117193, ¶ 34, 390 Ill.Dec. 105, 28 N.E.3d 758. As we noted in 🚩*Hunter*, section 4 of the Statute on Statutes was adopted in 1874 and has never been amended. 🚩2017 IL 121306, ¶ 21, 422 Ill.Dec. 791, 104 N.E.3d 358; see Ill. Rev. Stat. 1874, ch. 131, § 4 (Hurd 1874). Section 4 provides:

**\*1027   \*\*859**  "No new law shall be construed to repeal a former law, whether such former law is expressly repealed or not, as to any offense committed against the former law, or as to any act done, any penalty, forfeiture or punishment incurred, or any right accrued, or claim arising under the former law, or in any way whatever to affect any such offense or act so committed or done, or any penalty, forfeiture or punishment so incurred, or any right accrued, or claim arising before the new law takes effect, save only that the proceedings thereafter shall conform, so far as practicable, to the laws in force at the time of such proceeding. If any penalty, forfeiture or punishment be mitigated by any provisions of a new law, such provision may, by the consent of the party affected, be applied to any judgment pronounced after the new law takes effect. This section shall extend to all repeals, either by express words or by implication, whether the repeal is in the act making any new provision upon the same subject or in any other act." 5 ILCS 70/4 (West 2016).

**[6]**  ¶ 43 "Section 4 is a general savings clause, which this court has interpreted as meaning that procedural changes to statutes will be applied retroactively, while substantive changes are prospective only." 🚩*Howard*, 2016 IL 120729, ¶ 20, 410 Ill.Dec. 960, 72 N.E.3d 346 (citing 🚩*People v. Glisson*, 202 Ill. 2d 499, 506–07, 270 Ill.Dec. 57, 782 N.E.2d 251 (2002) ). If a statutory change is procedural, then the change will apply retroactively, *i.e.*, to pending cases in the absence of a constitutional impediment to such retroactive application. 🚩*Hunter*, 2017 IL 121306, ¶ 23, 422 Ill.Dec. 791, 104 N.E.3d 358. As made clear in 🚩*Hunter*, section 4 of the Statute on Statutes "contemplates the existence of proceedings after the new or amended statute is effective to which the new procedure could apply." 🚩*Id.* ¶ 31; see also *People v. Zito*, 237 Ill. 434, 438, 86 N.E. 1041 (1908) (under section 4, "what remained to be done" must conform to the mode of procedure under the new act). Conversely, if a statutory change is substantive, then the change is not to be applied retroactively. 🚩*J.T. Einoder, Inc.*, 2015 IL 117193, ¶ 36, 390 Ill.Dec. 105, 28 N.E.3d 758; 🚩*Caveney*, 207 Ill. 2d at 95–96, 278 Ill.Dec. 1, 797 N.E.2d 596; 🚩*Glisson*, 202 Ill. 2d at 507, 270 Ill.Dec. 57, 782 N.E.2d 251.

¶ 44 Thus, after determining that a change is substantive, we need not reach the issue of whether application of the substantive change would have a retroactive impact or operation. Were we to undertake this inquiry, we would essentially be engaging in step two of the 🚩*Landgraf* analysis, which this court does not utilize. See 🚩*Caveney*, 207 Ill. 2d at 95, 278 Ill.Dec. 1, 797 N.E.2d 596 ("Thus, for purposes of 🚩*Landgraf*'s first step, the legislature *always* will have clearly indicated the temporal reach of an amended statute, either expressly in the new legislative enactment or by default in section 4 of the Statute on Statutes." (Emphasis in original.) ).

¶ 45 To illustrate this distinction, we cite the 🚩*Landgraf* analysis:

"When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, *i. e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions **\*1028 \*\*860** already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result." ⚑ *Landgraf*, 511 U.S. at 280, 114 S.Ct. 1483.

¶ 46 Thus, under the ⚑ *Landgraf* analysis, federal courts will engage in a retroactive impact inquiry if a statute's reach has not been expressly prescribed. ⚑ *Landgraf*, 511 U.S. 244, 114 S.Ct. 1483. Conversely, this court has made clear that, where our legislature has not expressly indicated the temporal reach of a change in law, we look to whether the change is procedural or substantive, at which point our focus is still upon discerning "legislative intent." ⚑ *Hunter*, 2017 IL 121306, ¶ 22, 422 Ill.Dec. 791, 104 N.E.3d 358; ⚑ *Howard*, 2016 IL 120729, ¶ 20, 410 Ill.Dec. 960, 72 N.E.3d 346; ⚑ *J.T. Einoder, Inc.*, 2015 IL 117193, ¶¶ 31–32, 390 Ill.Dec. 105, 28 N.E.3d 758; *Allegis Realty Investors v. Novak*, 223 Ill. 2d 318, 331–32, 307 Ill.Dec. 592, 860 N.E.2d 246 (2006); ⚑ *Caveney*, 207 Ill. 2d at 92, 278 Ill.Dec. 1, 797 N.E.2d 596. If step two of ⚑ *Landgraf* considers retroactive operation to discern temporal reach, a step which this court never reaches, it follows that our inquiry into legislative intent ends upon determining that a change is substantive. Before proceeding further under Illinois's retroactivity analysis, we now turn to the Department's arguments as to why a retroactivity analysis need not be applied.

¶ 47 Department's Prospective Relief Argument

¶ 48 In support of its argument that a retroactivity analysis is inapplicable where prospective relief is sought, the Department relies upon several cases. We now examine each in turn, beginning with the Illinois cases.

¶ 49 First, the Department cites ⚑ *Wisniewski v. Kownacki*, 221 Ill. 2d 453, 303 Ill.Dec. 818, 851 N.E.2d 1243 (2006). In ⚑ *Wisniewski*, the plaintiff sought discovery of a defendant priest's (Kownacki) mental health and alcohol-abuse counseling records in connection with the plaintiff's lawsuit alleging in part that defendant had sexually abused him. ⚑ *Id.* at 455, 303 Ill.Dec. 818, 851 N.E.2d 1243. The church, also a defendant, objected, citing two Illinois statutes that made such records not subject to disclosure. ⚑ *Id.* at 455–56, 303 Ill.Dec. 818, 851 N.E.2d 1243. Specifically, defendants claimed that the records were privileged under the Mental Health and Developmental Disabilities Confidentiality Act (Confidentiality Act) (740 ILCS 110/1 *et seq.* (West 2002) ) and the Alcoholism and Other Drug Abuse and Dependency Act (Dependency Act) (⚑ 20 ILCS 301/30–5 *et seq.* (West 2002) ). ⚑ *Wisniewski*, 221 Ill. 2d at 455–56, 303 Ill.Dec. 818, 851 N.E.2d 1243. This court explained:

"Plaintiff argues that applying the nondisclosure provisions of the Confidentiality Act and the Dependency Act to Kownacki's preenactment treatment records would have a retroactive impact because it would impose new duties with respect to documents and transactions completed years before the statutes' enactment. We reject this argument and conclude that the applicability of the Confidentiality Act and the Dependency Act to Kownacki's treatment records does not hinge upon a retroactivity analysis. *Disclosure, which is the act regulated by both statutes, takes place only in the present or the future.* Thus, any new duties regarding disclosure or nondisclosure would likewise be imposed only in the present or the future, not in the past. In other words, applying the nondisclosure provisions of the Confidentiality Act and the Dependency Act to preenactment treatment records and communications would not impair anyone's rights with respect to past transactions. **\*1029 \*\*861** Neither statute impacts any actions that may have taken place in the past with regard to Kownacki's records. For these reasons, we conclude that the Confidentiality Act and the Dependency Act are applicable to treatment records

106 N.E.3d 1016, 423 Ill.Dec. 848

and communications that were created pursuant to treatment given prior to the effective dates of those statutes." (Emphasis added.) 🚩 *Id.* at 462–63, 303 Ill.Dec. 818, 851 N.E.2d 1243.

¶ 50 The Department asserts that, in 🚩 *Wisniewski*, this court "faced the question of whether the future disclosure of information had any retroactive impact" and "correctly concluded that it did not." The Department also points to the italicized portion above for support that, because disclosure occurs only in the future, a retroactivity analysis is inapplicable.

¶ 51 We disagree. 🚩 *Wisniewski* analyzed whether the nondisclosure provisions of the Confidentiality Act and the Dependency Act could be applied to treatment records that were *created* nearly 20 years before either act's effective date. 🚩 *Id.* at 462, 303 Ill.Dec. 818, 851 N.E.2d 1243. Moreover, both the Confidentiality Act and the Dependency Act's effective dates predated the discovery requests and filing of the lawsuit. 🚩 *Id.* at 455–56, 458–59, 303 Ill.Dec. 818, 851 N.E.2d 1243. Specifically, the Confidentiality Act became effective on January 9, 1979, and the Dependency Act became effective on July 1, 1988. 🚩 *Id.* at 458–59, 303 Ill.Dec. 818, 851 N.E.2d 1243. It was not until October 2002, after the Confidentiality Act and Dependency Act became effective, that the plaintiff filed the lawsuit and subsequently sought disclosure of the subject documents. 🚩 *Id.* at 455, 303 Ill.Dec. 818, 851 N.E.2d 1243. Thus, 🚩 *Wisniewski* does not stand for the broad proposition that, in any context, disclosure of information can only occur in the present or future and therefore that a retroactivity analysis will never apply. We find 🚩 *Wisniewski* distinguishable.

¶ 52 Second, the Department cites 🚩 *Hayashi v. Illinois Department of Financial & Professional Regulation* as also standing for the proposition that a retroactivity analysis is inapplicable where only prospective relief is at issue. 🚩 2014 IL 116023, ¶ 25, 388 Ill.Dec. 878, 25 N.E.3d 570 (citing 🚩 *Cox v. Hart*, 260 U.S. 427, 435, 43 S.Ct. 154, 67 L.Ed. 332 (1922) ("A statute is not made retroactive merely because it draws upon antecedent facts for its operation.") ). Relevant here, at issue in 🚩 *Hayashi* was section 2105–165 of the Department of Professional Regulation Law (Act) (20 ILCS 2105/2105–165 (West 2012) ), which mandated the permanent revocation, without a hearing, of the license of a health care worker who had been convicted of specific criminal offenses. 🚩 *Hayashi*, 2014 IL 116023, ¶ 8, 388 Ill.Dec. 878, 25 N.E.3d 570. After the Act went into effect, the Department sent notices to the three plaintiffs, whose cases were consolidated for review, informing each that the Department intended to revoke their licenses pursuant to the Act because each had been convicted of one of the specified crimes. 🚩 *Id.* ¶¶ 9, 11. Plaintiffs filed separate actions seeking injunctive relief and a judicial declaration that the Act applied only to convictions postdating the Act's effective date. 🚩 *Id.* ¶ 8. Plaintiffs' licenses were revoked by administrative order. 🚩 *Id.*

¶ 53 This court determined that "the plain language of the Act clearly indicate[d] that the legislature intended it to apply to convictions predating its effective date." 🚩 *Id.* ¶ 17. Next, the court considered plaintiffs' argument that, even if they fell "within the plain language of the Act based on their prior convictions, the application of section 2105–165 to them is impermissibly retroactive in violation of their substantive **\*1030 \*\*862** due process rights." 🚩 *Id.* ¶ 22. We explained:

"Applying the 🚩 *Landgraf* test to the Act, we find that the legislature plainly indicated the temporal reach by stating that the license of a health care worker who has been convicted of one of the triggering offenses shall by operation of law be permanently revoked without a hearing. [Citation.] The Act provides that revocation of health care licenses pursuant to its provisions takes place only after its effective date. Thus, the Act is solely prospective and not retroactive in its operation. That being so, there is no need to turn to the alternative statutory sources suggested by plaintiffs in order to define the temporal reach of the Act. Section 4 of the Statute on Statutes [citation] controls by default only where the legislature has not clearly

defined the temporal reach of a statute. [Citation.] If the legislature has clearly indicated the temporal reach of a provision, section 4 is inapplicable. [Citation.]" *Id.* ¶ 24.

¶ 54 However, despite the court's conclusion regarding the plainly indicated intent as to prospective reach, plaintiffs argued that the Act was retroactive "as applied to them because their health care licenses were revoked as a consequence of their prior convictions." *Id.* ¶ 25. Noting that the Act relied upon antecedent facts for its operation, this court explained that the Act did not apply retroactively to plaintiffs because the Act defined "new *per se* eligibility requirements with which licensees must comply in order to practice their health care professions in Illinois." *Id.* ¶ 26. Citing *Wisniewski*, this court explained that "[a]n amended statute which creates new requirements to be imposed in the present or future, and not in the past, does not have a retroactive impact on the parties." *Id.* Because the Act affected only the present and future eligibility of plaintiffs to continue to use their health care licenses, the court stated that the impact of applying the Act to plaintiffs was thus "solely prospective and not impermissibly retroactive within the meaning of the test articulated in *Landgraf*." *Id.*

¶ 55 Like *Wisniewski*, *Hayashi* does not support the Department's argument. First and foremost, *Hayashi* is distinguishable because the legislature had clearly prescribed the temporal reach of the Act, unlike in the present cases. In such cases where temporal reach is not clearly expressed, as here, the analysis is instead guided by section 4 of the Statute on Statutes. Second, *Hayashi* did not involve the issue of whether the amended statute could properly be applied to a pending cause of action. In *Hayashi*, all three plaintiffs initiated suit *after* the amendment went into effect.

¶ 56 Finally, the Department relies upon several federal cases to support its assertion that, where prospective relief is sought, a retroactivity analysis does not govern.

¶ 57 Every federal case cited by the Department involves an analysis of the second step of *Landgraf*, which Illinois courts never reach. See, *e.g.*, *Center for Biological Diversity*, 626 F.3d at 1118; *City of Chicago v. United States Department of the Treasury, Bureau of Alcohol, Tobacco & Firearms*, 423 F.3d 777, 783 (7th Cir. 2005); *Southwest Center for Biological Diversity v. United States Department of Agriculture*, 314 F.3d 1060, 1062 (9th Cir. 2002).

[7]   ¶ 58 In its brief, the Department asserts that Perry and the Institute "start from the misunderstanding that a right to information vested at some point before the intervening amendments became effective." Rather, the Department starts from the misunderstanding that Illinois courts **\*1031  \*\*863** will skip over section 4 of the Statute on Statutes and instead conduct a retroactive impact inquiry. See *Thomas v. Guardsmark, LLC*, 487 F.3d 531, 536–37 (7th Cir. 2007) ("[A]n Illinois court (and consequently, a federal court applying substantive Illinois law) need never go beyond step one of the *Landgraf* test."). As previously mentioned, Illinois courts do not utilize the second step of *Landgraf*, which considers whether (1) there would be an impairment of a party's rights that such party possessed when he or she acted, (2) a party's liability for past conduct would be increased, or (3) there would be an imposition of new duties with respect to transactions already completed. *Landgraf*, 511 U.S. at 280, 114 S.Ct. 1483. Nor do we look to the point in time at which the relief sought could be effectuated to determine the legislative intent as to temporal reach. In determining whether to apply a change in law to a pending cause of action, Illinois courts simply consider the legislature's intent, moving on to constitutional prohibitions only if the legislature evinces an intent for retroactive operation.

¶ 59 Although the Department does not cite *Kalven*, to the extent that the appellate majority relied upon *Kalven* for the proposition that, "[w]hen claims are prospective, a court must apply the law that is in effect at the time of its decision," the

appellate majority's reliance was misplaced. See *Kalven*, 2014 IL App (1st) 121846, ¶ 10, 379 Ill.Dec. 903, 7 N.E.3d 741. For this proposition, the *Kalven* court cited *Bartlow v. Costigan*, 2014 IL 115152, ¶¶ 30–31, 383 Ill.Dec. 95, 13 N.E.3d 1216, and *Forest Preserve District v. City of Aurora*, 151 Ill. 2d 90, 94–95, 175 Ill.Dec. 736, 600 N.E.2d 1194 (1992). *Kalven*, 2014 IL App (1st) 121846, ¶ 10, 379 Ill.Dec. 903, 7 N.E.3d 741. However, both *Bartlow* and *City of Aurora* were addressing the context-specific issue of whether a constitutional challenge to a statute was rendered moot by amendment. See, *e.g.*, *Bartlow*, 2014 IL 115152, 383 Ill.Dec. 95, 13 N.E.3d 1216; *City of Aurora*, 151 Ill. 2d 90, 175 Ill.Dec. 736, 600 N.E.2d 1194. Thus *Bartlow* and *City of Aurora* are inapplicable where, as here, no constitutional challenges to the enforcement of a statute have been made and therefore mootness is not at issue.

¶ 60 Accordingly, to the extent that *Kalven* conflicts with our decision herein, it is hereby overruled. See 2014 IL App (1st) 121846, ¶ 10, 379 Ill.Dec. 903, 7 N.E.3d 741.

## ¶ 61 Vested Rights

¶ 62 We note that the parties contest whether any vested rights are at issue so as to bar retroactive application of section 2105–117 and section 4–24 to Perry's and the Institute's causes of actions, respectively. For example, the Department cites *Armstead* for the proposition that "there is no vested right in the mere continuance of a law" and that "[t]he legislature has an ongoing right to amend a statute." 171 Ill. 2d at 291, 215 Ill.Dec. 639, 664 N.E.2d 36.

¶ 63 Under the vested rights approach, if an amendment had no retroactive impact, a court would not apply further rules of construction to determine legislative intent. *Id.* at 290, 215 Ill.Dec. 639, 664 N.E.2d 36 ("a reviewing court should simply apply the law as it exists at the time of the appeal, unless doing so would interfere with a vested right"). The vested rights approach is founded upon an understanding of "true retroactivity," under which a change in law is retroactive if it "takes away or impairs the vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability in respect of transactions or considerations already past." (Internal quotation marks omitted.) ***1032** **864** *Commonwealth Edison Co.*, 196 Ill. 2d at 34, 255 Ill.Dec. 482, 749 N.E.2d 964 (quoting *Armstead*, 171 Ill. 2d at 290, 215 Ill.Dec. 639, 664 N.E.2d 36). For illustration, Black's Law Dictionary contains a selected quotation referencing "true retroactivity" under its definition of "retroactivity":

" 'Retroactivity' is a term often used by lawyers but rarely defined. On analysis it soon becomes apparent, moreover, that it is used to cover at least two distinct concepts. The first, which may be called 'true retroactivity,' consists in the application of a new rule of law to an act or transaction which was completed before the rule was promulgated. The second concept, which will be referred to as 'quasi-retroactivity,' occurs when a new rule of law is applied to an act or transaction in the process of completion. ... [T]he foundation of these concepts is the distinction between completed and pending transactions ...." (Internal quotation marks omitted.) Black's Law Dictionary 1511–12 (10th ed. 2014) (quoting Trevor C. Hartley, *The Foundations of European Community Law* 129 (1981) ).

¶ 64 Illinois courts no longer utilize a vested rights analysis to determine temporal reach. See *Commonwealth Edison Co.*, 196 Ill. 2d at 39, 255 Ill.Dec. 482, 749 N.E.2d 964 ("[W]e hereby adopt the approach to retroactivity set forth in *Landgraf*."). To consider whether a right has vested necessarily involves an inquiry into retroactive impact, which would contravene this court's repeated holding that we do not reach step two of *Landgraf*. *Hunter*, 2017 IL 121306, ¶ 21, 422 Ill.Dec. 791, 104 N.E.3d 358; *Howard*, 2016 IL 120729, ¶ 29, 410 Ill.Dec. 960, 72 N.E.3d 346. If a provision is a substantive change such

106 N.E.3d 1016, 423 Ill.Dec. 848

that it is only to be applied prospectively, and not to a pending cause of action, it follows that a court would never consider if retroactive application thereof would have an impermissible retroactive impact upon a vested right. See *Kopec*, 193 F.3d at 906–07 (Posner, C.J., dissenting) ("the older approach of Illinois law to issues of retroactivity, an approach that may have retained some vitality despite *Armstead*," "created a presumption * * * against the retroactive application of a statute that makes a substantive change") ). Stated differently, a *lack* of retroactive impact in a pending case does not somehow negate or trump the legislature's intent that a change of law is to be applied to future cases only. See *Commonwealth Edison Co.*, 196 Ill. 2d at 47, 255 Ill.Dec. 482, 749 N.E.2d 964 (noting that, although *Henrich v. Libertyville High School*, 186 Ill. 2d 381, 238 Ill.Dec. 576, 712 N.E.2d 298 (1998), "was decided under the principles espoused in *Armstead*," *Henrich* remained "relevant in this case insofar as it defines those interests that are protected from legislative interference by the due process clause of the Illinois Constitution") ). If, however, the legislature indicates that it wants a change of law to be applied retroactively, then a court must ask whether effectuating the legislature's intent would be constitutionally prohibited, which *in turn* would take into account vested rights, as such rights are constitutionally protected. In sum, the Department is arguing for an "impact-before-intent" analytical approach that no longer finds support in Illinois law. We now apply Illinois's retroactivity analysis.

¶ 65 Legislative Intent as to Temporal Reach

¶ 66 We first ask whether the legislature has clearly prescribed the temporal reach of sections 2105–117 and 4–24. Examining the plain language of both sections, we find that the legislature has not done so. To illustrate, we note that the legislature is undoubtedly aware of how to clearly indicate its intent that a statute apply to causes of action currently pending in the  **\*1033**

 **\*\*865**  courts. *Lazenby*, 236 Ill. 2d at 95, 337 Ill.Dec. 884, 923 N.E.2d 735 ("Section 9(f) states that '[t]his Section applies to all causes of action that have accrued, will accrue, or are currently pending before a court of competent jurisdiction, including courts of review.' " (quoting 425 ILCS 25/9f (West 2004) ) ); *Doe A.*, 234 Ill. 2d at 407, 334 Ill.Dec. 649, 917 N.E.2d 475 (Section 13–202.2(e) "specifically provides that the 2003 amendment applies to actions pending when the changes took effect on July 24, 2003, as well as to 'actions commenced on or after that date.' " (quoting 735 ILCS 5/13–202.2(e) (West 2006) ) ); *Allegis Realty Investors*, 223 Ill. 2d at 333, 307 Ill.Dec. 592, 860 N.E.2d 246 (General Assembly expressly indicated temporal reach where new section was "specifically directed to specified Road District taxes authorized by electors at annual or special township meetings during certain years prior to Public Act 94–692's enactment"); *Commonwealth Edison Co.*, 196 Ill. 2d at 42, 255 Ill.Dec. 482, 749 N.E.2d 964 (amendments expressly stated that the amendments' validation of taxes "applies to all cases pending on or after the effective date of this amendatory Act of 1994" and one amendment also expressly validated levies adopted "either before, on or after the effective date of [the Act]" (internal quotation marks omitted) ).

¶ 67 We also presume that the legislature is fully aware of both section 4 and this court's case law. *In re Marriage of O'Neill*, 138 Ill. 2d 487, 495, 150 Ill.Dec. 607, 563 N.E.2d 494 (1990) ("It is a well-established principle of statutory construction that 'where terms used in [a] statute have acquired a settled meaning through judicial construction * * *, they are to be understood and interpreted in the same sense theretofore attributed to them by the court * * *." (quoting *People ex rel. Nelson v. Wiersema State Bank*, 361 Ill. 75, 78–79, 197 N.E. 537 (1935) ) ).

¶ 68 Because the legislature has not expressly prescribed its intent as to the temporal reach of either section 2105–117 or section 4–24, we now discern the legislature's intent by examining whether sections 2105–117 and 4–24 are procedural or substantive *changes in law*. *Hunter*, 2017 IL 121306, ¶ 22, 422 Ill.Dec. 791, 104 N.E.3d 358; *Howard*, 2016 IL 120729, ¶ 28, 410 Ill.Dec. 960, 72 N.E.3d 346; *Glisson*, 202 Ill. 2d at 506–07, 270 Ill.Dec. 57, 782 N.E.2d 251. At the outset, we note that the Department takes no position on whether the changes made by sections 2105–117 and 4–24 are properly characterized as substantive or procedural due to its wholesale reliance upon its prospectivity argument.

106 N.E.3d 1016, 423 Ill.Dec. 848

**[8]**    ¶ 69 As has previously been acknowledged by our case law, distinguishing between procedural and substantive changes can sometimes be unclear. See *People v. Atkins*, 217 Ill.2d 66, 71–72, 298 Ill.Dec. 50, 838 N.E.2d 943 (2005). "Procedural ramifications of a substantive amendment do not make the amendment procedural." *Id.* at 73, 298 Ill.Dec. 50, 838 N.E.2d 943. To aid our analysis, we turn to several dictionary definitions. Webster's Third New International Dictionary provides the following definitions: "procedural" is defined as "of or relating to procedure <∼ details>; esp : of or relating to the procedure used by courts or other bodies (as governmental agencies) in the administration of substantive law (∼ due process)" (Webster's Third New International Dictionary 1807 (2002) ); "procedure," as relevant here, is defined as "an established way of conducting business (as of a deliberative body): as * * * (2) : the established manner of conducting judicial business and litigation including pleading, evidence, and practice" (Webster's Third New International Dictionary 1807 **\*1034   \*\*866** (2002) ); and "substantive law" is defined as "a branch of law that prescribes the rights, duties, and obligations of persons to one another as to their conduct or property and that determines when a cause of action for damages or other relief has arisen" (Webster's Third New International Dictionary 2280 (2002) ).

¶ 70 Black's Law Dictionary defines "procedural law" as "[t]he rules that prescribe the steps for having a right or duty judicially enforced, as opposed to the law that defines the specific rights or duties themselves." Black's Law Dictionary 1398 (10th ed. 2014). "Substantive law" is in turn defined as "[t]he part of the law that creates, defines, and regulates the rights, duties, and powers of the parties." Black's Law Dictionary 1658 (10th ed. 2014).

**[9]    [10]**   ¶ 71 Because both sections 2105–117 and 4–24 alter the scope of information that is accessible, both amendments are substantive changes. The scope of accessible information necessarily determines whether a cause of action will arise or accrue under the Illinois FOIA. Certainly, sections 2105–117 and 4–24 do not speak to pleading, evidence, or steps and practice. Nor can sections 2105–117 or 4–24 be said to be changes to special remedial statutes. See *Glisson*, 202 Ill. 2d at 509, 270 Ill.Dec. 57, 782 N.E.2d 251 ("courts can apply retroactively statutory changes to procedural or remedial provisions"). Having determined that sections 2105–117 and 4–24 are substantive changes in law, sections 2105–117 and 4–24 may not be retroactively applied to either Perry's or the Institute's causes of actions. See *Caveney*, 207 Ill.2d at 92, 278 Ill.Dec. 1, 797 N.E.2d 596. Fatally, the Department "has not directed our attention to anything in the United States or Illinois Constitution which would prohibit the law[s] from being applied" in this way. See *People v. Brown*, 225 Ill. 2d 188, 201, 310 Ill.Dec. 561, 866 N.E.2d 1163 (2007).

¶ 72 The Department asserts that both Perry and the Institute always had and still have causes of action under section 11 of the Illinois FOIA but that sections 2105–117 and 4–24 changed Perry's and the Institute's present right to information. This argument is unpersuasive, as we have already rejected the Department's prospective relief argument. Before the effective dates of sections 2105–117 and 4–24, a party could seek and potentially obtain the type of information sought by Perry and the Institute. Today, a party would not be able to do so.

¶ 73 Briefly, we note that any concern that our holding would impermissibly order a public officer to disclose documents which the legislature has dubbed confidential and therefore exempt from disclosure under section 7 of the Illinois FOIA is baseless. See 5 ILCS 140/7(1)(a) (West 2016). Such an argument would mean that a court would have to ignore the legislature's clear intent. If the legislature has made clear that a change in law is not to apply to pending causes of action, then it follows that, in select cases, a public official is not legally constrained by a new provision.

¶ 74 In a similar vein, as to the Institute's case, the Department insinuates that, because the Institute's complaint sought disclosure of documents "from 2011 to the present," that the word "present" is still operative in the future sense. However, the circuit court already determined that the word "present" meant until December 23, 2013, ordering that "[d]efendant shall provide to Plaintiff '[a]ll complaints regarding licensed cosmetologists and hair braiders received by the Board from January 1, 2011 to December 23, 2013.' " Further, the record also reveals that the Department understood "present" **\*1035   \*\*867** to hold the

same meaning. In its response to Perry's motion to establish the scope of document production, the Department contended "the scope of the FOIA request only extends from 2011 to September 12, 2013."

¶ 75 As to relief, Perry requests that the grant of summary judgment for the Department be reversed with direction to provide the documents as redacted and further that this matter be remanded for further hearings as to the application and assessment of costs as permitted under section 11(j) or other relief as this court deems just and proper. See 5 ILCS 140/11(j) (West 2016) ("If the court determines that a public body willfully and intentionally failed to comply with this Act, or otherwise acted in bad faith, the court shall also impose upon the public body a civil penalty of not less than $2,500 nor more than $5,000 for each occurrence."). We reverse the grant of summary judgment for the Department with directions that the circuit court hold a hearing to reconsider whether Perry is also entitled to disclosure of the subject complaint in a redacted form and, if Perry is the prevailing party, whether Perry is entitled to attorney fees under section 11(i). See 5 ILCS 140/11(i) (West 2016) ("If a person seeking the right to inspect or receive a copy of a public record prevails in a proceeding under this Section, the court shall award such person reasonable attorney's fees and costs.").

¶ 76 With respect to Perry's request for a hearing to be held on section 11(j) penalties, we note the Department's argument that Perry forfeited any claim for penalties and makes no argument to this court that the appellate court's forfeiture finding was an abuse of discretion. See Perry, 2017 IL App (1st) 161780, ¶ 47, 413 Ill.Dec. 329, 77 N.E.3d 1136. However, we are also mindful of the fact that the circuit court mistakenly made no finding on whether the Department willfully and intentionally violated FOIA due to its erroneous belief it need not reach the issue after concluding that Perry was not entitled to the information. Regardless, forfeiture does not serve as a jurisdictional bar to this court's ability to reach the issue. People v. Peterson, 2017 IL 120331, ¶ 67, 423 Ill.Dec. 776, 106 N.E.3d 944. Though we express no view upon whether the Department willfully and intentionally violated the Illinois FOIA, we direct the circuit court to hold a hearing on section 11(j) civil penalties, as it should have in the first instance.

¶ 77 With respect to the Institute, we reverse the appellate *1036 court's order and reinstate the circuit court's grant of summary judgment in favor of the Institute.

¶ 78 CONCLUSION

¶ 79 Illinois's retroactivity analysis governs where a change of law becomes effective during the pendency of a lawsuit. Because the legislature did not clearly prescribe its intent as to whether sections 2105–117 and 4–24 should be applied to pending lawsuits, we considered whether, under section 4 of the Statute on Statutes, the changes in law are procedural or substantive. As both sections 2105–117 and 4–24 are substantive changes to the law, sections 2105–117 and 4–24 are to apply prospectively only. Accordingly, as to Perry, we reverse the grant of summary judgment for the Department with directions that the circuit court hold a hearing to reconsider whether Perry is also entitled to disclosure of the subject complaint in a redacted form and, if Perry is the prevailing party, whether Perry is entitled to attorney fees under section 11(i). See 5 ILCS 140/11(i) (West 2016). We also direct the circuit court to hold a hearing on section 11(j) civil penalties. With respect to the Institute, we reverse the appellate **868 court's order and reinstate the circuit court's grant of summary judgment in favor of the Institute.

¶ 80 No. 122349, Reversed.

¶ 81 No. 122411, Reversed and remanded with directions.

Chief Justice Karmeier and Justices Freeman, Thomas, Kilbride, Burke, and Theis concurred in the judgment and opinion.

106 N.E.3d 1016, 423 Ill.Dec. 848

**All Citations**

2018 IL 122349, 106 N.E.3d 1016, 423 Ill.Dec. 848

---

**End of Document**                               © 2023 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT 10

# UNITED STATES JUDICIAL PANEL
## on
## MULTIDISTRICT LITIGATION

**IN RE: GERBER PROBIOTIC PRODUCTS MARKETING
AND SALES PRACTICES LITIGATION**                     MDL No. 2397

## ORDER DENYING TRANSFER

   **Before the Panel:**   Pursuant to 28 U.S.C. § 1407, plaintiff in the Eastern District of
Washington *Burns* action moves to centralize this litigation in the Eastern District of Washington or,
alternatively, in the Southern District of California.  This litigation currently consists of ten actions,
as listed on Schedule A, pending in five districts.  The cases in this litigation involve allegations that
Defendants Gerber Products Company (Gerber) and Nestlé USA, Inc., misleadingly advertise and
market infant formulas and cereals as promoting immunity, digestive health, and visual and cognitive
function because they contain probiotic cultures, prebiotic ingredients, docosahexaenoic acid (DHA),
and/or arachidonic acid (ARA).[1]

   Plaintiffs in the Northern District of California *Gray* and the Eastern District of California
*Ginger* actions support the motion.  Plaintiffs in the five consolidated actions pending in the District
of New Jersey support centralization only in the District of New Jersey.  The defendants initially
opposed centralization, arguing that the non-New Jersey actions should either be dismissed or
transferred to the District of New Jersey pursuant to 28 U.S.C. § 1404(a).  At oral argument,
however, counsel for the defendants announced that they now support centralization in the District
of New Jersey.

   Although all the parties now support centralization, the Panel has an institutional responsibility
that goes beyond accommodating the particular wishes of the parties.   The actions here
unquestionably involve common factual and legal issues—including nearly identical factual allegations
regarding defendants' labeling and marketing of their products, as well as overlapping, if not identical,
putative classes.  We do not agree, however, that Section 1407 centralization is necessary at this time.

## I.

   We previously have denied centralization where there is a "reasonable prospect" that the
resolution of Section 1404 motions could eliminate the multidistrict character of the actions before

---

   [1] Probiotic cultures are live microorganisms (*i.e.*, yeasts and bacteria) resident in the digestive
system that are believed to be beneficial to the host, while prebiotics are non-digestible food
ingredients that stimulate the growth of such bacteria.  DHA and ARA are nutrients present in breast
milk.

us. *In re Republic Western Ins. Co. Ins. Coverage Litig.*, 206 F. Supp. 2d 1364, 1365 (J.P.M.L. 2002). We are persuaded that such a reasonable prospect exists in this litigation.

Five of the ten actions on the motion are pending and consolidated in the District of New Jersey, where Gerber is headquartered and the marketing and advertising at issue purportedly emanated. Among these five actions is the first-filed *Siddiqi* action, which was filed in the Central District of California and subsequently transferred to the District of New Jersey. Thus, one transferor court already has concluded that under Section 1404 the District of New Jersey is the proper venue for this litigation. All of defendants' Section 1404 motions in the other non-New Jersey actions remain pending.[2] While the Panel does not judge the merits of defendants' motions to transfer, certainly some reasonable prospect exists that the multidistrict character of this litigation could be resolved through resolution of the pending Section 1404 motions. *See In re Michaels Stores, Inc., Pin Pad Litig.*, 844 F. Supp. 2d 1368, 1368-69 (J.P.M.L. 2012) (denying centralization where one action had already been transferred pursuant to Section 1404); *In re Dollar Tree Stores, Inc., Fair Labor Standards Act (FLSA) & Wage & Hour Litig.*, 829 F. Supp. 2d 1376, 1377 (J.P.M.L. 2011) (denying centralization where Section 1404 motions were pending in the remaining actions). Accordingly, centralization is not necessary at this time.

## II.

The Panel has often stated that centralization under Section 1407 "should be the last solution after considered review of all other options." *In re Best Buy Co., Inc., California Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011). These options include: Section 1404 transfer; dismissal or stay under the first-to-file doctrine; agreement by plaintiffs to voluntarily dismiss their actions in favor of one district; and cooperation and coordination among the parties and the various transferor courts. It is perhaps helpful to describe why transfer under Section 1404(a), in particular, is sometimes preferable to centralization.

Centralization under Section 1407 is not permanent. It is limited to pretrial proceedings only, and Section 1407 "obligates the Panel to remand any pending case to its originating court when, at the latest, those pretrial proceedings have run their course." *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 34 (1998). In contrast, Section 1404(a) transfer is for all purposes, including trial. For this reason, transfer under Section 1404(a)—where appropriate—can result in a more streamlined action, without the procedural necessity of remand to the transferor court that is required under Section 1407. This alone produces significant advantages. It allows for the possibility of consolidation of actions for trial, which potentially avoids the increased costs associated with

---

[2] In the Eastern District of Washington, Judge Edward F. Shea denied defendants' motion to dismiss based on the first-to-file doctrine, but stayed the alternative motion to transfer, concluding that the action "should not proceed independently from [the consolidated action in the District of New Jersey], as judicial economy counsels against unnecessary duplication." *Burns v. Gerber Prods. Co.*, C.A. No. 12-05027, at *8 (E.D. Wash. Sept. 4, 2012). In the other non-New Jersey actions, defendants' motions have either been stayed *in toto* or taken under submission.

-3-

multiple trials after the Panel remands actions to the various transferor courts once pretrial proceedings are concluded.[3] On the other hand, Section 1407 remands can involve motions practice and may require transferor courts to spend time to re-familiarize themselves with the actions.

Section 1404 rulings also can aid the Panel in its decision whether and where to centralize a given litigation. As noted above, transfer under Section 1404 may moot the multidistrict character of a litigation and allow a consolidated proceeding in one court with jurisdiction over the pretrial, trial, and post-trial aspects of the litigation. Where Section 1404 transfer does not moot the multidistrict litigation, transfer may allow the Panel to better assess where a multidistrict litigation should be assigned. The Panel often considers the location of the majority (or significant minority) of pending actions and Section 1404 transfer can create a larger locus of actions. Further, to the extent that transfer under Section 1404 results in a larger number of actions pending in the transferee district, the efficiency of the multidistrict litigation may be enhanced by increasing the number of cases in the bellwether trial pool.[4]

Consequently, where a reasonable prospect exists that resolution of Section 1404 motions could eliminate the multidistrict character of a litigation, transfer under Section 1404 is preferable to centralization. *See In re Air Crash Over the Hudson River Near New York, New York on August 8, 2009*, 716 F. Supp. 2d 1360, 1360 (J.P.M.L. 2010) ("While transfer under Section 1407 for pretrial purposes can streamline litigation, thereby benefitting the parties and the courts, transfer under Section 1404(a) for all purposes should be attempted, where appropriate."). As with any general principle, there will be exceptions. For example, where there are numerous actions on a motion or numerous anticipated tag-along actions, coordination or consolidation through Section 1404 may become a less reasonable prospect. *See, e.g.*, *In re Oxycontin Antitrust Litig.*, 314 F. Supp. 2d 1388 (J.P.M.L. 2004) (centralizing litigation, even though several motions to transfer had already been granted, involving 41 potential tag-along actions). No such concerns are presented in this litigation,

---

[3] Using the present litigation as an example, if the non-New Jersey courts ultimately were to decide to transfer those actions to the District of New Jersey, those actions could be consolidated with the other actions pending (and consolidated) in that district, avoiding the need for remand to the non-New Jersey districts for trial following the completion of pretrial proceedings and, if appropriate, possibly allowing for one trial of all actions.

[4] In *Lexecon*, the Supreme Court held that transferee courts presiding over multidistrict litigation have no authority to invoke Section 1404 to assign centralized actions to itself for bellwether trials. *See id.* at 961-64. Some transferee courts had previously applied Section 1404 to transfer actions in the multidistrict litigation to themselves in order to conduct bellwether trials. Following *Lexecon*, transferee courts are limited to conducting bellwether trials (or any other trial or post-trial proceedings) in those actions over which the transferee court has jurisdiction outside the multidistrict context, either because the action was filed directly with the transferee court or because the parties waived their right to remand to the transferor court. Thus, even if a litigation is likely to be centralized by the Panel, Section 1404 transfer by transferor courts—*before* centralization—can result in a larger pool of potential bellwether cases for the transferee court.

-4-

however.  No new action has been filed in nearly five months and no party has suggested that any further related actions will be filed.

### III.

Accordingly, on the basis of the papers filed and the hearing session held, we conclude that Section 1407 centralization at this time will not serve the convenience of the parties and witnesses or further the just and efficient conduct of this litigation.  A reasonable prospect exists that resolution of the pending Section 1404 motions could eliminate the multidistrict character of these actions.  We are sympathetic to the concern expressed by the defendants at the hearing session that, if any of their motions to transfer are denied, they may find themselves litigating actions on opposite ends of the country involving duplicative discovery and warring plaintiffs' counsel.  Should that occur, the parties may file another Section 1407 motion, and the Panel will revisit the question of centralization at that time.  *See, e.g.*, *In re Glaceau VitaminWater Mktg. & Sales Practices Litig. (No. II)*, 764 F. Supp. 2d 1349, 1350 (J.P.M.L. 2011) (centralizing litigation, in which prior motion to centralize had been denied, because filing of additional related actions undermined parties' prior agreement to voluntarily consolidate their actions).

IT IS THEREFORE ORDERED that the motion, pursuant to 28 U.S.C. § 1407, for centralization of the actions listed on Schedule A is denied.

PANEL ON MULTIDISTRICT LITIGATION

_____
John G. Heyburn II
Chairman

| | |
|---|---|
| Kathryn H. Vratil | W. Royal Furgeson, Jr. |
| Barbara S. Jones | Paul J. Barbadoro |
| Marjorie O. Rendell | Charles R. Breyer |

**IN RE: GERBER PROBIOTIC PRODUCTS MARKETING
AND SALES PRACTICES LITIGATION**                    MDL No. 2397

## SCHEDULE A

Eastern District of California

Chad Ginger v. Gerber Products Company, et al., C.A. No. 1:12-00652

Northern District of California

Maria Alvarez v. Gerber Products Company, et al., C.A. No. 5:12-00906
Brandi Gray v. Gerber Products Company, et al., C.A. No. 5:12-01964

Southern District of California

Shavonda Hawkins v. Gerber Products Company, C.A. No. 3:12-00465

District of New Jersey

Janna Thomas v. Gerber Products Company, et al., C.A. No. 2:12-00835
Irene Dourdoulakis, et al. v. Gerber Products Company, et al., C.A. No. 2:12-01098
Jasmine Walker v. Gerber Products Company, C.A. No. 2:12-01149
Andrew Rudich v. Gerber Products Company, C.A. No. 2:12-01283
Saba Siddiqi v. Gerber Products Company, et al., C.A. No. 2:12-01878

Eastern District of Washington

Ryan Burns v. Gerber Products Company, et al., C.A. No. 2:12-05027